**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SABRINA HART on behalf of herself, all<br>similarly situated, and the Proposed<br>New York Rule 23 Class, | ) | Case No. 09-CV-3043 JGK/THK |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| RICK'S CABARET INTERNATIONAL INC., | ) | **CONDITIONAL CLASS** |
| RCI ENTERTAINMENT (NEW YORK) INC., | ) | **CERTIFICATION AND** |
| PEREGRINE ENTERPRISES, INC., | ) | **JUDICAL NOTICE** |
| | ) | |
| Defendants. | ) | |
| | ) | |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

SUMMARY OF RELEVANT FACTS .......................................................................3

    I.   THE PARTIES..............................................................................................3

    II. PLAINTIFF SHARES SIMILAR JOB DUTIES WITH THE PUTATIVE CLASS MEMBERS .....................................................................5

    III. PLAINTIFF AND THE OTHER ENTERTAINERS ARE OR WERE MISCLASSIFIED AS "INDEPENDENT CONTRACTORS" AND DENIED MINIMUM WAGES .............6

ARGUMENT .............................................................................................................7

    I. CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE ARE PROPER IN THIS CASE ...........................................................7

        A. District Courts in New York Apply a Two-Stage Certification Process. .....................8

        B. The Standard for Conditional Class Certification and Judicial Notice in FLSA Actions is Minimal..........................................................................9

        C. Plaintiff has Easily Met the "Similarly Situated" Standard at this Stage of the Litigation............................................................................11

        D. Factors Not Considered at the Notice Stage. ............................................13

        E. Plaintiff's Case is Appropriate for Judicial Notice ...................................15

        F. Plaintiff's Proposed Notice is Accurate, Informative, and Has Been Routinely Adopted...........................................................................17

    II. PRODUCTION OF A LIST OF ENTERTAINERS IS NECESSARY TO FACILITATE NOTICE ........................................................................17

CONCLUSION.........................................................................................................19

i

## TABLE OF AUTHORITIES

**Supreme Court Cases**

Hoffmann-La Roche Inc. v. Sperling,
493 U.S. 165 (1989)...............................................................................1, 7, 8, 15, 16, 17

Shapero v. Kentucky Bar Ass'n,
486 U.S. 466 (1988)...........................................................................................................15

**Second Circuit Court of Appeals Case**

Braunstein v. E. Photographic Labs., Inc.,
600 F.2d 335 (2d Cir. 1975)........................................................................................ 1, 8

**Federal District Court Cases**

Damassia v Duane Reade, Inc.,
No. 04 Civ. 8819(GEL), 2006 WL 2853971 (S.D.N.Y. Oct .5, 2006).................10, 11, 12, 13, 14

Folsom v. Blum,
87 F.R.D. 443 (S.D.N.Y. 1980) .....................................................................................4

Gjurovich v. Emmanuel's Marketplace, Inc.,
282 F. Supp. 2d 101 (S.D.N.Y. 2003).....................................................2, 9, 10, 13, 14

Hoffmann v. Sbarro, Inc.,
982 F. Supp. 249 (S.D.N.Y. 1997) .......................................................................2, 8, 10

Iglesias-Mendoza v. La Belle Farm, Inc.,
239 F.R.D. 366 (S.D.N.Y. 2007) .............................................................................9, 10

Krueger v. N.Y. Tel. Co.,
Nos. 93 CIV. 0178-79, 1993 WL 276058 (S.D.N.Y. July 21, 1993) .......................2, 14

Lee v. ABC Carpet & Home,
236 F.R.D. 193 (S.D.N.Y. 2006) .........................................................1, 2, 8, 9, 10, 13

Lynch v. United Servs. Auto. Ass'n,
491 F. Supp. 2d 357 (S.D.N.Y. 2007)...........................................8, 9, 10, 14, 15, 16, 17

Masson v. Ecolab, Inc.,
No. 04 Civ. 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ...................................2, 9, 10, 14

Mazur v. Olek Lejbzon & Co.,
No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) ...................................2, 9, 10, 13

Mentor v. Imperial Parking Sys., Inc,
246 F.R.D. 178 (S.D.N.Y. 2007) ................................................12

Patton v. Thomson Corp.,
364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) ............................8, 10, 11, 15

Realite v. Ark Rests., Corp.,
7 F. Supp. 2d 303 (S.D.N.Y. 1998)................................................2, 10, 14

Roebuck v. Hudson Valley Farms, Inc.,
239 F. Supp. 2d 234 (N.D.N.Y. 2002) ........................................8

Scholtisek v. The Eldre Corp.,
229 F.R.D. 381 (W.D.N.Y. 2005)................................................8

Schwed v. Gen. Elec. Co.,
159 F.R.D. 373 (N.D.N.Y. 1995)................................................8

Sipas v. Sammy's Fishbox, Inc.,
2006 WL 1084556 (S.D.N.Y Apr. 24, 2006)................................2, 12

Young v. Cooper Cameron Corp.,
229 F.R.D. 50 (S.D.N.Y. 2005) ................................................2, 13

**Statutes**

28 U.S.C. § 201 ................................................................................1

29 U.S.C. § 216(b) ................................................................7, 9, 14

29 U.S.C. § 255(a) ................................................................................2

## PRELIMINARY STATEMENT

The Second Circuit was one of the first courts to recognize the propriety of and authorize judicial notice in collective actions brought under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201, et. seq., approving such notice in Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335 (2d Cir. 1978), cert. denied, 441 U.S. 944 (1979).  Consistent with this recognition, the United States Supreme Court has held that, to serve the "broad remedial purpose" of the FLSA and further the "wisdom and necessity for early judicial intervention," courts have the discretion to manage the notice process to give prospective class members an opportunity to join. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171-173 (1989).

Through this Motion, Plaintiff seeks conditional class certification for the purpose of providing notice to putative collective class members under the FLSA.  Specifically, Plaintiff makes this Motion for nationwide conditional certification of a class consisting of all entertainers employed by Defendants for the last three years at Defendant's New York nightclub, for authorization of judicial notice to all class members of this lawsuit, and, in order to facilitate notice, production by Defendants of an electronic list of class members and class members' most recent contact and indentifying information.

The standard plaintiffs must meet to win conditional certification and court-facilitated notice is extremely minimal under the FLSA: plaintiffs need only demonstrate that they are "similarly situated" to the potential plaintiffs with a "modest factual showing sufficient to demonstrate that [they] and the potential plaintiffs together were victims of a common policy or plan that violated the law." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citations omitted).  Since Hoffmann-La Roche, courts in this District have routinely granted

judicial notice in FLSA collective actions.[1]  These Courts have consistently held that the merits of plaintiffs' claims are irrelevant at this stage.

Plaintiffs in this case can easily demonstrate that they are similarly situated with the potential plaintiffs to whom they seek to send notice.  Plaintiff and the potential plaintiffs: (a) share the same "entertainer" job duties and responsibilities; (b) have been improperly classified as independent contractors; (c) have not been paid a minimum wage for the work they performed for Defendants; (d) are required to pay Defendants a fee in order to work for Defendants; and (e) are subject to unlawful fines and penalties for lateness and misconduct.  Many of Defendants' current and former entertainers remain unknown to Plaintiff and Plaintiff's Counsel.  It is precisely these similarly situated individuals who will benefit from judicial notice, giving them the opportunity to join this lawsuit while they still have claims that are not time-barred.  See 29 U.S.C. § 255(a) (providing a short three-year statute of limitations on FLSA claims); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (indicating statute not tolled for individual opt-in plaintiffs until they file consent forms with the court).  Without notice, these potential plaintiffs will be severely prejudiced.

Plaintiff's proposed notice is attached as Exhibit 1.[2]  Plaintiff respectfully requests that the Court approve this notice and, also, order Defendants to provide contact information for all potential plaintiffs.  Specifically, Plaintiff requests Defendants provide an updated computer-

---

[1] See e.g., Lee v. ABC Carpet & Home, 236 F.R.D.193 (S.D.N.Y. 2006); Sipas v. Sammy's Fishbox, Inc., 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006); Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005); Masson v. Ecolab, Inc., No. 04 Civ. 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005); Young v. Cooper Cameron Corp., 229 F.R.D. 50 (S.D.N.Y. 2005); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101 (S.D.N.Y. 2003); Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303 (S.D.N.Y. 1998); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249 (S.D.N.Y. 1997); Krueger v. N.Y. Tel. Co., Nos. 93 Civ. 0178-79, 1993 WL 276058 (S.D.N.Y. July 21, 1993).
[2] All exhibits and unpublished opinions referenced herein are attached to the Affidavit of E. Michelle Drake ("Drake Aff.").

readable data file containing the names, job title, last known mailing addresses, telephone numbers, dates of employment, location of employment, and the last four digits of the Social Security numbers of all current and former entertainers, who have worked for Defendants in Defendant's New York location during the past three years.  For the same reasons this Motion has been so routinely granted in the Federal District Courts of New York, it should also be granted here.

## <u>SUMMARY OF RELEVANT FACTS</u>

## I.     THE PARTIES.

Defendant Rick's Cabaret International, Inc. ("Rick's") is a publicly traded company that owns and operates a variety of businesses in the adult entertainment industry, including adult entertainment nightclubs and adult entertainment websites.  (Exs. 2-6, at 1.)  Rick's owns and operates seventeen adult nightclubs that offer live adult entertainment, restaurant and bar operations, including a club located at 50 West 33rd Street in New York City.  (Exs. 7 and 8.)

The nightclubs operated by Rick's have their bookkeeping done at Rick's, the parent company.  (Ex. 9 at pp. 12:3-10, 17:2-6.)  Eric Langan is the Director, Chairman, Chief Executive Officer, and President of Rick's Cabaret International, Inc.  (Exs. 2 and 3 at 29, Ex. 4 at 41, Exs. 5 and 6 at 27; Ex. 9 at pp. 8:21-25, 9:1-5).  Defendant RCI Entertainment (New York) Inc. ("RCI") is a domestic corporation with its headquarters in New York City, New York, and is a wholly owned subsidiary of Rick's.  (Amended Compl. ¶ 10; Answer to Amended Compl. ¶ 10; Ex. 6, at 1.)  Defendant Peregrine Enterprises, Inc. ("Peregrine") is a domestic corporation, which prior to being acquired by RCI, owned and operated an adult entertainment cabaret in Manhattan.  (Ex. 2 at 4.)  Defendants Rick's, RCI, and Peregrine will be referred to collectively herein as "Defendants."

Defendants' businesses provide adult entertainment, including female entertainers.  (Exs. 2-6, at 1; <u>see</u> Ex. 10.)   Rick's classifies all entertainers working for Defendants outside of Minnesota as independent contractors.  (<u>See</u> Ex. 5, at 5 ("as of September 30, 2007, we had independent contractor relationships with approximately 1,100 entertainers . . . ."); Exs. 3-6.) Rick's has repeatedly recognized that its classification of entertainers as independent contracts may ultimately be held to violate the law.  Rick's has repeatedly stated in its publicly filed 10-K that it has "prepared plans that we believe will protect our profitability in the event that sexually oriented business industry is required in all states to convert dancers who are now independent contractors into employees."  (Exs. 2 and 3 at 27; Ex. 4 at 34; Ex. 5 at 5; Ex. 6 at 8.)

Plaintiff Sabrina Hart ("Plaintiff") worked as an entertainer for Defendants at their location in New York, New York from June 2006 to September 2007.  (Hart Decl. ¶ 1.)   On March 30, 2009, Plaintiff brought this nationwide collective action under the FLSA on behalf of herself and other similarly situated entertainers whom Defendants misclassified as "independent contractors" and, among other things, failed to pay a minimum wage.  (Complaint.)  Plaintiff also brought individual and class claims under New York state law pursuant to Rule 23 of the Federal Rules of Civil Procedure.  (Compl. ¶¶ 23, 49-59, 72-104.)  Plaintiff estimates that, during the past three years, easily in excess of one hundred people have been worked as entertainers at the Rick's nightclub located in New York.[3]

---

[3] Defendant has also represented that as of September 30, 2008, it operated a total of nineteen (19) clubs and had relationships with approximately 2,500 independent contractor entertainers. (Ex. 6 at 1, 8.)  The average number of entertainers per club, then, at any given time would be 132 entertainers.  This number does not account for entertainer turnover so is certainly lower than the actual number.  Whatever the actual number is, it would be markedly inappropriate for Defendants, who certainly know the total number of entertainers they employed during the last three years, to challenge the propriety of certification based on Plaintiffs' estimates being too rough.  <u>See</u> <u>Folsom v. Blum</u>, 87 F.R.D. 443 (S.D.N.Y. 1980) (characterizing Defendant's argument that numerosity was lacking because plaintiff could not state the exact number of

## II.     PLAINTIFF SHARES SIMILAR JOB DUTIES WITH THE PUTATIVE CLASS MEMBERS.

As an entertainer, Plaintiff's job was to entertain Defendants' clients and customers at Defendants' New York location.  (Hart Decl. ¶¶ 1-2.)  Entertainers' duties are simply to the perform dances on stage, private dances for customers, and dances in semi-private rooms.  (Id. at ¶ 2; N. Imbeault Decl. ¶ 2; W. Imbeault Decl. ¶¶ 3-4.)  Rick's advertises for entertainer jobs in all of its locations on a centralized website.  Those ads read: "No experience necessary.  Must be outgoing, friendly, and able to perform on stage."  (Ex. 11.)  Entertainers work inside Defendants' premises, entertaining Defendants' clients and customers.  (See generally, Hart Decl.; N. Imbeault Decl.; W. Imbeault Decl.)

Defendants carefully monitor entertainers' conduct.  (Exs. 2-6, at 1 ("[w]e continually monitor the behavior of entertainers . . . to ensure that proper standards of behavior are observed"); (Id. at 2) ("[t]he environment is carefully monitored for music selection, entertainer and waitress appearance and all aspects of customer service on a continuous basis.").)  Moreover, Defendants require all New York entertainers to follow its "entertainer guidelines."  (Hart Decl. ¶ 13; N. Imbeault Decl. ¶ 13.)  These guidelines prohibit entertainers:  from having both knees on the ground at any time while dancing; from performing floor shows; from chewing gum while on the floor or stage; from using the public restrooms upstairs or guest bathrooms; and from soliciting alcohol from guests.  (Ex. 12; see Hart Decl. ¶ 5; N. Imbeault Decl. ¶ 5; see also W. Imbeault Decl. ¶ 6.)  The entertainer guidelines also require entertainers to: dance on stage; check in at the D.J. booth; keep their hair, make-up and nails in a fashionable manner; cover all tattoos; and wear high heeled shoes at least three (3) inches in height.  (Ex. 12; see Hart

---

persons in the class as "pure sophistry" by the court, where the exact number was known to the defendant, who had the means to identify class members.

Decl. ¶ 3; N. Imbeault Decl. ¶ 3; <u>see also</u> W. Imbeault Decl. ¶ 3.)

Entertainers were unable to exercise control over many aspects of their work for Defendants. Entertainers were required to dance on stage but could choose neither the music that played while they were on stage nor the amount of clothing they could take off or leave on while on stage. (Hart Decl. ¶¶ 2-4, 6; N. Imbeault Decl. ¶¶ 2-4, 6; W. Imbeault Decl. ¶¶ 3, 5, 7.) Entertainers had no discretion over the amount they charged customers for personal dances. (Hart Decl. ¶¶ 9-10; N. Imbeault Decl. ¶¶ 9-10; W. Imbeault Decl. ¶ 8.) Entertainers had no discretion over the amount they charged customers for time in semi-private rooms. (Hart Decl. ¶ 11; N. Imbeault Decl. ¶ 11.) Entertainers were forbidden from giving their personal information to customers. (Hart Decl. ¶ 15; N. Imbeault Decl. ¶ 15.) Entertainers did not pay for advertising for Rick's club. (<u>See</u> <u>id.</u>) All club advertising was controlled by Rick's. (<u>See</u> Ex. 13, at 2 ("as we grow and become a much stronger, more nationalized brand, we are often will do (sic) more national advertising.").) While entertainers could determine their own schedule, they were required to specify when they were going to work in advance, and they faced the prospect of paying late fees if they came to work later than scheduled. (Hart Decl. ¶ 14; N. Imbeault Decl. ¶ 14; Ex. 14.)

The job duties of all entertainers at Rick's New York location were similar to one another. (Hart Decl. ¶¶ 4-7, 9-10, 21; N. Imbeault Decl. ¶¶ 4-7, 9-10, 21; <u>see generally</u> W. Imbeault Decl.) All entertainers were subject to the same set of guidelines governing their conduct and work performance. (Hart Decl. ¶ 13; N. Imbeault Decl. ¶ 13.)

## III.   PLAINTIFF AND THE OTHER ENTERTAINERS ARE OR WERE MISCLASSIFIED AS "INDEPENDENT CONTRACTORS" AND DENIED MINIMUM WAGES.

Entertainers at the Rick's New York location have always been classified by Defendants

as independent contractors.  (Exs. 2, 3 and 6 at 8, Ex. 4 at 10, Ex. 5 at 5; Hart Decl. ¶ 17; N. Imbeault Decl. ¶ 17; W. Imbeault Decl. ¶ 11.)  No entertainers were paid hourly wages.  (Hart Decl. ¶ 20; N. Imbeault Decl. ¶ 10; W. Imbeault Decl. ¶ 10.)  All entertainers were required to pay a "facilities use fee" or "shift fee" in order to work each night, and they were also assessed other charges based on whether they came to work late.  (Hart Decl. ¶¶ 14, 18-19; N. Imbeault Decl. ¶¶ 14, 18-19; W. Imbeault Decl. ¶ 10; Answer ¶¶ 27-29.)  Other than the money Defendants give entertainers based on the dance dollars redeemed, Defendants do not pay wages to entertainers.  (Hart Decl. ¶¶ 10, 20-21; N. Imbeault Decl. ¶¶ 10, 20-21.)  The entertainers' source of income was gratuities from customers, in the form of money received for doing personal dances, for spending time with customers in a private suite, or as a "tip" on top of those amounts.  (See Hart Decl. ¶ 10; N. Imbeault Decl. ¶ 10.)

## ARGUMENT

### I.    CONDITIONAL CLASS CERTIFICATION AND JUDICAL NOTICE ARE PROPER IN THIS CASE.

Plaintiff seeks conditional certification and court-facilitated notice in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b), which provides that an action may be maintained against any employer in Federal court "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). The collective action mechanism allows for efficient adjudication of similar claims so that "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.  See Hoffmann-La Roche Inc., 493 U.S. at 170.

An FLSA collective action is defined by three important features: First, in order to participate in a collective action, an employee must "opt in," meaning the employee must

consent in writing to join the suit and that consent must be filed with the court.  Hoffmann-La Roche, 493 U.S. at 168.  Second, the statute of limitations runs on each employee's claim until that individual files a consent form with the court.  Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 358 (S.D.N.Y. 2007); Hoffmann, 982 F. Supp. at 260.  Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potential similarly situated employees to inform them of this opportunity to opt into to the case.  Braunstein, 600 F.2d at 336; Lynch, 491 F. Supp. 2d at 358 (citing Hoffmann-La Roche, 493 U.S. at 173).

Critically, judicial notice avoids a "multiplicity of duplicative suits," allows the court to set deadlines to advance the disposition of an action, and it protects potential plaintiffs' claims from expiring under the statute of limitations.  Hoffmann-La Roche, 493 U.S. at 171-73; Hoffmann, 982 F. Supp. at 260.  Accordingly, and as stated by the Second Circuit and this District, "courts should be mindful" that providing judicial notice is consistent with the remedial purpose of the FLSA.  Lee, 236 F.R.D. at 197 (citing Braunstein, 600 F.2d at 336).

Here, conditional certification and judicial notice are proper because Plaintiff satisfies the lenient standard for demonstrating that she is similarly situated to the putative class.

## A. District Courts in New York Apply a Two-Stage Certification Process.

Federal district courts in New York, like most courts, have adopted a two-stage approach to determine whether a case should be certified as a collective action.  See Lee, 236 F.R.D. at 197; Roebuck v. Hudson Valley Farm, Inc., 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002); Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995); Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266-68 (E.D.N.Y. 2005); Scholtisek v. The Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005).

The first step is the "notice stage," where the court determines, based simply on the pleadings and any affidavits submitted by plaintiffs, whether plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery.  Lee, 236 F.R.D. at 197; Lynch, 491 F. Supp. 2d at 368. Once the court determines that potential opt-in plaintiffs may be "similarly situated" for the purposes of authorizing judicial notice, the court "conditionally certifies" the collective action, and plaintiffs send court-approved notice to potential plaintiffs.  Lynch, 491 F. Supp. 2d at 368. Upon receiving notice, the potential plaintiffs may elect to opt into the lawsuit pursuant to section 216(b) by filing written consents with the court.  Id.  Once notice is accomplished, the action proceeds as a collective action through discovery.  Lee, 236 F.R.D. at 197; Masson v. Ecolab, Inc., No. 04 Civ. 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005) (citations omitted).

At the second step, typically on a motion for decertification, the court undertakes a more stringent factual determination as to whether members of the collective class are, in fact, similarly situated.  Lynch, 491 F.R.D. at 368; Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 366, 367 (S.D.N.Y. 2007).  If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may "de-certify" the collective and dismiss the claims of the opt-in plaintiffs without prejudice.  See Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 104, n. 1 (S.D.N.Y. 2003); Iglesias-Mendoza, 239 F.R.D. at 368.

### B.   The Standard for Conditional Class Certification and Judicial Notice in FLSA Collective Actions is Minimal.

The burden for demonstrating that potential plaintiffs are "similarly situated" is very low at the notice stage: plaintiffs need make only a "modest factual showing" that plaintiff and potential collective action members were victims of "a common policy or plan that violated the

law." Gjurovich, 282 F. Supp. 2d at 104; Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306

(S.D.N.Y. 1998); see Iglesias-Mendoza, 491 F.R.D. at 368 (concluding that the plaintiffs had

"easily made the modest showing that is required of them at this preliminary stage" through their

allegations of common wage and overtime practices that violate the FLSA).   This burden is

"limited," "minimal", "lenient", and "not a stringent one." Lynch, 491 F.R.D. at 368; Mazur v.

Olek Lejbzon & Co., No. 05 Civ. 2194, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 30, 2006)

(plaintiffs "face only a very limited burden," noting the "minimal nature" of the burden);

Masson, 2005 WL 2000133, at *13 ("courts employ a relatively lenient evidentiary standard");

Hoffmann, 982 F. Supp. at 261 (requiring only a "modest factual showing"); Patton, 364 F.

Supp. 2d at 267 (the "burden is not a stringent one").[4]

The minimal showing required to meet the similarly situated standard is particularly

apparent when examined in the context of misclassification.  In fact, courts in this District have

granted conditional certification and authorized dissemination of judicial notice based on a

simple showing that other employees may also have been subjected to the employer's practice of

"misclassifying" employees.  See Lynch, 491 F. Supp. 2d at 370 (citation omitted); Damassia v.

Duane Reade, Inc., No.04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006)

("it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated

based simply on plaintiffs' substantial allegations that they and potential plaintiffs were common

victims of a FLSA violation, particularly where defendants have admitted that the actions

challenged by plaintiffs reflect a company-wide policy") (internal quotations and citations

---

[4] Plaintiffs' initial burden is "minimal," in part, because the court's decision to certify the
collective at this stage is a "preliminary" one that may be modified or reversed at the second
certification stage, once discovery is completed.  Lee, 236 F.R.D. 193; Gjurovich, 282 F. Supp.
2d at 105; Realite, 7 F. Supp. 2d at 308 (allowing notice, but noting that collective action may be
decertified or divided into subgroups "should discovery reveal that plaintiffs in fact are not
similarly situated").

omitted)); see also Patton 364 F. Supp. 2d at 267 (concluding that the similarly-situated standard was satisfied where the plaintiff alleged that she had worked over forty hours per week without overtime compensation, that her position was classified improperly as exempt, that other employees in her position had the same job duties, and that the employer had admitted it paid all employees in plaintiff's position in the same manner and had classified the position as exempt).

### C. Plaintiff Has Easily Met the "Similarly Situated" Standard Necessary at this Stage of the Litigation.

The case at bar is about Defendants' misclassification of Plaintiff and all other former and current entertainers outside of the state of Minnesota, and exemplifies the situation to which the court in Damassia referred: Here, Plaintiff's Complaint, supporting declarations, and Defendants' admissions in their corporate documents establish Defendants' company-wide policy of treating Plaintiff and members of the putative class as independent contractors, failing to pay them minimum wage for hours worked at Defendants' businesses around the country.[5] (Compl.; Exs. 2, 3 and 6 at 8; Ex. 4 at 10; Ex. 5 at 5.)  Further, Plaintiff's Complaint, which alleged this common policy – together with the submitted declarations and Defendants' corporate documents – also show that Defendants' policies and practices relative to the misclassification of entertainers do not vary from location to location, but rather affect all entertainers the same way nationwide.[6]  (Id.)  Thus, as dictated by controlling precedent, Plaintiff has met her burden of showing herself "similarly situated" to the putative class.

In addition to the showing based on misclassification, conditional class certification is appropriate under the other facts of this case:  All entertainers perform the same primary job duties of "dancing on stage during the stage rotation, performing personal dances (also called

---

[5] Again, excluding Defendants' business in Minnesota.
[6] Same.

"lap dances" or "private dances") for customers, and spending time with customers in semi-private rooms." (Hart Decl. ¶ 2; N. Imbeault Decl. ¶ 2; accord W. Imbeault Decl. ¶¶ 3-4.) As described by Defendants, all entertainers "*must* be "outgoing, friendly, and able to perform on stage" at Defendants' business locations.  (Ex. 11.)[7]  (Emphasis added.)  Further, all entertainers must perform these job duties under Defendant's constant supervision.  (Exs. 2-6, at 1 and 2.) All entertainers perform their duties within the confines of Defendants' entertainer guidelines and are subject to discipline for failure to comply with the guidelines.  (Hart Decl. ¶13; N. Imbeault Decl. ¶ 13; see Ex. 12.)[8]  Finally, entertainers were not paid hourly wages, were required to pay a "facilities use fee" or "shift fee" in order to work each night, and were also assessed other charges based on whether they came to work late.  (Hart Decl. ¶¶ 18-20; N. Imbeault Decl. ¶¶ 18-20; W. Imbeault Decl. ¶ 10.)

       As demonstrated throughout this Memorandum and in addition to the detailed allegations in the Complaint and Defendants' corporate documents, Plaintiff's Motion is supported by declarations from three individuals. Notably, courts in this District have routinely authorized notice to putative class members on similarly records.  See, e.g., Mentor v. Imperial Parking Sys., Inc, 246 F.R.D. 178, 180 (S.D.N.Y. 2007) (four declarations); Sipas v. Sammy's Fishbox,

---

[7] It should also be noted that the webpage does not distinguish entertainers' duties based on location.

[8] Any minor factual variance that may exist among the entertainers is irrelevant at this point.  In fact, in Damassia, the court rejected defendants' attempts to avoid conditional certification by focusing on factual variations in the putative class.  Damassia, 2006 WL 2853971 at *6 ("wide variance in plaintiffs' abilities and competence, and in the length of time they [were employed]… are hardly relevant to whether plaintiffs and potential opt-in plaintiffs were common victims of an illegal application of the "bona fide executive" exemption to overtime compensation requirements.")  The situation currently before this Court would be no different – Plaintiff has alleged a common illegal policy of classifying entertainers as independent contractors.  The fact some entertainers may be more experienced or better able to sustain a strong following of customers is not relevant in determining whether Plaintiff and potential opt-in plaintiffs have been subject to a common illegal policy by Defendants.

Inc., 2006 WL 1084556, at *2 (S.D.N.Y Apr. 24, 2006) (three affidavits and the contents of the complaint); Young, 229 F.R.D. at 55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all had same job and were all classified as exempt at over 108 facilities in 21 states); Mazur, 2005 WL 3240472, at * 4 (S.D.N.Y. Nov. 30, 2005) (three affidavits sufficient for notice to employees in nine job classifications, who worked for four different corporations).

Taking into account the totality of the evidence presented, Plaintiff has more than met her light burden of showing that she is "similarly situated" to other entertainers.  See Damassia 2006 WL 2863971, at *4 ("Plaintiff's affidavits and allegations, taken together with defendant's admissions, more than suffice to entitle plaintiffs to court-authorized notice in this case."); see also Lee, 236 F.R.D. at 198 (approving judicial notice and finding allegations that employees were misclassified as independent contractors "sufficiently alleged a common policy or plan"). Accordingly, this Court should grant Plaintiff's Motion.

**D.    Factors Not Considered at the Notice Stage.**

Given the minimal showing that Plaintiffs must make at the conditional certification stage, it is important to clarify what is not considered for purposes of conditional certification. Many standards commonly applied to other kinds of motions are not appropriate here.  For example, at the notice stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." Young, 229 F.R.D. at 54 (S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations that the law has been violated); Gjurovich, 282 F. Supp. 2d at 105 (concluding that whether the positions the plaintiff held are exempt is not an issue when deciding whether to authorize notice);

13

Damassia, 2006 WL 2853971 at *5, n. 8 ("[a]t most, [plaintiffs] need only make a modest factual showing in support of their allegation that they were victims of [a common illegal policy].")

Similarly, courts have refused to undertake an examination of day-to-day tasks at this early conditional certification stage.  See Lynch, 491 F. Supp. 2d at 368 ("any factual variances that may exist between the plaintiff and the putative class do not defeat conditional certification.") (citation omitted); Masson, 2005 WL 2000133, at *15 (concluding that at the notice stage, factual issues do not bear on whether the case can proceed as a collective action because approval of the collective action is for notice and discovery).

Because courts do not weigh the merits of the claim or examine factual variations at the notice stage, extensive discovery is not necessary, and the need for individual discovery is not considered.  Masson, 2005 WL 2000133, at *14 (the eventual need for "extensive" individual discovery does not prevent conditional certification at this first stage); see also Krueger v. N.Y. Tel. Co., No. 93 Civ. 0178-79, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case").[9]

Further still, courts do not look to the standard for class certification under Rule 23 of the Federal Rule of Civil Procedure when deciding on conditional certification under the FLSA. Lynch, 491 F. Supp. 2d at 369.  In fact, unlike Rule 23, section 216(b) requires no showing of

_____

[9] In lieu of discovery, courts often rely solely upon detailed allegations in a complaint supported by employee declarations to determine whether plaintiffs and potential opt-in plaintiffs are "similarly situated."  See Gjurovich, 282 F. Supp. 2d at 104. What is more, if discovery eventually reveals that plaintiffs are not in fact similarly situated, and a court later decertifies the case, principles of efficiency and judicial economy militate in favor of maintaining the action as a collective one, and "waiting to see what the facts bear out."  Realite, 7 F. Supp. 2d at 308 (citing Krueger, 1993 WL 276058, at *2).

numerosity, typicality, commonality, or representativeness.  Lynch, 491 F. Supp. 2d at 369. As a result, the standard for authorizing notice to similarly-situated workers is much lower than under Rule 23.  See Patton, 364 F. Supp. 2d at 267 (plaintiffs' burden under section 216(b) "is significantly less exacting than the matters that must be demonstrated to sustain certification of a class under Federal Rule of Civil Procedure 23").

At this stage, courts also do not consider the informal efforts by Plaintiff's counsel to investigate the claim or provide notice to the potential plaintiffs through advertisement letters or other means.  Lynch, 491 F. Supp. 2d at 369.  This is because pre-certification communications such as Plaintiff's counsel's advertisement letters are constitutionally protected speech.  Shapero v. Kentucky Bar Ass'n, 486 U.S. 466 (1988).  Moreover, disputes over the content of such pre-notice communications are another reason identified by the Supreme Court in Hoffmann-La Roche justifying judicial notice in FLSA collective actions.  493 U.S. at 172 (the parties' dispute over 600 letters sent by Plaintiffs prior to seeking judicial notice "illustrate the propriety, if not the necessity, for court intervention in the notice process").

### E.     Plaintiff's Case is Appropriate for Judicial Notice.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170.  District courts are encouraged to become involved in the notice process early, to insure "timely, accurate, and informative" notice and to help maintain control of the litigation.  Id. at 171-72.  Short of a bright-line standard, the Supreme Court in Hoffmann-La Roche established that a court-approved notice to potential plaintiffs in FLSA

collective actions is proper in "*appropriate cases*," discretion lying with the district court.  Id. at 169-70 (emphasis added).  The case at bar is one such appropriate case.

Here, prompt judicial notice is needed because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations.  Lynch, 491 F. Supp. 2d at 371.  Unlike Rule 23 class actions, the statute of limitations in FLSA collective actions continues to run on each individual's claim—reducing the amount in damages an individual could recover— until the individual files a consent form the with the Court.  Lynch, 491 F. Supp. 2d at 371.  Court-facilitated notice will prevent such erosion of claims while the parties work to resolve this litigation.  See id.

Further, judicial notice providing all entertainers the opportunity to pursue their claims in one forum will create the significant judicial economies recognized in Hoffmann-La Roche.  Indeed, because similar—if not identical—issues of law and fact exist amongst all of Defendants' entertainers, one action benefits the judicial system by resolving this case collectively at least through the discovery phase.  Hoffmann-LaRoche, 493 U.S. at 170; accord Lynch, 491 F. Supp. 2d at 371.  Collective adjudication also avoids the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.  Lynch, 491 F. Supp. 2d at 371.

Judicial notice is also necessary in this case because the size of the putative class remains unknown and Plaintiff's best estimate is that the size of the class is greater than 100 individuals.  (Drake Aff. ¶ 5.) Given the potential scope of this class, word-of-mouth communications between the prospective collective class members and Plaintiff or Plaintiff's Counsel is an insufficient method of providing a truly adequate and fair notice.

**F.  Plaintiff's Proposed Judicial Notice Is Accurate, Informative, and Has Been Routinely Adopted.**

Plaintiff's proposed judicial notice is attached as Exhibit 1.  As required, it is "timely, accurate, and informative."  See Hoffmann-La Roche, 493 U.S. at 172; Lynch, 491 F. Supp. 2d at 371.  Plaintiffs proposed notice is carefully drafted to mirror notice forms that other federal districts courts have approved in previous cases handled by Plaintiff's Counsel's law firm, specifically the notice approved in Lynch, a misclassification case involving "special investigators" who worked for the defendant insurance company.  (See id. at 372- 374; see also Ex. 20.)  As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted.

**II.  PRODUCTION OF A LIST OF ENTERTAINERS IS NECESSARY TO FACILITATE NOTICE.**

As discussed above, all entertainers employed by Defendants within the past three years are "similarly situated" employees for purposes of the FLSA.  Disclosure of the names and contact information of those similarly situated is necessary in order for Plaintiffs to provide those individuals with notice of the action as contemplated by the law.  See Hoffmann-La Roche, 493 U.S. at 170[10]; see also Lynch, 491 F. Supp. 2d at 371-372 (ordering production of list in electronic and importable format within five days).  Accordingly, Plaintiffs respectfully request that, in addition to entering an order granting conditional certification and approving Plaintiff's

---

[10] Hoffmann-LaRoche recognizes that Plaintiffs in collective actions under the FLSA are entitled to the discovery of the names and addresses of co-workers regardless of whether judicial notice is appropriate.  Id. at 170.  In so ruling, the Court acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter."  Id.

notice, the Court order Defendants to produce to Plaintiff the following within ten (10) days of

its order:

> A list, in electronic and importable format, of all persons employed by Defendants as entertainers during the last three years, including their name, job title, address, telephone number, dates of employment, location of employment, date of birth, and last four digits of their Social Security number.[11]

---

[11] Due to the transient nature of the business, as discussed above, the social security numbers are needed because the contact information Defendants have will likely be outdated.  The social security numbers will help in obtaining current contact information of putative class members.

## CONCLUSION

At this preliminary stage, Plaintiff has come forward with the factual basis from which this Court can determine that similarly situated plaintiffs exist.  Plaintiff respectfully requests that this Court follow the well-established precedent from the United States Supreme Court, the Second Circuit Court of Appeals, and the New York Federal District Courts –  particularly those in this District – and 1) promptly authorize this case to proceed as a collective action; 2) order the identification of all entertainers who worked for Defendants during the applicable statutory period; and 3) authorize the issuance of Plaintiff's proposed notice to be mailed to all potential opt-in plaintiffs employed by Defendants in the past three years.

Dated: June 15, 2009                     NICHOLS KASTER, PLLP


                                         s/E. Michelle Drake
                                         Donald H. Nichols, NY Bar No. 725840
                                                 nichols@nka.com
                                         Michele R. Fisher (MF 4600)
                                                 fisher@nka.com
                                         Paul J. Lukas, MN Bar No. 22084X
                                                 lukas@nka.com
                                         (*pro hac vice* application forthcoming)
                                         Steven Andrew Smith, MN Bar No. 260836
                                                 smith@nka.com
                                         (*admitted pro hac vice*)
                                         E. Michelle Drake, MN Bar No. 0387366
                                                 drake@nka.com
                                         (*admitted pro hac vice*)
                                         4600 IDS Center, 80 South 8th Street
                                         Minneapolis, MN 55402
                                         Telephone: (612) 256-3200

                                         ATTORNEYS FOR PLAINTIFF