UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA HART on behalf of herself, all similarly situated, and the Proposed New York Rule 23 Class,<br><br>Plaintiff,<br><br>v.<br><br>RICK'S CABARET INTERNATIONAL INC., RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,<br><br>Defendants. | Case No.  09-CV-3043 (JGK/THK)<br><br><br><br><br><br>**DECLARATION OF<br>NICOLE IMBEAULT** |

1. I worked as an entertainer at Rick's Cabaret in New York ("Rick's") from September 2005-August 2006.

2. As an entertainer, my primary job duties were dancing on stage during the stage rotation, performing personal dances (also called "lap dances" or "private dances") for customers, and spending time with customers in semi-private rooms.

3. I was required to dance on stage according to a stage rotation established by the disc jockey ("DJ.")

4. All entertainers who were present in the club were put into the stage rotation and were required to dance at the time their name was called. Each stage dance was required to last for a specified number of songs. Entertainers were told how much clothing to remove during each song, i.e. top only during the first song and then all clothing, save a G-string, during the second song.

5. Entertainers were told we could not do "floor work" when we danced on the stage. "Floor work" is a term in the industry that refers to entertainers dancing on their knees or while

1

lying down. Entertainers were only allowed to have one knee on the floor at a time at Rick's and were not allowed to dance while lying down.

6. As entertainers, we were not allowed to choose the songs that were played while we were dancing on stage. While we could express our music preferences to the DJ, the ultimate decision about the music was up to the DJ. There were many occasions on which the DJs did not play the songs the entertainers requested to dance to and played something entirely different.

7. Entertainers were only excused from dancing on stage during the stage rotation if we were in a private room with a customer.

8. As an entertainer at Rick's, I was required to perform personal dances for customers. Each personal dance was to last the length of one song played by the DJ. I did not choose the music for these dances and was not allowed to do so. If a customer wanted me to dance for them for longer than the length of one song, I was required to charge them for another dance.

9. Rick's set the price of personal dances. The price was the same for a personal dance regardless of which entertainer performed the dance. Entertainers were not allowed to charge a different price for a personal dance than the price established by Rick's.

10. Entertainers were required to charge customers $20 for a personal dance. If a customer did not want to pay for the dance using US currency, entertainers were required to allow the customer to pay for the dance using one "dance dollar." Dance dollars are coupons that cost the customer $24.00. At the end of each shift, I was paid $18 by Rick's for each dance dollar I turned in.

11. As an entertainer, I was required to spend time in private rooms with customers. While I was in private rooms, I was required to dance for customers if that was what the customer requested. The price paid for time in private rooms was set by Rick's and was the same regardless of which entertainer was spending time in the private room with the customer(s).

12. I do not have any formal dance background or training, and no such training was provided to me by Rick's. Nor was any other job-duty related training provided to me during the time that I worked at Rick's.

13. During the time I worked at Rick's, I was subject to the entertainer guidelines attached to this Declaration as "Exhibit A." These guidelines applied equally to all other entertainers.

14. During the time I worked for Rick's, I was required to show up for work at a specific time, and to make up my schedule in advance. If I came to work late, I was charged a fee.

15. Rick's was in charge of all advertising for the club. I was not allowed to give customers my phone number, nor was I allowed to leave the club with a customer.

16. During the time I worked at Rick's, I spent a large percentage of my time working on "the floor" which was the main area of the club. This area is open to the public and provided me with an opportunity to observe other entertainers dancing on stage and performing personal dances for customers. Because the semi-private rooms are not fully private, and because customers often paid for more than one entertainer at a time to spend time with them in a private room, I was also able to observe other entertainers performing their job duties on a regular basis. Based on these observations, it was clear to me that other entertainers performed the same job duties I did.

17. I was classified as an "independent contractor" during the entire time I worked for Rick's. I am informed and believe that all the entertainers who worked at Rick's at the same time I did were also classified as independent contractors.

18. I was required to pay a shift fee each night when I showed up at work, unless the fee was waived for some reason. Fees were only waived for specific reasons, such as "bringing a friend" who also wanted to work as an entertainer at Rick's. All the entertainers paid the shift fees in the same location I did, and I routinely observed other entertainers paying shift fees in order to work.

19. In addition to the shift fee I paid, I was also required to pay the DJ a monetary fee each night that I worked. At times, the DJ was my husband, William Imbeault. I know that other entertainers paid him and other DJs a nightly fee because I saw them doing so.

20. I was never paid an hourly wage by Rick's. To my knowledge, neither were any other entertainers.

21. All entertainers turned in dance dollars in the same location each night. I routinely witnessed other entertainers turning in dance dollars and am aware that, like me, they each received $18 for each dance dollar they exchanged for cash.

22. During the entirety of my employment at Rick's, there were no changes to entertainers' primary job duties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 6/8/09

Nicole Imbeault

4

## ENTERTAINER GUIDELINES

1. Entertainers must use employee entrance.

2. Entertainers must pay house fee at the cage before beginning of shift.

3. Entertainers must show house mom receipt of there house fee payment before getting dressed.

4. Entertainers must look there best before going on the floor.

5. Entertainers must never have both knees on the ground at the same time. Entertainers may go down on one knee only while on stage and during a table dance.

6. Entertainers must cover their pubic area at all times with an opaque material. The anal cleft must remain covered at all times. Entertainers must not pull up their T-bars to show tan lines at any time.

7. Entertainers are prohibited from performing floor shows.

8. All entertainers are required to dance on the stage. Entertainers must check in at the D.J. booth.

9. Entertainers must maintain clean personal hygiene at all times. Hair, make-up and nails must be fashionably kept. Shoes must be high heeled and at least three (3) inches in height.

10. Entertainers are prohibited from chewing gum while on the floor or the stage.

11. Entertainers must cover all tattoos while on the floor and stage.

12. Entertainers are prohibited from soliciting alcohol from guests. However, entertainers who are offered a drink by a guest may accept the offer and should order a non-alcoholic beverage. An employee who chooses to drink alcoholic beverages should do so responsibly and not drink to excess.

13. Entertainers are prohibited from using public bathrooms upstairs or guest bathrooms.

14. Entertainers are prohibited from being under the influence, using, possessing or distributing or engaging in conversation regarding illegal drugs, or controlled substances on the premises or Rick's Cabaret.

15. Prostitution is strictly prohibited and is grounds for immediate dismissal. Prostitution is defined as engaging in any sexual act for any material compensation (money, drugs, gifts, etc.).

16. Assignation of Prostitution is strictly prohibited. Assignation of prostitution occurs when an individual has agreed (assigned) to prostitute himself/herself but have not necessarily committed the act.

17. Solicitation or Pandering of Prostitution is strictly prohibited. Solicitation occurs when an individual offers or suggests that he/she would be willing to meet someone for a material consideration in order to commit a sexual act. Pandering occurs when an individual offers someone else for prostitution.

18. Entertainers who fail to comply with the above-cited guidelines will be subject to disciplinary action, up to and including discharge.