**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SABRINA HART and REKA FUREDI | ) | |
| on behalf of themselves and all | ) | Case No. 09-CV-3043 JGK/THK |
| others similarly situated, and the Proposed | ) | |
| New York Rule 23 Class, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICK'S CABARET INTERNATIONAL INC., | ) | |
| RCI ENTERTAINMENT (NEW YORK) INC., | ) | |
| PEREGRINE ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**INTRODUCTION** ...................................................................................................1

**PROCEDURAL CONTEXT** ...................................................................................2

    **A. Procedural History.**.....................................................................................2

    **B. Plaintiffs Rule 23 Claims Are Not Moot.** ................................................4

**STATEMENT OF FACTS**.......................................................................................6

**I.**    **Facts Pertaining to Plaintiffs' Independent Contractor Misclassification Claims**........................................................................................6

**II.**    **Facts Pertaining to Plaintiffs' Minimum Wage, Unlawful Kickbacks, Unlawful Deductions and Unlawful Retention of Gratuities Claims**.....................7

**III.**    **Facts Pertaining to Plaintiffs' Claims That Rick's Cabaret International, Inc. and RCI Entertainment (New York) Are Liable in This Action.**...................9

**ARGUMENT**.........................................................................................................10

**I.**    **NEW YORK'S MINIMUM WAGE LAWS REQUIRE EMPLOYEES TO BE PAID WAGES BY THEIR EMPLOYER.**......................................................10

**II.**    **APPLICABLE LEGAL STANDARD FOR CLASS CERTIFICATION**...........11

**III.**    **THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A).**.................................................................................................................11

    **A.**    **The Proposed Class is Sufficiently Numerous** ............................................11

    **B.**    **Questions of Law and Fact Are Common to the Class** ...............................11

        1.    Plaintiffs' Misclassification Claims Present Questions Common to the Class. ......................................................................................12

        2.    Plaintiffs' Minimum Wage Claims Present Questions Common to the Class. ......................................................................................14

        3.    Plaintiffs' Unlawful Kick-Back Claims Present Legal Questions Common to the Class. ................................................................15

            a.    House Fee Payments Present Common Questions.................15

            b.    Mandatory Payments to Other Individuals Present Common Questions. ..............................................................16

4.       Plaintiffs' Unlawful Retention of Gratuities Claims Present Common Legal Questions..................................................16

5.       Plaintiffs' Unlawful Deductions Claims Present Common Legal Questions..............................................................16

6.       Plaintiffs' Claims Against Defendants Rick's Cabaret International, Inc. and RCI Entertainment (New York) Present Legal Questions Common to the Class. .............................................18

C.       **Plaintiffs' Claims Are Typical of the Class Claims**....................................19

D.       **Named Plaintiffs and Class Counsel Will Adequately Represent the Class.**........................................................................19

IV.  **The Proposed Class Satisfies the Requirements of Rule 23(b)(3)** .............................20

A. **Common Issues Predominate** ..............................................................20

1.       The Question of the Propriety of Defendants' Classification Predominates Over All Other Issues. ...............................20

2.       Individual Issues as to Damages Do Not Predominate......................21

B. **Class Treatment Is Superior to Other Alternatives.** .........................................23

**CONCLUSION** ........................................................................................25

## TABLE OF AUTHORITIES

**CASES**

**Supreme Court**

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997)…......................................................20

**Federal Court**

3004 Albany Crescent Tenants' Ass'n v. City of New York,
No. 95 Civ. 10662 BSJ, 1999 WL 1067891 (S.D.N.Y. Nov. 24, 1999)…................................6

Alba v. Papa John's USA, Inc.,
No. CV 05-74887, 2007 WL 953849 (C.D. Cal. Feb. 7, 2007)…...........................................21

Ansoumana v. Gristedes Operating Corp.,
201 F.R.D. 81 (S.D.N.Y. 2001)…...... ...............................................................................12, 21

Bolanos v. Norwegian Cruise Lines Ltd.
 212 F.R.D. 144 (S.D.N.Y. 2002)…... ...................................................................................22

Bynog v. Cipriani Group, Inc.,
802 N.E.2d 1090 (N.Y. 2003)……... ....................................................................................12

Chan v. Sung Yue Tung Corp.,
No. 03 Civ. 6048 (GEL) 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)…................................10

Chun-Hoon v. McKee Foods Corp.,
No. C-05-620 VRW, 2006 WL 3093764 (N.D. Cal. Oct. 31, 2006)…...................................21

Consol. Rail Corp. v. Town of Hyde Park,
47 F.3d 47 (2d Cir. 1995)…... ...........................................................................................11

Delgado v. Ortho-McNeil, Inc.,
No. 07-263, 2007 WL 2877238 (C.D. Cal. Aug. 7, 2007)…... ...........................................13

Denney v. Deutsche Bank AG,
 443 F.3d 253 (2d Cir. 2006)…... .......................................................................................19

Dura-Bilt Corp. v. Chase Manhattan Corp.,
89 F.R.D. 87 (S.D.N.Y. 1981)…… .....................................................................................22

Dziennik v. Sealift, Inc.,
05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)…… .......................................19

Green v. Wolf Corp.,
406 F.2d 291 (2d Cir. 1968)…… .......................................................................................24

Harrell v. Diamond A Entm't, Inc.,
992 F. Supp. 1343 (M.D. Fla. 1997)……….....................................................................10

Harris v. Messerli & Kramer, P.A.,
No. 06-CV-4961 (PJS/JJG), 2008 WL 508923 (D. Minn. Jan. 2, 2008)…...........................5

Houston v. URS Corp.,
591 F. Supp. 2d 827 (E.D. Va. 2008)…… ......................................................................13

Iglesias-Mendoza v. La Belle Farm, Inc.,
239 F.R.D. 363 (S.D.N.Y. 2007)…… ....................................................................12, 21

Imbeault v. Rick's Cabaret Int'l, et al.,
No. 08-CV-5458 (S.D.N.Y.) (filed June 6, 2008)…… ...........................................3

In re AM Int'l, Inc. Securities Litigation,
108 F.R.D. 190 (S.D.N.Y. 1985)…… ...........................................................................21

In re Buspirone Patent Litigation,
210 F.R.D. 43 (S.D.N.Y. 2002)…… ....................................................................11, 22

In re Initial Pub. Offering Sec. Litig.,
471 F.3d 24 (2d Cir. 2006)…… .................................................................................11

In re Visa Check/MasterMoney Antitrust Litig.,
280 F.3d 124 (2d Cir. 2001)…… ......................................................11, 20, 22, 24

Jirak v. Abbott Labs., Inc.,
566 F. Supp. 2d 845 (N.D. Ill. 2008)…….....................................................................14

Kamean v. Local 363, Int'l Bhd. of Teamsters,
109 F.R.D. 391 (S.D.N.Y. 1986)…… ..........................................................................12

Krzesniak v. Cendant Corp.,
No. C 05-05156, 2007 WL 1795703 (N.D. Cal. June 20, 2007)…….........................................21

Lewis v. Nat'l Fin. Sys., Inc.,
No. 06-1308, 2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007)…. ...............................................6

Marisol A. v. Guiliani,
126 F.3d 372 (2d Cir. 1997)….. ......................................................................12, 19

Martens v. Smith Barney Inc.,
181 F.R.D. 243 (S.D.N.Y. 1998)…….....................................................................19

McBean v. City of New York,
228 F.R.D. 487 (S.D.N.Y. 2005) ...............................................................................24

Medicare Beneficiaries Defense Fund v. Empire Blue Cross Blue Shield,
938 F. Supp. 1131 (E.D.N.Y. 1996) ........................................................................5

Meyer v. Macmillan Publishing Co.,
95 F.R.D. 411 (S.D.N.Y.1982)…....................................................................11

M.O.C.H.A. Society, Inc. v. City of Buffalo,
223 F.R.D. 103 (W.D.N.Y. 2004)…… ...............................................................6

Nerland v. Caribou Coffee Co., Inc.,
564 F. Supp. 2d 1010 (D. Minn. 2007)……...................................................14

Reed v. TJX Cos.,
2004 WL 2415055 (N.D. Ill. Oct. 27, 2004)…… ..............................................4

Reich v. ABC/York-Estes Corp.,
91 Civ. 6265(BM), 1997 WL 264379 (N.D. Ill. May 12, 1997)…… ...................15

Reich v. Priba Corp.,
890 F. Supp. 586 (N.D. Tex. 1995)…. ..............................................................15

Reyes v. Carnival Corp.,
04-21861-CIV, 2005 WL 4891058 (S.D. Fla. May 25, 2005)…… ........................4

Rossini v. Ogilvy & Mather, Inc.,
798 F.2d 590 (2d Cir. 1986)…… .......................................................................20

Rutstein v. Avis Rent-A-Car Sys., Inc.,
211 F.3d 1228 (11th Cir. 2000)…… ..................................................................20

Samiento v. World Yacht Inc.,
10 N.Y.3d 70 (N.Y. 2008)…..............................................................................14, 16

Schaake v. Risk Mgmt. Alternatives, Inc.,
203 F.R.D. 108 (S.D.N.Y. 2001)…. ....................................................................5

Shelter Realty Corp. v. Allied Maintenance Corp.,
574 F.2d 656 (2d Cir.1978)…… .........................................................................11

Sirota v. Solitron Devices, Inc.,
673 F.2d 566 (2d Cir.1982)… ............................................................................11

Tierno v. Rite Aid Corp.,
No. C 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)….. .................21

Torres v. Gristede's Operating Corp.,
No. 04 Civ. 3316(PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)…… .......................24

Toure v. Cent. Parking Sys.,
05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)…….............................................19

Trief v. Dun & Bradstreet Corp.,
144 F.R.D. 193 (S.D.N.Y. 1992)…................................................................................. 11-12

Wang v. Chinese Daily News, Inc.,
231 F.R.D. 602 (C.D. Cal. 2005)……..............................................................................12

Weiss v. Regal Collections,
385 F.3d 337 (3d Cir. 2004)…...................................................................................5

White v. OSI Collection Servs., Inc.,
No. 01-CV-1343(ARR), 2001 WL 1590518 (E.D.N.Y. Nov. 5, 2001)…...........................  4-5

Yu G. Ke v. Saigon Grill, Inc.,
595 F. Supp. 2d 240 (S.D.N.Y. 2008)…..  ..............................................................16

Zheng v. Liberty Apparel Co., Inc.,
355 F.3d 61 (2d Cir. 2003)…...................................................................................14

Zhong v. August August Corp.,
498 F. Supp. 2d 625 (S.D.N.Y. 2007)……  ...........................................................14

**State Court**

E. Coast Indus., Inc. v. Becconsall,
301 N.Y.S.2d 778 (N.Y. Dist. Ct. 1969)…… .........................................................13

Krebs v. Canyon Club, Inc.,
No. 10431/08, 2009 WL 440903 (N.Y. Sup. Ct. Jan. 2, 2009)…… .................................14, 16

Sweeney v. City of New York,
782 N.Y.S.2d 537 (N.Y. Sup. 2004)…...................................................................18

**REGULATIONS**

N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5…..  ............................................... 17

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.9…..  .............................................22

**RULES**

Fed. R. Civ. P. 68…......................................................................................... 2-5

Fed. R. Civ. P. 23...........................................................................................passim

**STATUTES**

Fair Labor Standards Act.................................................................................................passim

New York Labor Law 198-b……..............................................................................................15, 16

New York Labor Law 196……..........................................................................................................16

New York Labor Law 652(1)…… ...................................................................................................22

## <u>INTRODUCTION</u>

This is exactly the sort of case for which the Rule 23 class action device was created.  Since opening their New York strip club in late 2005[1], Defendants in this case have uniformly and unlawfully classified all entertainers working at the New York club as independent contractors, when in reality, these entertainers—Plaintiffs and all members of the proposed Rule 23 Class—are employees.  Defendants' blanket classification of all entertainers as independent contractors gives rise to numerous questions of law and fact common to the proposed Class.

First and foremost among these common questions is the question of the classification itself. Whether Defendants properly classified their entertainers as independent contracts is the central issue in this case, dominating all others and applying equally to the literally thousands of putative class members.  Under New York law, it is Defendants' degree of control over these entertainers that is the critical inquiry in determining employee status.  As detailed below, Defendants controlled almost all aspects of entertainers' work at their New York club, from how entertainers dressed to how they interacted with customers to how they danced on stage.  The existence of these facts and the question of whether such control makes Defendants' classification illegal apply to every single member of the propose Rule 23 class, exemplifying that these questions are ideal for class-wide adjudication.

Similarly well-suited to class-wide adjudication are Plaintiffs' other claims, all of which stem from their classification as independent contractors.  Relying on this classification, Defendants failed to pay any entertainer any wages whatsoever.  Rather, the entertainers' sole source of income from their work at Defendants' club is money they receive directly from customers—money not included as income to Defendants in Defendants' accounting records, and money which Plaintiffs contend is not rightly counted as "wages" under New York law. Therein lies another overarching question that must be decided with respect to every single entertainer: whether and to what extent Defendants may

---

[1] According to Defendants' website, the club opened for business on September 21, 2005. (Ex. 1.) A true and correct copy of all exhibits, deposition transcripts, and unpublished cases cited herein are attached to the Affidavit of E. Michelle Drake ("Drake Aff.") submitted in connection with this Memorandum.

claim that money entertainers receive from Defendants' customers satisfies Defendants' obligation to pay their employees the minimum wage under New York Labor Law.

Defendants also charged all entertainers a "house fee" in order to work; required the entertainers to use the money they receive from customers to pay other individuals who work at Defendants' behest, including disc jockeys, hair and makeup artists, and club management; and imposed fines and fees on entertainers for violating the rules and for missing scheduled shifts.[2] (Sistrunk Dep. at 204-205.)  Each of these types of payments are payments which employers may not require of *bona fide* employees.  Accordingly, questions as to the nature and illegality of these payments exist on a class-wide basis.

For these reasons, detailed and in addition to those below, Plaintiffs now move for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, of a class consisting of "all persons who have worked at the Rick's Cabaret located in the state of New York as 'entertainers' at any time six years prior to the filing of this Complaint to the entry of judgment in the case." The determinations that need to be made in this case, most importantly the central determination of whether Defendants appropriately classified entertainers as independent contractors, are perfectly suited for class certification and group-wide resolution.  Accordingly, Plaintiffs' Motion should be granted.

## PROCEDURAL CONTEXT

### A. Procedural History.

The history of this case and its predecessor reveal that Defendants are striving to escape the prospect of class certification by sidestepping their discovery obligations and relying on the offer of judgment mechanism under Fed. R. Civ. P. 68 to buy off the class representatives.  Though the

---

[2] Defendants kept meticulous electronic records of all of these fines and fees that were paid to the club, as well as the reasons such fines and fees were imposed. (Id., Ex. 2.)

instant case was filed on March 27, 2009[3] (Dkt. 1), the true procedural history began well before that date.  On June 6, 2008, Nicole Imbeault, represented by Plaintiffs' Counsel in the instant case, filed a complaint against Defendants Rick's Cabaret International Inc. and RCI Entertainment (New York) Inc.  Imbeault v. Rick's Cabaret Int'l, et al., No. 08-CV-5458 (S.D.N.Y.) (filed June 6, 2008). Shortly thereafter, Imbeault filed an amended complaint, adding Peregrine Enterprises, Inc. as a defendant. Imbeault Am. Compl., No. 08-CV-5458, Dkt. 5.  Imbeault's case, brought in this District as both a collective action under the FLSA and a class action under Fed. R. Civ. P. 23, against the same entities who are Defendants in the instant case, alleged violations of the FLSA and New York Labor Law identical to those at issue here.[4]  Id.

The Imbeault case was rife with discovery disputes, the primary conflict being the scope of discovery.  Despite the case being pled as both an FLSA collective and a Rule 23 class action, Defendants refused to comply with Imbeault's requests seeking discovery on a nationwide and statewide basis. (Ex. 3.)  After conducting a hearing on the issue, Judge Lynch ordered Defendants to produce a list of class members.  However, just ten days before the list was to be produced, Defendants made Imbeault an offer of judgment pursuant to Fed. R. Civ. P. 68.  (Ex. 4.)  Ms. Imbeault accepted the offer and did not seek to continue on as a class representative, thereby ending the litigation. (Ex. 5); Imbeault, No. 08-CV-5458, Dkt. 19.

On June 5, 2009, Defendants made an Offer of Judgment to Plaintiff Hart, who was the only Plaintiff at that point in the case.  (Ex. B, Defs.' Mem. to Dismiss at 4, Dkt. 49.)  Plaintiffs allowed this offer to lapse and promptly moved for conditional certification.[5]  (Dkt. 15.)  On July 9, 2009, Magistrate Judge Katz , over objection from Defendants, ruled that Plaintiffs are entitled to pre-

---

[3] Plaintiffs have since filed a Second Amended Complaint which affirmatively states that they are not seeking liquidated damages under New York Labor Law.  The Second Amended Complaint has not yet been assigned a Docket number.

[4] Ms. Imbeault's case also contained an additional claim, failure to reimburse for uniform expenses, not present in the instant case.  (Imbeault Am. Compl, No. 08-CV-5458, Dkt. 5.)

[5] As explained in Plaintiffs' Response to Defendants' Motion to Dismiss, Defendants' offer of judgment was insufficient to cover Plaintiff Hart's claims and attorneys' fees. (Pls.' Resp. to Defs.' Mot. to Dismiss at 20-22, Dkt. 50.)

certification discovery necessary to the issues of class and nationwide collective certification.  (Defs.' Obj., Ex. A at 22:19-25, 32:22-25, 33:1-12, Dkt. 37.)  *Inter* alia, Magistrate Judge Katz further ruled that Plaintiffs are entitled to witness discovery of the names and contact information of members of the entire Nationwide Collective.  (Defs.' Obj., Ex. A at 32:10-12, Dkt. 37.)[6]  Defendants objected to Magistrate Judge Katz's ruling in July and those objections are still pending.  (Dkt. 37.)[7]

Defendants subsequently moved to dismiss Plaintiff Hart's Claims as "moot" based on the allegation that the June offer was in excess of the amount Hart could individually hope to recover in this action.  (Defs.' Mem. to Dismiss, Dkt. 49.)  On November 23, 2009, Defendants made an offer of judgment to Plaintiff Furedi, the second remaining Plaintiff in this action. (Ex. 7.)

**B.  Plaintiffs Rule 23 Claims Are Not Moot.**

Courts disfavor attempts to moot claims in the FLSA context.[8]  Similarly, courts recognize even more strongly that Rule 68 offers do not moot claims or end litigation where a motion for Rule 23 class certification is pending or reasonably forthcoming.  When made in the context of Rule 23 cases, such offers serve no purpose other than to instigate a "race to the courthouse", where defendants rush to make Rule 68 offers and plaintiffs rush to move for class certification.  See White

---

[6] Despite their efforts to prevent Plaintiffs from learning the identities of putative class members, Defendants have liberally used their access to current entertainers, gathering identical affidavits from 71 of these individuals in an attempt to defeat Plaintiffs' Motion for Conditional Certification.  (Defs.' Resp. to Pls.' Mot. for Conditional Certification at Ex. B1-B4, Dkt. 29.)  Notably, Defendants did not disclose these affidavits under the initial disclosures required by Fed. R. Civ. Proc. 26 and, despite the affidavits being directly responsive to Plaintiffs' document requests, Defendants responded that they had no responsive documents and have failed to supplement their responses by identifying the affiants in question.  (See Ex. 6 at Interrog. No. 11 and Doc. Req. No. 62.) No doubt Defendants will use their unfettered and unilateral access to these witnesses in opposing the instant Motion as well.

[7] The Court has not yet ruled on any of the motions pending before it, nor has a hearing been scheduled.  The Court previously set these motions down for a hearing on September 21, 2009.  However, the scheduled hearing was cancelled by Order of the Court without explanation.  Plaintiffs have subsequently requested that a hearing be scheduled; however, no hearing date has been set.  The Court's busy docket has doubtless worked to Defendants' advantage, allowing them to further delay Plaintiffs' ability to move for class certification by filing Objections to Magistrate Katz's order which are relevant to same.

[8] See Reyes v. Carnival Corp., 04-21861-CIV, 2005 WL 4891058, at *3 (S.D. Fla. May 25, 2005)(court stated "the . . . strategy of providing an offer of judgment to the initial plaintiff in a FLSA collective action in order to bar the case from proceeding as to all similarly situated plaintiffs violates the very policies behind the [collective action mechanism of the] FLSA"); Reed v. TJX Cos., 2004 WL 2415055, at *3 (N.D. Ill. Oct. 27, 2004)(court refused to moot FLSA action after a Rule 68 offer was made because it would "allow defendants to bar the courtroom door").

v. OSI Collection Servs., Inc., No. 01-CV-1343(ARR), 2001 WL 1590518, at *2-6 (E.D.N.Y. Nov. 5, 2001) (acknowledging a "race to the courthouse," denying defendant's motion to dismiss, and permitting plaintiff to bring motion for class certification at a later date); Schaake v. Risk Mgmt. Alternatives, Inc., 203 F.R.D. 108, 112 (S.D.N.Y. 2001) (recognizing "race to pay off named plaintiffs" and stating, "[w]ith the class certification motion merely awaiting the relevant discovery-—and related scheduling Orders—the Defendant's Offer of Judgment for the individual Plaintiff does not moot this matter, and the Defendant's motion to dismiss for mootness must be denied."); see also Harris v. Messerli & Kramer, P.A., No. 06-CV-4961 (PJS/JJG), 2008 WL 508923, at *4 (D. Minn. Jan. 2, 2008) ("The Court also notes that making the mootness question turn on whether the Rule 68 offer is made before or after the putative class representative moves to certify the class is a terrible idea as a policy matter. It would create a 'race' between the parties, with the named plaintiff rushing to file a class-certification motion before the defendant makes a Rule 68 offer, and the defendant rushing to make a Rule 68 offer before the named plaintiff moves to certify the class.").  Moreover, even if Defendants make an offer sufficient to satisfy the Named Plaintiffs' individual requests for damages and such offer is accepted, the Named Plaintiffs can and should be allowed to proceed as class representatives on behalf of the FLSA Collective and the Rule 23 Class.[9]

In spite of Defendants' efforts to avoid class-wide discovery, and with the assistance of an Order from Judge Katz requiring 30(b)(6) depositions to proceed (Dkt. 60), Plaintiffs were able to depose Defendants' corporate representatives on October 7 and October 29, 2009.  (See generally Langan Dep.; Sistrunk Dep.)  Those depositions demonstrated the wisdom of class certification in this matter and have enabled Plaintiffs to bring the instant Motion for Class Certification.

---

[9] See, e.g., Medicare Beneficiaries Defense Fund v. Empire Blue Cross Blue Shield, 938 F. Supp. 1131, 1143 (E.D.N.Y. 1996); Schaake v. Risk Mgmt. Alternatives, Inc., 203 F.R.D. 108, 110 (S.D.N.Y. 2001) ("[t]he Second Circuit has held that the rights of the absent class may not be abridged by a mandatory Rule 68 offer to an erstwhile class representative, even in an action in which class certification has been denied.")(citations omitted); Weiss v. Regal Collections, 385 F.3d 337, 348 (3d Cir. 2004) ("[a]bsent undue delay in filing a motion for class certification, therefore, where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the compliant, the appropriate course is to relate the certification motion back to the filing of the class complaint.").

Admittedly, Plaintiffs bring this Motion earlier than is typical in Rule 23 class actions and much earlier than Magistrate Katz's deadline for filing this Motion.  However, Plaintiffs believe their timing to be necessary—not only because the deposition testimony easily demonstrates that this is case is well-suited for class certification, but also because Defendants have engaged in a pattern of behavior that warrants Plaintiffs' swift action to guard against the unjust result Defendants seek: barring the rights of the current and potential Plaintiffs in this case to proceed as a class.[10]

## STATEMENT OF FACTS

**I.      Facts Pertaining to Plaintiffs' Independent Contractor Misclassification Claims.**

In support of Plaintiffs' pending motion for conditional certification of the New York portion of the FLSA Collective, Plaintiffs have previously provided the Court with a general description of Defendants' business model.  (Dkt. 16.) In order to avoid unnecessary factual repetition, that pleading and its associated exhibits are incorporated by reference here.  (Id.)  Additional facts which have been established during subsequent depositions or which are uniquely relevant to Plaintiffs' Rule 23 motion are set forth below.

Since September 21, 2005 Defendants have operated an adult entertainment club called Rick's Cabaret at 50 West 33rd Street in New York City ("Rick's New York").  (Exs. 8 and 9.)  The women who work as entertainers at Rick's New York have, at all times, been classified by Defendants as independent contractors.  (Langan Dep. at 20; Sistrunk Dep. at 58, 76).

---

[10] Given the unique procedural posture of this case, and the fact that the Court has yet to schedule a hearing on Defendant's Motion to Dismiss, Defendant's Objection to Magistrate Katz's Order, and Plaintiffs' Motion for Conditional Certification, Plaintiffs respectfully request that if the Court intends to deny the instant motion, the Court do so without prejudice and allow Plaintiffs an opportunity to conduct further discovery on a class-wide basis. See, e.g., 3004 Albany Crescent Tenants' Ass'n v. City of New York, No. 95 Civ. 10662 BSJ, 1999 WL 1067891, at * 5 (S.D.N.Y. Nov. 24, 1999) (denying motion for Rule 23 class certification without prejudice, ordering discovery to continue, and granting plaintiffs leave to file a new motion for class certification); M.O.C.H.A. Society, Inc. v. City of Buffalo, 223 F.R.D. 103, 109 (W.D.N.Y. 2004) ("[P]laintiffs' motion for certification of the class is denied, without prejudice to renew at an appropriate time at or near the close of discovery."); Lewis v. Nat'l Fin. Sys., Inc., No. 06-1308, 2007 WL 2455130, at * 8 (E.D.N.Y. Aug. 23, 2007) (denying motion for Rule 23 certification without prejudice and noting authority to revisit class certification ruling).

Entertainers who work for Defendants are subject to a variety of rules and regulations that govern the manner in which they work for Defendants.  These rules and regulations have, at all times, been in writing and posted in Defendants' club.  (Sistrunk Dep. at 35-52; Exs. 10, 11, 12, 13 and 14.)  While minor changes to the rules and regulations have been made during the class period, the essential elements of these rules have remained the same throughout the class period. (Id.[11]) For example, at all times, entertainers have been required to (1) work a minimum of three days per week (id.); (2) dance on stage for a two-song set when it is their turn according to the stage rotation schedule established by the disc jockey (id. at 168-70.); (3) disrobe on a scheduled set by the club (id. at 23-24); (4) appear on stage when called to do so or pay a fine (id. at 176); and (5) charge customers the management-set uniform price of $20 for "private dances"[12] (id. at 167-168).  The numerous other guidelines that have been enforced during the class period are attached as Exhibit 15. Additionally, all entertainers were hired by Defendants' management staff—the hiring process and criteria remaining the same throughout the class period—and all entertainers could be terminated at any time by Defendants' management staff. (Id. at 25, 179-80.)

## II.     Facts Pertaining to Plaintiffs' Minimum Wage, Unlawful Kickbacks, Unlawful Deductions and Unlawful Retention of Gratuities Claims.

At all times since Defendants' New York club opened in 2005, all of Defendants' entertainers have been required to pay a nightly shift fee[13] and a promotion fee in order to work at

---

[11] Upon Defendants' New York location opening in 2005, the guidelines were sent to Defendants' New York location from Defendants' Houston club.  (Sistrunk Dep. at 51-52.)  All subsequent guidelines used at Defendants' New York location were mere revisions to the Houston guidelines.  (See id. at 42-57.)  Notably, all of these revisions were minimal and did not modify the substantive framework under which entertainers were required to work. (See Sistrunk Dep. At Ex. Nos. 7-9, 12-13.) That is to say, all entertainers working at Defendants' New York location during the applicable statutory period were subject to the same rules of conduct with respect to how they performed their jobs.

[12] "Personal dances" "lap dances" and "private dances" are interchangeable terms which all refer to the same thing, namely an entertainer performing a dance for a specific customer at the location where the customer is seated. (Sistrunk Dep. at 167.)

[13] Defendants' shift fee schedule operates such that the later an entertainer arrives for work, the more she has to pay. Throughout the class period, entertainers arriving after 10 o'clock PM have been required to pay $100 in order to work.  Fees for entertainers arriving earlier in the evening have changed on two occasions during the class period, on one occasion increasing across the board by ten dollars and on another occasion adding an earlier time-slot with a

the club.  These amounts are recorded as income to Defendants and are tracked in Defendants' point of sale and accounting system, Clubtrax.  (Sistrunk Dep. at 131, 138-139.)  In addition to these payments, entertainers are also required to make several other payments which are not recorded as payments to the club in Clubtrax.  Specifically, each night, each entertainer is required to pay $20 per night to the disc jockey, whom Defendants also classify as an "independent contractor."  (Id. at 115, 125-131; Exs. 10, 11, 12, 13 and 14.)  Each night each entertainer is required to pay $20 to club management which is recorded as a "tip out" to management staff and is supposed to be reported as "tip income" by Defendants' managers.  (Id.)  Each night each entertainer is also required to pay $20 per night to the "house mom," who is treated as an hourly employee by Defendants.  (Id.) Entertainers are also required to pay $5 per night to the club's hair and makeup artists.  (Id.) Entertainers who fail to comply with Defendants' guidelines or who fail to pay these fees are subject to termination. (Exs. 10, 11, 12, 13 and 14.)

Entertainers ultimately receive all their income in cash.  Entertainers can either receive cash directly from customers, or they can receive it from Defendants in exchange for "Dance Dollars."[14] Entertainers receive cash from customers in three ways 1) in the form of a tip given to an entertainer while she is dancing on stage; 2) in exchange for an entertainer performing a private dance for a customer for $20; or 3) in exchange for an entertainer spending time with a customer in one of Rick's "private rooms."  None of these cash payments are tracked by Defendants.  (Id. at 133, 139.)  They are not included in Defendants' gross receipts nor are they recorded on Defendants' books.  (Id.)

Entertainers receive cash from Defendant in exchange for "Dance Dollars."  Each Dance Dollar is a coupon which approximates the shape and size of a U.S. $20 bill.  Customers who wish to use their credit card in the club environment may purchase "Dance Dollars" using a credit card.

---

reduced fee.  At any given time, the shift fee schedule has been the same for all entertainers.  (Sistrunk Dep. at 33.) Defendants maintain a record of fees paid by each entertainer which can be retrieved from Defendants' electronic records by "pushing a few buttons" (Sistrunk Dep. at 118-19); however, to date, Defendants have refused to produce those records, an issue which is pending before Magistrate Judge Katz.  (Drake Aff. ¶ 4.)

[14] Dance Dollars are a *faux* currency that is sold and used in Defendants' club.

(Id. at 121.)  At the time of purchase, customers are told that they will pay a 20% surcharge for each Dance Dollar they purchase.  (Id. at 163.)  Accordingly, one Dance Dollar costs a customer $24. (Id.; Ex. 16.)

For purposes of its use within the club, each Dance Dollar has a value of $20.  Lap dances, therefore, cost either $20 or one Dance Dollar.  (Sistrunk Dep. at 31, 122.)  Time in private suites, which costs $200 per half hour, can be paid for with either $200 or ten Dance Dollars.  (Id. at 121-122.)

At the end of their shift, entertainers can go to the "cage" and exchange Dance Dollars in their possession for cash.  However, at all times entertainers have only received $18 for each Dance Dollar they exchange for cash.  (Id. at 162.)  Customers are not informed that entertainers do not receive the full value of Dance Dollars that customers give to them.  (Id. at 122-123.)  Each time a dance dollar is sold, Defendants record the portion of the sale price which they retain as a profit as part of their gross receipts.[15]  The other portion ($18) is recorded as an outstanding liability.  (Langan Dep. at 141-142.)  Cash paid to any individual entertainer in exchange for Dance Dollars is reported as 1099 income to her by Defendants.  (Exs. 17 and 18; Langan Dep. at 118-128.)

## III.    Facts Pertaining to Plaintiffs' Claims That Rick's Cabaret International, Inc. and RCI Entertainment (New York) Are Liable in This Action.

At all times relevant to the instant action, Rick's Cabaret International, Inc. has owned 100% of the stock of RCI Entertainment (New York), which has in turn owned 100% of the stock of Peregrine Enterprises.  (Langan Dep. at 10.)  Eric Langan has always been the CEO of Rick's Cabaret International, Inc. and the President and sole officer of Defendants RCI Entertainment (New York) and Peregrine Enterprises.  (Id. at 9, 15.)  The general manager of Rick's New York reports to Mr. Langan.  (Id. at 17; Sistrunk Dep. at 79.)  Mr. Langan is responsible for a variety of decisions regarding entertainer compensation at Rick's New York, including the decision to characterize

---

[15] The amount ultimately retained by Defendants is $6 which is the 20% ($4) "service fee" plus the $2 retained from the entertainer in the "back of the house" transaction.

entertainers as independent contractors, the decision to pay them $18 per dance dollar and the decision to require them to dance to two songs per dance set on the stage. (Langan Dep. at 49-50; Sistrunk Dep. at 175, 208-09.) Langan was solely responsible for ensuring Defendants' compliance with labor laws. (Sistrunk Dep. at 61.) Langan sets the pay of the managers at Rick's New York. (Id. at 86.) The relationship among the three corporate defendants has remained constant over time. (See generally Langan Dep.; Sistrunk Dep.)

## ARGUMENT

### I.   NEW YORK'S MINIMUM WAGE LAWS REQUIRE EMPLOYEES TO BE PAID WAGES BY THEIR EMPLOYER.

"Federal and state law requires employers to pay employees a legally-prescribed minimum hourly wage." Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL) 2007 WL 313483, at *17 (S.D.N.Y. Feb. 1, 2007.) The question of whether the employer has met this obligation is one which must be answered independent of inquiries into whether the total amount the employee received from all sources, including customers, ultimately exceeded the minimum wage. As Judge Lynch wrote:

> It is undisputed that plaintiffs in fact were paid total compensation in excess of the minimum wage. While their pay may be modest, they are not exploited in the sense of receiving less that the minimal subsistence pay required by law. It may seem peculiar then, to hold that such employees are entitled to additional compensation calculated with reference to a minimum pay scale that their total actual income exceeded. Tipping, however, is a somewhat anomalous method of compensation that is strictly regulated by the FLSA. In form and to some degree in substance, tips are gifts from customers to wait staff, not compensation paid by the employer.

Id. at *19.

On this precise theory, numerous other strip clubs who have been found to have improperly classified adult entertainers as independent contractors and to have consequently violated federal and state minimum wage requirements by having arrangements similar to those at issue here. As one Florida court noted, "[w]ithout exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage." Harrell v. Diamond A Entm't, Inc., 992 F. Supp. 1343, 1347-48 (M.D. Fla. 1997).

II.     **APPLICABLE LEGAL STANDARD FOR CLASS CERTIFICATION.**

Before certifying a class, the "district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).   A court must conduct a "rigorous analysis" to determine that the Rule 23 requirements have been satisfied; however, a motion for class certification is not "an occasion for examination of the merits of the case."   In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 135 (2d Cir. 2001) (internal citation omitted). Instead, the elements of a plaintiff's claims are examined for the purpose of determining whether the claims can be adjudicated on a class-wide basis. In deciding this motion, the Court refrains from deciding any material factual disputes between the parties concerning the merits of the claims, In re Buspirone Patent Litigation, 210 F.R.D. 43, 56 (S.D.N.Y. 2002) (citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 570-72 (2d Cir.1982) and Meyer v. Macmillan Publishing Co., 95 F.R.D. 411, 414 (S.D.N.Y.1982).   For purposes of this Motion, the Court should also accept the underlying allegations from the Class Action Complaint as true. Id. (citing Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir.1978)).

III.    **THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A).**

A.     **The Proposed Class is Sufficiently Numerous.**

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members."  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  In the present dispute, the proposed class exceeds 4,000 individuals.  (Sistrunk Dep. at 91.)  Plaintiffs easily satisfy the numerosity requirement.

B.     **Questions of Law and Fact Are Common to the Class.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Courts should "liberally construe[] the commonality requirement."  Trief v. Dun &

Bradstreet Corp., 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (internal citations omitted).  Commonality is satisfied if Plaintiffs point to at least one common issue of law or fact.  Marisol A. v. Guiliani, 126 F.3d 372, 376 (2d Cir. 1997) ("*a common question* of law or of fact") (emphasis added); Ansoumana v. Gristedes Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001) ("[a] single common question may be sufficient to satisfy this rule"), *leave to appeal denied*, No. 01-8021 (2d Cir. Nov. 21, 2001). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members."  Trief, 144 F.R.D. at 198.  The proper question is whether there is a "unifying thread" among the claims to warrant class certification. Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

   1. <u>Plaintiffs' Misclassification Claims Present Questions Common to the Class.</u>

  Defendants' policy of not paying entertainers the minimum wage is based on Defendants' uniform classification of all entertainers as independent contractors.  This is the type of "unifying thread" that satisfies Rule 23(a)(2).  Id. at 394; see, e.g Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (finding that "legal questions concerning the applicability of the New York Labor Law and any exemptions" was a common question); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 612-613 (C.D. Cal. 2005) (finding commonality based on common question of law and fact of whether defendant violated the law by misclassifying employees as exempt).

  Examination of the factors relevant to the question of whether Defendants properly classified members of the putative class as independent contractors supports a finding of commonality.  Under New York's Labor Laws, the question of whether an individual is an employee or not is determined with reference to "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  Bynog v. Cipriani Group, Inc., 802 N.E.2d 1090, 1093 (N.Y. 2003).  Important considerations for evaluating control in the employment status inquiry include the employer's authority to decide the timing and selection of each job and the employer's

right to discharge or fire the employee.  E. Coast Indus., Inc. v. Becconsall, 301 N.Y.S.2d 778, 779-80 (N.Y. Dist. Ct. 1969).

The degree of control Defendants exercised over entertainers at Rick's New York did not vary from entertainer to entertainer.  All members of the putative class were subject to the same sets of entertainer guidelines.  (Sistrunk Dep. at 141.)  All members of the putative class were subject to Defendants' requirement that they perform during Defendants' business hours and that they work at least three previously scheduled shifts per week.  (See Facts supra at 8-10.)  All members of the putative class were subject to Defendants' rules and regulations about how, when and where they would perform their job duties, what prices they would charge for their services, and how they would conduct themselves at work.  (Id.)  No entertainers were on Defendants' payroll; they all received 1099 forms from Defendants at the end of the year.  (Id.)  Defendants' management staff hired all entertainers, and the hiring process and criteria remained the same throughout the class period.  (Id.)  All entertainers could be terminated by Defendants' management staff.  (Id.)  Simply put, the Court's determination of the propriety of Defendants' independent contractor misclassification will not vary from Plaintiff to Plaintiff or entertainer to entertainer.  Hence, Defendants' classification decision presents a common legal question which should be adjudicated on a class-wide basis.

Given that Defendants have consistently treated all entertainers in the same fashion for classification purposes, Defendants may not now argue that the issue of classification is not common to that group.  See Delgado v. Ortho-McNeil, Inc., No. 07-263, 2007 WL 2877238, at *2 (C.D. Cal. Aug. 7, 2007) (certifying a class "first and foremost" because of the blanket classification imposed by defendant); Houston v. URS Corp. 591 F. Supp. 2d 827, 832–33 (E.D. Va. 2008)  (certifying class of "independent contractors" and rejecting employer's effort to claim individual differences prevailed, stating "[t]he Court finds it disingenuous for [Defendant], on one hand to collectively and generally decide that all [employees] are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to

13

challenge the exemption."); <u>Nerland v. Caribou Coffee Co., Inc.</u>, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (certifying class and holding "defendant's contention that the claims in this case require individualized fact-intensive inquiries into each store manager's daily activities is wholly inconsistent with its own established internal policies and practices" of uniformly classifying such individuals as exempt); <u>Jirak v. Abbott Labs., Inc.</u>, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008) ("It is somewhat disingenuous" for defendants to argue that they can treat all employees as one group for purposes of classifying them as exempt, but that courts "can only determine the validity of that classification by looking to the specific job duties of each individual").

   2. <u>Plaintiffs' Minimum Wage Claims Present Questions Common to the Class.</u>

  In the event Plaintiffs and the putative class members are deemed employees and not independent contractors, they are entitled to be paid the minimum wage under New York law.  N.Y. Lab. Law. § 652(1); <u>Zheng v. Liberty Apparel Co., Inc.</u>, 355 F.3d 61, 65 (2d Cir. 2003); <u>Zhong v. August August Corp.</u>, 498 F. Supp. 2d 625, 631 (S.D.N.Y. 2007).  As is evident from the parties' briefs on Defendants' Motion to Dismiss, the central question on this claim will be whether, and if so to what extent, Defendants may claim that cash payments made in exchange for "Dance Dollars" can be claimed to have satisfied any minimum wage obligations for which Defendants are found to be liable.  This is an issue that is common to the class.

  Plaintiffs' position is that the Dance Dollars entertainers received from customers were "gratuities," and therefore Defendants may not claim that payments made in exchange for the Dance Dollars satisfy Defendant's minimum wage obligations.  (Sec. Am. Compl.)  Whether a given payment is a "gratuity" turns on the question of whether a reasonable patron would have understood such a payment as a gratuity paid by customers directly to the entertainers.  <u>Samiento v. World Yacht Inc.</u>, 10 N.Y.3d 70, 79 (N.Y. 2008).

  The determination of what a reasonable customer would believe a given amount to be is a classic example of a common legal question.  <u>See</u> <u>Krebs v. Canyon Club, Inc.</u>, No. 10431/08, 2009

WL 440903, at *6 (N.Y. Sup. Ct. Jan. 2, 2009) (recognizing "the basic, and common, questions are: whether [defendant] imposed charges that were, or were purported to be, gratuities, as understood by reasonable patrons").  In evaluating a similar question under federal law, many courts have also looked at the club's internal treatment of the money that allegedly satisfies its wage obligations.  For example, in Reich v. Priba Corp., 890 F. Supp. 586, 595 (N.D. Tex. 1995), the court rejected defendant's contention that it could claim to have paid amounts as "wages" which it never recorded on its books as income in the first place.  Specifically, the court stated:

> Entertainers keep 100% of all cash tips received without any accounting to Cabaret Royale. If a patron uses the voucher system to tip the entertainer, Cabaret Royale only credits 20% of the value of the voucher to gross receipts. **The fact that all of the table dance fees are not reported as gross receipts is fatal to Cabaret Royale's claim that the tips are more properly classified as wages.**

Id.; see also Reich v. ABC/York-Estes Corp., 91 Civ. 6265(BM), 1997 WL 264379, at *5-7 (N.D. Ill. May 12, 1997) (holding that payments for "table dances" at an exotic dance club were "tips" because the payments were made directly to dancers rather than the employer).  Defendants' internal accounting practices have varied neither over time nor with respect to entertainers. (See Facts supra at 10-12 (highlighting Defendants' failure to record cash payments to entertainers in Defendants' gross receipts.)

3.   Plaintiffs' Unlawful Kick-Back Claims Present Legal Questions Common to the Class.

a.   House Fee Payments Present Common Questions.

Plaintiffs were undisputedly required to pay a house fee in order to work each evening.  (Dkt. 8 at ¶¶ 27-28; Sistrunk Dep. at 31-34.)  These house fees have applied equally to all entertainers, although the amount of fees due has been changed on two occasions.  (Sistrunk Dep. at 31-34.)  Plaintiffs allege that this "pay to work" arrangement violates New York Labor Law ("NYLL") 198-b and the supporting regulations.  This question is capable of class-wide adjudication because Defendants' imposition of house fees was applied equally to all members of the class.

   b. Mandatory Payments to Other Individuals Present Common Questions.

  In addition to challenging Defendants' requirement that Plaintiffs pay house fees, Plaintiffs have also challenged Defendants' requirement that entertainers make payments to other individuals working at the club, including the disc jockey, house mom, and management. NYLL 198-b forbids an employer from demanding any "thing of value . . . upon the statement, representation or understanding that failure to comply with such a request will prevent such employee from procuring or retaining employment."  Courts have recognized that an employer's act of demanding that one employee remit moneys to another employee is the same thing as the employer taking the money for itself.  See Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008) (holding that delivery personnel who were required to make payments to kitchen staff were entitled to deduct those payments to kitchen staff from "wages paid" to them by directly their employer for purposes of determining whether employer met its obligation to pay minimum wage.)  The question of whether Defendants violated the law by requiring entertainers to pay these amounts to Defendants' managers, disc jockeys and house moms is one which can and should be resolved on a class-wide basis.

   4. Plaintiffs' Unlawful Retention of Gratuities Claims Present Common Legal Questions

  New York law forbids an employer from retaining a portion of its employees' gratuities. NYLL §196-d.  Plaintiffs have alleged that, by retaining $2 of the $20 value of the Dance Dollars entertainers received from guests, Defendants violated this provision.  This claim can be resolved on a class-wide basis because the determination turns on what a reasonable patron would have believed dance dollar payments to be, a question which is capable of class-wide adjudication. See Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79 (N.Y. 2008) (reasonable person standard).  See also Krebs v. Canyon Club, Inc., No. 10431/08, 2009 WL 440903, at *6 (N.Y. Sup. Ct. Jan. 2, 2009) (whether amounts are gratuities or not presents common legal question.)

   5. Plaintiffs' Unlawful Deductions Claims Present Common Legal Questions.

The New York Official Compilation of Codes, Rules & Regulations prohibits employers from subjecting employees to "fines or penalties for lateness, [or] misconduct."  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.5.  Defendants openly acknowledges that such fees and fines have been imposed on employees in at least two ways.  First, employees were routinely required to pay more in order to work, the later they arrived.  (Sistrunk Dep. at 30-36; Exs. 10, 11, 12, 13 and 14.)  Second, Defendants have imposed fines and fees on entertainers at various times in order to ensure compliance with Defendants' regulations, which govern the conduct of entertainers while at work. (Sistrunk Dep. at 204-205.)  Defendants maintain that the fines and fees which were imposed were merely illusory, and that all such fines and fees which were imposed "on the books" were in fact later waived by management.  (Id.)  According to Defendants, the point of these fines and fees was not to actually require entertainers to pay them, but instead to convince entertainers to comply with Defendants' policies by making entertainers *believe* such fines and fees would be imposed if they did not comply.[16]  The fact of the matter is that Defendants' records demonstrate that such fines and fees were not only imposed "on the books," they were also actually collected and were not, in fact, always waived.  (Compare Ex. 2 for Plaintiff Hart at pp. 2-3, showing two "no show" fees being waived as "wrong charge" with p. 4, showing "no show" fee being imposed on 1/24/2007 and *paid* by Hart on 1/28/2007.)  Because Defendants used a uniform accounting system which includes not only the amounts of fines imposed, but also the reasons therefore, the date of imposition, and the dates of payment, resolution of these claims can and should be accomplished on a class-wide basis.  Fees were imposed for reasons which are easily identifiable from Defendants' records, and the illegality of all such fees is clearly established by law.  The determination of the legality of a late fee, a fee for misconduct, fee for failing to show up at work, or of any other fee will not vary from entertainer to entertainer.

---

[16] Ironically, if this were true, it would be yet another example of a common policy applicable to each and every member of the proposed Rule 23 class.

6.       <u>Plaintiffs' Claims Against Defendants Rick's Cabaret International, Inc. and RCI Entertainment (New York) Present Legal Questions Common to the Class.</u>

Defendants have contested Plaintiffs' position that Defendants Rick's Cabaret International, Inc. and RCI Entertainment (New York) constitute employers under New York's labor laws.  (Dkt. 8.)  The question of whether a given entity constitutes an "employer" under New York law is answered by reference to the same factors given consideration under the independent contractor test discussed in Section III(B)(1) above and for that reason presents a common question of law.  There is no scenario in which the determination of whether Rick's Cabaret International Inc. and RCI Entertainment (New York) are employers must be made on an individual by individual basis.  Nor is there any scenario in which the finding differs from plaintiff to plaintiff.

In addition to claiming that Defendants Rick's Cabaret International and RCI Entertainment (New York) constitute the class's direct employers, Plaintiffs have also taken the position that these two Defendants and Defendant Peregrine Enterprises, Inc. operate as an integrated enterprise—another reason that Defendants Rick's Cabaret International and RCI Entertainment (New York) should be held liable as employers.  In determining whether separate companies operate as a single entity, courts consider, *inter alia*, whether there is common ownership, common management, interrelation of operations, and centralized control of labor relations.  Consideration is also given to whether the corporations share operational losses or profits or if they are financially insulated from one another.  <u>Sweeney v. City of New York</u>, 782 N.Y.S.2d 537, 544 (N.Y. Sup. 2004) (internal citations omitted).  The nature of Defendants' relationships with one another, and the degree of operational control Defendants have exercised over one another's affairs, have not varied from entertainer to entertainer, nor have they varied during the applicable class period.  (<u>See</u> Facts *supra* at 10.)  <u>See</u>  <u>also</u>  Defendants'  publicly  filed  Annual  Reports  available  at http://www.sec.gov/edgar.shtml))  Accordingly,  the  liability  of  Defendants  Rick's  Cabaret

International and RCI Entertainment (New York) as employers can be determined on a class-wide basis.

### C.    Plaintiffs' Claims Are Typical of the Class Claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Marisol A., 126 F.3d at 376 (citation omitted).  Here, Plaintiffs' claims arise from the same course of conduct as the claims of the class – Defendants' decision to classify all entertainers as exempt and their consequent failure to pay the entertainers minimum wage throughout the class period.  (See Facts supra at 6-10.)

### D.    Named Plaintiffs and Class Counsel Will Adequately Represent the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  Toure v. Cent. Parking Sys., 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  Dziennik v. Sealift, Inc., 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (citing Martens v. Smith Barney Inc., 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).  Here, Plaintiffs Hart and Furedi have demonstrated a commitment to the class by assisting with the preparation of the complaint, executing a declaration, answering interrogatories, and indicating their willingness to sit for a deposition.  (Drake Aff. ¶ 5.)

Plaintiffs' Counsel is well qualified to represent the proposed class in this matter.  Nichols Kaster, PLLP has been named as class or collective counsel in numerous class and collective actions around the country and has never been found to be inadequate class counsel.  (Smith Decl.)  Through

19

actively pursuing discovery into the class and collective allegations, as well as the filing of the instant motion, Nichols Kaster, PLLP have demonstrated the extent to which they have investigated the class members' claims and vigorously prosecuted them. Accordingly, the Court should appoint Nichols Kaster as class counsel pursuant to Fed. R. Civ. P. 23(g).

**IV.      The Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

> **A.      Common Issues Predominate.**

>> 1.      <u>The Question of the Propriety of Defendants' Classification Predominates Over All Other Issues.</u>

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that such questions "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).   This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997).  That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 598 (2d Cir. 1986).

To establish predominance, a plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 136 (2d Cir. 2001) (quoting <u>Rutstein v. Avis Rent-A-Car Sys., Inc.</u>, 211 F.3d 1228, 1233 (11th Cir. 2000)).  Where plaintiffs are "allegedly aggrieved by a single policy of the defendants" in a case with "strong commonality of the violation and the harm," this can be "precisely the type of situation for which the class action device is suited." <u>Id.</u> at 146.  Numerous courts have found that the question of whether employees have been properly classified predominates over other issues in cases such as this.  In <u>Ansoumana v. Gristedes Operating Corp.</u>, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) the court wrote:

> The central issue posed by the case is whether the Plaintiffs were employees or independent contractors, and the consequences of the resolution of that issue in relation to minimum wage, overtime, spread-of-hours, obligations of record maintenance, and like issues.  Common questions of law and fact predominate.  The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found.  "It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit." In re AM Int'l, Inc. Securities Litigation, 108 F.R.D. 190, 196 (S.D.N.Y. 1985).

See also Iglesias-Mendoza, 239 F.R.D. at 373 (finding that the issue of whether employees were supposed to receive wages was "about the most perfect question[] for class treatment"); Alba v. Papa John's USA, Inc., No. CV 05-74887, 2007 WL 953849, at *13 (C.D. Cal. Feb. 7, 2007) ("questions whether store managers are properly classified as 'exempt' and whether the standardized policies and practices throughout Defendants' stores prevent store managers from meeting the definition of 'exempt' are common questions that are more appropriately addressed on a class-wide basis"); Krzesniak v. Cendant Corp., No. C 05-05156, 2007 WL 1795703, at *14-15 (N.D. Cal. June 20, 2007) (finding predominance and finding it more efficient to "answer the question of whether Defendants' exemption of all [shift managers] is correct through a class action than through case-by-case adjudication."); Tierno v. Rite Aid Corp., No. C 05-02520, 2006 WL 2535056, at *9-10 (N.D. Cal. Aug. 31, 2006) (finding predominance based on employer's treatment of proposed class as "one homogenous group" and because "significant aspects" of the case could be resolved on a class-wide bases) (internal quotations omitted); Chun-Hoon v. McKee Foods Corp., No. C-05-620 VRW, 2006 WL 3093764, at *2 (N.D. Cal. Oct. 31, 2006) (finding that "the common questions concern whether defendant misclassified its distributors as independent contractors instead of employees, and these questions predominate over individual ones").

2.      Individual Issues as to Damages Do Not Predominate.

21

The legal determinations in this case will proceed in lexical fashion beginning with a determination of whether Defendants properly classified entertainers as independent contractors.[17]  If Plaintiffs prevail as to liability, determinations of hours worked and amounts owed to individual entertainers may be necessary.  However, such inquiries will only occur after numerous class-wide liability determinations have been made.  The necessity of performing individualized damage calculations after making class wide determinations as to liability does not defeat predominance.  Courts particularly "focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions."  Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 93 (S.D.N.Y. 1981).  "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  In re Visa, 280 F.3d at 139.  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  Id. at 139; accord Bolanos v. Norwegian Cruise Lines Ltd. 212 F.R.D. 144, 157 (S.D.N.Y. 2002).  Moreover, while there may be a need for individualized damage determinations in this matter, the methodology used for such determinations will not vary between class members.  Each class member's damages will be determined by reference to the formula set forth in Questions 11 and 12 of Exhibit 19.[18]  The "common damage methodology in this case, added to the other common questions of fact and law, demonstrates that common questions of law and fact predominate over any questions affecting only individual members of the class."  In re Buspirone Patent Litigation, 210 F.R.D. 43, 58 (S.D.N.Y. 2002.)

---

[17] Plaintiffs have submitted proposed questions to be answered during the course of litigation by the finder(s) of fact and law as Exhibit 19.
[18] Plaintiffs' damage formulas require the assessment of whether the minimum wage has been paid on a week to week basis. "The minimum and overtime wage provided by this Part shall be required for each week of work, regardless of the frequency of payment, whether the wage is on a commission, bonus, piece rate, or any other basis." 12 NYCRR 142-2.9.  See also  N.Y. Labor Law section 652(1)(2004) (requiring "every employer [to] pay each of its employees for each hour worked a wage not less than [the statutory wage].)"

Nor will the need for such determinations pose a management problem. Defendants maintained electronic records of the critical aspects of Plaintiffs' damage calculations, namely: hours worked by each entertainer (Ex. 20); shift fees paid by each entertainer (Ex. 2); fines and fees imposed on and paid by each entertainer (Ex. 2); and cash payments made to each entertainer in exchange for Dance Dollars (Ex. 18). Even the payments that entertainers were required to make, *i.e.* those made to the disc jockeys, management, house moms and hair and makeup staff, were standard per night that each entertainer worked and can be calculated based on the number of nights worked by each entertainer. Defendants have tacitly acknowledged the formulaic nature of damage calculations in this matter and the ease of calculating damages for any individual based on Defendants' own records by submitting their own damage calculations for Plaintiff Hart in support of their Motion to Dismiss. (Kimmel Decl. in Sup. of Defs.' Mot. to Dismiss, Dkt. 48.) Notably, Defendants filed their motion to dismiss without taking any testimony from Plaintiff Hart or anyone else in this matter.

In short, the independent contractor question alone establishes predominance, and the question of whether dance dollars exchanged for cash are gratuities or wages can easily be under the reasonable person standard and with reference to Defendants' uniform accounting practices. Thus, for liability purposes in this matter, no individual inquiries will be required.[19]

### B.     Class Treatment Is Superior to Other Alternatives.

The second part of the 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods *available* for a fair and efficient adjudication of the

---

[19] Plaintiffs do note the decision of a state trial court in Hennepin County, Minnesota to deny class certification based on a determination that individual issues predominate in a case brought by entertainers at Defendants' Minnesota club. (See Ex. 21.) The Minnesota case, however, is distinguishable from the instant case, the critical difference being that all entertainers at Defendants' Minnesota location are classified as employees and paid according to a purported "commission plan" which was the subject of the Minnesota case. Unlike this case, the Minnesota case neither involved antecedent independent contractor claims nor similar minimum wage or unlawful deduction claims. Further, the entertainer employees in Minnesota were indisputably paid some wages and plaintiffs in that case alleged that Defendants had commingled amounts represented as "wages" on their W-2 forms with amounts which were actually received as gratuities from customers. These facts are not present in the instant case. As such, the Minnesota case has no bearing on a predominance inquiry here.

controversy." Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968) (emphasis added). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3). Denying class certification on manageability grounds is "disfavored" by the courts and "should be the exception rather than the rule." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 140 (internal quotations omitted).

Plaintiffs are unaware of any individual who is interested in "controlling the prosecution . . . of separate actions" or of any other pending lawsuits brought against Defendants by putative class members. (Drake Aff. ¶ 6.) Moreover, the value of each individual claim in this lawsuit, while not insignificant, would quickly be swallowed up by the costs of litigation. See Torres v. Gristede's Operating Corp., No. 04 Civ. 3316(PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) ("[b]ecause litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually."). Considering that entertainers were deprived of minimum wage, it is also likely that most class members would not initiate lawsuits against Defendants. McBean v. City of New York, 228 F.R.D. 487, 503 (S.D.N.Y. 2005) ("the assumed socioeconomic status of the proposed class members . . . is likely to preclude a significant portion of the class from burdening the courts with individual claims, [and] argues in favor of class action treatment to protect the rights of class members unable to litigate their individual claims."). Further, members of the proposed class who are current employees are likely to refrain from filing individual claims due to fear of retaliation. Torres, 2006 WL 2819730, at *16 ("since some class members are still employees of Defendants', class members may fear reprisal and would not be inclined to pursue individual claims.").

24

## CONCLUSION

For the foregoing reasons, Plaintiffs have made the requisite showing that Defendants have a common, centrally managed, company-wide policy of misclassifying entertainers as independent contractors, failing to pay the minimum wage, and requiring Plaintiffs to pay unlawful fines and fees in order to work.  The issue of classification predominates over all others, and in so doing populates this case with questions of law and fact common to each of Defendants' thousands of entertainers. For these reasons, class-wide adjudication is both appropriate and necessary.  Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion under Federal Rule of Civil Procedure 23 for certification of the proposed class, designate the named Plaintiffs as Class Representatives, designate Plaintiffs' Counsel as Class Counsel and Order that the parties meet and confer to agree upon the form of notice to be sent to class members, such notice to simultaneously address both Plaintiffs' right to opt in to the FLSA portion of the case and to opt-out of the Rule 23 class.

Dated:  November 25, 2009        **NICHOLS KASTER, PLLP**

s/E. Michelle Drake
Donald H. Nichols, NY Bar No. 725840
Michele R. Fisher (MF 4600)
Steven Andrew Smith, MN Bar No. 260836
(*admitted pro hac vice*)
E. Michelle Drake, MN Bar No. 0387366
(*admitted pro hac vice*)
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200

ATTORNEYS FOR PLAINTIFFS