**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SABRINA HART and REKA FUREDI on behalf of themselves, all similarly situated, and the Proposed New York Rule 23 Class,<br><br>Plaintiff,<br><br>v.<br><br>RICK'S CABARET INTERNATIONAL INC., RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,<br><br>Defendants. | ) | Case No. 09-CV-3043 JGK/THK<br><br>**AFFIDAVIT OF ANNA P. PRAKASH** |

STATE OF MINNESOTA )
) ss
COUNTY OF HENNEPIN )

Anna P. Prakash, being duly sworn, states as follows:

1. I am one of the attorneys for the Plaintiffs in the above-entitled matter. I have personal knowledge of the facts set forth in this Affidavit and if called as a witness for this purpose, I could and would testify competently under oath to them.

2. I submit this Affidavit in support of Plaintiffs' Motion for Rule 23 Class Certification.

3. Plaintiffs have mailed notice for the FLSA claims in this case to 1,104 of Defendants' current and former entertainers.

4. Defendants and the Named Plaintiffs have been deposed and discovery disputes over issues related to certification have been resolved. Plaintiffs have reserved the right to depose Defendants on merits issues following a ruling on certification, as well as on issues to which Defendants' corporate designees could not provide answers.

5. Attached to this Affidavit as Exhibit 7 is a list of the disciplinary fines reflected in the entertainer charge reports produced as part of the representative data sample (see *infra* ¶ 6) in this case. More specifically, for each entertainer who is part of the representative sample, Defendants produced a charge summary, which lists the nature of each fine/fee charged to each entertainer and when the charge was imposed. Exhibit 7 pulls from all 101 summaries to show each stated reason for a fine/fee imposed on top of the requisite house fee for each entertainer. The data shows the following fines occurring in the representative data: chewing gum, clocking in late, not paying on time, not working a scheduled shift ("no show"), arriving late, arriving on stage late, missing the first song (presumably of a stage set), missing a stage set, missing a "feature" on purpose, moving a customer from his table to another location, missing a song (presumably during a stage set), not clocking out, not attending a meeting, and using a public restroom. Many of these rules and others have been enforced through the use of fines imposed by Defendants.

6. Pursuant to Magistrate Judge Katz's November 30, 2009 ruling, Defendants produced a representative sample of 101 entertainer records on December 21, 2009. These records were produced in paper format and included each of the 101 representative entertainer's log-in and log-out reports, charge summaries, and dance dollar reports. Defendants produced this data for each entertainer in the representative sample without providing Plaintiffs the names and addresses of the individual entertainers whose data it was. As such, Plaintiffs were unable to question these individuals as to their records.

7. Plaintiffs then had these paper records converted into a usable electronic format (i.e., entered into an Excel spreadsheet) by a third party vendor of data entry services. Plaintiffs

then analyzed the electronic data in-house. The analysis relevant to Plaintiffs' Memorandum of Law is explained herein.

8. Plaintiffs ran an analysis of the representative data to determine whether and which entertainers would still have minimum wage claim in the unlikely scenario where the Court finds that dance dollar payments count as wages. Plaintiffs' analysis examines payment of the minimum wage on a weekly basis.

9. In Plaintiffs' minimum wage analysis, calculation of the amount earned in each week starts with the dance dollar reports, as the reports show the exact time and date of each dance dollar exchange. Plaintiffs then subtracted from each entertainer's weekly dance dollar earnings "payments" made by entertainers that week as reflected in that entertainer's "charge summary." Finally, for each entertainer, Plaintiffs subtracted the $20 nightly payments to the DJ, House Mom, and management. The resultant number is the weekly amount earned for minimum wage calculations.

10. In Plaintiffs' minimum wage analysis, Plaintiffs have assumed and have no reason to doubt that each entertainer's start time is accurately captured by the log-in data. As to the log-out data, there are numerous log-out reports that show entertainers logging out at 7:05 am, which Defendants have represented is the default log-out time the system enters if an entertainer fails to log-out before leaving. Notably, the dance dollar reports show the exact time that an entertainer exchanges dance dollars during the night, which, based on information in the entertainer affidavits submitted by Defendants, may be, but is not always, around the time that entertainer ends work. Defendants, consistent with Plaintiffs' testimony, have also testified that entertainer typically leave the club shortly following its 4:00 am closing time. Based on all this, Plaintiffs have run their minimum wage calculations basing log-out times on the greater of a valid (non-

default) log-out time or the club's 4:00 am close time. In the situation where there is no valid log-out time, Plaintiffs' analysis adopts the 4:00 am close time as the time the entertainer ended work.

11. Based on the foregoing, Plaintiffs' analysis shows that 89.11% of the representative sample will have minimum wage claims if dance dollars are found to offset wages. Each of the individuals with claims under this analysis is clearly identifiable based on Defendants' records and simply divides total weekly dance dollar payments by hours worked that week.

12. Of those individuals who would not have minimum wage damages under these calculations should dance dollars be found to count as wages, the vast majority[1] worked less than one week for Defendants. Many others only worked a few shifts. Each of these individuals can be identified by running the formulaic calculations described above.

13. Regardless, Plaintiffs contend that no dance dollars should count as wages and, as such, damage calculations in this case will consist of simply of an analysis of hours worked multiplied by the minimum wage, plus a refund of all fees and fines paid and the portion of dance dollar payments determined to be a retention of gratuities. This is clearly calculable as demonstrated above. Further, should there be a need to count dance dollars as wages, this, too, is easily done, as the minimum wage calculations referenced above demonstrate.

14. Based on Defendants' charge summaries for the representative sample, Plaintiffs have also analyzed how many entertainers were charged a house fee without a later adjustment cancelling or waiving the fee. This number is 84.16%. Of the few individuals who do not fall into this category, all but one worked only one day for Defendants and, thus, were subject to

[1]Specifically, 10 of the 11 individuals who would not have claims worked less than one week.

Defendants' policy of letting entertainers/new hires work their first day without paying a house fee. In other words, 99% of individuals who worked for Defendants for more than a single shift were charged house fees and were not granted a later waiver of such fees. The remaining person worked only two shifts and is easily identifiable from Defendants' records.

15. In this case, Named Plaintiffs Hart and Furedi have demonstrated a commitment to the class by assisting with the preparation of the complaint, sitting for their depositions, answering discovery and executing a declaration. Plaintiff Hart traveled from her home in Florida to New York to sit for her deposition.

16. Plaintiffs are unaware of any individual who is interested in "controlling the prosecution . . . of separate actions" or of any other pending lawsuits brought against Defendants by putative class members.

17. Over the course of this litigation, Plaintiffs' Counsel have received calls from potential plaintiffs. No fewer than four of these individuals have expressed concern over retaliation and have not opted into the FLSA collective.

18. The affidavits Defendants submitted which describe how the club operates are identical, pre-printed forms which span the class period—the 126 signatories have start dates ranging from 2005 to 2009.

19. A true and correct copy of the following documents are attached hereto to as exhibits:

**EXHIBIT 1:** Entertainer Guidelines Ken Sistrunk testified were effective as of early 2009 (Sistrunk Dep. at 38);

**EXHIBIT 2:** Entertainer Guidelines Ken Sistrunk testified were effective as of late 2007 (Sistrunk Dep. at 43-44);

**EXHIBIT 3:** Entertainer Guidelines Ken Sistrunk testified were effective as of early 2007 (Sistrunk Dep. at 46);

**EXHIBIT 4:** Entertainer Guidelines Ken Sistrunk testified were effective as of 2006 (Sistrunk Dep. at 49);

**EXHIBIT 5:** Entertainer Guidelines Ken Sistrunk testified were effective as of 2005 (Sistrunk Dep. at 48);

**EXHIBIT 6:** Excerpts of Entertainer Affidavits Previously Submitted by Defendants;

**EXHIBIT 7:** Spreadsheet of Disciplinary Fines Imposed on Representative Data Sample;

**EXHIBIT 8:** Entertainer Charge Summary for Plaintiff Hart;

**EXHIBIT 9:** Entertainer Charge Summary for Plaintiff Furedi;

**EXHIBIT 10:** Example of entertainer record from representative data set, filed under seal;

**EXHIBIT 11:** Fines and Fees Memoranda distributed at Rick's New York during the class period;

**EXHIBIT 12:** House Fees Memorandum;

**EXHIBIT 13:** Tip-Out Memorandum;

**EXHIBIT 14:** Dance Dollars;

**EXHIBIT 15:** Dance Dollar Purchase Form;

**EXHIBIT 16:** Plaintiffs' Preliminary Questions for Submission to Finder(s) of Fact & Law on Behalf of the Proposed Class;

**EXHIBIT 17:** Excerpts from November 30, 2009 Hearing Transcript;

**EXHIBIT 18:** Order on Class Certification in Zajkowski, et al v. RCI Entertainment (Minnesota), Inc. d/b/a Rick's Cabaret, Court File No. 27-CV-07-26436 (Minn. Dist. Ct.);

**EXHIBIT 19:** Chaves v. King Arthur's Lounge, Inc., No. 07-2505 (Mass. Superior Ct. July 31, 2009);

**EXHIBIT 20:** Davis v. Déjà Vu Entertainment Enterp. of Minn., Inc., No. CT 92010727 (Minn. Dist. Ct. Dec. 16, 1992);

**EXHIBIT 21:** Doe v. Gold Club—S.F., LLC, No. 04-431683 (Calif. Superior Ct. June 8, 2005);

**EXHIBIT 22:** Excerpts from the Deposition of Sabrina Hart;

**EXHIBIT 23:** Excerpts from the Deposition of Reka Furedi;

**EXHIBIT 24:** Excerpts from the Deposition Transcript of Ken Sistrunk, Volumes I and II; and

**EXHIBIT 25:** Excerpts from the Deposition Transcript of Eric Langan.

FURTHER YOUR AFFIANT SAYETH NOT.

s/Anna P. Prakash
Anna P. Prakash

Subscribed and sworn to before me
1st day of June 2010.

s/Heather J. O'Neil
Notary Public

My Commission Expires January 31, 2012