**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**SABRINA HART, ET AL.,**

                    **Plaintiffs,**          **09 Civ. 3043 (JGK)**

       **- against -**             **MEMORANDUM OPINION**
                                   **AND ORDER**

**RICK'S CABARET INT'L INC., ET AL.,**

                  **Defendants.**
————————————————————————————

**JOHN G. KOELTL, District Judge:**

    Plaintiffs Sabrina Hart and Reka Furedi brought suit against Rick's Cabaret International, Inc. ("RCII"), and its subsidiaries, RCI Entertainment (New York) Inc. ("RCI New York") and Peregrine Enterprises, Inc. ("Peregrine").  The plaintiffs allege that, while employed as adult entertainers by Rick's Cabaret in New York (which is owned by RCI New York), they were improperly classified as independent contractors, were not paid a minimum wage, and were required to make various back payments to the defendants.  The plaintiffs allege that the defendants thereby violated their rights under the Fair Labor Standards Act ("the FLSA" or "the Act"), 29 U.S.C. § 201 et seq., and under the New York Labor Laws, § 190 et seq., § 650 et seq., and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.1, et seq.

    In June 2009, the plaintiffs moved for conditional certification of an FLSA collective class composed of

entertainers who had performed at Rick's Cabaret in New York. The plaintiffs filed an Amended Complaint and, on August 27, 2009, the defendants moved to dismiss it as against RCII for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  While the motion was pending, the plaintiffs filed a Second Amended Complaint, and the parties agreed that the motion to dismiss would be deemed filed against that version.

On December 16, 2009, the Court granted the motion to dismiss as to defendant RCII, on the ground that the allegation that RCII was the plaintiffs' "employer," within the meaning of the FLSA, was pleaded in a conclusory manner, and that the complaint failed to state a claim for relief.  On the same day, the Court granted the plaintiffs' motion for conditional certification of the New York FLSA collective action, and ruled that notice could be sent to the potential opt-in class members. Notice was subsequently mailed to approximately 1100 current and former entertainers, and approximately 50 opted into the class during the opt-in period.

On April 6, 2010, the plaintiffs filed a motion for leave to file a Third Amended Complaint, adding RCII back into the action as a defendant.  On May 1, 2010, the Court approved a stipulation between the parties whereby the defendants agreed not to oppose the plaintiffs' motion, but reserved the right to

2

move to dismiss the amended Complaint.  In their Third Amended Complaint ("the Complaint"), the plaintiffs assert claims against RCII as an "employer" of the entertainers who performed at Rick's Cabaret and at other clubs owned by RCII subsidiaries nationwide.  The first and second causes of action allege that the defendants failed to pay the plaintiffs the minimum wage under the FLSA and the New York Labor Law.  The remaining three causes of action assert claims against the defendants for violations of other provisions of the New York Labor Law.

The defendants have moved to dismiss the Complaint.  The plaintiffs, in turn, have moved for certification of a class consisting of the following individuals, pursuant to Federal Rule of Civil Procedure 23:

> All persons who worked at Rick's New York or were employed by Defendant Rick's Cabaret International Inc., RCI Entertainment (New York) Inc. and/or Peregrine Enterprises, Inc. in the state of New York as "entertainers" at any time six years prior to the filing of the Complaint to the entry of judgment in this case.

For the reasons explained below, the defendants' motion is **denied**, and the plaintiffs' motion is **granted**.

I.


A.


On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 571 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

**B.**

**1.**

The provisions of the FLSA and the New York Labor Law at issue in this case prohibit "employers" from taking certain actions with respect to "employees."  For example, the FLSA requires that "employees" receive a set minimum hourly wage. See 29 U.S.C. § 206(a).  The Act defines an "employee," in pertinent part, as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Employ," in turn, means "to suffer or permit to work," 29 U.S.C. § 203(g), and "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).  "The terms are to be expansively defined, with 'striking breadth,' in such a way as to 'stretch . . . the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'"  Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 188-89 (S.D.N.Y. 2003) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 236 (1992)); see also Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (noting that the provisions of the FLSA should be construed expansively).  As a result of this broad interpretation, an employee may "stand in the relation of

an employee to two or more employers at the same time" under the FLSA.  29 C.F.R. § 791.2(a).

The New York Labor Law also defines "employee" broadly, as "includ[ing] any individual employed or permitted to work by an employer in any occupation."  N.Y. Lab. Law § 651(5).  Courts applying both the FLSA and the New York Labor Law have concluded that the standards by which a court determines whether an entity is an "employer" under the FLSA also govern that determination under the New York labor law.  See Ansoumana, 255 F. Supp. 2d at 189 (collecting cases).

**2.**

The defendants argue that the Complaint should be dismissed as against RCII on the ground that the plaintiffs have failed to allege sufficiently that RCII is their employer, within the FLSA's broad definition.  The other defendants do not dispute that they were employers of the named plaintiffs; the question is whether their corporate parent was, under the facts and circumstances alleged, a joint employer.  The plaintiffs argue, among other things, that they have sufficiently alleged that RCII was such an employer under the "economic reality" theory of joint employer liability.

Under the "economic reality" theory, a Court looks to the totality of the facts and circumstances of the case to determine whether an entity is an "employer" within the meaning of the statute.  See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  To assert the "economic reality" that a defendant is an "employer," a plaintiff must allege specific facts that permit such an inference.  Id.  The relevant factors include whether the defendant (1) was able to hire and fire employees, (2) controlled work schedules or employment conditions, (3) determined the rate or method of payment, and (4) maintained employment records.  Id.  However, "[n]o one of the four factors standing alone is dispositive. . . .  Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive."  Id.

The plaintiffs have met their burden of pleading facts to support an inference that RCII was their employer under the "economic reality" test.  Specifically, the Complaint alleges: that RCII directly employs regional managers, who are responsible for overseeing the operations of the subsidiary clubs, including Rick's Cabaret, Compl. ¶¶ 41-43; that the regional managers hire the general managers that work at the subsidiary clubs, Compl. ¶ 45; that both the regional and general managers report to Eric Langan, who is the CEO of RCII and the president of each of the subsidiary clubs, Compl. ¶¶ 36,

7

37, 45, 61, 73; and that RCII, through the regional and general managers, supervises entertainers by distributing rules and guidelines and ensuring their enforcement through the imposition of fines and other disciplinary actions, Compl. ¶¶ 48, 49, 51, 55, 56, 62, 68, 94, 103-105.  The Complaint also alleges that the general managers are directly responsible for hiring, firing, and disciplining entertainers, and enforcing the guidelines, and that they are the agents of RCII, because they are supervised by its regional managers and under its control. Compl. ¶¶ 48, 51, 62, 68, 73.  The Complaint further alleges that the plaintiffs were classified as independent contractors pursuant to a decision by Langan that set the policy for entertainer compensation at RCII's subsidiary clubs nationwide. Compl. ¶¶ 47, 84.  As a result of this decision, the Complaint alleges that the plaintiffs were paid no amounts that counted as wages under federal law.  Compl. ¶ 47.  Taken as a whole, these allegations "raise a reasonable expectation that discovery will reveal evidence" that RCII is an "employer" of the plaintiffs and the members of the putative class within the meaning of the FLSA.  See Twombly, 550 U.S. at 556.[1]

---

[1] Because the plaintiffs have alleged sufficient facts to establish that RCII is an employer under the "economic reality" theory of joint employer liability, there is no need to reach the plaintiffs' alternative argument that RCII is an employer under the "integrated enterprise" theory.

C.


The defendants also argue that the federal claim should be
dismissed in its entirety under Federal Rule of Civil Procedure
12(b)(6), on the ground that the named plaintiffs have not
pleaded facts sufficient to demonstrate that they were paid less
than the statutory minimum wage.  This argument fails because
the plaintiffs have alleged that they worked as entertainers for
the defendants, Compl. ¶¶ 8, 11, and that they were paid "no
wages" in connection with their work.  Compl. ¶¶ 120, 125, 126.
These facts are sufficient to state a claim for failure to pay
the minimum wage under the FLSA.  See 29 U.S.C. § 206(a).

The defendants argue that the plaintiffs must include in
the Complaint, among other things, specific allegations as to
the hours that they worked for which they were paid less than
the statutory minimum wage.  The cases the defendants cite for
this proposition, however, are inapposite; in those cases, the
plaintiffs admitted that they had been paid some money in
compensation for their services, but alleged that they had not
been paid enough.  See, e.g., Bailey v. Border Foods, Inc., No.
09 Civ. 1230, 2009 WL 3248305, at *2 (D. Minn. Oct. 6, 2009);
Jones v. Casey's General Stores, 538 F. Supp. 2d 1094, 1102
(S.D. Iowa 2008).  Accordingly, assuming those cases were
correctly decided, it was necessary for the plaintiffs in those

cases to plead additional facts, such as the hours they had worked and the amount they had been paid, to permit the court to determine whether, on the facts alleged, they had been paid wages that fell below the statutory hourly rate.  See, e.g., Bailey, 2009 WL 3248305, at *2; Jones, 538 F. Supp. 2d at 1102. Here, by contrast, the plaintiffs allege that they were paid no wages whatsoever – an allegation that, if true, alone establishes that they were paid less than the statutory rate under the FLSA.  Under the circumstances of this case, that is all the plaintiffs are required to do.  See, e.g., Zhong v. August August Corp., 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) ("By alleging wages paid of less than $5.15 per hour, [the plaintiff] has adequately pled this element of a[n] FLSA claim for minimum wage violations.")[2]; Nichols v. Mahoney, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009).

---

[2] It is true that Zhong and the cases that rely on it say that "a claim under the FLSA to recover unpaid minimum . . . wages should indicate the applicable rate of pay and the amount of unpaid minimum . . . wages due."  Zhong, 498 F. Supp. 2d at 629. However, in context, it is clear that this statement stems not from some special FLSA pleading standard, but rather from the requirement that the Court be able to determine whether the Complaint alleges wages below those required by the FLSA – as the Complaint must do to survive a motion to dismiss.

**D.**


Finally, the defendants argue that the plaintiffs have given no indication of the identity of the similarly situated "current and former employees" on whose behalf they bring suit. Defs' Mem. of Law in Support of Defs' Motion to Dismiss the Third Amended Complaint, at 20.  Therefore, according to the defendants, the plaintiffs have not satisfied the requirement that, in order to bring an FLSA claim "for and in behalf of . . . other employees similarly situated, the complaint . . . indicate [clearly] who these other employees are . . . ." Zhong, 498 F. Supp. 2d at 628 (citing 29 U.S.C. § 216(b)). However, the plaintiffs have clearly indicated who the members of the putative nationwide FLSA collective class are: "all persons who worked as 'entertainers' at any adult entertainment nightclub owned by Defendant Rick's Cabaret International Inc. or a subsidiary of Defendant Rick's Cabaret International Inc. at any time three years prior to the filing of this Complaint to the entry of judgment in this case." Compl. ¶¶ 15, 186.  The defendants' argument that the plaintiffs have not met the statutory requirement is thus without merit.

## II.

### A.

The plaintiffs have moved to certify a class consisting of the following individuals, pursuant to Federal Rule of Civil Procedure 23, for the purposes of their state law claims:

> All persons who worked at Rick's New York or were employed by Defendant Rick's Cabaret International Inc., RCI Entertainment (New York) Inc. and/or Peregrine Enterprises, Inc. in the state of New York as "entertainers" at any time six years prior to the filing of the Complaint to the entry of judgment in this case.

### 1.

Before certifying a class, the Court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  See, e.g., Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997) (per curiam); Comer v. Cisneros, 37 F.3d 775, 796 (2d Cir. 1994); In re Buspirone Patent & Antitrust Litig., 210 F.R.D. 43, 56-57 (S.D.N.Y. 2002); Dajour B. v. City of New York, No. 00 Civ. 2044, 2001 WL 1173504, at *3 (S.D.N.Y. Oct. 3, 2001).  The Court must find, more specifically, that (1) the class is so numerous

that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  The Court must also find that the party qualifies under one of the three sets of criteria set forth in Rule 23(b).  See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997); Comer, 37 F.3d at 796.

The plaintiffs here seek certification under Rule 23(b)(3), which provides for a class to be maintained where "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  If the Court finds both that the requirements of 23(a) have been met, and that the claims fall within the scope of Rule 23(b)(3), the Court may, in its discretion, certify the class.  See In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006) ("[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met."); In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 290 (2d Cir. 1992); Katz v. Image Innovations Holdings, Inc., 06 Civ. 3707, 2010 WL 2926196

(S.D.N.Y. 2010); Krueger v. New York Tel. Co., 163 F.R.D. 433, 438 (S.D.N.Y. 1995).

The Court may make a determination as to whether each of the Rule 23 requirements has been met only if it resolves factual disputes relevant to the requirements, and "finds that whatever underlying facts are relevant . . . have been established." In re IPO, 471 F.3d at 41. "[T]he obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue," although the Court "should not assess any aspect of the merits unrelated to a Rule 23 requirement." Id. The standard of proof applicable to evidence proffered to meet the requirements of Rule 23 is proof by a preponderance of the evidence. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008).

**2.**

The plaintiffs have established that they meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). "[N]umerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). The putative class in this case comprises

over 1,100 members.  Thus, the numerosity requirement has been
met.

Next, the plaintiffs are required to establish that "there
are questions of law or fact common to the class."  Fed. R. Civ.
P. 23(a)(2).  This requirement is liberally construed; the
question is whether there is a "unifying thread" among the
claims alleged by members of the class.  See Kamean v. Local
363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y.
1986).  The plaintiffs have raised several issues that are
common to all members of the putative class and constitute such
a "unifying thread":  First, the propriety of the defendants'
policy of characterizing entertainers as independent
contractors, rather than employees; second, whether cash
payments made by the defendants to entertainers in exchange for
"dance dollars" count toward the defendants' minimum wage
obligations, or whether those payments are gratuities as a
matter of law, as the plaintiffs contend; third, whether the
defendants' alleged policy of requiring entertainers to make
certain payments to other employees constituted a demand for an
unlawful kickback, under New York Labor Law § 198-b; and fourth,
whether fees and deductions allegedly levied against the
entertainers violated New York Labor Law § 193.  Accordingly,
the plaintiffs have met the commonality requirement of Rule
23(a).

For similar reasons, the plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement.  That requirement is met "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  The facts of the named plaintiffs' claims need not be identical to those of the members of the putative class, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff[s'] claim as to that of other members of the proposed class." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (internal quotation marks omitted). Here, the requirement is met by the plaintiffs' allegation that their miscategorization as independent contractors (the central issue that gives rise to all of their claims) was pursuant to a blanket policy that applied to all members of the putative class.

Finally, the class representatives are required to show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" Toure v. Cent. Parking Sys. of N.Y.,

05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)
(quoting Penney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir.
2006)).  The named plaintiffs and class counsel have
demonstrated their interest in vigorously pursuing the claims of
the class.  Moreover, there is no credible claim that their
interests are antagonistic to those of the other members of the
putative class.  Although some class members no doubt will opt
out of the class, and indeed a number of entertainers have
executed affidavits indicating their disapproval of the suit,
(See Entertainer Affidavits attached to Prakash Aff.) this does
not mean that the interests of the named plaintiffs are
antagonistic to those of the entertainers who choose to remain a
part of the class, which is the relevant inquiry.

Finally, the Court notes that the defendants' concerns
about the named plaintiffs' credibility appear to be without
merit.  No plaintiff evinces a credibility problem sufficient to
require her exclusion as a class representative.


**3.**


The plaintiffs have also met their burden, under Rule
23(b)(3), of establishing that "the questions of law or fact
common to class members predominate over any questions affecting
only individual members, and that a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. Inc. v. Windsor, 521 U.S. at 594.

To establish predominance, the plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted). As other courts have previously found, the propriety of the defendants' blanket categorization of the plaintiffs as independent contractors, and, if improper, the legal consequences of that categorization, by their nature tend to predominate over any individual issues. See, e.g., Ansoumana, 201 F.R.D. at 86, 89 (finding predominance where central issues were whether plaintiffs were properly categorized as independent contractors and the consequences of the resolution of that issue in relation to minimum wage); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding that common question of whether class members "were supposed to be paid the minimum wage as a matter of law

and were not" is "about the most perfect question[] for class
treatment").

The fact that individualized damages calculations might be
required does not alter this analysis. Courts "focus on the
liability issue . . . and if the liability issue is common to
the class, common questions are held to predominate over
individual questions." Dura-Bilt Corp. v. Chase Manhattan
Corp., 89 F.R.D. 87, 93 (S.D.N.Y. 1981); see also In re Visa,
280 F.3d at 139 ("Common issues may predominate when liability
can be determined on a class-wide basis, even when there are
some individualized damage issues."). If individual
calculations of damages prove necessary and cannot easily be
managed, the Court has the ability to de-certify the class.

Finally, in determining whether the superiority requirement
of Rule 23(b)(3) has been met, the Court should consider, among
other things, the interest of the members of the class "in
individually controlling the prosecution or defense of separate
actions" and "the likely difficulties in the managing a class
action." Fed. R. Civ. P. 23(b). In this case, several factors
militate in favor of finding that a class action is the best
available method of adjudicating the claims of class members.
These include: (1) the fact that the value of each individual
claim is small compared to the possible costs associated with
pursuing it; (2) the "assumed socioeconomic status of the

proposed class members," <u>McBean v. City of New York</u>, 228 F.R.D. 487, 503 (S.D.N.Y. 2005); and (3) the fact that members of the putative class who currently work as entertainers for the defendants may be reluctant to pursue any claims against the source of their current income.

Accordingly, the plaintiffs have met the requirements of Rule 23, and the Court will certify the class.

**B.**

In their response to the plaintiffs' motion for class certification, the defendants urge the Court, not only to deny the plaintiffs' motion, but also to decline to exercise jurisdiction over the plaintiffs' state law claims.  The defendants argue that the plaintiffs have not established that jurisdiction is appropriate, either as an exercise of supplemental jurisdiction, or under the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, partially codified in 28 U.S.C. § 1332(c) and (d).  With respect to supplemental jurisdiction, the defendants argue that "the approximate 1700 member Rule 23 class over which Plaintiffs ask this Court to exercise supplemental jurisdiction would be about 34 times larger than the federal law class . . . .  As such, state law issues would vastly predominate over federal law issues."  Defs'

Mem. of Law in Opp. to Pls' Motion for Rule 23 Class Certification, at 24.  However, "where a state law claim substantially predominates over the federal claims, such predominance refers to the type of claim, not the number of claimants."  Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 162 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). The federal and state law issues in this case are closely related, and present the type of "common nucleus of operative fact" that is most efficiently "tried in one judicial proceeding."  Ansoumana, 201 F.R.D. at 90 (internal quotation marks omitted); see 28 U.S.C. § 1367(a).  Accordingly, it is appropriate for the Court to exercise supplemental jurisdiction over the plaintiffs' state law claims, and there is no need to reach the question of the independent basis of federal jurisdiction under the Class Action Fairness Act.

## CONCLUSION

The defendants' motion to dismiss is **denied**, and the plaintiffs' motion for class certification is **granted**.  The Clerk is directed to close **Docket Nos. 148 and 154**.

**SO ORDERED.**

Dated:    New York, New York
          December 17, 2010

          _____
                /John G. Koeltl
          United States District Judge