## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SABRINA HART and REKA FUREDI )        Case No. 09-CV-3043 JGK/THK
on behalf of themselves and all others similarly )
situated, and the New York Rule 23 Class, )
                                          )
      Plaintiffs,                        )
                                          )
v.                                        )
                                          )
RICK'S CABARET INTERNATIONAL INC., )
RCI ENTERTAINMENT (NEW YORK) INC., )
PEREGRINE ENTERPRISES, INC.,       )
                                          )
      Defendants.                       )
_____ )

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPPORT OF THEIR MOTION
## TO DISMISS DEFENDANTS' COUNTERCLAIM

## **TABLE OF CONTENTS**

I.   INTRODUCTION. ...................................................................................................1

II.  RELEVANT BACKGROUND. ..............................................................................2

  A.  ALLEGATIONS MOST RELEVANT TO THE INSTANT MOTION. .....................2

  B.  DEFENDANTS' COUNTERCLAIM. ..........................................................................3

III. ARGUMENT. ...........................................................................................................4

  A.  LEGAL STANDARD. .................................................................................................4

  B.  DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED. ............................5

    1.  Counterclaims Against Absent Class Members Are Impermissible ......................5

    2.  A Judgment Enforcing Defendants' Legal Obligations Cannot Be
        "Unjust." ..............................................................................................................7

    3.  A Claim For Unjust Enrichment Cannot Be Based On Defendants'
        Version Of What They Would Have Done Had They Followed The Law. ..........10

    4.  Defendants Have Pled Insufficient Facts To Demonstrate That The
        Performance Fees Were Defendants' Property ....................................................13

    5.  Defendants' Prayer For Attorneys' Fees And Costs Is Contrary To Law ............16

  C.  CASE   LAW   SUPPORTING   DEFENDANTS'   POSITION   IS
      DISTINGUISHABLE. ................................................................................................17

IV.  CONCLUSION. ......................................................................................................20

## TABLE OF AUTHORITIES

## CASES

### SUPREME COURT CASES

Barrentine v. Arkansas-Best Freight Sys., Inc.,
450 U.S. 728 (1981)...................................................................................................11, 13

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..........................................................................................................5

### FEDERAL CASES

Agence France Presse v. Morel,
No. 10 Civ. 2730 (WHP), 2011 WL 147718 (S.D.N.Y. Jan. 14, 2011) ..........................5

Barfield v. New York City Health and Hospitals Corp.,
537 F.3d 132 (2d Cir. 2008)............................................................................................14

Boyke v. Superior Credit Corp.,
No. 01-CV-0290, 2006 WL 3833544 (N.D.N.Y. Dec. 28, 2006)............................16, 17

Caserta v. Home Lines Agency, Inc.,
273 F.2d 943 (2d Cir. 1959)............................................................................................13

Chao v. Gotham Registry, Inc.,
514 F.3d 280 (2d Cir. 2008)............................................................................................11

Doe v. Cin Lan,
2:08-cv-12719-SJM-MJH (E.D. Mich. Feb. 24, 2010) .....................................17, 18, 19

Enterprise Wall Paper Mfg. Co. v. Bodman,
85 F.R.D. 325 (S.D.N.Y. 1980) ........................................................................................6

Febus v. Guardian First Funding Group, LLC,
No. 10 CV 2590 (SHS) (S.D.N.Y. Mar. 31, 2011).....................................................5, 11

Firefly Equities LLC v. Ultimate Combustion Co., Inc.,
No. 10 Civ. 1869 (JSR), 2010 WL 5174358 (S.D.N.Y. Dec. 14, 2010)........................16

Goldman v. Belden,
754 F.2d 1059 (2d Cir. 1985)............................................................................................4

Graham v. Watertown City School Dist.,
No. 7:10-CV-756, 2011 WL 1344149 (N.D.N.Y. Apr. 8, 2011).......................................5

Harrell v. Diamond A Entertainment, Inc.,
992 F. Supp. 1343, 1358 (M.D. Fla. 1997) .................................................................15

Herman v. RSR Sec. Services Ltd.,
172 F.3d 132 (2d Cir. 1999) ........................................................................................13

Imars v. Contractors Manufacturing Services, Inc.,
No. 97-3543, 1998 WL 598778 (6th Cir. Aug. 24, 1998) ..........................................11

In re Adelphia Commns Corp.,
365 B.R. 24 (Bankr. S.D.N.Y. 2007) ..........................................................................20

Jeffery v. Epstein,
366 F. Supp. 1281 (S.D.N.Y. 1973) ............................................................................19

Lanzetta v. Florio's Enterprises, Inc.,
No. Civ. 6181(DC), 2011 WL 253961 (S.D.N.Y. Jan. 25, 2011).........................8, 9, 11

Marino v. Grupo Mundial Tenedora, S.A.,
No. 10 Civ. 4126, 2011 WL 1142887 (S.D.N.Y. Mar. 17, 2011) ...............................10

Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc.,
14 F. Supp. 2d 331 (S.D.N.Y. 1998), aff'd 173 F.3d 845 (2d Cir. 1999) ....................11

Patel v. Contemporary Classics of Beverly Hills,
259 F.3d 123 (2d Cir. 2001).........................................................................................5

Pawaroo v. Countrywide Bank,
No. 09-CV-2924(ARR)(SMG), 2010 WL 1048822 (E.D.N.Y. Mar. 18, 2010).......................9, 10

Perry v. Beneficial Fin. Co.,
88 F.R.D. 221 (W.D.N.Y. 1980).....................................................................................6

Pro Bono Investments, Inc. v. Gerry,
No. 03 Civ. 4347(JGK), 2005 WL 2429777 (S.D.N.Y. Sept. 30, 2005) ............................7, 10, 13

Reich v. ABC/York-Estes Corp.,
No. 91 C 6265, 1997 WL 264379 (N.D. Ill. May 12, 1997) ........................................15

Reich v. Priba Corp.,
890 F. Supp. 586 (N.D. Tex. 1995) ..............................................................................15

Robledo v. City of Chicago,
252 F.R.D. 639 (N.D. Ill. 2008)......................................................................................6

<u>Teachers Ins. and Annuity Ass'n of America v. CRIIMI MAE Services ltd. Partnership,</u>
681 F. Supp. 2d 501 (S.D.N.Y. 2010)...............................................................................16

<u>Ting Yao Lin v. Hayashi Ya II, Inc.,</u>
No. 08 Civ. 6071(SAS)(AJP), 2009 WL 289653 (S.D.N.Y. Jan. 30, 2009) ...............................17

<u>Van Gemert v. Boeing Co.,</u>
590 F.2d 433 (2d Cir. 1978).............................................................................................5

**STATE CASES**

<u>ABN AMRO Bank, N.V. v. MBIA Inc.,</u>
916 N.Y.S.2d 12 (N.Y. App. Div. 1 Dept. 2011) ........................................................15

<u>Am. Broadcasting Cos., Inc., v. Roberts,</u>
61 N.Y.2d 244 (N.Y. 1984) ............................................................................................11

<u>Bynog v. Cipriani Group, Inc.,</u>
1 N.Y.3d 193 (N.Y. 2003) ..............................................................................................14

<u>Weinberg v. D-M Rest. Corp.,</u>
53 N.Y.2d 499 (N.Y. 1981) ............................................................................................15


**<u>REGULATIONS</u>**

29 C.F.R. § 531.55(b) .....................................................................................................15

29 C.F.R. § 778.502........................................................................................................12


**<u>RULES</u>**

Fed. R. Civ. P.  12(b)(6)....................................................................................................5

Fed. R. Civ. P.  12(c) .......................................................................................................5

Fed. R. Civ. P. 13 .........................................................................................................5, 6

Fed. R. Civ. P. 23 ....................................................................................................3, 5, 6, 7

## <u>STATUTES</u>

29 U.S.C. § 203(m) ............................................................................................9

29 U.S.C. § 216(b) ...........................................................................................16

Fair Labor Standards Act ............................................................................. *passim*

New York Labor Law .................................................................................. *passim*

New York Labor Law § 196-d.......................................................................8, 14

New York Labor Law § 198(1-a) ......................................................................17

## I.   __INTRODUCTION.__

Defendants' counterclaim is a request for a "do-over" of its unlawful misclassification and attendant wage and hour violations.  According to Defendants, Defendants' decision to allow Plaintiffs to retain performance fees [1] Plaintiffs received from Defendants' customers was contingent on the endless continuation of an "arrangement" [2] whereby Defendants could misclassify Plaintiffs [3] as independent contractors and fail to pay them wages.  According to Defendants, if Plaintiffs successfully challenge their misclassification as independent contractors and are awarded damages, Plaintiffs will be unjustly enriched because they will have been paid both wages and allowed to retain the performance fees that Defendants allowed them to retain in lieu of paying wages.  According to Defendants, had Plaintiffs been classified as employees from the outset, Defendants would have demanded and received the performance fees Plaintiffs received from customers, treated Plaintiffs more like employees by imposing additional duties on them, and paid Plaintiffs only the minimum wage.  In Defendants' view, if Plaintiffs win, Plaintiffs are entitled to the minimum wage only, regardless of what the Court or a jury awards, and should have to pay Defendants back all of the performance fees that Defendants allowed Plaintiffs to retain in lieu of wages.

Defendants' counterclaim is flawed for at least four reasons, each warranting dismissal.

---

[1]  These amounts are also referred to as "dance fees".

[2] Defendants refer to the manner in which they classified entertainers and in which entertainers received money variously as an "arrangement", an "Agreement" and a "contract."  See ECF No. 254 ¶¶ 296-308 asserting variously that class members: (1) "agreed to the financial arrangement" (¶ 296); (2) had "oral agreements" with Defendants (¶ 297); (3) had an agreement "in practice" (id.); (4) had an arrangement (¶¶ 297, 298, 303, 305, 307, 308; (5) "adopted a pattern and practice" (¶ 302); (6) "acknowledged and agreed" (¶ 305); (7) "represent[ed]…desired and intended" (¶ 308).

[3] As used herein "Plaintiffs" refers to all members of the class this Court certified on December 17, 2010 and who do not opt of this action.  It is intended to be synonymous with the group Defendants have identified as "Counterclaim-Defendants."  (See ECF No. 254 at ¶ 293.)

First, counterclaims may not be asserted against absent class members.  Second, Defendants may not use an equitable claim to avoid statutorily imposed duties to pay wages and not demand kickbacks from employees.  Third, Defendants' counterclaim is based on a flawed understanding of how damages work in lawsuits involving an employer's obligation to pay wages; courts do not allow employers to specify how they would have done things differently had they abided by applicable wage and hour laws.  If they did, perverse outcomes would result, including that sought here.  Fourth, Defendants have failed to plead sufficient facts to establish that the "benefit" they allege constitutes unjust enrichment was conferred at their expense.  Finally, even if the counterclaim is allowed to proceed there is no legal basis for Defendants' request for fees and costs.  Because case law allowing similar counterclaims to go forward is distinguishable and not persuasive, Defendants' counterclaim should be dismissed.

## II.   **RELEVANT BACKGROUND.**

The legal theories in this case have been discussed at length in earlier filings which are incorporated here, along with exhibits cited therein, by reference.  (See ECF Nos. 16, 50, 62, 68, 82, 96, 153, 155, 200, 201; 229, 250, 253.)  A brief summary of the allegations most relevant to the instant Motion is provided below, as is a summary of Defendants' counterclaim.

### A.  ALLEGATIONS MOST RELEVANT TO THE INSTANT MOTION.

Defendants classify Plaintiffs and the other entertainers who work at Defendants' New York club as independent contractors.  (Third Amended Complaint, ECF No. 153 at ¶¶ 92-117; Answer, ECF No. 254 at ¶ 93.) Plaintiffs allege that the independent contractor classification is improper and, in fact, that they and the other entertainers at Defendants' club are employees who are entitled to be paid the minimum wage under the FLSA and NYLL. (See ECF No. 153 at ¶¶ 92-138, 202-221.)   Plaintiffs' misclassification allegations are based on the rigid control

Defendants exercise over entertainers' manner and method of work at the club (see id. at ¶¶ 49, 94-105). Plaintiffs allege that Defendants do not pay entertainers any money which counts as wages under the applicable minimum wage statutes, and that Plaintiffs are therefore entitled to damages for wages owed. (See id. at ¶¶ 118-138.) Plaintiffs also allege that money entertainers receive from customers for dances (labeled by Defendants as "Performance Fees") are gratuities as a matter of law and that Plaintiffs are entitled as a matter of law to retain the full value of such amounts/fees. Defendants have asserted, as an affirmative defense, that they are entitled to a setoff against wages owed for amounts Defendants paid Plaintiffs in cash in exchange for dance dollars. (ECF No. 254 at ¶ 276; See also ECF No. 49.) Defendants also allege, as an affirmative defense, that Defendants are entitled to a setoff against wages owed for amounts Plaintiffs received directly from customers in exchange for dances, called "performance fees." (Id.)

## B. DEFENDANTS' COUNTERCLAIM.

Defendants bring their counterclaim for unjust enrichment against "any of the [N]amed Plaintiffs and the putative collective and putative class members who have: (1) performed at Rick's NY as entertainers, and (2) have either opted into the collective class or have failed to opt out of the Rule 23 class." (ECF No. 254 at ¶¶ 293, 294.) Defendants allege that Plaintiffs tacitly (id. at ¶¶ 297) and/or explicitly (id. at ¶¶ 296, 297) agreed to be classified as independent contractors. "Based upon" this "arrangement" Defendants assert that they "permitt[ed] [Plaintiffs] to retain or collect substantial portions of the mandatory Performance Fees" that Plaintiffs received from customers. (Id. at ¶ 307.) Defendants also assert that, "based on" this same "arrangement" they "conced[ed] to [Plaintiffs] important controls Peregrine would have [otherwise] reserved for itself." (Id.)

Defendants' theory is that a verdict in favor of Plaintiffs would result in Plaintiffs being

unjustly enriched by allowing Plaintiffs to retain "performance fee" payments from customers that Defendants allegedly would not have allowed them to retain if Defendants had to also pay Plaintiffs wages.  (Id. at ¶ 310.)  Defendants allege that they seek repayment of this money in order "to offset against any award of wages or other accouterments of employment to which [entertainers] may be entitled."  (Id. at ¶ 314.)  Defendants also seek "costs, disbursements, including reasonable attorneys' fees, and any such other and further relief as this Court deems just and equitable."  (Id. ¶¶ 314; see also ECF No. 254 at Wherefore Clause ¶¶ 1-6.) Importantly, Defendant's counterclaim is conditional.  By its terms, it arises only "if [Plaintiffs] are successful in their claim that they should receive additional monies as alleged in their Complaint."  (Id. at ¶ 310.)  As styled, the counterclaim does not distinguish between Plaintiffs claims; Defendants plead that unjust enrichment will result regardless of how, why, or in what amount Plaintiffs are awarded damages.  Defendants have asserted this counterclaim regardless of whether Defendants prevail on their affirmative defense seeking offset against minimum wage damages (ECF No. 254 at ¶ 276), and regardless of whether the only damages Plaintiffs receive are on their non-wage claims, i.e. their claim that Defendants charged them unlawful fees in order to work (ECF No. 153  at ¶¶ 144-149, 170-174, 238-246), required them to pay unlawful kickbacks  (ECF No. 153   at ¶¶ 144-149, 222-229), and/or unlawfully retained Plaintiffs gratuities (ECF No. 153  at ¶¶ 150-169, 230-237).

## III.   ARGUMENT.

### A.  LEGAL STANDARD.

The court's function in ruling on a motion to dismiss is "to determine whether the complaint itself is legally sufficient." (ECF No. 253 (quoting Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).)  Complaints should be dismissed where they fail to allege "enough facts to state

a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 571 (2007). "Determining whether a complaint states a plausible claim for relief will be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Agence France Presse v. Morel</u>, No. 10 Civ. 2730 (WHP), 2011 WL 147718 at *4 (S.D.N.Y. Jan. 14, 2011) (internal quotations omitted.) The same legal standard that applies to a complaint applies to counterclaims. <u>Id.</u> The court's determination of whether a counterclaim states a claim requires the court to assess of the applicable law and the viability of the legal theories alleged. Under both Rule 12(b)(6) and Rule 12(c), Defendants counterclaim must be dismissed for failing to state a cognizable claim. "The standard for granting a 12(c) judgment on the pleadings is 'identical' to that of a 12(b)(6) motion to dismiss." <u>Graham v. Watertown City School Dist.</u>, No. 7:10-CV-756, 2011 WL 1344149 at *3 (N.D.N.Y. Apr. 8, 2011) (quoting <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001)).

## B. DEFENDANTS' COUNTERCLAIM SHOULD BE DISMISSED.

### 1. Counterclaims Against Absent Class Members Are Impermissible.

The Second Circuit has unambiguously stated, "Absentees are not considered parties against whom counterclaims under Fed. R. Civ. P. 13 may be asserted, because the right to counterclaim is readily subject to abuse as a tactical device to encourage plaintiffs to opt out." <u>Van Gemert v. Boeing Co.</u>, 590 F.2d 433, 440 (2d Cir. 1978) (discussion in the context of a certified Rule 23 class) (internal citations and quotations omitted). <u>See also</u> <u>Febus v. Guardian First Funding Group, LLC</u>, No. 10 CV 2590 (SHS) (S.D.N.Y. Mar. 31, 2011), March 31, 2011 Hearing Tr. 10-11[4] ("I note that courts in this district have held that counterclaims pursuant to

---

[4] The order and the hearing transcript in <u>Febus</u>, Exhibits 1 and 2, as well as all other Exhibits referenced herein, are attached to the Affidavit of E. Michelle Drake submitted in connection with this Memorandum.

Fed. R. Civ. P. 13 cannot be asserted against absent class members because, in that context, they are not parties to the class action.") (J. Stein, citing cases and dismissing counterclaims against FLSA opt-in plaintiffs, among others); Enterprise Wall Paper Mfg. Co. v. Bodman, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) ("Unquestionably, there are contexts in which absent class members should not be deemed parties, as for example in connection with counterclaims under Rule 13.") (citing cases); Perry v. Beneficial Fin. Co., 88 F.R.D. 221, 223 (W.D.N.Y. 1980) ("[A]bsent class members are generally not considered parties… for the purpose of asserting counterclaims under [Rule] 13.").

Here, to be subject to Defendants' counterclaim as pled, one must, in addition to having worked as an entertainer at Defendants' New York club, "have either opted into the collective class or have failed to opt out of the Rule 23 class." (ECF No. 254 at ¶ 293.) In other words, Defendants are counterclaiming against opt-in plaintiffs and absent Rule 23 class members, which is patently inconsistent with established law in this District.

What is more, even if Defendants' claims were not barred and the Court permitted such claims against absent class members, Defendants have not even attempted to meet their burden of pleading the propriety of class claims—an omission that, in and of itself, warrants dismissal. See Robledo v. City of Chicago, 252 F.R.D. 639, 640-641 (N.D. Ill. 2008) (dismissing counterclaims and stating, "The City has the burden of demonstrating that the plaintiff class is the appropriate class for certification with respect to its counterclaims….Its conclusory allegations that two classes are coextensive, and that for the same reasons the named parties have been adjudicated proper class representatives as plaintiff, they are similarly and by the same reasoning proper representatives of the Counter-Defendant Class are not enough to meet the rigors of Rule 23 analysis.") (internal citations, quotations, and brackets omitted). For these

reasons, the counterclaim against the class must be dismissed.

### 2.   A Judgment Enforcing Defendants' Legal Obligations Cannot Be "Unjust."

"The elements for a claim of unjust enrichment under New York law are: (1) that the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendants to make restitution…. To prove unjust enrichment, the plaintiff must show that it conferred a benefit upon the defendants without adequate compensation." Pro Bono Investments, Inc. v. Gerry, No. 03 Civ. 4347(JGK), 2005 WL 2429777 at *9 (S.D.N.Y. Sept. 30, 2005) (internal citations omitted). Defendants' counterclaim alleges that it would be unjust for Plaintiffs both to be allowed to retain the money they received from customers and also to be paid the minimum wage, have unlawful deductions and kickbacks restored, and receive the full value of gratuities they received from customers *even if that is what the law requires*.   However, because Defendants' counterclaim is conditioned on Plaintiffs' prevailing on their statutory claims, it must be dismissed.

Defendants have explicitly pled that the unjust enrichment they challenge will occur only "[i]f [Plaintiffs] are successful in their claim that they should receive additional monies" (ECF No. 254 at ¶ 310).  By Defendants own admission, the "unjust enrichment" can only result from a judgment in Plaintiffs' favor.  A judgment in Plaintiffs favor, however, would, by definition, be based on applicable state and federal law.  The underlying logic of Defendants' counterclaim is that Plaintiffs somehow waived their right to retain money Defendants claim they allowed Plaintiffs to receive from third parties by challenging their classification as independent contractors and the attendant denial of wages and gratuities and the imposition of various fines, fees and kickbacks.  However, a judgment in Plaintiffs' favor awarding "additional monies as

alleged in their Complaint" entails a finding that Plaintiffs were misclassified as independent contractors and that Defendants: 1) failed to pay them wages to which they were legally entitled and; 2) unlawfully retained performance fees which were gratuities as a matter of law and; 3) unlawfully required Plaintiffs to pay in order to work and to make payments to other individuals on Defendants' staff.

The fundamental assertion of Defendants' counterclaim, which is that Defendants would not have allowed Plaintiffs to retain dance fees if Plaintiffs were categorized as employees, flies in the face of Plaintiffs' allegation that dance fees are "gratuities" within the meaning of New York Labor Law, and are therefore Plaintiffs' property as a statutory matter.  (See ECF No. 153 at ¶¶ 230-237; NYLL § 196-d.)  It also fails completely to account for the fact that, in addition to alleging they were denied wage payments they were owed by Defendants, Plaintiffs have also alleged that they are entitled to receive back the amounts they were force to pay out by Defendants for "house fees," disciplinary fines, and in the form of required payments to other members of Defendants' staff.  Because Plaintiffs' claims to wages, gratuities, and the repayment of unlawful deductions are all grounded in statutory rights, a finding that Defendants must comply with its legal obligations cannot be "unjust."  Defendants have therefore failed to state a legally cognizable claim.

Courts routinely reject the argument that it is "unjust" to require employers to pay wages to employees who also received substantial sums for their work from third parties.  The case of Lanzetta v. Florio's Enterprises, Inc., No. Civ. 6181(DC), 2011 WL 253961 (S.D.N.Y. Jan. 25, 2011) is instructive.  In Lanzetta, the plaintiff was a waitress whose only compensation was tips she received from customers.  She received no wages from the restaurant.  The plaintiff "acquiesced to this arrangement and worked according to its terms for approximately four years.

She never complained because she needed the job, the restaurant was close to home, and the tips were good." Id. at *2. She "earned significant tip income" and the restaurant "put her on the books" to report tip income for tax purposes. Ultimately, however, she sued for minimum wages under both the NYLL and FLSA. The court ruled in her favor following a bench trial, holding "Defendants were required by state and federal law to pay Lanzetta a minimum wage for each hour she worked.... Defendants violated both requirements because Lanzetta worked only for tips. Therefore, they are liable to her for back wages." Id. at *3-6 (awarding plaintiff both wages while also allowing her to retain her gratuities despite defendant's insistence that plaintiff "actually got more than the minimum wage ten times over.").

Here, Plaintiffs and the entertainers at Defendants' club are in the exact position as the plaintiff in Lanzetta. Their only income comes from tips customers give them. Unjust enrichment does not arise from an award of wages where entertainers' tip income may have greatly exceeded the minimum wage. To find that it does would supplant the law governing the circumstances under which an employer may take a tip credit against the minimum wage and would redefine wages as "money received" generally, as opposed to money paid by an employer. See 29 U.S.C. § 203(m).

Notably, Defendants have not alleged that all of the entertainers against whom they are asserting counterclaims ever earned "performance fees" equal to or in excess of the minimum wage. (See ECF No. 254 at ¶ 301 ("[Entertainers] *may* have received Performance Fees in excess of the minimum wage....") (emphasis added). Much less have Defendants alleged any concrete amounts which would establish that Plaintiffs will recover so much money in this case as to create an injustice requiring equitable intervention. This is additional reason to dismiss the counterclaim. Pawaroo v. Countrywide Bank, No. 09-CV-2924(ARR)(SMG), 2010 WL

1048822 at *7 (E.D.N.Y. Mar. 18, 2010) ("[A] claim for unjust enrichment must specify the manner *and extent* to which a defendant was *unjustly* enriched." (emphasis added) (dismissing unjust enrichment claim); see also Marino v. Grupo Mundial Tenedora, S.A., No. 10 Civ. 4126, 2011 WL 1142887 at *6 (S.D.N.Y. Mar. 17, 2011) ("As there is no allegation that Defendant has received anything of value, the claim for unjust enrichment is dismissed.").

### 3. A Claim For Unjust Enrichment Cannot Be Based On Defendants' Version Of What They Would Have Done Had They Followed The Law.

Defendants' assertion that they would have done things differently had Plaintiffs insisted on being classified as employees (ECF No. 254 at ¶ 307) and paid wages from the outset cannot be given legal accreditation.  When an employer misclassifies an employee and fails to honor its statutory obligations to pay wages and not require kickbacks, the employer is not then entitled to make a counterclaim against the employees based on the employer's representation of what the employer would have done differently had the employer properly treated the employees from the outset.  If counterclaims like Defendants' counterclaim were allowed to proceed, all employers would have to do to avoid the payment of damages for statutorily owed wages and kickbacks is aver that, had they honored their statutory wage obligations they would have required more work of the employees and that they are therefore entitled to an offset based on the value of the work they "would have" required.  Indeed, that is precisely the tack that Defendants have taken here. See ECF No. 254 at ¶ 302 (alleging Peregrine would have "retained for itself" the right to assign "other duties" to Plaintiffs).

Defendants have asked the Court to impose legal obligations on the parties that are expressly forbidden by the applicable laws.  Unjust enrichment is an equitable remedy which is quasi-contractual in nature.  See Pro Bono Investments, Inc. v. Gerry, No. 03 Civ. 4347(JGK), 2005 WL 2429777 at *8 (S.D.N.Y. Sept. 30, 2005).  In order to avoid situations where one party

receives a benefit from another without receiving just compensation for that benefit, courts will imply a contract where none in fact exists.  See Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc., 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998), aff'd 173 F.3d 845 (2d Cir. 1999) (explaining court's role in an unjust enrichment case as that of inferring "the existence of an implied contract to prevent one person who has obtained a benefit from another from unjustly enriching himself at the other party's expense.")  By seeking to recover on a theory of unjust enrichment, Defendants have asked this court to imply a contract whereby if Plaintiffs are awarded minimum wages and/or gratuity payments and/or repayment of unlawful fines and fees, they must re-pay to Defendants the dance fees that Defendants permitted them to retain. However, both the FLSA and NYLL hold that contracts or agreements of the kind that Defendants are asking the court to construct are void and unenforceable as against public policy. See Febus Hearing Tr. at 13 (dismissing counterclaims for breach of contract in FLSA and NYLL action and citing, *inter alia*, Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981); Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008); Am. Broadcasting Cos., Inc., v. Roberts, 61 N.Y.2d 244, 249 (N.Y. 1984)).  See also Lanzetta, 2011 WL 253961 at *5 (awarding minimum wages where plaintiff earned only tips and "testified that defendants 'told me no [wages]. Just tips.' [ ] When asked why she agreed to work at Florio's anyway, she testified that the tips were substantial enough to justify the arrangement.…  And, when asked why she did not complain or ask to be paid a wage, she testified that she 'never said anything' because 'you couldn't talk to [defendants].'") (internal citations omitted); Imars v. Contractors Manufacturing Services, Inc., No. 97-3543, 1998 WL 598778 at *5 (6th Cir. Aug. 24, 1998) ("Even if employees freely *want* to work for below the minimum wage, or work in statutorily banned work conditions, or work long hours without extra compensation - even if their choices

are moral and economically efficient - the FLSA does not allow this.  This is true even when the bargaining is done at arm's length.  The FLSA does not just purport to protect weakly-positioned employees from their employers.  It also prevents employers from contracting with more productive employees (who are…willing to contract away their FLSA rights) to the detriment of less productive ones.").  Thus, even if the Court credits Defendants' self-serving representation that they "would have" done things differently, Defendants may not ask the Court to impose a remedy that relies on a judicially created contract which would have been unenforceable as a matter of public policy if agreed to by the parties outright.

Courts do not welcome creative efforts by employers to retrospectively avoid paying wages owed under labor laws.  Practices found to be deceptive in the overtime context provide a valuable analogy.  For example, the Department of Labor explicitly warns against "pseudo-bonus" schemes where employers pay a fixed amount each week, regardless of hours worked, and vary the portion of that amount which is delineated as a "bonus" depending on the number of hours worked by the employee.  In that situation, the Department has found that employees are not being paid the overtime rate to which they are entitled under the Act.  See 29 C.F.R. § 778.502.  Defendants' unjust enrichment claim is an effort to perpetrate the same type of plan in the minimum wage context: rather than paying entertainers the wages which they are owed, Defendants seek to re-do their compensation system to take away that which entertainers were allowed to retain (but which the Court will have found does not entitle Defendants to an offset against wages pursuant to Defendants' affirmative defenses) and then pay that same money out in order to satisfy the wage obligations that the Court will have found Defendants shirked.  The logic is even more twisted in the context of unlawful kickbacks and fees: Defendants will have been found to have imposed unlawful fees and kickbacks on Plaintiffs, and then Plaintiffs will be

required to pay Defendants back more money so that Defendants can repay Plaintiffs for these same illegal deductions.  Defendants' strategy of "heads I win tails you lose" is not permissible under the minimum wage, gratuities and unlawful deductions laws for the same reasons that the "pseudo-bonus" schemes flagged by the Department of Labor are impermissible under the overtime laws.

In short, should entertainers prevail on their claims in this lawsuit, "equity and good conscience" do not require entertainers to pay Defendants anything.  See generally id.; see also Barrentine, at n. 18 ("[E]mployees are not to be deprived of the benefits of the [FLSA] simply because they are well paid.") (internal quotations omitted); Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2d Cir. 1959) (internal citation omitted) ("[The obligation to comply with the FLSA] is the employer's and it is absolute.  He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping… and of appropriate payment, to the employee."); Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 144 (2d Cir. 1999) ("There is no right of contribution or indemnification for employers found liable under the FLSA…. Such a comprehensive statute strongly counsels against judicially engrafting additional remedies."). Any enrichment that may arise from Plaintiffs winning this case is, by definition, not unjust. Reducing or negating damages to which the class is legally entitled would be plainly contrary to law.

### 4. Defendants Have Pled Insufficient Facts To Demonstrate That The Performance Fees Were Defendants' Property.

In order to prove Plaintiffs were unjustly enriched, Defendants must show that the enrichment was at Defendants' expense.  Pro Bono Investments, Inc., 2005 WL 2429777 at *9. Defendants allege that class members will have been unjustly enriched if they are allowed to retain the performance fees they received from customers while also receiving the minimum

wage, restitution for unlawful deductions, and the full value of gratuities they received from customers.[5]   Defendants cannot claim that the payment of damages itself would be unjust. Instead, they creatively plead that the *combination* of wage payments and retention of performance fees would result in Plaintiffs being unjustly enriched. (ECF No. 254 at ¶ 310.) However, the performance fees the entertainers received were not paid by Defendants—they were paid by customers.  See *supra* at II(B).  Plaintiffs have alleged that these amounts constitute "gratuities" under New York Law and that they are therefore Plaintiffs property as a matter of law.  (See ECF No. 153 at ¶¶ 230-237; NYLL § 196-d.)   Defendants have taken the legal position that the gratuities at issue are not gratuities and can therefore count as wages.  (See ECF No. 254 at ¶¶ 255, 307.)  However, Defendants have failed to allege any *facts* that would make the performance fees Defendants' property.  In the absence of such facts, the counterclaim is insufficiently pled.

Defendants' counterclaim does not allege that the gratuities at issue enter into

---

[5] Defendants also allege that Plaintiffs will have been somehow unjustly enriched by having been allowed to work under working conditions that Defendants characterize as more consistent with those of independent contractors than Defendants allege they would have imposed had they paid Plaintiffs wages.  See ECF No. 254 at ¶ 310.  Defendants seek monetary payment for the freedoms they believe they conferred upon Plaintiffs which they allege they would not have conferred had they paid Plaintiffs wages. For example, Defendants apparently seek an offset for the value of other tasks they allege they "would have" required of Plaintiffs had Plaintiffs been properly classified. Id. at ¶ 307.  While this "freedom" might arguably constitute a "benefit" conferred by Defendants, it is not a benefit that Defendants can maintain "unjustly enriched" Plaintiffs in this context.  Defendants cannot coherently argue that the wages they owe to Plaintiffs should be offset by the value of work they would have had Plaintiffs perform had they paid them properly from the outset.  The test at summary judgment or trial, then, will not be what Defendants would have done had they chosen to properly classify entertainers; rather, the test will be what Defendants have actually done.  If Plaintiffs prevail in this lawsuit, the Court will have found that Defendants did not treat entertainers like independent contractors, ceding the controls associated with employee status as Defendants allege.  No such non-monetary benefit will have been conferred on entertainers.  See Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 141-42 (2d Cir. 2008) (employee status under FLSA governed by "economic realities"); Bynog v. Cipriani Group, Inc., 1 N.Y.3d 193, 198 (N.Y. 2003) (employee status under NYLL focuses on degree of control exercised by employer).

Defendants' gross receipts.  (See generally ECF No. 254.)  The regulations implementing the FLSA and case law surrounding treatment of money paid for dances from entertainers show that this missing allegation is central to any argument that Defendants may lay claim to this money and use it to meet their obligations to Plaintiffs.  See 29 C.F.R. § 531.55(b) ("[S]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act."); Reich v. ABC/York-Estes Corp., No. 91 C 6265, 1997 WL 264379 at *5 (N.D. Ill. May 12, 1997) (holding that dance fees paid to entertainers by customers are more closely related to a tip than a service charge and stating, "[A]n employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA."); Harrell v. Diamond A Entertainment, Inc., 992 F. Supp. 1343, 1358 (M.D. Fla. 1997) ("[M]onies that dancers receive from customers are tips, not wages, which cannot be applied to offset completely an employer's obligation to pay a minimum wage."); Reich v. Priba Corp., 890 F. Supp. 586, 595 (N.D. Tex. 1995) ("The fact that all of the table dance fees are not reported as gross receipts is fatal to [the] claim that the tips are more properly classified as wages.").[6]

Because Defendants have not pled that they owned the dance fees, they have not properly pled that they will have conferred a benefit on Plaintiffs by allowing Plaintiffs to retain performance fees.  In ABN AMRO Bank, N.V. v. MBIA Inc., 916 N.Y.S.2d 12, 18 (N.Y.A.D. 1 Dept. 2011) the court found that a similar claim for unjust enrichment failed.  "Plaintiffs do not allege that they have conferred some benefit upon MBIA Inc. and MBIA Illinois at plaintiffs' expense. Rather, their contention is that [third parties] hold assets that, in equity and good conscience, should be returned to MBIA Insurance, which is insufficient to allege an unjust

---

[6] New York has a similar standard for determining whether a given amount counts as a "tip" or as a "service charge" and consequently whether it may be used to satisfy the employer's wage obligations.  Weinberg v. D-M Rest. Corp., 53 N.Y.2d 499, 506-07 (N.Y. 1981).

enrichment claim." (internal citations and quotations omitted).  As it stands, only Plaintiffs have

pled facts establishing a property right in the performance fees.  Because Defendants have not

pled such facts, the counterclaim is insufficient.

### 5.  Defendants' Prayer For Attorneys' Fees And Costs Is Contrary To Law.

In addition to gratuities Defendants seek to be paid, Defendants also request attorneys'

fees and costs.  (ECF No. 254 at ¶¶ 1-6.)  Defendants are not allowed fees and costs on their

counterclaim; their prayer for the same must be dismissed.  First, "[a] prevailing party may not

recover attorney's fees unless an award of fees is authorized by an agreement between the parties,

statute, or court rule."  Teachers Ins. and Annuity Ass'n of America v. CRIIMI MAE Services

ltd. Partnership, 681 F. Supp. 2d 501, 512 (S.D.N.Y. 2010).  As no such authorization exists for

the claim of unjust enrichment and as the parties here have in no way agreed to the same,

Defendants' claims for fees and costs must be dismissed.  See Firefly Equities LLC v. Ultimate

Combustion Co., Inc., No. 10 Civ. 1869 (JSR), 2010 WL 5174358 at *6 (S.D.N.Y. Dec. 14,

2010) (stating, with respect to breach of contract and unjust enrichment claims, that the claimant

"points to no applicable statute or agreement between the parties which could serve to alter the

default rule that attorney's fees and litigation expenses are to be borne by the parties

themselves.").

Second, shifting attorneys' fees and costs to the entertainers in the event they win this

lawsuit would violate both the FLSA and NYLL.  The FLSA provides that "[t]he court ... shall,

in addition to any judgment awarded to the plaintiff ..., allow a reasonable attorney's fee to be

paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  This fee shifting provision

is not optional.  "The court had no discretion to deny fees to a prevailing plaintiff; its discretion

extends only to the amount allowed.  An award of fees is mandatory under § 216(b)."  Boyke v.

Superior Credit Corp., No. 01-CV-0290, 2006 WL 3833544 at *9 (N.D.N.Y. Dec. 28, 2006). This fee shifting is also required under the NYLL.  N.Y. Labor Law § 198(1-a); Ting Yao Lin v. Hayashi Ya II, Inc., No. 08 Civ. 6071(SAS)(AJP), 2009 WL 289653 at *10 (S.D.N.Y. Jan. 30, 2009) ("FLSA and New York Labor Law provide for attorneys' fees and costs to a successful plaintiff.") (citing cases).  Nor does the receipt of fees shift to the defendant.  As discussed above, the FLSA does not provide for indemnification to the employer in such a suit. Defendants' claims for fees and costs, therefore, must be dismissed because they would force the entertainer employees to waive their statutory right to have their employers—Defendants—pay all legal costs should Plaintiffs prevail in this wage and hour case.

## C. CASE LAW SUPPORTING DEFENDANTS' POSITION IS DISTINGUISHABLE.

Case law seeming to support Defendants' position is distinguishable.  In Doe v. Cin Lan, 2:08-cv-12719-SJM-MJH (E.D. Mich. Feb. 24, 2010), entertainers' motion to dismiss counterclaims for unjust enrichment was denied.  (Ex. 3 at 2.)  However, Cin-Lan differs from the instant case in several important respects.  To the extent it is similar, the Court's decision was simply wrong.

First, Cin-Lan differs from this case because, in Cin-Lan, the court had not certified a class and Cin-Lan did not seek to assert its counterclaims on a class-wide basis.  Accordingly, the court did not consider all of the reasons that the Second Circuit has presented as to why counterclaims should not be allowed to proceed on a class-wide basis.  See supra at III(B)(1).

Second, in Cin-Lan there was a written contract that expressly delineated how dance fees would be treated in the event that the club was found to have misclassified entertainers.  (Ex. 3 at 2-3; Ex. 4.)  There was an additional agreement between the parties that dance fees were the property of the club.  (Id.)  So, in that case, it was at least plausible as both a matter of contract

and a matter of law, that the amounts at issue were actually the club's property.  This possibility was supported by allegations that the club had specifically tracked the amount of money that entertainers had received in the form of dance fees from customers and had required entertainers to report all such amounts to the club.  (Ex. 3 at 12-13, finding it reasonable to assume, for pleading purposes, that the club might be entitled to make a claim for the return of dance fees because of "the existence of sample receipts…which seem to demonstrate that Cin-Lan did in fact account for Doe's nightly receipt of dance fees.")  Moreover, the unjust enrichment claim was allowed to proceed only in the event that the Defendants' contract-based counterclaims were obviated because the contract was unenforceable.  (Ex. 3 at 13.)  Here, it is undisputed that Defendants did not track or record cash performance fees Plaintiffs received from customers in any way.  (ECF No. 153 at ¶¶ 133, 135-137; ECF No. 254 at ¶ 133, 135-137.)  This, combined with Plaintiffs' statutory claim to performance fees as gratuities, means Defendants have not pled facts sufficient to establish any right to receive dance fees from Plaintiffs.

A third distinction between the instant case and Cin-Lan is the fact that the Defendant in Cin-Lan alleged, based on its records, that the net amount of money the Plaintiff received far exceeded the minimum wage on "each of Plaintiff's performance dates." (Ex. 3 at 3.)  Such allegations are missing here, where Defendants have alleged only that the *gross* amounts Plaintiffs received "may have" been "in excess of minimum wage".  (ECF No. 254 at ¶ 301.)  Defendants' counterclaim fails to account in any way for the "house fee" payments, fines, and mandatory payments to Defendants' staff that Plaintiffs were undisputedly required to make in order to work.  (ECF No. 153 at ¶¶ 144-149, 170-174; ECF No. 254 at ¶¶ 145-146, 296-308.)  While Defendants allege, therefore, that the *gross* amount Plaintiffs received *may* have exceeded the minimum wage, they nowhere allege that the *net* amount Plaintiffs received exceeded the

minimum wage, much less that the net amount Plaintiffs would receive as a result of a favorable judgment would be so excessive as to "shock the conscience."  See Jeffery v. Epstein, 366 F. Supp. 1281 (S.D.N.Y. 1973) (holding that purpose of unjust enrichment is to prevent enrichment which would "shock the court's conscience.")

While Cin-Lan is distinguishable from the instant case for the above reasons, insofar as the Cin-Lan court found that a claim for "unjust enrichment" could lie where the Defendant alleged that it was "unjust" for Plaintiffs to both retain payments from third parties (to which the Defendant could have laid claim but did not) and wages, the decision is simply wrong.  "Unjust enrichment" means something different from "got paid more than Defendants say they would have paid if Defendants had followed the law."  There is no legal basis for the proposition that an entertainer "in good conscience" cannot receive wages while also being allowed to retain money she receives from customers in exchange for dances.  There is no "cap" on compensation that entertainers should be paid, and if there were such a cap, there is no reason to believe that it is exceeded simply where an employer alleges that an entertainer "may have" grossed more than the minimum wage.  The mere fact that Defendants allege they would have not *chosen* to allow entertainers to receive both wages and performance fees is not enough, standing alone, to make it *unjust* for Plaintiffs to retain both.  Moreover, what basis is there to use what Defendants say they would have done as the appropriate baseline for Plaintiffs' proper compensation?  Why would the Court believe that Plaintiffs would have agreed to the terms Defendants represent they would have unilaterally imposed?  Is it really plausible that entertainers would have agreed to work for Defendants, and to take on the additional duties Defendants say they would have imposed, if entertainers' compensation would have been limited solely to the minimum wage?

Equitable remedies are supposed to fix an injustice, not perpetrate one.  Defendants have

not alleged anything Plaintiffs have done or might do anything which is so "inequitable" as to warrant the imposition of an equitable remedy that would have the effect of releasing Defendants from their obligations to pay wages and not make employees pay in order to work.  See In re Adelphia Commns Corp., 365 B.R. 24, 67–69 (Bankr. S.D.N.Y. 2007) ("Inequitable conduct is that conduct which may be lawful, yet shocks one's good conscience.  It means, *inter alia*, a secret or open fraud, lack of faith or guardianship by a fiduciary; an unjust enrichment, not enrichment by bon chance, astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close or double dealing or foul conduct.") (internal citations omitted).  For a Defendant to assert that if it is found to have engaged in violations of state and  federal law it, and not the employees who it was found to have misclassified and mistreated, should receive damages, is counterintuitive at best and repugnant at worst.

## IV.   **CONCLUSION.**

Based on the foregoing, the Court should dismiss Defendants' counterclaim.

Dated: April 25, 2011                NICHOLS KASTER, PLLP

s/E. Michelle Drake_____
Donald H. Nichols, NY Bar No. 725840
Michele R. Fisher (MF 4600)
Steven Andrew Smith, MN Bar No. 260836
(*admitted pro hac vice*)
E. Michelle Drake, MN Bar No. 0387366
(*admitted pro hac vice*)
Anna P. Prakash, MN Bar No. 0351362
(*admitted pro hac vice*)
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200

ATTORNEYS FOR PLAINTIFFS