**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SABRINA HART and REKA FUREDI on behalf of themselves and all others similarly situated, and the New York Rule 23 Class,

Plaintiffs,

v.

RICK'S CABARET INTERNATIONAL, INC., RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,

Defendants.

Case No. 09-CV-3043 PAE/RLE

**RESPONSE AFFIDAVIT OF ANNA P. PRAKASH**

STATE OF MINNESOTA )
) ss
COUNTY OF HENNEPIN )

Anna P. Prakash, being duly sworn, states as follows:

1. I am one of the attorneys for the Plaintiffs in the above matter.

2. I submit this Affidavit in opposition to Defendants' Motion for Summary Judgment.

3. Support staff at Nichols Kaster, PLLP, working under my supervision, performed arithmetic based on the Club Trax data produced by Defendants in this litigation using Microsoft Excel and, where indicated, the assumptions set forth herein.

4. This arithmetic is described in ¶¶ 6-20, *infra*.

5. The Club Trax data used was:

   a. Log-in and Log-out Reports: NKA0006407, NKA0008379, NKA0008661, NKA0012531 and NKA0013187.

b. Dance Dollar Reports: NKA0006407, NKA0008381, NKA0008661, NKA0012531 and NKA0013187.

c. Charge Summaries: NKA0006407, NKA0008380, NKA0008661, NKA0012531 and NKA0013187.

6. The arithmetic done was based on a workweek running from Sunday to Saturday. (See e.g., Decl. of Poria Moridzadeh submitted with Defs.' Motion for summary judgment).

7. The total number of individual entertainers listed in the Club Trax Log-in/out Reports was arrived at by isolating unique identification numbers and then combining Club Trax data associated with different identification numbers that had been assigned to people with the same legal name. The number of individual entertainers on the resultant list is 2,254.

8. The number of hours each entertainer worked in each workweek was calculated by subtracting the log-in time from the log-out time on the Log-in and Log-Out Reports for each date within that workweek. **[A]**.

9. An alternate number of hours each entertainer worked in each workweek was calculated by subtracting the log-in time on the Log-in and Log-Out Reports from the corresponding daily last dance dollar redemption time on the Dance Dollar Reports for each date within the workweek. [1] **[B]**.

10. The amount of cash each entertainer received in exchange for dance dollars ("dance dollar redemption amounts") in each workweek was calculated by adding the amounts listed for each date in the Club Trax Dance Dollar Reports. **[C]**.

11. Amounts of hypothetical cash received by each entertainer in each workweek were arrived at by multiplying each entertainer's weekly dance dollar redemption amount by a

[1] Where last dance dollar redemption time was unavailable, the log-out time on the Log-in and Log-Out Reports was used.

correspondent multiplier equal to that needed to make dance dollars:

a. 60% of the total amount the entertainer received that week **[D]**; and

b. 10% of the total amount the entertainer received that week **[E]**.

12. Amounts of hypothetical cash received by each entertainer in each workweek were also calculated based on the cash percentage estimates listed in Defendants' Statement of Facts. These amounts were calculated by multiplying the dance dollar amounts by the appropriate cash multiplier for each Plaintiff: Sabrina Hart, Maria Chunikhina, Tajuana McCleary, Simon Silk, and Rhea Dilag. The weekly cash estimate for Emily Finsterwald was calculated by applying the average ratio of cash to dance dollar payment for all dates covered by Exhibit X to the February 15, 2013 Declaration of Jeffrey A. Kimmel. **[F]**.

13. "Payments" for each entertainer in each workweek were calculated by adding the "Payment" entries in the Club Trax Charge Summaries for that workweek. For each log-in in a given workweek, $60 was added to the payment amount to account for the "tip outs" each entertainer was required to pay to the DJ, the house mom, and Rick's management. **[G]**.

14. Each entertainer's weekly dance dollar redemption amounts **[C]** were then divided by her weekly hours based on log-out time **[A]**.

a. Based on this arithmetic, the hourly rate fell below the applicable federal minimum wage for 87.27% of entertainers in at least one week for their employment.

b. Based on this arithmetic, the hourly rate fell below the applicable federal minimum wage for each of the following Plaintiffs in the following number of weeks of their employment:

i. Sabrina Hart = 12 weeks

ii. Reka Furedi = 6 weeks

iii. Emily Finsterwald = 1 week

iv. Maria Chunikhina = 11 weeks

v. Tajuana McCleary = 39 weeks

vi. Simone Silk = 3 weeks

vii. Rhea Dilag = 18 weeks

viii. Alrea Royer = 8 weeks

ix. Elsie Ginsberg = 28 weeks

x. Tatiana Pestova = 35 weeks

xi. Marina Lamb = 3 weeks

xii. Jessica Simon = 32 weeks

xiii. Emily Venizelos = 19 weeks

xiv. Desiree Hemmes = 15 weeks

xv. Erin Mullen = 12 weeks

xvi. Dinara Lajeunesse = 26 weeks

xvii. Carrie Bateman = 2 weeks

xviii. Lilian Hernandez = 28 weeks

xix. Stephanie Villafana = 3 weeks

xx. Maria Sapozhnikov = 20 weeks

xxi. Alla Pasechnik = 4 weeks

xxii. Ti'Lesa Clark = 12 weeks

xxiii. Ashley Jurman = 4 weeks

xxiv. Maritza Lavergne = 6 weeks

xxv. Evelyn Atkinson = 0 weeks

xxvi. Evelyn Jimenez = 0 weeks

xxvii. Ariel McClellan = 10 weeks

xxviii. Viktoriya Shulman = 5 weeks

xxix. Alicia Daniels = 5 weeks

xxx. Irma Bashore-Canzoneri = 5 weeks

xxxi. Katy Blakey = 1 week

xxxii. Yasoda Smith = 5 weeks

xxxiii. Jessica Melton = 0 weeks

xxxiv. Amy Christy = 1 week

c. Based on this arithmetic ***and when the amounts paid to the club by each entertainer in each week*** **[G]** ***were subtracted from the amounts received in that week***, the hourly rate fell below the applicable federal minimum wage for 92.5% of entertainers in at least one week of their employment, including Plaintiffs Jimenez and Atkinson.

15. The cash estimates for the six specific Plaintiffs listed in ¶ 12, *supra*, **[F]** on a weekly basis were added to each entertainer's dance dollar redemption amounts **[C]** and then divided by her weekly hours based on log-out time **[A]**. Based on this arithmetic:

a. The hourly rate fell below the applicable federal minimum wage for five of the six Plaintiffs in at least one week of their employment.

b. When the amount paid to the club by each of the six Plaintiffs in each week **[G]** were subtracted from the amount received in that week, the hourly rate fell below

the applicable federal minimum wage for all six Plaintiffs in at least one week of their employment.

16. Each entertainer's weekly dance dollar redemption amounts **[C]** were divided by her weekly hours based on last redemption time **[B]**. Based on this arithmetic:

a. The hourly rate fell below the applicable federal minimum wage for 86.82% of entertainers in at least one week of their employment.

b. When the amount paid to the club by each entertainer in each week **[G]** was subtracted from the amount received in that week, the hourly rate fell below the applicable federal minimum wage for 91.66% of entertainers in at least one week of their employment.

17. Each entertainer's hypothetical estimated cash receipts for a given workweek **[D]** were added to the entertainer's dance dollar redemption amounts for that week **[C]** and divided by the sum of that entertainer's weekly hours based on log-out time **[A]**. Based on this arithmetic, the hourly rate fell below the applicable federal minimum wage for 85.89% of entertainers in at least one week of their employment.

18. Each entertainer's hypothetical estimated cash receipts for a given workweek **[E]** were added to the entertainer's dance dollar redemption amounts for that week **[C]** and divided by the sum of that entertainer's weekly hours based on log-out time **[A]**. Based on this arithmetic, the hourly rate fell below the applicable federal minimum wage for 83.10% of entertainers in at least one week of their employment.

19. Each entertainer's hypothetical cash receipts for a given workweek **[D]** were added to that entertainer's dance dollar redemption amounts for that week **[C]** and divided by the sum of that entertainer's weekly hours based on last dance dollar redemption time **[B]**. Based on

this arithmetic, the hourly rate fell below the applicable federal minimum wage for 85.45% of entertainers in at least one week of their employment.

20. Each entertainer's hypothetical cash receipts for a given workweek **[E]** were added to that entertainer's dance dollar redemption amounts for that week **[C]** and divided by the sum of that entertainer's weekly hours based on last dance dollar redemption time **[B]**. Based on this arithmetic, the hourly rate fell below the applicable federal minimum wage for 83.01% of entertainers in at least one week of their employment.

21. A true and correct copy of the following documents are attached hereto to as exhibits:

**EXHIBIT 269:** President Franklin D. Roosevelt, Democratic Party Primaries, FIRESIDE CHAT (June 24, 1938);

**EXHIBIT 270:** Terry v. Sapphire Gentleman's Club, No. A602800 (D.Nev., Clark County, Aug. 18, 2011);

**EXHIBIT 271:** B.F. Skinner, *The Experimental Analyses of Behavior,* AMERICAN SCIENTIST (1957);

**EXHIBIT 272:** IRS Publication 529, Miscellaneous Deductions (2012);

**EXHIBIT 273:** Hilborn v. Prime Time Club, Inc., 11-cv-0197 (BMS), ECF No. 79, (E.D. Ark. Apr. 20, 2012);

**EXHIBIT 274:** Hilborn v. Prime Time Club, Inc., 11-cv-0197 (BMS), Civil Docket Sheet, (E.D. Ark.);

**EXHIBIT 275:** 155 Cong. Rec. S13253 (Dec. 15, 2009) (Sen. Kerry);

**EXHIBIT 276:** *Employee Misclassification as Independent Contractors*, United States Department of Labor;

**EXHIBIT 277:** Updating Regulations Issued Under the Fair Labor Standards Act; Final Rule, 76 Fed. Reg. 18839 (April 5, 2011);

**EXHIBIT 278:** In re Penthouse Executive Club, 10-cv-1145, ECF No. 84, (S.D.N.Y. March 15, 2012);

**EXHIBIT 279:** Anakar, Ed – February 29, 2012 deposition transcript excerpts not previously submitted by either party, including cited deposition exhibit;

**EXHIBIT 280:** Langan, Eric – October 7, 2009 deposition transcript excerpts not previously submitted by either party;

**EXHIBIT 281:** Sistrunk, Kenneth – October 29, 2009 and May 20, 2010 deposition transcript excerpts not previously submitted by either party;

**EXHIBIT 282:** Trapani, Melinda – February 17, 2012 deposition transcript excerpts not previously submitted by either party;

**EXHIBIT 283:** Peregrine Interrogatory Response No. 29;

**EXHIBIT 284:** Excerpt from Bashore-Canzoneri Deposition Exhibit IC-1; and

**EXHIBIT 285:** Excerpts from personnel files, bates labeled: P066, P075, PER2654, PER2663, PER2673, PER2682, PER2690, PER2697, PER2713, PER2720, PER2727, PER2734, PER2740, PER2751, PER2759, PER2771, PER2788, PER2795, PER2802, PER2803, PER2809, PER2815, PER2844, PER2857, PER2863, PER2872, PER2873, PER2880, PER2904, PER2905, PER2912, PER2923, PER2934, PER2951, PER2952, PER2958, PER2964, PER2972, PER2980, PER2987, PER3004, PER3010, PER3017, PER3026, PER3039, PER3046, PER3047, PER3053, PER3060, PER3061, PER3069, PER3222, PER3236, PER3244, PER3267, PER3285, PER3291, PER3306, PER3316, PER3331, PER3339, PER3353.

FURTHER YOUR AFFIANT SAYETH NOT.

Dated: March 14, 2013

s/Anna P. Prakash
Anna P. Prakash

Subscribed and sworn to before me
this 14th day of March, 2013.

s/Heather J. O'Neil
Notary Public

My Commission Expires Jan. 31, 2017