UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                  :

SABRINA HART and REKA FUREDI, *on behalf of*    :
*themselves and all others similarly situated, and the New*   :
*York Rule 23 Class*,                                       :

                              Plaintiffs,     :      09 Civ. 3043 (PAE)

             -v-                                 :      OPINION & ORDER

RICK'S NY CABARET INTERNATIONAL, INC., RCI  :
ENTERTAINMENT (NEW YORK), INC., and          :
PEREGRINE ENTERPRISES, INC.,                 :

                            Defendants.   :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       On September 10, 2013, the Court issued an Opinion and Order resolving various issues in this case. The Court held that plaintiffs, who are exotic dancers, were employees of the Rick's Cabaret NY strip club ("Rick's NY" or "the Club") entitled to be paid a minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq.* & §§ 650 *et seq.*, and that Rick's NY's obligation under the FLSA to pay such a wage was not discharged by customers' payment to the dancers of "performance fees." *See Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013) (Dkt. 460) ("Opinion"). The Court further held that defendant Peregrine Enterprises, Inc. ("Peregrine") was an employer of plaintiffs and therefore liable to the extent of any finding of liability on any claims in this case. *Id.* The Court also granted summary judgment to plaintiffs on defendants' counterclaim for unjust enrichment. *Id.*

The Opinion, however, left open various significant issues, including whether: (1) customers' performance fees can be applied to Rick's NY's duty under the NYLL to pay a minimum wage; (2) defendants Rick's NY Cabaret International New York ("RCI NY") and Rick's NY Cabaret International, Inc. ("RCII") were also employers of plaintiffs and jointly liable to plaintiffs—along with Peregrine—to the extent of any liability; and (3) any violations of the FLSA and the NYLL were willful and/or made other than in good faith. *Id.* Important here, the Court also declined to grant summary judgment to either party on plaintiffs' Claim Five, which asserted that defendants had charged plaintiffs improper deductions in violation of NYLL § 193. *Id.* at *28. On that claim, the Court identified a legal question on which it sought briefing from counsel. *Id.*

Presently before the Court are motions on three issues, which, in an order issued on October 2, 2013, the Court determined were productively resolved at this stage. Dkt. 464. For the reasons that follow, the Court: (1) denies defendants' motion for reconsideration of the Court's holding that plaintiffs were employees of Rick's NY after February 28, 2010; (2) denies defendants' motion to set the class period end-date as February 28, 2010, or alternatively as December 20, 2010; the Court instead sets the class period end-date as October 31, 2012; and (3) on the issue identified above, grants plaintiffs' motion for summary judgment on Claim Five, holding that the Club's deductions violated NYLL § 193.

## I. Defendants' Motion for Partial Reconsideration[1]

### A. Legal Standard

The standard governing motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010) ("The threshold for prevailing on a motion for reconsideration is high."). Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). District courts will only amend or alter a judgment "to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010).

Litigants are generally barred from introducing new facts in a motion to reconsider. *See Polsby v. St. Martin's Press*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation omitted) (under Local Rule 603, "a party may not advance new facts, issues, or arguments, not previously presented to the Court"). A party seeking reconsideration "is not

---

[1] In resolving this motion, the Court considered: Defendants' Memorandum of Law in Support of Their Motion for Partial Reconsideration ("Def. Br.") (Dkt. 466); Plaintiffs' Response Memorandum in Opposition to Defendants' Motion for Reconsideration ("Pl. Br.") (Dkt. 477); Defendants' Consolidated Reply Memorandum of Law ("Def. Rep. Br.") (Dkt. 485); the Declaration of Jeffrey A. Kimmel in Support of Motion for Partial Reconsideration ("Kimmel Decl.") (Dkt. 467); the Reply Affidavit of Jeffrey A. Kimmel ("Kimmel Rep. Decl.") (Dkt. 486); and the Affidavit of Anna P. Prakash ("Prakash Aff.") (Dkt. 391).

3

supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *De Los Santos v. Fingerson*, No. 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998). The purpose of Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Naiman v. N.Y. Univ. Hosps. Ctr.*, No. 95 Civ. 6469 (RPP), 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)).

### B. Application

Defendants seek partial reconsideration of the Court's ruling that plaintiffs are employees under the FLSA and the NYLL. Specifically, defendants ask that the Court rule that, after February 28, 2010, the plaintiff dancers ceased to be employees of the Club, and instead became independent contractors. Defendants' basis for making this argument is the fact, which is undisputed, that, at of the end of February 2010, nearly nine months after plaintiffs filed this lawsuit, the Club stopped issuing written guidelines governing the dancers.

Defendants' motion for reconsideration is denied for three independent reasons.

First, the standard for reconsideration is not met. In its previous ruling, the Court took into account the primary fact upon which defendants base the motion to reconsider—that Rick's NY stopped using written guidelines (and imposing fines pursuant to these guidelines) after February 2010. The Opinion, in fact, makes clear the Court was aware of this fact and expressly considered it in assessing whether the dancers were employees after February 2010:

> *Because Rick's NY stopped using written guidelines in February 2010*, the Court has not considered the written Guidelines as such in its analysis of Rick's NY's control from that point forward. That said, there is no evidence in the record that the Club, following that point, relaxed its expectations as to the matters (*e.g.*,

4

>   dancer conduct, dress, time recorded) covered in the Rules. Nor is there evidence that the Club ever informed dancers that the rules contained in the written Guidelines were no longer in effect. Viewing the facts in totality, the Court finds that, even after February 2010, Rick's NY[] continued to exercise significant control over the dancers.

Opinion at *11 n.6 (emphasis added); *see id.* at *10 n.5 (noting testimony from general manager of Rick's NY that fines were not imposed after February 2010). Motions for reconsideration are generally denied where the moving party cannot "point to controlling decisions or data that the court *overlooked*." *See Shrader*, 70 F.3d at 257 (emphasis added). The Court did not overlook the fact that Rick's NY stopped using written guidelines in February 2010; defendants simply disagree with the Court's conclusion that this single change of circumstance was insufficient to transform the role of the dancers at Rick's NY from employees to independent contractors. A motion to reconsider is not an appropriate context for a party to repeat or rehash previously rejected arguments. *See Associated Press*, 395 F. Supp. 2d at 19.

Second, defendants' *ipse dixit* assertion that the Court based its determination that plaintiffs were employees "almost exclusively on Defendants' use of written 'Entertainer Guidelines' between September 2005 and February 2010," *see* Def. Br. at 1, is simply wrong. Rather, in concluding that dancers at Rick's NY are employees under the FLSA, the Court applied the Circuit's economic realities test, which takes into account these five factors:

>   (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Opinion at *5 (citing *Brock v. Superior Care*, 840 F.2d 1054, 1058–59 (2d. Cir. 1988)). Emphasizing that no one factor is dispositive, the Court considered and weighed all five factors

5

to determine whether the totality of the circumstances revealed an employer-employee relationship between Rick's NY and its dancers. *Id.*

The Court certainly considered the written guidelines as strong evidence of the degree of control exerted by Rick's NY over the dancers before February 2010. *See* Opinion *5–11. But the Court also explicitly considered other factors that, it held, also revealed an employer-employee relationship. These included the degree of control Rick's NY exerted over the dancers beyond the Guidelines, *see id.* at *11–12, Rick's NY's dominant opportunity for profit, *see id.* at *12–13, the limited specialized skill required to be an exotic dancer, *see id.* at *13, and the overwhelming extent to which the dancers were integral to Rick's NY success, *see id.* at *14. Based on its assessment of all five factors, the Court concluded—and reiterates that conclusion today—that "the five factors lopsidedly favor a finding that the dancers at the Club were employees" both before and after February 2010. *Id.* at *15.

As to the NYLL, the Court similarly held, after considering the economic realities test and the five factors articulated in *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193 (2003), that the "actual working relationship" between the dancers and Rick's NY was that of an employer and employee under the NYLL. Opinion at *15–19. Far from basing its decision—as defendants wishfully assert—"almost exclusively" on Rick's NY's written Guidelines, the Court considered all the relevant factors in finding that, based on the totality of the circumstances, Rick's NY's dancers were employees under the NYLL.

Third, and finally, there is overwhelming evidence in the summary judgment record that, even after it revoked its written guidelines in February 2010, Rick's NY maintained the same rules and expectations for its dancers, and communicated the substance of these expectations to the dancers. Thus, even if reconsideration were in order, defendants' argument that the dancers

were not employees after February 2010 would still fail on the merits. The summary judgment record contains overwhelming evidence that although Rick's NY decided—nine months after this lawsuit began—to stop issuing written guidelines and fining dancers for violating those guidelines, the Club did not change the substance of the rules governing dancers at the Club.

The Court does not canvass all this evidence here. It is effectively canvassed in plaintiffs' memorandum of law, and the Court incorporates by reference here the many record citations on which plaintiffs rely. *See, e.g.,* Pl. Br. 4–16. The following evidence, however, is illustrative of the point.

First, Ed Anakar, the Director of Operations and Regional Manager for Rick's NY, testified on February 29, 2012 that the Club continued after February 2010 to review the guidelines verbally with newly hired dancers. *See* Kimmel Rep. Aff., Ex. B: Anakar Dep. at 91. Specifically, Mr. Anakar was asked "what the procedure is currently with respect to communicating the substance of the guidelines to entertainers in New York"; he testified, "[j]ust the hiring manager during orientation will go over the guidelines." *Id.* Explaining the guidelines verbally to a dancer instead of providing them in writing does not make them meaningfully less a means of control. Attempting to defuse this testimony, defendants argue that Anakar was confused about whether plaintiff was referring to the previously written guidelines or the "general direction that entertainers were provided as part of the orientation process relating to state and local rules and regulations." Def. Rep. Br. at 2–3. But it is plain that Anakar's testimony was about the written guidelines for dancers. Immediately after his statement that the hiring manager went over the "guidelines" during a dancer's orientation, Anakar agreed that these guidelines were distinct from state and local law. Anakar Dep. at 92. Plaintiffs' counsel then reviewed several of these guidelines with Anakar, such as those prohibiting the wearing of

7

high heels and the showing of tattoos. *Id.* at 92–94. The unavoidable import of Anakar's testimony is that, after February 2010, Rick's NY continued, now in verbal form, to convey to newly hired dancers the substantive expectations previously embodied in its written guidelines.

Other evidence in the record points towards the same conclusion. For instance, as of February 17, 2012, some two years after the written guidelines were dispensed with, there was still in place at Rick's NY an "entertainer manager" position to supervise the dancers. *See* Prakash Aff., Ex. 55A: Trapani Dep. at 21. Rick's NY also continued to employ "house moms," like Melinda Trapani, to manage the dancers. *See* Trapani Dep. at 6 (testifying that one of the tasks as a house mom is "enforce[ing] the rules that managers make you enforce"). In her deposition, Tapani detailed some of these rules. They included requiring dancers to dance on stage, to wear long dresses except on certain days, and to clock in when they arrive at the club and to check out with management before leaving for the night. *Id.* at 19–32. Dancers were also prohibited from using the public bathrooms, getting certain types of nipple piercings, getting tattoos, and chewing gum. *Id.* This and other evidence canvassed by plaintiffs reveals that Rick's NY used "entertainer managers" and "house moms" to continue, after February 2010, to enforce the substance of the guidelines, thereby controlling dancers' attire, looks, and behavior. And, as the Court noted in its original Opinion, there is no evidence that the Club ever told dancers that it was substantively abandoning the many rules and expectations articulated in the written guidelines governing dancers. That fact, too, undermines defendants' claim that the elimination of a written code of guidelines transformed the dancers, theretofore employees, into independent contractors. The conclusion is inescapable that, after February 2010, Rick's NY maintained significant control over dancers, even without written guidelines.

8

For these reasons, defendants' motion for reconsideration of whether the plaintiff dancers were employees after February 2010 is denied.

## II. Defendants' Motion to Modify the Class Period End-Date[2]

Defendants' motion to set February 28, 2010 as the end date for the Rule 23 class period, or in the alternative, December 20, 2010, is denied. Instead, the Court sets the class period end-date as October 31, 2012, which is when fact discovery ended in this case.

At the outset, the Court concludes that it is necessary to set a clear end-date to the class period. The class as certified on December 20, 2010, by the judge then assigned to this case ran from "six years prior to the filing of the Complaint to the entry of judgment in this case." Opinion at *3 (citing Certification Opinion at 3, 20 (Dkt. 253)). But an open-ended end-date is untenable. It fails to take account of the possibility that material facts might change. And it denies the parties, after the close of fact discovery, a practical vehicle for exploring whether there have been material factual changes. Lack of clarity as to the end date of the class period also has the potential to confuse putative class members as to whether their interests will, or will not, be represented in the pending lawsuit. *See Bauer-Ramazani v. Teachers Ins. and Annuity Ass'n of America-College Retirement and Equities Fund*, 290 F.R.D. 452, 462 (D. Vt. 2013) ("A class definition must be precise, objective, and presently ascertainable.") (citation omitted); *Jacks v. DirectSat USA, LLC*, No. 10 Civ. 1707 (JBG), 2012 WL 2374444, at *8 (N.D. Ill. June 19, 2012) (because plaintiffs did not "provide a definite end date for the proposed class period,"

---

[2] In resolving this issue, the Court considered: Defendants' Memorandum of Law in Support of Their Motion to Modify the End Date of the Class Period ("Def. Br.") (Dkt. 470); Plaintiffs' Response Memorandum in Opposition to Defendants' Motion to Modify Class End Date ("Pl. Br.") (Dkt. 478); Defendants' Consolidated Reply Memorandum of Law ("Def. Rep. Br.") (Dkt. 485); the Declaration of Jeffrey A. Kimmel in Support of Motion to Modify Class End Date ("Kimmel Decl.") (Dkt. 469); and the Reply Affidavit of Jeffrey A. Kimmel ("Kimmel Rep. Decl.") (Dkt. 486).

9

the court adopted the date "the complaint was filed"); *Ground Package System, Inc.*, No. 05 Civ. 527 (CAN), 2008 WL 927654, at *4 (N.D. Ind. April 4, 2008) ("Without an end date, the class could potentially continue to grow exponentially as time passed, which would result in a never ending line of notices."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001) ("In my discretion, and in the interests of fairness and efficiency of case management, I fix the end date of the class period as the date of this decision."); *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233 (W.D. Pa. 2001) ("The proposed class may not be amorphous, vague, or indeterminate and it must be administratively feasible to determine whether a given individual is a member of the class.") (citation omitted). For these reasons, the Court stated in its Opinion that it intended to set an end date to the class period of no later than October 31, 2012, the date on which fact discovery closed. *See* Opinion at *3 n.2.

Defendants' argument for setting the end date at February 2010 is essentially the same as their argument that the dancers, purportedly, ceased to be employees after that month: The Club then ceased using written guidelines and fining dancers for violations of those guidelines. Def. Br. at 4. Even if this were not so, defendants argue, these changes were so fundamental that a class-representative dancer who worked for Ricks' NY before February 2010 would have too little in common with a dancer who worked for Rick's NY afterwards such that the Rule 23 requirements of commonality and typicality would not be met. *Id.* at 15–17.

The Court disagrees. For the reasons reviewed above and in the Court's original Opinion, based on the evidence in the summary judgment record, the changes made by Rick's NY in February 2010 were not nearly as consequential as Rick's NY suggests. The Club's substantive expectations for the guidelines remained in place; and in a host of ways, the Club continued to maintain significant control over its dancers both before and after February 2010.

10

The record does not reflect that the experience of being a dancer at Rick's NY was materially different before and after February 28, 2010.

Furthermore, defendants do not argue that the abandonment of written guidelines after February 2010 is germane to any issue that a jury may be called upon to determine. On the critical legal issue that the Court has resolved—the legal status of the dancers—the Court has already held that they were employees at all times. Defendants have not shown that the remaining issues left in the case that may be resolved by a jury (*e.g.*, the defendants' willfulness and/or lack of good faith; and whether defendants RCI New York and RCII were the dancers' employers) turn on facts that materially changed after February 28, 2010. The claims of all dancer-plaintiffs instead "depend upon a common contention." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The Court therefore rejects defendants' bid to end the class period as of February 28, 2010.

Defendants' alternative proposed date (December 20, 2010, the class certification date) is far less logical as an end date than the date chosen by the Court (October 31, 2012, when fact discovery closed). Both parties were aware throughout discovery that—in light of the Certification Opinion, *see* Dkt. 253—discovery needed to cover the period through (at least) the end of the discovery period. Defendants therefore cannot claim any lack of notice or other unfairness from setting October 31, 2012 as the class period end-date. Defendants had the opportunity and incentive to take discovery as to Rick's NY's practices through October 31, 2012. And no evidence adduced during fact discovery suggests that any underlying facts as to the conditions of employment at Rick's NY changed on or about the date when the class was originally certified.

For the foregoing reasons, the Court denies defendants' motion and sets the class period end date as October 31, 2012.

## III. The Parties' Cross-Motions for Summary Judgment on Claim Five[3]

### A. Background

Claim Five of the Third Amended Complaint ("TAC") (Dkt. 153) alleges that Rick's NY violated NYLL § 193. Plaintiffs allege that "Rick's NY required the dancers to make mandatory daily tip-out payments to management each night, and imposed, although it often reversed or refunded, fines for lateness and misconduct." Opinion at *27; *see also* TAC ¶¶ 238–243. In the previous Opinion, the Court concluded that these fines and "tip outs" were deductions that could not properly be made from wages under NYLL § 193. *See* Opinion at *28 (citing NYLL § 193(1)(a)). However, the Court declined to grant plaintiffs' motion for summary judgment on Claim Five, because the fact that dancers had not been paid by Rick's NY, but instead received performance fees from customers, might preclude any recovery under § 193(1), which applies to improper deductions "from wages." *Id.* at *28, 34.

In a subsequent Order on October 2, 2013, the Court set a briefing schedule on the issue of whether "deductions by Rick's NY, which were made from performance fees paid by customers, were *from wages*," as required by NYLL § 193(1)(a). Dkt. 464 (internal citation

---

[3] In resolving this issue, the Court considered: Plaintiffs' Memorandum in Support of Motion for Summary Judgment on Their Claim Under New York Labor Law § 193 ("Pl. Br.") (Dkt. 472); Defendants' Memorandum of Law in Support of Their Cross-Motion for Summary Judgment Dismissing the Fifth Claim of Plaintiffs' Third Amended Complaint ("Def. Br.") (Dkt. 475); Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment ("Pl. Resp. Br.") (Dkt. 483); Defendants' Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Def. Resp. Br.") (Dkt. 484); the Affidavit of Anna P. Prakash in Support of Plaintiffs' Motion for Summary Judgment ("Prakash Aff.") (Dkt. 473); and the Declaration of Jeffrey A. Kimmel in Support of Defendants' Cross-Motion for Summary Judgment ("Kimmel Decl.") (Dkt. 476).

omitted) (emphasis in the original).  On October 15, 2013, the parties filed cross-motions for summary judgment on this claim, along with memoranda of law.  Dkt. 471–476.  On October 29, 2013, the parties filed opposition briefs.  Dkt. 483–484.

### B. Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

The Court has already held that the deductions made by the Club came from performance fees that customers paid to dancers, and that these fees are not "wages."  *See* Opinion at *28 ("the Court has held that the performance fees received from customers did not constitute wages").  The parties' briefs accept those holdings.  *See* Pl. Br. at 1 ("To be clear, Plaintiffs were paid no wages."); Pl. Br. at 5 n.3 ("Plaintiffs readily concede that 'performance fees' are not wages or any type of payment that could ever satisfy Defendants' minimum wage obligations under the NYLL."); Def. Resp. Br. at 4 ("Here, the Performance Fees do not constitute wages").  Summary judgment on Claim Five therefore turns on a question of law:  Can employees who do not receive wages recover for violations of NYLL § 193?

For the following reasons, the Court concludes that the dancers may recover, not under NYLL § 193(1), but under NYLL § 193(3)(a), a different provision of NYLL § 193 that is within the scope of Claim Five.  Accordingly, the Court grants plaintiffs' motion for summary judgment as to that claim, and denies defendants' cross-motion for summary judgment.

13

### C. Discussion

Section 193 broadly prohibits employers from taking money from their employees for the employer's own benefit.  *See Angello v. Labor Ready, Inc.*, 7 N.Y.3d 579, 586 (3rd Dep't 2006) (allowing employers to benefit from payments from their employees is "the inequity that the Legislature sought to prevent" by enacting § 193); *Hudacs v. Frito-Lay, Inc.*, 90 N.Y.2d 342, 347 (2nd Dep't 1997) (deductions "which [are] not for the benefit of the employer, however, [are] allowed").  For this reason, § 193(1) of the NYLL prohibits employers from making any "deduction from the wages of an employee" except in accordance with law or as expressly authorized in writing by and for the benefit of the employee.  The NYLL § 193(3)(a), in turn, provides that no employer "shall make any charge against wages, *or* require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages" under § 193(1).  NYLL § 193(3)(a) (codified at § 193(2) until November 16, 2012) (emphasis added).

> The TAC alleges that defendants violated *both* § 193(1)(a) and § 193(3)(a) by:
>
> [U]nlawfully deducting wages by imposing fines or penalties for lateness or misconduct, by reducing the minimum wage by expenses incurred by the Class Representatives and members of the New York Rule 23 Class in carrying out duties assigned by the Defendants, and by requiring Class Representative and members of the New York Rule 23 Class to make payments by separate transactions.

TAC ¶ 239.  The TAC alleges that defendants "impos[ed] fines or penalties for lateness or misconduct"; reduced minimum wages by expenses incurred by class members "in carrying out the duties assigned by" defendants; and unlawfully required class members "to make payments by separate transaction." *Id.* ¶ 241–43.

The Court analyzes the evidence under the two statutory subsections separately.  The text of § 193(1) forecloses any recovery by plaintiffs under that provision.  That provision prohibits

only improper "deduction[s] *from the wages* of an employee." NYLL § 193(1) (emphasis added). But in this case, plaintiffs were not paid wages at all. Plaintiffs argue that § 193(1) should also be read to prohibit deductions from what they term "earned wages," *i.e.*, the wages to which a dancer was legally entitled to receive from the Rick's NY, even if such wages were never paid. Pl. Br. at 14–17. But that is not a tenable reading of the statute, as the clause "deduction[s] from the wages of an employee" naturally presupposes deductions from actual, paid wages. Because plaintiffs were never paid such wages, defendants are not liable under § 193(1).

Defendants are liable, however, for violating § 193(3)(a). That provision prohibits an employer from requiring "an employee to make any payment by *separate transaction* unless such charge or payment is permitted as a deduction" under § 193(1). NYLL § 193(3)(a) (emphasis added). Because the text of § 193(3)(a) does not require that the objectionable "separate transactions" come from wages paid to the employees by the employer, plaintiffs here—despite not having been paid wages by the Club—can recover under this provision the fines, fees, and tip outs they were improperly required to pay by Rick's NY.

The structure of the statute further supports finding Rick's NY liable under § 193(3)(a). Section 193 provides for three different ways that employers can be liable for forcing employees to pay fines, fees, and tip outs. It prohibits: (1) making direct "deduction *from the wages* of an employee," *id.* at § 193(1) (emphasis added); (2) making "any charge *against wages*," *id.* at § 193(3)(a) (emphasis added); and (3) requiring "an employee to make *any payment* by *separate transaction*" unless that payment is a permitted deduction under § 193(1), *id.* at § 193(3)(a) (emphasis added). Notably, the first two provisions require that the deduction or charge have been *from* or *against wages*. However, the third prohibition—on payments by separate

15

transaction—makes no mention of wages. The New York state legislature therefore demonstrated that it knew how to include a "*from wages*" limitation in the statute, and did so in the first two provisions. The omission of such limiting language from the third provision is therefore fairly read as a deliberate choice, to which courts should give effect. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); *Bates v. United States*, 522 U.S. 23, 29 (1997) (where § 1097(d) included an "intent to defraud requirement" but § 1097(a) did not, the Court declined to "read[] words or elements into a statute that do not appear on its face"); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("The language of § 1692g(a)(3) [of the Fair Debt Collection Practices Act] does not incorporate the writing requirement included specifically in other sections of the same statute. We see no reason to ignore this difference in statutory language.").

The history of, and purpose served by, § 193(3)(a) also supports holding Rick's NY liable for the deductions in question, and not allowing the Club's failure to pay *any* wages to the dancers to shield it from liability. The "separate transaction" language was added in 1974. As the Appellate Division, Second Department, has explained:

> As originally enacted in 1966, section 193 forbade only direct deductions from wages. The Commissioner of Labor, however, eventually interpreted the statute to preclude not only direct wage deductions, but *repayments to the company by separate transaction as well*. The Commissioner's rationale was that the statute should not be interpreted to allow employers to do indirectly what they could not do directly. The Legislature stamped its imprimatur of approval on the Commissioner's interpretation when it amended the statute in 1974 to explicitly forbid repayments by separate transaction.

*Hudacs*, 90 N.Y.2d at 347–48 (internal citation omitted) (emphasis added). Thus, the "separate transaction" language "was added to the statute in 1974 to prohibit wage deductions by indirect

16

means where direct deduction would violate the statute." *Angello*, 7 N.Y.3d at 585; *see id.* ("The Legislature sought to end the subterfuge of an employer's paying full wages but then seeking payment at another time."). In effect, the legislature sought in 1974 to assure that employers who could not make certain deductions directly from an employee's paycheck not subvert that prohibition by forcing the employee to pay those same amounts in a separate transaction. *See Angello*, 7 N.Y.3d at 586 ("The history of Labor Law § 193 manifests the legislative intent to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit.").

The legislature's goal in enacting § 193(3)(a) of closing this loophole would be frustrated here by permitting the fines, fees, and tip outs imposed by Rick's NY to escape liability under § 193. The Court has already held that these deductions were improper. Had Rick's NY paid wages to its dancers, it necessarily would not have been able to deduct such fines, fees, and "tip outs" from these wages. It would contravene the purpose served by § 193(3)(a) to permit Rick's NY to achieve indirectly (by forcing dancers to pay by separate transaction from customer-paid performance fees) what it could not have achieved directly. And such an outcome would effectively reward Rick's NY for not having paid the dancers a minimum wage, because had it done so and then deducted the fines, fees, and tip-outs from that minimum wage, it would clearly be liable under § 193(1).

In arguing for summary judgment in their favor, defendants rely on a statement by the Second Department in the *Hudacs* decision, which can certainly be read to imply that § 193(3)(a)'s prohibition on separate transactions requires that the payments at issue come "from wages." In *Hudacs*, the Second Department stated: "[W]hile section 193(2) [now 193(3)(a)] on

17

its face prohibits 'any payment by separate transaction,' it is clear from the statutory context that 'any payment' is actually meant to refer only to *payments from wages*." 90 N.Y.2d at 348 (emphasis added). But, read closely, *Hudacs* actually stands for the narrower, uncontroversial proposition that any prohibited "separate transaction" under § 193(3)(a) must come from an employee's own funds, as opposed to from company funds. *See Sherald v. Embrace Technologies, Inc.*, No. 11 Civ. 39 (TPG), 2013 WL 126355, at *7 (S.D.N.Y. Jan. 10, 2013) ("While the scope of the statutory language is broad, the phrase 'any payment' has been interpreted 'to refer only to payment from wages,' *i.e.*, *payments from an employee's own funds*.") (emphasis added). The employees in *Hudacs* were responsible for delivering Frito Lay products to retailers and collecting payments for their employer. The employees were then required to send the collected payments back to Frito Lay. If there was a shortfall, the employee had to make up the difference. The employees argued that this represented an improper "separate transaction" under § 193(3)(a). However, the Second Department rejected that argument, stating that these payments "merely represent full remittance of company funds temporarily entrusted to the employee's control, which the company has every right to expect will be fully remitted." *Hudacs*, 90 N.Y.2d at 348.

       This case is easily distinguished from *Hudacs*. Plaintiffs here did not remit funds belonging to Rick's NY back to Rick's NY. Rather, plaintiffs were required to pay tip outs, fees, and fines to the Club out of their own pockets. Requiring employees to pay these amounts from their own funds and in separate transactions is precisely the harm at which § 193(3)(a) was aimed. The sweeping prose in *Hudacs*, read in the context of the facts of that case, does not preclude recovery here.

Finally, *Xuedan Wang v. Hearst Corp.*, No. 12 Civ. 793 (HB), 2013 WL 105784 (S.D.N.Y. Jan. 9, 2013), on which defendants rely, is also inapposite. In *Wang*, an intern at the magazine Cosmopolitan was not paid any wages, and was required to acquire, at monetary cost, college credit as a condition of her employment. She claimed that this requirement represented a payment "by separate transaction" in violation of the NYLL § 193(3)(a). *Id.* at *1. In dismissing plaintiff's claim under § 193, the Court held that "the insurmountable hurdle faced by Plaintiff is that Plaintiff did not receive any payment—or anything even arguably close—that could constitute wages under Section 193." *Id.* at *2. That is not so here. Plaintiffs may not have received wages, but they did receive substantial performance fees, from which the Club's improper deductions were taken for the benefit of the employer. This case is thus a far cry from one in which an employer imposes pre-conditions on an employee's service that result in the employee having to make certain outlays to a third party. And the plaintiffs here were not unpaid interns; they were, as the Court has held, employees entitled to compensation.[4]

The Court therefore holds that the Club was prohibited under § 193(3)(a) from requiring plaintiffs to pay fees, fines, and tip outs by separate transaction. Plaintiffs' motion for summary judgment as to liability on Claim Five against Peregrine is granted.[5]

---

[4] In construing § 193(3)(a), *Wang* also relied heavily on the broad statements by the Second Department in *Hudacs*, but these, as explained above, do not require a ruling in Rick's NY's favor here.

[5] Whether summary judgment as to liability on this claim is merited against RCI NY and RCII depends on the issue, as-yet unresolved, of whether those entities were the dancers' employers. *See* Opinion at *34. This decision also leaves open the issue of damages on Count Five, including whether damages are available in circumstances where fines were paid but later reversed. *See* Opinion at *27 n.13.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for partial reconsideration, sets the class period end-date as October 31, 2013, and grants plaintiffs' motion for summary judgment as to liability on Claim Five against Peregrine. The Clerk of Court is directed to terminate the motions at docket numbers 465, 468, 471, and 474.

The Court will issue a separate order today with regard to issues of case management and the next steps to be taken in this matter.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 18, 2013
      New York, New York