**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SABRINA HART and REKA FUREDI on behalf of themselves and all others similarly situated, and the New York Rule 23 Class, <br><br> Plaintiffs, <br><br> v. <br><br> RICK'S CABARET INTERNATIONAL, INC., RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC., <br><br> Defendants. | Case No. 09-CV-3043 PAE/RLE <br><br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR THE COURT TO AFFIRM AND RETAIN JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT** |

## TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................1

**BACKGROUND**...................................................................................................................1

**ARGUMENT**.......................................................................................................................2

    I.      **BURDEN OF PROOF.**..............................................................................2

    II.     **PLAINTIFFS HAVE ESTABLISHED CAFA JURISDICTION.**.........................3

        A.    **THIS IS A CLASS ACTION WITH MORE THAN 100 MEMBERS.**...........3

        B.    **THE PARTIES ARE MINIMALLY DIVERSE.**...................................3

        C.    **THE AMOUNT IN CONTROVERSY EXCEEDS FIVE MILLION DOLLARS.**.......................................................................................4

    III.    **DEFENDANTS CANNOT ESTABLISH EXCEPTIONS UNDER CAFA.**.........7

        A.    **THE INTERESTS OF JUSTICE EXCEPTION DOES NOT APPLY.**..........8

            *1.*    *The threshold "primary defendants" requirement is not met.*.................8

            *2.*    *Additional factors also do not warrant remand.*.......................11

        B.    **THE LOCAL CONTROVERSY EXCEPTION DOES NOT APPLY.**..........13

            *1.*    *The Imbeault action bars application of the local controversy exception.*...................................................................................13

            *2.*    *Defendants cannot prove citizenship of the Plaintiff Class.*..................15

        C.    **THE HOME STATE EXCEPTION DOES NOT APPLY.**..........................22

    IV.    **THE EXCEPTIONS UNDER CAFA SHOULD NOT BE ASSERTED NOW.**......................................................................................................22

**CONCLUSION**...................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Bank v. Hydra Group LLC,
433 F. App'x. 50 (2d Cir. 2011) ....................................................................6

Blockbuster, Inc. v. Galeno,
472 F.3d 53 (2d Cir. 2006)...........................................................................4

Brook v. UnitedHealth Group Inc.,
No. 06 CV 12954(GBD), 2007 WL 2827808 (S.D.N.Y. Sep. 27, 2007) ......................9

Calingo v. Meridian Resources Co., LLC,
No. 7:11-cv-628 (VB), 2011 WL 3611319 (S.D.N.Y. Aug. 16, 2011) ........................23

College Of Dental Surgeons Of Puerto Rico v. Connecticut General Life Ins. Co.,
585 F.3d 33 (1st Cir. 2009)...........................................................................14

Cutrone v. Mortgage Electronic Registration Systems, Inc.,
2013 WL 5960827 (E.D.N.Y. Nov. 6, 2013)......................................................5

DiTolla v. Doral Dental IPA of New York,
469 F.3d 271 (2d Cir. 2006)..........................................................................2

Clincy v. Galardi South Enterprises, Inc.,
808 F. Supp. 2d 1326 (N.D. Ga. 2011) ............................................................17

Gold v. New York Life Ins. Co.,
No. 09 Civ. 3210(WHP), 2012 WL 1674300 (S.D.N.Y. May 14, 2012) ......................2

Gold v. New York Life Ins. Co.,
730 F.3d 137 (2d Cir. 2013)......................................................................22, 23, 25

Greenwich Financial Services Distressed Mortg. Fund 3 LLC v. Countrywide
Financial Corp.,
603 F.3d 23 (2d Cir. 2010)............................................................................2

Harrell v. Diamond A Entm't. Inc.,
992 F. Supp. 1343 (M.D. Fla. 1997).............................................................17, 18

Hertz Corp. v. Friend,
559 U.S. 77 (2010)....................................................................................4

Hines v. Overstock.com, Inc.,
No. 09 CV 991 (SJ), 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013).............................5

Imbeault v. RCII, et al.,
No. 08-CV-5458 (GEL) (filed June 19, 2008)...................................................13, 14, 15

In re Sprint Nextel Corp.,
593 F.3d 669 (7th Cir. 2010) .............................................................................20

Jacks v. Meridian Resource Co., LLC,
701 F.3d 1224 (8th Cir. 2012) ...........................................................................23

Kings Choice Neckwear, Inc., v. Pitney Bowes, Inc.,
396 F. App'x. 736 (2d Cir. 2010) .........................................................................5

Mondragon v. Capital One Auto Finance,
No 13-56699, 2013 WL 6183001 (9th Cir. Nov. 27, 2013) ...................................19, 20

Nicholson v. Prime Training Corp.,
No. 09-6083-CV-SJ-GAF, 2009 WL 2900042 (W.D. Mo. Sept. 3, 2009)...................11

Opelousas General Hosp. Authority v. FairPay Solutions, Inc.,
655 F.3d 358 (5th Cir. 2011) .............................................................................21

Orlander v. Staples, Inc.,
No. 13 Civ. 703(NRB), 2013 WL 5863544 (S.D.N.Y. Oct. 31, 2013) .....................5, 7

Phillips v. Kaiser Foundation Health Plan, Inc.,
No. C 11-02326, 2011 WL 3047475 (N.D. Cal. July 25, 2011)...............................8

Preston v. Tenet Healthsystem Memorial Medical Center, Inc.,
485 F.3d 793 (5th Cir. 2007) ................................................................14, 15, 17

Reich v. Circle C. Invs., Inc.,
998 F.2d 324 (5th Cir. 1993) .............................................................................17

Reich v. Priba Corp.,
890 F. Supp. 586 (N.D. Tex. 1995) .....................................................................18

Richins v. Hofstra Univ.,
908 F. Supp. 2d 358 (E.D.N.Y. 2012) ..................................................................21

Romano v. SLS Residential, Inc.,
812 F. Supp. 2d 282 (S.D.N.Y. 2011)...........................................................8, 9, 17

Scimone v. Carnival Corp.,
720 F.3d 876 (11th Cir. 2013) ..........................................................................12

Shahriar, et al. v. Smith & Wollensky Restaurant Group, Inc., et al.,
(S.D.N.Y. Case No. 08-CV-00057) ..........................................................................24

Sorrentino v. ASN Roosevelt Center, LLC,
588 F. Supp. 2d 350 (E.D.N.Y. 2008) .......................................8, 9, 10, 15, 19, 20, 21

Standard Fire Ins. Co. v. Knowles,
133 S. Ct. 1345 (2013) ..................................................................................................3, 5

Thompson v. Linda and A., Inc.,
779 F. Supp. 2d 139 (D.D.C. 2011) .................................................................................17

Visendi v. Bank of America, N.A.,
733 F.3d 863 (9th Cir. 2013) ....................................................................................23, 25

Zacharia v. Harbor Island Spa, Inc.,
684 F.2d 199 (2d Cir. 1982) ...............................................................................................7

## **RULES**

Federal Rule of Civil Procedure 12(h)(3) ..........................................................................22

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

Federal Rule of Civil Procedure 68 ............................................................................6, 15

## **STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq. ....................................... *passim*

Fair Labor Standards Act ...........................................................................2, 6, 14, 17

New York Labor Law ......................................................................................... *passim*

New York Labor Law § 193 ........................................................................................6, 7, 14

New York Labor Law § 650 ...............................................................................................14

## INTRODUCTION

This Court has original jurisdiction of the New York Labor Law ("NYLL") claims in this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  The circumstances that would allow or require the Court to decline to exercise that jurisdiction do not exist.  Defendant Rick's Cabaret International, Inc. ("RCII") is a citizen of Texas and a primary defendant in this litigation.  Accordingly, the Court cannot decline to exercise jurisdiction under the "interests of justice" or "home state" exceptions to CAFA.

The Court also cannot decline to exercise jurisdiction under the "local controversy" exception to CAFA because Defendants were sued for the same conduct alleged here approximately one year before the instant action was filed.  Moreover, even if the local controversy exception possibly applied, Defendants cannot meet their burden of proving that two-thirds or more of Class Members – Class Members whose itinerancy the Court and parties have acknowledged – were citizens of New York at the time this action or operative complaint was filed.

Finally, assuming *arguendo* that any of the exceptions did apply, they cannot be asserted at this advanced stage of litigation because they are not jurisdictional.  Defendants would not be allowed to move for remand under any of the CAFA exceptions at this point and, respectfully, neither should the Court allow itself to *sua sponte* decline to exercise jurisdiction based on those exceptions now or later.  For these reasons, as discussed herein, the Court must continue to exercise its jurisdiction under CAFA.

## BACKGROUND

On March 30, 2009, Plaintiff Sabrina Hart filed this lawsuit in this District.  (Compl.,

ECF No. 1.)[1]  Alleging both original jurisdiction under CAFA and supplemental jurisdiction, Plaintiff brought claims under the NYLL in addition to claims under the Fair Labor Standards Act ("FLSA").  (Id. ¶ 21; Third Amend. Compl., ECF No. 153 ¶ 27.)  Plaintiff brought the NYLL claims against Defendants RCII, Peregrine Enterprises, Inc. ("Peregrine"), and RCI Entertainment (New York), Inc. ("RCI Entertainment") (collectively, "Defendants") on behalf of herself and all other entertainers who worked at Rick's Cabaret in New York ("Rick's NY" or "the club") at any time from six year prior to the filing of the Complaint through entry of judgment.  (ECF Nos. 1, 153.).  The operative complaint is the Third Amended Complaint, filed on May 18, 2010, and entered on the docket on May 28, 2010.  (ECF No. 153.)  Additional relevant facts are discussed herein in conjunction with the elements of CAFA jurisdiction.[2]

## ARGUMENT

## I.   BURDEN OF PROOF.

The party asserting federal jurisdiction bears the burden of proof.  See DiTolla v. Doral Dental IPA of New York, 469 F.3d 271 (2d Cir. 2006).  Once the general requirements of CAFA jurisdiction are established, however, the burden shifts.  Greenwich Financial Services Distressed Mortg. Fund 3 LLC v. Countrywide Financial Corp., 603 F.3d 23, 26 (2d Cir. 2010).  "[W]hen jurisdiction is based on CAFA, the party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies."  Gold v. New York Life Ins. Co., No. 09 Civ. 3210(WHP), 2012 WL 1674300 (S.D.N.Y. May 14, 2012) (internal citations and quotations omitted).  Here, Plaintiffs easily establish CAFA jurisdiction; however, Defendants cannot meet their burden as to any exception.

---

[1] Named Plaintiff Reka Furedi was added to this case in mid-2009.  (First Amend. Compl., ECF No. 42.)
[2] Plaintiffs additionally incorporate by reference their previous filings on Rule 23 Certification and Summary Judgment, as well as the Court's Orders regarding the same, and the facts set out in the parties' most recent letter to the Court.  (ECF Nos. 155, 229-230, 253, 385-408, 386, 433-441, 454, 460, 472-473, 483, 487, 492.)

## II.   PLAINTIFFS HAVE ESTABLISHED CAFA JURISDICTION.

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345, 1348 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).[3]  Each of the requirements is met.

### A.  THIS IS A CLASS ACTION WITH MORE THAN 100 MEMBERS.

Under CAFA, the term "class action" includes any civil action brought under Rule 23. 28 U.S.C. § 1332(d)(1)(B).  CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332 (d)(8). "[T]he term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action" and "the term 'class' means all of the class members in a class action."  28 U.S.C. § 1332(d)(1)(A) and (D).[4]

This case was pled as a Rule 23 Class action comprised of more than 200 Class Members.  (Compl., ¶ 51, ECF No. 1.)  Moreover, Rule 23 Class Certification was granted in this case on December 20, 2010.  (Class Cert. Order, ECF No. 253.)  The certified Rule 23 Class in this case is comprised of more than 2,300 entertainers who worked at Rick's NY at any point from September 21, 2005 through October 31, 2012.  (Id.; Defs.' 56.1 ¶ 12, ECF No. 417; Class End Date Order, ECF No. 488.)  Accordingly, the class and numerosity requirements under CAFA are satisfied.

### B.  THE PARTIES ARE MINIMALLY DIVERSE.

Diversity under CAFA requires that: "(A) any member of a class of plaintiffs is a citizen

---

[3] Certain securities cases, which this case is not, are excluded under CAFA.  See 28 U.S.C. § 1332(d)(9).
[4] Certain "mass actions," not at issue here, are excluded from these definitions.  See 28 U.S.C. § 1332(d)(11).

of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2).

Here, there is diversity because there are Class Members who are citizens of New York, and Defendant RCII is not a citizen of New York.  Defendant RCII is a citizen of Texas.  (See id. (stipulating to RCII's citizenship).)  "A corporation is 'deemed ... a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Blockbuster, Inc. v. Galeno, 472 F.3d 53, 59 (2d Cir. 2006) (quoting 28 U.S.C. § 1332(c)(1)). Not only is RCII incorporated in Texas (Stip. Facts ¶ 34, ECF No. 454), but it also has its principal place of business in Texas, not New York.  (See Joint Let., ECF No. 492 (stipulating that RCII's principal place of business in Texas).

Further, RCII is headquartered in Texas (Stip. Facts ¶ 36, ECF No. 454), which is additionally indicative of its principal place of business.  See Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010) ("And we conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower federal courts have often [termed that] the corporation's 'nerve center.' [ ] We believe that the 'nerve center' will typically be found at a corporation's headquarters.") (internal citations omitted).  Moreover, of RCII's approximately 35 clubs that it owns and operates (see Pls.' 56.1 ¶ 1, ECF No. 386), more than 20 are in Texas and only one is in New York.  See www.ricks.com (last accessed Dec. 10, 2013).

Accordingly, CAFA's minimal diversity requirement is satisfied.

## C.  THE AMOUNT IN CONTROVERSY EXCEEDS FIVE MILLION DOLLARS.

"To determine whether the matter in controversy exceeds [$5,000,000], the claims of the individual class members shall be aggregated." Standard Fire, 133 S. Ct. at 1348 (citing 28 U.S.C. § 1332(d)(6)) (internal quotations omitted). This amount need only be shown to a "reasonable probability." Orlander v. Staples, Inc., No. 13 Civ. 703(NRB), 2013 WL 5863544 (S.D.N.Y. Oct. 31, 2013). "In determining whether plaintiff has satisfied this burden, the Court first looks to the allegations in the complaint. We recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy…. The Court construes all ambiguities and draws all inferences in plaintiff's favor." Id. at *2 (internal citations, quotations, and brackets omitted); see Cutrone v. Mortgage Electronic Registration Systems, Inc., 2013 WL 5960827 (E.D.N.Y. Nov. 6, 2013). The presumption in plaintiff's favor can only be rebutted if defendant can show a "legal certainty" that plaintiff could not recover that amount. Orlander, 2013 WL 5863544 at *2; Hines v. Overstock.com, Inc., No. 09 CV 991 (SJ), 2013 WL 4495667, *6 (E.D.N.Y. Aug. 19, 2013) ("This is a difficult burden to overcome since the Second Circuit has held that the legal impossibility of recovery must be so certain, so as to virtually negate plaintiff's good faith in bringing the claim.") (internal quotations omitted).

Here, Plaintiffs have alleged that the amount in controversy exceeds $5,000,000. (Compl. ¶ 21, ECF No. 1; Third Amend. Compl. ¶ 27, ECF No. 153.) This is enough to meet CAFA's requirements. See Kings Choice Neckwear, Inc., v. Pitney Bowes, Inc., 396 F. App'x. 736, n.1 (2d Cir. 2010) (declaring CAFA jurisdiction based on diversity and plaintiff's pleading on amount in controversy); see also Hines, 2013 WL 4495667 at *6 ("[O]n a motion to dismiss challenging the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith.") (citing cases). Indeed, "[w]here the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings."

Bank v. Hydra Group LLC, 433 F. App'x. 50, 51 (2d Cir. 2011) (citations omitted).

What is more, the parties' initial calculations of damages for Plaintiff Hart show just how substantial individual recoveries are and make it more than reasonably probable that aggregate recovery for the more than 2,300 Class Members over the course of the eight-year Class Period would vastly exceed $5,000,000.  (See Pls.' Ex. 28 to Mot. to Dismiss Reps., ECF No. 51-12 (analyzing Defendants' Rule 68 Offer to Plaintiff Hart, with both parties' calculating $6,780.11 in NYLL minimum wage damages, Plaintiffs calculating an additional $5,056.74 under the NYLL for house fees paid, and Defendants' total damage calculations for Plaintiff Hart yielding $25,475.23 *exclusive* of fees, interest, and FLSA damages).)[5]  Indeed, it is far more than reasonably probable that the aggregate minimum wage damages for the Class exceed $5,000,000, considering the fact that Class Members were paid no wages whatsoever over the eight-year Class Period, the applicable hourly rate under the NYLL's minimum wage provisions has been greater than $7 for the vast majority of the Class Period,[6] and given Defendants' rules about shift lengths.  (See Pls.' 56.1 ¶ 230, ECF No. 386 (13 fines for "DID NOT STAY FOR 8 HOURS"), 233 (referencing written guidelines stating "After you complete your 8 hour shift and you would like to leave you need to inform (Tito or Ken) or an available manager that you would like to go."); see also Clubtrax Log-in/out Reports, ECF No. 397-7.)

Further, Defendants' analysis and data demonstrate that the amount in controversy for the Class exceeds $5,000,000.  For example, as to damages for deductions under NYLL § 193, Defendants' Clubtrax records of fees and fines Class Members paid over the course of the Class Period show that approximately $4,000,000 was actually paid by Class Members to the club.

---

[5] The cited exhibit was previously filed, but is attached as Ex. 1 to the Affidavit of Anna P. Prakash ("Prakash Aff."), filed in support of this brief, for the Court's convenience.  Plaintiffs contested and continue to contest Defendants' calculation as inaccurately low, but point it out here for the purpose of argument.
[6] See "Changes in Basic Minimum Wages in Non-Farm Employment…," U.S. Dep't of Labor, Wage and Hour Div., available online at: http://www.dol.gov/whd/state/stateMinWageHis.htm (last accessed Dec. 11, 2013).

(See Clubtrax Charge Summaries, ECF No. 397-7.)  When additionally considering the required $20 per shift "tip outs" to each of the DJ, house mom, and management over the course of the eight-year Class Period, there is certainly a "reasonable probability" that damages under NYLL § 193 alone exceed $5,000,000, exclusive of attorneys' fees, costs, interest, and liquidated damages.  (See Plfs.' 56.1 ¶¶ 210-222, ECF No. 386; see Summary Judgment Order at 9, ECF No. 460 (discussing signs at the club "report[ing] the mandatory tip-outs").)  In fact, even relying on Defendants' own data analysis, which Plaintiffs use here solely for example, at least 137,159 shifts were worked by Class Members in the aggregate during the Class Period.  (See Declaration of Poria Moridzadeh ¶¶ 5-8, 14-15 and Ex. 1, ECF No. 422 and 422-1 (results of Defendants' data analysis).)  At $60 per shift, damages under § 193 for tip outs *alone* exceed $8,000,000.[7] Thus, the amount in controversy requirement is more than met without even considering the fines and fees that entertainers paid or minimum wage damages.

Additionally, although "the jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on the likelihood of recovery[,]" here, Plaintiffs have prevailed on their minimum wage and deductions claims under the NYLL on a class-wide basis in this lawsuit, considerably increasing the probability of their damages exceeding $5,000,0000. Orlander, 2013 WL 5863544 at *2 (citing Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982). (See Summary Judgment Orders, ECF Nos. 460, 488.)  Defendants cannot show to a "legal certainty" otherwise.

 Based on the forgoing, Plaintiffs have established CAFA jurisdiction.

## III.   DEFENDANTS CANNOT ESTABLISH EXCEPTIONS UNDER CAFA.

None of the exceptions under CAFA (the so-called "local controversy, home state, and

---

[7] ($20 to DJ + $20 to house mom + $20 to management) x 137,159 shifts = $8,229,540.

discretionary [or interests of justice] exceptions"[8]) apply and, regardless, none can be asserted at this advanced stage of litigation.

## A.  THE INTERESTS OF JUSTICE EXCEPTION DOES NOT APPLY.

The interests of justice exception, to CAFA provides:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—
>
> (A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).  This exception does not apply.

### 1.  The threshold "primary defendants" requirement is not met.

Courts may not decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(3) if any one of the primary defendants is not a citizen of the forum state.  See 28 U.S.C. § 1332(d)(3) ("primary *defendants*") (emphasis added); Phillips v. Kaiser Foundation Health Plan, Inc., No. C 11-02326, 2011 WL 3047475 (N.D. Cal. July 25, 2011) (holding that 28 U.S.C. § 1332(d)(3) did not apply because one primary defendant was not a citizen of the state at issue).  Here, the

---

[8] Sorrentino v. ASN Roosevelt Center, LLC, 588 F. Supp. 2d 350 (E.D.N.Y. 2008); Romano v. SLS Residential, Inc., 812 F. Supp. 2d 282 (S.D.N.Y. 2011).

interests of justice exception under 28 U.S.C. § 1332(d)(3) does not apply because Defendant RCII is not a citizen of New York (see supra § II.B), and is a "primary defendant."

The term "primary defendants" is not defined in CAFA.  This District has considered factors such as "(1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; *or* (5) is the only defendant named in one particular cause of action" in determining whether a defendant is primary.   Romano, 812 F. Supp. 2d at 282 (quoting Brook v. UnitedHealth Group Inc., No. 06 CV 12954(GBD), 2007 WL 2827808, at *5 (S.D.N.Y. Sep. 27, 2007) (emphasis added). Analysis of these factors easily demonstrates that RCII is a primary defendant in this action.

First, Plaintiffs have alleged that RCII is jointly and severally liable in this case, making its liability exposure as great as the other Defendants.  See Brook, 2007 WL 2827808, *6. Moreover, at this point, it is enough, that RCII is allegedly liable.  See Sorrentino, 588 F. Supp. 2d at 356 ("[T]he term 'primary defendants' should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is ***allegedly*** liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).") (quoting S. Rep. No. 109-14, at 43) (emphasis added). Plaintiffs have alleged that RCII is liable to all Class Members (ECF Nos. 1, 153), and further, a jury could well conclude as much.  See also Summary Judgment Order, ECF No. 460 at *32-33 ("This testimony would give a jury a basis to conclude that it was on behalf of the corporate parents [including RCII], not just Peregrine, that Langan took steps with regard to employment and other relevant policies and practices at Rick's NY…. A jury could conclude that, through

Anakar, RCII and RCI NY, the subsidiary that stood between it and Peregrine, were acting as employers vis-à-vis the dancers at the Club.").)

Second, RCII is the Defendant that is most able to satisfy a potential judgment in this action. RCII is multi-million dollar publicly-traded company. See RCII Press Release, "Rick's Cabaret International, Inc. Reports $27.2 million total sales in fourth quarter, up 19.5%," (Oct. 8, 2013).[9] Additionally, RCII is the entity that controls whether and how much money Defendant Peregrine has. RCII's Chief Financial Officer, Phil Marshall, testified that he makes the decision about when Peregrine is going to send RCII money. (Pl.'s 56.1 ¶ 475, ECF No. 386.) In fact, Mr. Marshall bases the decision of when Peregrine is going to send RCII money on "[w]hen they [Peregrine] have too much money in their account." (Id. at ¶ 476.) There is no set amount that Mr. Marshall decides is too much for Peregrine to retain; however, it does not appear that Peregrine retains its profits. Rather Mr. Marshall "just make[s] sure [he] believe[s] they [Peregrine] have enough money to operate." (Id. at ¶ 477.) Moreover, Peregrine does not even have a litigation reserve in its accounts to cover liabilities such as judgment in the instant action. (Id. at ¶ 478.) Indeed, when asked by the Court whether Peregrine could cover judgment in this action, defense counsel stated that she did not know. (See 7/31/13 Hearing Tr. pp. 77-78.[10]) In light of this, RCII is not only most able to satisfy a potential judgment, but RCII is also the Defendant "that would be expected to incur most of the loss if liability is found." See Sorrentino, 588 F. Supp. 2d at 356 (quoting S. Rep. No. 109-14, at 43 for an explanation of "primary defendants").

The third and fourth factors additionally demonstrate that RCII is a primary defendant. Plaintiffs sued RCII directly, not vicariously. (See ECF Nos. 1 and 153.) RCII is a Named

---

[9] Available online at http://www.ricksinvestor.com/402/pressrelease.aspx (last accessed Dec. 10, 2013).
[10] Relevant pages attached to the Prakash Aff. as Ex. 2.

Defendant in this action. (Id.) Plaintiffs have brought all of their claims against all of the Defendants, including RCII.  (Id.)  "Courts have routinely held that when a complaint fails to distinguish among defendants as to theories of liability, all are considered primary defendants." Nicholson v. Prime Training Corp., No. 09-6083-CV-SJ-GAF, 2009 WL 2900042, *2 (W.D. Mo. Sept. 3, 2009).  This Court should hold the same.

Based on the foregoing, RCII – a citizen of Texas and not New York – is a primary defendant for purposes of CAFA.  Accordingly, the interests of justice exception cannot apply.

### 2.   *Additional factors also do not warrant remand.*

The Court need not look to additional factors under the interests of justice exception to CAFA because Defendants cannot meet the threshold primary defendant requirement.  However, Plaintiffs note that certain other factors under this exception do not support remand.

First, any decision to remand under 28 U.S.C. § 1332(d)(3) must be "in the interests of justice and looking at the totality of the circumstances."  28 U.S.C. § 1332(d)(3).  As discussed in more detail below, the interests of justice do not warrant declining to exercise jurisdiction here.  At this stage of litigation after numerous state issues have been decided and only a few aspects of the case remain before trial, the Court should not decline jurisdiction.  This is particularly true in light of the fact that the NYLL claims in this case were asserted in 2009, Class Members have been made aware of this case (see ECF Nos. 291), and remand may result in resolution of these claims being further delayed by having to file in state court after nearly five years of litigation here.  (See also *infra* § IV.)

Second, this case was explicitly pleaded in a matter that seeks to obtain federal jurisdiction, not avoid it.  See 28 U.S.C. § 1332(d)(3)(C) (considering whether the plaintiff was seeking to avoid federal jurisdiction).  This paired with the general rule favoring plaintiffs'

choice of forum weigh in favor of retaining jurisdiction.  See Scimone v. Carnival Corp., 720 F.3d 876, 884 (11th Cir. 2013) (acknowledging the general principle that plaintiffs are "masters of their complaints").

Third, this case has national importance to the adult entertainment industry and its workforce.  See 28 U.S.C. § 1332(d)(3)(A) (considering national importance).  RCII is a national company that classifies all of its entertainers outside of its Minnesota club as independent contractors.  (RCII 10-K, Pl.'s SJ Ex. 263, ECF No. 400-14.)  Further, misclassification of adult entertainers happens at other clubs across this country, as well.  (See Pl.'s SJ Br. pp. 3-4, ECF No. 385 (citing cases); Pl.'s SJ Exs. 289-290, ECF No. 438-2, 438-3.)  Whether those clubs are motivated to reclassify is partly a result of trends in the industry and litigation.  (See Pl.'s 56.1 ¶ 590 ("We have not really considered settling this case. We want to see what happens as we move this case forward…. But at this time, we believe that we are right. We believe we will prevail. And at some point, that may change, it may not. We're watching. We're watching what other clubs are doing. We're watching what other – what else is going on out there in the country. I'm on the ACE [Adult Club Executive] National Boards so I'm very in tune with a lot of other club owners, talked to them a lot. And, like I said, we're watching it and we'll just have to wait and see exactly where this goes.") (quoting RCII's CEO Eric Langan).)  This litigation in particular is likely to draw attention because of Mr. Langan's position on ACE's Board of Directors.  (Id. ¶ 588.)  Thus, that Rule 23 class actions like this can be maintained and litigated through liability findings and judgment in federal court has significance to those clubs and owners who, like Mr. Langan, are observing and making cost-benefit analyses about reclassification and payment.

Finally, as discussed below (infra § III.B.1), another class action asserting nearly the same claims against Defendants was filed the year before this case was filed, weighing in favor

of retaining jurisdiction under CAFA.  See 28 U.S.C. § 1332(d)(3)(F) (considering whether another similar class action was filed within the three years of the case at issue).

For all of these reasons, the interests of justice exception to CAFA, 28 U.S.C. § 1332(d)(3), does not apply.

**B.  THE LOCAL CONTROVERSY EXCEPTION DOES NOT APPLY.**

Nor does the local controversy exception to CAFA apply here.  The exception provides that courts must decline to exercise jurisdiction "over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant--

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; ***and***

(cc) who is a citizen of the State in which the action was originally filed; ***and***

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; ***and***

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons…."

28 U.S.C. § 1332(d)(4)(A) (emphasis added).  Here, Defendants cannot meet their burden under subsections (A)(i)(I) or (A)(ii) of the exception.

### *1.  The __Imbeault__ action bars application of the local controversy exception.*

CAFA makes clear that the local controversy exception cannot apply if during the three-year period preceding the filing of that class action, another other class action has been filed asserting the similar factual allegations against any of the defendants.  28 U.S.C. § 1332(d)(4)(A)(ii).  The plain language of the statute is clear and this criterion objective.  See also

<u>Preston v. Tenet Healthsystem Memorial Medical Center, Inc.</u>, 485 F.3d 793, 800 (5th Cir. 2007) ("Despite the undeniably local character of this class action lawsuit, Congress enumerated objective requirements for remanding a case to state court under the local controversy exception."). Further, CAFA defines precisely what it means by "class action" – a civil action filed under Rule 23 or a similar state class action rule, irrespective of whether certification has been granted. <u>See</u> 28 U.S.C. § 1332(d)(1)(B) and (d)(8); <u>College Of Dental Surgeons Of Puerto Rico v. Connecticut General Life Ins. Co.</u>, 585 F.3d 33, 40 (1st Cir. 2009) ("To satisfy CAFA's definition of a class action, a case need only be 'filed under' either Federal Rule of Civil Procedure 23 or some state-law analogue of that rule.").

Here, in the year before the instant action was filed, another class action was filed asserting nearly identical factual allegations against all of the Defendants. In <u>Imbeault v. RCII, et al.</u>, all three Defendants in this action were sued in this District in a proposed Rule 23 and FLSA collective action. (<u>See</u> Joint Let., ECF No. 492 (citing <u>Imbeault v. RCII, et al.</u>, No. 08-CV-5458 (GEL) (filed June 19, 2008); <u>Imbeault</u> First Amend. Compl., adding Defendant Peregrine Enterprises, Inc. (filed August 19, 2008).) The proposed Rule 23 class was defined in the <u>Imbeault</u> First Amended Complaint as: "all persons employed by Defendants Rick's Cabaret International Inc., RCI Entertainment (New York) Inc. and/or Peregrine Enterprises, Inc. in the state of New York as 'entertainers' at any time six years prior to the filing of this Complaint to the entry of judgment in the case." (<u>Id.</u>) Like this action, the <u>Imbeault</u> action alleged that entertainers at Rick's NY were misclassified as independent contractors and were, as a matter of law, employees under the FLSA and NYLL. (<u>Id.</u>) Similarly, the <u>Imbeault</u> action alleged, among other counts, failure to pay minimum wage under NYLL § 650, and unlawful deductions under NYLL § 193. (<u>Id.</u>) Early in the <u>Imbeault</u> action, Defendants made the Named Plaintiff an Offer

of Judgment pursuant to Fed. R. Civ. P. 68, which she accepted, and judgment was entered on

February 20, 2009.  (ECF No. 492.)

The Imbeault action directly conflicts the objective criteria under CAFA's local

controversy exception, 28 U.S.C. § 1332(d)(A)(ii).  As such, the exception does not apply.

### 2. Defendants cannot prove citizenship of the Plaintiff Class.

Though unnecessary given the Imbeault action, the lack of credible evidence regarding

citizenship of the Plaintiff Class provides an additional argument against applying the local

controversy exception.  28 U.S.C. § 1332(d)(4)(A)(i)(I).  Defendants contend that they can meet

their burden of proof on citizenship of the Plaintiff Class through business records containing the

addresses last known to Defendants of each member of the Plaintiff Class who was a member of

the Class at the time the Complaint and Third Amended Complaint was filed in this case despite

the fact that the records have not yet been independently verified to confirm that each of the

addresses were the actual residences of the Class Members as of the date of the relevant

pleading.  (See Joint Let., ECF No. 492.)  Defendants are wrong.

Citizenship, for the purpose of this CAFA exception, is determined by domicile.

Domicile is "the place where a person has his true fixed home and principal establishment, and

to which, whenever he is absent, he has the intention of returning.  At any given time, a person

has but one domicile."  Sorrentino, 588 F. Supp. 2d at 356 (internal quotations omitted).  See

also Preston, 485 F.3d at 798-799 (5th Cir. 2007) ("A party's residence in a state alone does not

establish domicile…. Domicile requires residence in the state and an intent to remain in the

state.") (internal citations omitted).  Under CAFA, it is citizenship as of the "date of the filing of

the complaint or amended complaint" that matters.  28 U.S.C. § 1332(d)(7).  These requirements

are fatal for Defendants in several respects.

First, assuming *arguendo* that addresses alone are sufficient to show citizenship, Defendants do not have the correct addresses.  Defendants' last known business records show 71.02% of addresses within New York for entertainers who had worked at the club as of March 30, 2009 (the date of the Complaint), and Defendants' last known business records show 69.41% of addresses within New York for entertainers who had worked at the club as of May 28, 2010 (the date the Third Amended Complaint was entered on the docket).  (Prakash Aff. ¶ 4-8.)[11] However, these are records of addresses last recorded in Defendants' business records, not Class Members' actual addresses as of the relevant pleading dates.  Inaccuracies in Defendants' proposed records are apparent.  Many of the entries pre-date the filing of the relevant pleadings and are inaccurate because Class Members subsequently moved.  For example, Defendants' records list the Named Plaintiff Sabrina Hart's address as Astoria, New York.  (Prakash Aff. ¶ 6.)[12]  Ms. Hart, however, moved to Florida in 2007 after ending her employment at Rick's NY, and was living there when the Complaint and Amended Complaints were filed.  (Hart Dep. 124-125, 133, 135-136;[13] Compl. ¶ 5, ECF No. 1; Third Amend. Compl. ¶ 6, ECF No. 153.)  As another example, Defendants' records list Opt-in Plaintiff Erin Mullen's address as Brooklyn, New York.  (Prakash Aff. ¶ 7.)  Ms. Mullen ended her employment with Rick's NY in 2008 to move to Florida and, from there she moved to Arizona, where she was living in 2010.  (Mullen Dep. 10, 157.)  Other records simply do not contain the addresses where Class Members lived at

---

[11] On December 9, 2013, Defendants produced addresses last recorded in Defendants' business records of each member of the Plaintiff Class who was a member of the Class at the time the Complaint and Third Amended Complaint was filed.  Defendants designated these records "Confidential."  The parties do not dispute what the records state on their face; rather, the parties dispute whether what the records state is sufficient to prove citizenship for CAFA purposes.  (See Joint Let. ECF No. 492.)  As such, Plaintiffs have not submitted the records to the Court with this filing.  To the extent the Court wishes to view the records, Plaintiffs request permission to file them under seal or via ECF with the street addresses redacted.

[12] Ms. Hart is listed under her maiden name, Sabrina Silva, in Defendants' records.  (See 8/27/09 Declaration of Ken Sistrunk ¶ 4 and Exs. A and B, ECF No. 46.)

[13] The Plaintiffs' depositions cited herein were filed with Plaintiffs' motion for summary judgment at ECF Nos. 28, 31, 34, 36, 44 and 45 and cited portions are filed here as Exhibit 3 to the Prakash Aff.

the time they were working at Rick's NY, and also do not contain the addresses where Class Members lived at the time of the relevant pleadings.  As yet another example, Defendants' records list Opt-in Plaintiff Ashley Jurman's address in Pennsylvania.  (Prakash Aff. ¶ 8.)  Ms. Jurman, however, was living in Florida when she was working at Rick's NY, which was in 2007, well before the Complaint was even filed in this case.  (Jurman Dep. 11-15, 125-126.)  In 2010, she moved to New Jersey.  (Id. at 187-188.)  In short, Defendants' records cannot be relied on to accurately show Class Members' addresses as of the date of the 2009 Complaint or 2010 Third Amended Complaint.

Second, even if Defendants needed only to prove a reasonable likelihood that their outdated records of addresses were an accurate representation of the overall citizenship of the Class as of the date of relevant pleadings, they could not do so here.  Reasonability as to class-wide assumptions about domicile or continued domicile must be determined by circumstance. See e.g., Preston, 485 F.3d at 801-804 (declining to rely on patients' primarily billing addresses obtained during period of forced relocation after Hurricane Katrina); Romano, 812 F. Supp. 2d at 282 (considering, among other things, the length of time that has passed since class members were known to be in New York and the fact that the defendant-facility attracted out-of-staters). As courts have acknowledged, adult entertainers are generally a transient population.  See Reich v. Circle C. Invs., Inc., 998 F.2d 324, 328–29 (5th Cir. 1993) (discussing "transient nature of the work force"); Clincy v. Galardi South Enterprises, Inc., 808 F. Supp. 2d 1326 (N.D. Ga. 2011) ("Other courts have found, and Plaintiffs have previously asserted, that nude entertainers tend to be transient or itinerant."); Thompson v. Linda and A., Inc., 779 F. Supp. 2d 139 (D.D.C. 2011) ("[F]ederal courts have found exotic dancers to be employees under the FLSA despite the typically impermanent or transient nature of the work force in this industry."); Harrell v.

17

Diamond A Entm't. Inc., 992 F. Supp. 1343, 1352 (M.D. Fla. 1997) ("Because dancers tend to be itinerant, the court must focus on the nature of their dependence") (quoting Reich v. Priba Corp., 890 F. Supp. 586, 593 (N.D. Tex. 1995).)  Defendants in this case, too, have pointed out similar nomadic characteristics of entertainers.  (See Defs.' 56.1 ¶¶ 80, 82-84, 86-87, ECF No. 417; see also Summary Judgment Order at p. 14, ECF No. 460.)

Given this well recognized itinerancy, it not reasonable to assume that entertainers who worked for Defendants at some point in the more than three years prior to this action being filed and who provided an address to Defendants at some point during that period would have all maintained their residence at the same address reflected in Defendants' records at the time of the relevant pleadings.  In fact, in their reply in support of Rule 23 Class Certification filed July 8, 2010, Plaintiffs cited to class address information they had submitted to Defendants shortly after the Third Amended Complaint was filed in May 2010, as well information obtained from the U.S. Postal Service's National Change of Address ("NCOA") database.  (Reply and 7/8/10 Affidavit of Anna P. Prakash ("2010 Prakash Aff."), ECF Nos. 229-230.)  Specifically, on June 2, 2010, Plaintiffs' Counsel provided Defense Counsel with the names and addresses of the 1054 individuals – all Class Members – to whom a reminder notice had been sent.  The addresses were generated by running the last-known or located potential address through the NCOA database, which located U.S. Postal Service-recognized addresses.  36% of those addresses were outside of New York.  (2010 Prakash Aff. ¶ 9, ECF No. 230.)  At that time, comparing the updated addresses with addresses produced by Defendants and assuming that addresses for 588 Class Members later disclosed by Defendants were in New York, *at most*, 64% of Class Members' last

18

known addresses were New York addresses.  (Id. ¶¶ 9-10.[14])  For this reason, too, Defendants' address list cannot be accredited.

Third, domicile is more than just residency— it is also intent to remain.  See Sorrentino, 588 F. Supp. 2d at 356.  Here, Defendants have not offered any proof of any Class Member's intent to remain in New York.  It is not reasonably likely that the addresses, even if valid, prove an intent to remain in New York for two-thirds or more of the Class.  For example, Defendants' records list Opt-in Plaintiff Amberly Miller's address as New York, New York.  (Prakash Aff. ¶ 9.)  While Ms. Miller did maintain a residence in New York in 2009 when working at Rick's NY, she also had a residence in and preferred California, where she spent her weekends and to where she permanently moved at the end of 2009.  (Miller Dep. 8, 48-49, 189-199.)  As another example, Defendants' records list Opt-in Plaintiff Emily Finsterwald's address as Tappan, New York.  (Prakash Aff. ¶ 10.)  Ms. Finsterwald testified that she lives in New Mexico, that she graduated from school in New Mexico in 2009, stayed with her family in the summer of 2009 when she worked at Rick's NY, and then moved back to New Mexico in the fall of 2009. (Finsterwald Dep. 11-12, 64, 69-70, 96-98.)  Similarly, Defendants' records list New York, New York as the address for Opt-in Plaintiff Marina Lamb.  (Prakash Aff. ¶ 11.)  However, Ms. Lamb's testimony shows numerous ties to Massachusetts, both for domiciliary and employment purposes.  (See Lamb Dep. 19, 26, 29-30, 36, 38-41, 162-163 (testifying to maintaining residence in Massachusetts and moving back there after working at Rick's NY).)  As these examples together with the itinerary of the population at issue show, residency is just not a reliable indicator of intent to stay in this particular case.  See Mondragon v. Capital One Auto Finance, No 13-56699, 2013 WL 6183001 (9th Cir. Nov. 27, 2013) ("[A] court should consider the entire record to determine whether evidence of residency can properly establish citizenship.")

---

[14] The 2010 Prakash Aff. previously filed at ECF No. 230, is additionally filed herewith.

(internal quotations omitted); <u>Sorrentino</u>, 588 F. Supp. 2d at 356 ("A court must consider the entire course of a person's conduct in order to determine the relevant intent [regarding domicile].") (citation omitted).

On this point, the Ninth Circuit's recent decision in <u>Mondragon</u> is instructive.   In <u>Mondragon</u>, the Ninth Circuit refused to adopt the assumption that people who purchased a vehicle in California for personal use to be registered in the State of California will necessarily be California citizens.  The court explained:

> We acknowledge that our holding may result in some degree of inefficiency by requiring evidentiary proof of propositions that appear likely on their face. The inference drawn by the district court in this case was understandable. It is likely that most of the prospective class members—we would guess more than two-thirds of them—were California citizens at the time the lawsuit was filed. But it is also likely that some of them were not. We imagine that some automobiles were purchased and registered in California by members of the military, by out-of-state students, by owners of second homes, by other temporary residents who maintained legal citizenship in other states, and by persons who live in California but are not U.S. citizens. That a purchaser may have a residential address in California does not mean that person is a citizen of California…. In addition, the proposed class reaches back to cover purchases made as long as four years before the filing of the complaint, which could mean five years or more prior to the date on which the case became removable, and we imagine that at least some purchasers who were California citizens at the time of purchase subsequently moved to other states, such that they were not California citizens as of January 15, 2013. There is simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one.

2013 WL 6183001 at *3.  Similarly, in <u>In re Sprint Nextel Corp.</u>, the district court found that the party asserting the exception had demonstrated citizenship by citing to the class definition which was keyed to Kansas cell phone numbers and mailing addresses where they received their bill from the defendant.  593 F.3d 669, 671, 674 (7th Cir. 2010).  The Seventh Circuit stated as to any presumed link between phone numbers or addresses and citizenship:

> But that's all guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless. There are any number of ways in which our assumptions about the citizenship of this vast class might differ from reality. For

> example, we may have grossly underestimated the presence of out-of-state businesses or the number of Kansas residents who don't intend to stay indefinitely. Or perhaps a far greater percentage of nondomiciliary residents use text messaging than their domiciled neighbors. Ultimately, we agree with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses.

Id. (citing numerous cases).  Here, too, relying on addresses of Class Members last known to Defendants provides no actual evidence of domicile and, specifically, intent to stay in New York. See e.g., Sorrentino, 588 F. Supp. 2d at 356 ("Indeed, the only information that the plaintiffs have provided about these persons is that at one time, they maintained apartments in New York. This is insufficient, without more, to show an intent to remain in New York.").[15]

Finally, Plaintiffs note that "CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case." Brook, at *4 (internal citations and quotations omitted); see also Opelousas General Hosp. Authority v. FairPay Solutions, Inc., 655 F.3d 358 (5th Cir. 2011) ("Other courts addressing this question recognize that the exception is intended to be narrow with all doubts resolved in favor of exercising jurisdiction over the case.") (internal quotations omitted).  Here, any doubt on citizenship must be resolved in Plaintiffs' favor, particularly in light of how close the numbers cited above are to the two-thirds mark.

For all of these reasons, Defendants have failed to meet their burden of proof as to the citizenship of the Plaintiff Class.  The local controversy exception does not apply.

---

[15] Defendants point to Richins v. Hofstra Univ., 908 F. Supp. 2d 358 (E.D.N.Y. 2012), for the proposition that last known addresses contained in business records are sufficient.  Richins is distinguishable because the party seeking remand there sorted and excluded business records that were coded as being "local, parental, residential housing, or temporary."  908 F. Supp. 2d at 362.  Defendants have no such sorting capability here.  Moreover, in Richins, the party seeking remand also relied on published statistics that more than two-thirds of class members – law students – worked in New York after graduation.  Id.  Defendants have no such information here.

### C.  THE HOME STATE EXCEPTION DOES NOT APPLY.

The home state exception also does not apply here.  The exception requires a district court to decline to exercise jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, ***and*** the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (emphasis added); <u>accord</u> <u>Gold v. New York Life Ins. Co.</u>, 730 F.3d 137, 139 (2d Cir. 2013).  Here, because Defendant RCII is both a primary defendant and not a citizen of New York, the home state exception does not apply.  (<u>See</u> *supra* § III.A.1.)  As such, analysis of the citizenship factor of the exception is not necessary.  However, as discussed above, Defendants have not met their burden of proving citizenship of the Plaintiff Class.  (<u>See</u> *supra* § III.B.2.)  This, too, defeats the home state exception.

### IV.    <u>THE EXCEPTIONS UNDER CAFA SHOULD NOT BE ASSERTED NOW.</u>

Finally, the Court must retain jurisdiction because the exceptions under CAFA should not be used as a basis for remand at this stage of litigation.  Lack of subject matter jurisdiction can be asserted at any time in litigation. Fed. R. Civ. P. 12(h)(3).  However, the CAFA exceptions are not jurisdictional.  The fact that a CAFA exception may be satisfied does not mean that a court lacks subject matter jurisdiction.  Rather, if a CAFA exception applies, that means that subject matter jurisdiction exists but that a court is allowed (or required) to abstain from ***exercising*** that jurisdiction.  The plain language of the statute highlights this point.  <u>See</u> 28 U.S.C. § 1332(d)(3) ("A district court may… decline to exercise jurisdiction under paragraph (2)…."); 28 U.S.C. § 1332(d)(4)(A) and (B) ("A district court shall decline to exercise jurisdiction under paragraph (2)…").  Paragraph Two makes clear that the district courts have original jurisdiction and the

exceptions that follow do not undercut the existence of that jurisdiction.  28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction….").

As this District has stated, "the text and structure of the statute insofar as it sets forth the elements of subject matter jurisdiction under CAFA and then provides exceptions which would require the Court to decline jurisdiction indicates that Congress did not intend for the exception to negate subject matter jurisdiction under CAFA.  Rather… the exceptions are exceptions to the *exercise* of subject matter jurisdiction, not exceptions to the *existence* of subject matter jurisdiction." Calingo v. Meridian Resources Co., LLC, No. 7:11-cv-628 (VB), 2011 WL 3611319, *6 (S.D.N.Y. Aug. 16, 2011).  See Gold, 730 F.3d at 142 ("Congress's use of the term 'decline to exercise' means that the exception is not jurisdictional"); Visendi v. Bank of America, N.A., 733 F.3d 863 (9th Cir. 2013) (local controversy exception is not jurisdictional); Jacks v. Meridian Resource Co., LLC, 701 F.3d 1224 (8th Cir. 2012) ("[T]he local controversy exception in CAFA… operates as an abstention doctrine and does not divest the district court of subject matter jurisdiction").  "Further, if the local controversy exception was jurisdictional, courts would be required to consider it no matter when asserted and would be required to address it *sua sponte* if appropriate…. Courts, however, have not done so." Calingo, 2011 WL 3611319 * 5 (internal citations omitted).

Because the exceptions do not pertain to the existence of jurisdiction, but instead pertain to its exercise, they must be raised at a reasonable time.   See Gold, 730 F.3d at 142.  In fact, in Gold, this Circuit held, "that motions to dismiss under CAFA's home state exception must also be made within a reasonable time…. While what is reasonable will vary according to the relevant facts, it is preferable that such motions be made at the earliest practicable time."  Id. (internal citations omitted).  The court went on to find a delay of three years was warranted because the

class citizenship was presumably dependent on discovery, which had been drawn out.  The court, however, noted, "Under most circumstances we would have serious doubts that a delay of this length could be deemed reasonable.... We note at the outset that we are skeptical of the contention that nearly three years is a reasonable time for an employer to determine where its sales force lives...." <u>Id.</u>

Here, were Defendants to have independently moved to remand under any of the CAFA exceptions at this stage of the litigation, Plaintiffs would certainly argue that their motion is untimely.  This case was filed in March of 2009.  Defendants moved to dismiss Plaintiffs' case twice, once the summer of 2009 and once in the spring of 2010.  (Defs.' Mot. to Dismiss Briefs, ECF No. 49, 149.)  Although Defendants have denied jurisdiction in their Answers, Defendants did not argue about the Court's jurisdiction under CAFA or its exercise of supplemental jurisdiction over the NYLL claims in either motion to dismiss.  (<u>Id.</u>)  Later, on June 1, 2010, Defendant asserted the "home state" exception under CAFA in opposing Plaintiffs' motion for Rule 23 Class Certification.  (<u>See</u> Defs.' Class Cert. Opp., ECF No. 220.)[16]  The Court, however, did not rule on CAFA exceptions.  Instead, the Court ruled that it was appropriate to exercise supplemental jurisdiction and granted Plaintiffs' motion for Rule 23 Class Certification. (Class Cert. Order, ECF No. 253.)

Defendants have said nothing about the CAFA exceptions since.  In fact, since Rule 23 Class Certification was granted in 2010, Defendants have repeatedly invoked the Court's jurisdiction by bringing counterclaims against all absent Rule 23 Class Members in this Court,[17]

---

[16] Defendants also briefly asserted the "home state" and "local controversy" exceptions in their June 2010 reply letter requesting a stay of the Rule 23 motion pending a Second Circuit appeal in <u>Shahriar, et al. v. Smith & Wollensky Restaurant Group, Inc., et al.</u>, (S.D.N.Y. Case No. 08-CV-00057).  The appeal was withdrawn and Defendants' request for a stay mooted.  The Court did not rule on the exceptions.
[17] In response to Plaintiffs' motion to dismiss the Counterclaims, Defendants withdrew the claims as against the Rule 23 Class Members.  (ECF No. 266.)

requesting the Court's permission to take discovery from the Rule 23 Class, and affirmatively moving the Court to decide the questions of misclassification, employer status, and deductions under the NYLL, which the Court has, in fact, decided.  (See ECF Nos. 254, 299, 416, 474, 460, 487.)  Defendants did not raise CAFA exceptions in any of these filings.   If Defendants were to raise any CAFA exception now, after a three-year silence on the matter and active litigation of state claims in this Court, their arguments would be untimely and the exceptions, even if proven, would not be applied.  See Gold, 730 F.3d at 142.

Plaintiffs respect and appreciate the Court's interest in efficiently trying and resolving the remaining claims in this case.  However, Plaintiffs note that CAFA jurisdiction is determined based on viewing events at the outset of litigation.  Visendi, 733 F.3d at 868 ("It is well settled that post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing.") (internal quotations omitted).  Thus, that certain claims have since been resolved and certain others remain pending should not influence the Court's analysis of CAFA.  Moreover, as discussed above, at this stage of litigation after numerous state issues have been decided and only a few aspects of the case remain before trial, the Court should not decline jurisdiction sua sponte for the same reasons that the Second Circuit articulated in Gold and which would prevent Defendants from successfully making such a motion on their own.  (See supra § III.A.2.)  The interests of justice do not warrant such a result.  Jurisdiction under CAFA exists here and, respectfully, the time for applying any discretionary or mandatory remand exceptions has passed.

## CONCLUSION

This Court has original jurisdiction of the NYLL claims in this case under CAFA and must continue to exercise that jurisdiction.

Date: December 12, 2013

NICHOLS KASTER, PLLP


s/Anna P. Prakash
Michele R. Fisher (MF 4600)
Steven Andrew Smith, MN Bar No. 260836
  (*admitted pro hac vice*)
E. Michelle Drake, MN Bar No. 0387366
  (*admitted pro hac vice*)
Anna P. Prakash, MN Bar No. 0351362
  (*admitted pro hac vice*)
4600 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200

ATTORNEYS FOR PLAINTIFFS