UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
SABRINA HART and REKA FUREDI, *on behalf of* :
*themselves and all others similarly situated, and the New* :
*York Rule 23 Class*, :
:
                               Plaintiffs, :      09 Civ. 3043 (PAE)
:
                  -v-  :      OPINION & ORDER
:
RICK'S NY CABARET INTERNATIONAL, INC., RCI :
ENTERTAINMENT (NEW YORK), INC., and :
PEREGRINE ENTERPRISES, INC., :
:
                               Defendants. :
:
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       In this lawsuit, the named plaintiffs bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and a putative class action under New York Labor Law ("NYLL") §§ 190 *et seq.* & §§ 650 *et seq.* The Court has advised counsel that it is weighing whether to resolve the FLSA claims first; afterwards, the Court would decide whether to exercise supplemental jurisdiction over the NYLL claims. Plaintiffs have taken the position that the Court would independently have diversity jurisdiction over the NYLL claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), such that, in the event the federal claims are resolved ahead of the NYLL claims, the NYLL claims would necessarily remain in this Court for resolution. Defendants argue otherwise. Although the issue of CAFA jurisdiction need not be resolved now nor for as long as the Court chooses to exercise supplemental jurisdiction over the NYLL claims, the parties have thoughtfully briefed this issue, and the Court has elected to address it now, inasmuch as it may bear on future case management.

For the reasons that follow, the Court concludes that, based on the present record, it has independent jurisdiction under CAFA over plaintiffs' NYLL claims. However, in the event that the federal claims are resolved ahead of the NYLL claims and that the Court has determined not to continue to exercise supplemental jurisdiction over the NYLL claims, the Court may permit a motion to remand those claims if later-developed facts call into question whether jurisdiction under CAFA exists.

I.  **Background**[1]

On September 10, 2013, the Court issued an Opinion and Order resolving various issues in this case. *See Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013) (Dkt. 460). The Court held that plaintiffs, who are exotic dancers, were employees of the Rick's Cabaret NY strip club ("Rick's NY" or "the Club") entitled to be paid a minimum wage under the FLSA and the NYLL, and that Rick's NY's obligation under the FLSA to pay such a wage was not discharged by customers' payment to the dancers of "performance fees." *Id.* The Court further held that defendant Peregrine Enterprises, Inc. ("Peregrine") was an employer of plaintiffs and therefore liable to the extent of any finding of liability on any claims in this case. *Id.* The Court also granted summary judgment to plaintiffs on defendants' counterclaim for unjust enrichment. *Id.*

---

[1] In resolving this motion, the Court considered: Plaintiffs' Memorandum of Law in Support of Their Motion for the Court to Affirm and Retain Jurisdiction Under the Class Action Fairness Act ("Pl. Br.") (Dkt. 495); the Affidavit of Anna P. Prakash ("Prakash Aff.") (Dkt. 496); the Reply Affidavit of Anna P. Prakash ("Prakash Rep. Aff.") (Dkt. 497); Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion as to Whether the Court has Jurisdiction Over Plaintiffs' New York Labor Law Claims Under the Class Action Fairness Act ("Def. Br.") (Dkt. 500); the Declaration of Jeffrey A. Kimmel ("Kimmel Decl.") (Dkt. 501); and the Declaration of Steven DeAngelo ("DeAngelo Decl.") (Dkt. 502).

On November 18, 2013, the Court issued another Opinion and Order that: (1) denied defendants' motion for reconsideration of the Court's holding that plaintiffs were employees of Rick's NY after February 28, 2010; (2) denied defendants' motion to set the class period end-date as February 28, 2010, or alternatively as December 20, 2010; instead, the Court set the class period end-date as October 31, 2012; and (3) granted plaintiffs' motion for summary judgment on Claim Five, holding that the Club's deductions violated NYLL § 193. *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2013 U.S. Dist. LEXIS 164354 (S.D.N.Y. Nov. 18, 2013) (Dkt. 487).

After these decisions, significant issues remained in the case, including whether: (1) customers' performance fees may be applied to satisfy Rick's NY's duty under the NYLL to pay a minimum wage; (2) defendants Rick's NY Cabaret International New York ("RCI NY") and Rick's NY Cabaret International, Inc. ("RCII") were also employers of plaintiffs and jointly liable to plaintiffs—along with Peregrine—to the extent of any liability; and (3) any violations of the FLSA and the NYLL were willful and/or made other than in good faith.

On November 18, 2013, the Court issued a Case Management Order, in which it raised the possibility that the Court might seek to resolve the FLSA claims first, and then decide whether to exercise supplemental jurisdiction over the NYLL claims. Dkt. 488. The parties were directed to submit a joint letter to the Court with their views on this course of action.

On November 27, 2013, the parties submitted their joint letter. Dkt. 489. Plaintiffs opposed the Court's proposal to try the FLSA claims first. *Id.* They also asserted that the Court had original—not just supplemental—jurisdiction over plaintiffs' NYLL claims under CAFA, and that no exceptions to CAFA jurisdiction applied. *Id.* Defendants asserted, however, that the Court did not have original jurisdiction over plaintiffs' NYLL claims, and that, in any case, the

Court should decline to exercise CAFA jurisdiction under one of the three statutory exceptions. On December 3, 2013, the Court issued an Order, which, *inter alia*, set a briefing schedule on the issue of CAFA jurisdiction. Dkt. 490. The Court also directed counsel for both sides to notify the Court, by December 6, 2013, of the relevant facts bearing on the CAFA issue, and to identify any such facts disputed by the parties. *Id.* On December 6, 2013, the parties submitted their joint letter. Dkt. 492. On December 12, 2013, the Court concluded that there were no factual disputes relevant to CAFA that the Court needed to resolve prior to briefing. Dkt. 493.

On December 12, 2013, plaintiffs filed their "Motion for the Court to Affirm and Retain Jurisdiction" under CAFA. Dkt. 494. With their motion, plaintiffs submitted a supporting memorandum of law, Dkt. 495, and two supporting affidavits, Dkt. 496–97. On December 19, 2013, defendants submitted a memorandum of law in opposition to plaintiffs' motion, Dkt. 500, along with two supporting declarations, Dkt. 501–02.

## II.     Discussion

### A.     Burdens of Proof

Under CAFA, as in general, "the party asserting federal jurisdiction [bears] the burden of proving that the case [is] properly in federal court." *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 275 (2d Cir. 2006) (citation omitted). Disputes over CAFA in the federal courts have most often arisen in situations in which a plaintiff files a class action lawsuit in a state court, a defendant removes the case to federal court under CAFA, and the plaintiff moves to remand the case to state court. *See, e.g.*, *Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006). This case is atypical in that plaintiffs, not defendants, seek to assert federal jurisdiction. The general rule, however, still applies—plaintiffs, as the party seeking to assert federal jurisdiction,

4

bear the burden of establishing the requirements for CAFA jurisdiction. *DiTolla*, 469 F.3d at 275.

Once CAFA jurisdiction is established, the burden of proof to establish an exception to such jurisdiction rests with "the party opposing the exercise of the Court's established jurisdiction." *Brook v. UnitedHealth Group Inc.,* No. 06 Civ. 12954 (GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007); *see also Gold v. New York Life Ins. Co.*, No. 09 Civ. 3210 (WHP), 2012 WL 1674300, at *1 (S.D.N.Y. May 14, 2012) *aff'd*, 730 F.3d 137 (2d Cir. 2013) ("[T]he party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies.") (citation omitted). Again, in the typical CAFA case, plaintiffs are the party seeking to remand the case, and must prove that an exception to CAFA jurisdiction applies. *See, e.g.*, *Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010) ("[O]nce the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions.") (citations omitted). Here, however, it is the defendants who dispute that the Court may exercise federal jurisdiction under CAFA. Accordingly, if CAFA jurisdiction is established, defendants bear the burden of establishing that a CAFA exception applies.

### B. The Court Has CAFA Jurisdiction Over Plaintiffs' NYLL Claims

"CAFA provides the federal district courts with original jurisdiction to hear a class action if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (citing 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B)). Minimal

diversity exists "where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc.*, 472 F.3d at 56 (citation omitted).

Defendants do not dispute that plaintiffs have met their burden to establish the first and second requirements. Rule 23 class certification was granted in this case on December 20, 2010, *see Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK), 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010); as of the Third Amended Complaint's filing, there were "1,752 members of the class according to Rick's NY's business records." DeAngelo Decl. ¶ 4. Defendants also state that, "[o]ver 69% (1,217 out of 1,752) of the class members as of the filing of the third amended complaint had New York addresses." DeAngelo Decl. ¶ 4. Although the parties disagree as to how many of these class members were New York citizens, *see infra*, both sides agree that at least some class members were and are citizens of New York, and both have stipulated that RCII was and is a citizen of Texas, *see* Dkt. 492. Accordingly, plaintiffs have established that the case has more than 100 class members, and that at least one plaintiff and one defendant are citizens of different states.

Defendants argue, however, that plaintiffs have not alleged an amount in controversy of at least $5 million. *See* Def. Br. at 6 (plaintiffs "are unable to satisfy their burden to establish that the amount in controversy is at least $5,000,000"). In determining the amount in controversy, "the claims of the individual class members shall be aggregated"—class members include "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." *Standard Fire Ins.*, 133 S. Ct. at 1348 (citing §§ 1332(d)(6) & (d)(1)(D)) (emphasis in *Standard Fire Ins.*). Plaintiffs must show "that it appears to a *reasonable probability* that the aggregate claims of the plaintiff class are in excess of $5 million." *Blockbuster, Inc.*, 472 F.3d at 58 (citation omitted) (emphasis added); *see also Orlander v. Staples, Inc.*, No. 13 Civ. 703

6

(NRB), 2013 WL 5863544, at *1 (S.D.N.Y. Oct. 31, 2013) ("Here, because plaintiff brought this action in federal court, he must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million.") (citation omitted).

In satisfying the "reasonable probability" burden, there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).  To rebut this presumption, defendants "must show that the complaint was so patently deficient as to reflect to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums."  *Colavito*, 438 F.3d at 221 (citation omitted).

Here, the operative complaint alleges that the amount in controversy exceeds $5 million. *See* Third Amended Complaint ¶ 27 ("TAC") (Dkt. 153).  This creates a presumption that the amount in controversy requirement of CAFA has been met.  To rebut it, defendants offer the conclusory statement that "[p]laintiffs' allegations related to the amount in controversy are inadequately pled and their estimation of damages set forth in their moving papers is entirely speculative and insufficient to support CAFA jurisdiction." Def. Br. at 6.  Defendants have provided no evidence, however, that might establish "a legal certainty that the plaintiff[s] could not recover" more than $5 million in this lawsuit. *Colavito*, 438 F.3d at 221.

In any event, independent of the presumption, evidence plaintiffs supply makes it a reasonable probability that damages aggregated across the class would exceed $5 million. Defendants' Rule 68 offer to named plaintiff Hart reflects NYLL minimum wage damages of

$6,780.11 and NYLL § 193 unlawful deduction damages of $9,532.00.[2] *See* Prakash Aff. Ex. 1. The defense therefore estimated Hart's damages under the NYLL as $16,312.11. Multiplying this amount across 1,752 class members yields class-wide aggregate damages exceeding $28 million. To be sure, not every class member will be entitled to damages equal to Hart—if NYLL liability is shown, some may be entitled to more, and others less—but plaintiffs are not required at this stage to conclusively establish total damages. And, in the event that federal and state claims are bifurcated for trial, there may later be a more developed record for tabulating damages for CAFA purposes than at present. But, on the present record, it is reasonable to calculate class damages by extrapolating from Hart's assumed damages, and this extrapolation yields aggregate damages so far in excess of $5 million as to make it a *reasonable probability* that class-wide damages will exceed the statutory threshold.

Accordingly, on the present record, plaintiffs have carried their burden of establishing that the Court has CAFA jurisdiction over their NYLL claims.

### C.   Defendants Have Not Established Any Exceptions to CAFA Jurisdiction

Once CAFA jurisdiction is established, defendants have the burden of establishing an exception that would cause the Court to decline to exercise such jurisdiction. *See Brook,* 2007 WL 2827808, at *3.

Defendants focus on three such exceptions: the (1) "local controversy" exception; (2) "home state" exception; and (3) "interest of justice" exception. The "local controversy" and "home state" exceptions are mandatory; if either applies, the Court must decline CAFA jurisdiction over the NYLL claims. The mandatory exceptions are "designed to draw a delicate

---

[2] Plaintiffs' brief states that the estimate for unlawful deductions under the NYLL was $5,056.74, *see* Pl. Br. at 6, but the underlying evidence indicates that the estimate for that category of damages was in fact $9,532.00, *see* Prakash Aff. Ex. 1.

8

balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Brook*, 2007 WL 2827808, at *3 (citation omitted). In other words, these exceptions are "intended to keep purely local matters and issues of particular state concern in the state courts." *Id.* (citation omitted). Although the "interest of justice" exception is discretionary, it too is "designed to address similar concerns regarding truly local controversies in cases where neither mandatory exception applies." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 355 (E.D.N.Y. 2008).

The Second Circuit has not resolved the level of proof required to establish an exception to CAFA jurisdiction. Some Circuits have applied a preponderance of the evidence standard. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) ("plaintiffs had to establish by a preponderance of the evidence that two-thirds of their proposed class members are Kansas citizens"); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) ("A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard."). One district court in this Circuit has applied a reasonable likelihood standard. *See Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) ("While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is *reasonably likely* that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New York.") (emphasis added). Defendants assert that they meet either burden. *See* Def. Br. at 7 ("Defendants more than meet any burden under either of these standards for all exceptions pursuant to CAFA."). For the purpose of this opinion, the Court will apply the preponderance of the evidence standard to determine whether a CAFA exception applies.

### 1.     The "Local Controversy" Exception Does Not Apply

CAFA provides for a mandatory exception to jurisdiction for matters that are "local controversies." *See* 28 U.S.C. § 1332(d)(4)(A). Under this section, a "district court shall decline to exercise jurisdiction" over a class action in which these conditions are met:

  (i) (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
     (II) at least 1 defendant is a defendant—
         (aa) from whom significant relief is sought by members of the plaintiff class;
         (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; *and*
         (cc) who is a citizen of the State in which the action was originally filed; *and*
     (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; *and*
  (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

*Id.* (emphases added). This case was originally filed in New York. *See* Dkt. 1. Accordingly, the Court must decline to exercise jurisdiction under CAFA if:

(1) more than two-thirds of the class members are New York citizens;

(2) at least one key defendant is a New York citizen;

(3) the alleged conduct causing injury occurred in New York; *and*

(4) no other class action has been filed asserting similar factual allegations against any of the defendants on behalf of the same or other persons during the three-year period preceding the filing of this case.

Plaintiffs concede that defendants have established the second and third elements: Peregrine and RCI NY are New York citizens, *see* Dkt. 492, and all alleged conduct in this case occurred in New York, *see* TAC. But, according to plaintiffs, defendants have failed to establish

the other two elements: that (1) two-thirds of the class are citizens of New York; and (2) no similar class actions were filed in the three years before this case. *See* Pl. Br. at 13–21.

### *a. Citizenship of Plaintiff Class Members*

Under CAFA, the citizenship of plaintiffs in the class action is to be determined "as of the date of filing of the complaint or amended complaint." 28 U.S.C. § 1332(d)(7). For the local controversy exception to apply, plaintiffs must therefore establish by a preponderance that more than two-thirds of plaintiffs' class members were citizens of New York as of the filing dates of the Complaint (March 30, 2009) or TAC (May 28, 2010).

As evidence of such citizenship, defendants rely entirely on their business records, which reflect the last-known addresses of each class member. Def. Br. at 8. These records contain "the last known names and addresses for all entertainers who performed at Rick's NY from when the Club opened through May 28, 2010." DeAngelo Decl. ¶ 3. These records show the following:

1. There were 1,370 members of the Rule 23 class as of the date when the initial Complaint was filed; and 974 (71%) of these class members had New York addresses.

2. There were 1,752 members of the Rule 23 class when the TAC was filed; and 1,217 (69%) of these class members had New York addresses.

*Id.* ¶ 4; Prakash Aff. ¶ 5. Plaintiffs do not dispute the authenticity or accuracy of defendants' records. However, they contend that the dancers' last known addresses, standing alone, are insufficient to establish, by a preponderance, that two-thirds of class members were New York citizens during the relevant period. *See* Pl. Br. at 16 n.11 ("The parties do not dispute what the records state on their face; rather, the parties dispute whether what the records state is sufficient to prove citizenship for CAFA purposes."). Thus, the decisive question is: Do these records make it more likely than not that two-thirds of the class members were citizens of New York on March 30, 2009 and/or May 28, 2010?

For several reasons, on the present record, the Court concludes that, although the question is a reasonably close one, the answer is no. First, defendants' records are not directed squarely to the issue of *citizenship*. Instead, they capture the last-known address given by a dancer at the time she worked for Rick's NY. Such an entry provides only limited insight into whether the dancer intended to make New York her permanent home. Yet that is a key question for determining citizenship: "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile," *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000), which in turn is defined as "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning," *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). *See also LoCurto v. LoCurto*, 71 Fed. R. Serv. 3d 1004, at *3 (S.D.N.Y. 2008) ("In general, domicile has two components: (1) physical presence in a state, and (2) the intent to make the state a home."). "At any given time, a person has but one domicile." *Palazzo*, 232 F.3d at 42.

Thus, a class member who lived in New York while working at Rick's NY, but who lacked the intent to make New York her home, was not a New York citizen for purposes of 28 U.S.C. § 1332. *See Mondragon*, 736 F.3d at 884 ("That a purchaser may have a residential address in California does not mean that person is a citizen of California."). Particularly in the case of a short-term or itinerant employee, there may often be a disconnect between a present address and a long-term fixed home. Notably, the Court has not been supplied with any evidence that would enable it to put into context Rick's NY's last-known address data. Such factors as the typical duration of dancers' employment at Rick's NY, the labor pool (in terms of geography, education, and past employment) from which Rick's NY drew dancers, or the mobility versus

stability of Rick's NY's employees are facts potentially relevant to whether the address that a dancer listed was indicative of her fixed or long-term home.[3]

Second, Rick's NY's records do not speak to the dancers' citizenship as of the critical dates. Under 28 U.S.C. § 1332(d)(7), the citizenship of class members is to be determined "as of the date of filing of the complaint or amended complaint." Rick's NY's last known address for each class member does not reflect that date, at least as to class members who left Rick's NY, or moved or changed their state citizenship, before the filing of the Complaint or TAC. Take, for example, a class member who worked for Rick's NY in 2007 when she was a New York citizen, but who left Rick's NY in 2007 or 2008 and thereafter moved to California with intent to stay there. The last known address in the database kept by Rick's NY would likely still be New York, even though the dancer's citizenship as of the filing of the Complaint in 2009 and the TAC in 2010 was California. Plaintiffs in fact provide several concrete such examples. *See* Pl. Br. at 16–17 (plaintiff Hart's address was listed as Astoria, New York, but she lived in Florida in 2009 and 2010; plaintiff Mullen's address was listed as Brooklyn, New York, but she lived in Arizona in 2010).[4]

Third, the data that Rick's NY has presented only barely clears the statutory two-thirds bar needed for the local controversy exception to apply. Removal of just a small number of class members from the New York category, on the grounds that they were erroneously treated as New

---

[3] There may be other evidence that would bear on this issue, and potentially a closer analysis of the pertinent facts regarding a representative sample of class members would enable the Court to determine the probative value, as to citizenship, of Rick's NY's last-known address data. The Court's present holding does not preclude either party from revisiting this issue.

[4] To be sure, as to some dancers, this temporal factor might benefit Rick's NY's claim that the local controversy exception fits: A class member who gave an out-of-state address to Rick's NY could, by the date this case was filed, have moved into New York.

13

York citizens, would cause the resulting percentage to drop below two-thirds. Removing from the tally only 61 (just over 6%) of the 974 class members whose last-known address as of the Complaint was in New York would bring that number below the two-thirds threshold. Similarly, removing only 49 (roughly 4%) of the 1217 class members whose last-known address as of the TAC was in New York would bring that number below the statutory threshold. Had Rick's NY's last-known address data situated, say, 95% of the class members in New York, there would be a far more substantial buffer, and the Court would be more comfortable relying on this data as a basis to find the two-thirds threshold met. But Rick's NY's data provides scant margin for error, while, on the record presented, presenting a substantial likelihood of such error.

In arguing to the contrary, defendants primarily rely on *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358 (E.D.N.Y. 2012); but *Richins*, if anything, underscores the inadequacy of the evidence of citizenship offered here. In *Richins*, a class of current and former students at Hofstra University Law School sued Hofstra in New York State court for fraud and misrepresentation. Hofstra removed the case to federal court under CAFA; plaintiffs moved to remand. In deciding whether the local controversy exception applied, the Court was called upon, as here, to determine whether two-thirds of the class members were New York citizens. In holding that plaintiffs had so shown, the Court relied on two categories of data. First, the Court held, the list of addresses for students in the classes of 2007–2012, and those currently enrolled at the law school, was "highly probative of whether or not members of the Plaintiff Class are, indeed, citizens of the State of New York," despite the fact that this "information may not reflect with perfect accuracy the current domicile and intent to remain in New York of each and every member of the Plaintiff Class as of the date of commencement of this lawsuit." *Id.* at 363. The Court credited this data in large part because plaintiffs had taken "care to exclude temporary, on-campus, parental, and

14

knowingly stale information from their calculations." *Id.*  Second, the Court noted employment data reported in *U.S. News and World Report*, which indicated that for the "graduating classes of 2006[–]2010, 71%, 84%, 85% and 82%, respectively, reported being employed within the State of New York." *Id.* at 362.  Considering both sets of data together, the Court held, plaintiffs had "demonstrated, by a preponderance of the evidence, that more than two-thirds of the Plaintiff Class are citizens of the State of New York." *Id.*  Accordingly, the Court remanded the case to state court.

The data here is much less reliable than that in *Richins*.  Here, defendants have provided only the last-known addresses kept by Rick's NY.  Unlike in *Richins*, there is no indication that this data was scrubbed to remove temporary or knowingly stale information.  Plaintiffs, in fact, offer credible evidence that some such data was stale as of the relevant filing dates.  *See* Pl. Br. at 16–17 (citing class member depositions).  Furthermore, the *Richins* plaintiffs came forward with corroborating evidence that 71%–82% of Hofstra law graduates reported being employed in New York *after* graduation.  *Id.* at 362.  This tended to confirm that a large proportion of Hofstra graduates intended to live and work in New York.  Finally, the Court notes, as have other courts, that exotic dancers may tend to change jobs and switch their employment more frequently than some other categories of workers.  *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 328–29 (5th Cir. 1993) ("The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA."); *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011) ("Other courts have found, and Plaintiffs have previously asserted, that nude entertainers tend to be transient or itinerant.").  This, too, calls into question how probative the snapshot of a last-known address is of such a dancer's state citizenship.

For these reasons, defendants have not established, by a preponderance, that more than two-thirds of the plaintiff class were New York citizens on the dates when either the Complaint or the TAC were filed. This precludes a finding, at least on the present record, that the local controversy exception applies.

### b. "Other Class Actions" Within Three Years

Another requirement for the local controversy exception is that no "other class action" was filed within a "3-year period preceding the filing" of the subject class action that asserted "the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). Because defendants have failed to prove that two-thirds of the class were New York citizens, the Court need not definitely resolve whether there existed "another class action" that would qualify under 28 U.S.C. § 1332(d)(4)(A)(ii). But as a review of that issue shows, it too presents a potential hurdle to defendants' bid for remand.

In arguing that there was such an "other class action," plaintiffs point to *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458 (GEL), a putative class action filed in this District by Nicole Imbeault against defendants RCI NY and RCII on June 17, 2008. *See id.* Dkt. 1. On August 19, 2008, Imbeault amended her complaint, adding Peregrine as a defendant. *See id.* Dkt. 5 (Amended Complaint). On February 20, 2009, Imbeault accepted defendants' Rule 68 offer of $36,000 plus costs and reasonable attorneys' fees, and the Amended Complaint was dismissed with prejudice. *See id.* Dkt. 19. No class was ever certified. On March 30, 2009, just over a month after Imbeault's case settled, the plaintiffs here filed their original Complaint. *See* Dkt. 1.

As a matter of plain language, *Imbeault* would appear to qualify as an "other class action" under 28 U.S.C. § 1332(d)(4)(A)(ii)—it was a separate class action lawsuit asserting the same

16

factual allegations against the same defendants, and was filed less than three years before this case was filed. To be sure, treating *Imbeault* as a case capable of blocking remand based on § 1332(d)(4)(A)(ii) does not appear to advance the evident purpose for which Congress imposed the "no other class action" requirement. That purpose was to prevent the remand to state courts of "copy cat" class actions, where "duplicative class actions asserting similar claims on behalf of essentially the same people" were filed and pending in different courts. *Brook*, 2007 WL 2827808, at *4 (citation omitted); *see also* S. Rep. No. 109-14 at 42 ("Multiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity."). As Judge Daniels has explained:

> Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by-state basis, and then proceed to file virtually identical class action complaints in various state courts. Such conduct is precisely what the CAFA legislation was intended to eradicate.

*Brook*, 2007 WL 2827808, at *4. On this basis, in *Brook*, Judge Daniels held that the local controversy exception did not apply, where a nearly identical class action lawsuit to the pending lawsuit (filed in New York state court and then removed) had been filed in Connecticut state court. *Id.*

Here, by contrast, as a practical matter, there can be no concern that copy cat actions filed in different courts might prevent the consolidation of such claims into one federal case. Rather, plaintiffs filed this class action in federal court; and *Imbeault*, the only similar putative class action, was filed in the same district as this and was terminated before class certification was sought or granted.

Nonetheless, on initial review, the plain language of the statute would appear to apply here, so as to treat *Imbeault* as an "other class action" precluding remand under the local

controversy exception. The statute defines a class action as "any civil action *filed* under rule 23 of the Federal Rules of Civil Procedure," and specifies that subsection (d) applies "to any class action *before* or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. §§ 1332(d)(1)(B) & (d)(8) (emphases added). This description appears to apply in full to *Imbeault*. And the statute does not textually require that the "other class action" have been certified, that it be active at the time of the case at bar, or that it be filed in a state court or different federal district court.

In light of defendants' present failure to establish the separate two-thirds citizenship requirement, the Court need not reach whether *Imbeault* qualifies as an "other class action" under 28 U.S.C. § 1332(d)(4)(A)(ii) and thereby prevents remand. However, should a future motion for remand be made on the basis of the local controversy exception, the Court would expect focused briefing on whether *Imbeault* is an "other class action" under the statute.

### 2. The "Home State" Exception Does Not Apply

Defendants have also failed to establish that the alternative "home state" exception applies. Under this exception, a district court must decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). For the exception to apply in this case, (1) at least two-thirds of class members must have been citizens of New York; and (2) the "primary defendants" must have been citizens of New York.

For the reasons stated earlier, on the present record, the first requirement has not been met. The "home state" exception accordingly does not apply. The Court thus has no occasion to

reach plaintiffs' alternative argument that RCII, which is a Texas citizen, is a "primary defendant" within the meaning of the statute.

### 3. The Court Will Not, At This Time, Decline Jurisdiction in the Interest of Justice

Finally, defendants argue that, even if the mandatory exclusions in § 1332(d)(4) do not apply, the Court should use its discretion to decline jurisdiction, pursuant to CAFA's "interest of justice" exception. That exception provides:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise [CAFA] jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on considerations of—
> 
>   (A) whether the claims asserted involve matters of national or interstate interest;
>   (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>   (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>   (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>   (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>   (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3). Plaintiffs argue that this provision does not apply, because one primary defendant, RCII, is a Texas citizen. Defendants counter that RCII is not a *primary* defendant within the meaning of CAFA, such that its citizenship does not bar the Court from invoking this discretion exception.

The Court need not, at this time, resolve whether RCII is a primary defendant, and if not, whether it would decline to exercise CAFA jurisdiction. At this stage, plaintiffs' FLSA claims

remain unresolved and it is clearly sensible to exercise supplemental jurisdiction over plaintiffs' NYLL claims. It would not be in the interest of justice for the Court now to decline CAFA jurisdiction over plaintiffs' NYLL claims, and to remand those claims to state court. Should the Court elect to try the FLSA claims first, following resolution of those claims, defendants are free to renew their request that the Court invoke the "interests of justice" exception and remand the NYLL claims. At that point, the Court expects, there may be a more substantial evidentiary basis on which to resolve whether RCII is properly classed as a primary defendant, a necessary but not sufficient requirement for this discretionary exception to apply.

## CONCLUSION

For the foregoing reasons, the Court's judgment, based on the present record, is that, in addition to having supplemental jurisdiction over plaintiffs' NYLL claims, it also has original jurisdiction over those claims, based on CAFA. This decision does not preclude defendants, on a fuller record, from making a new application later in the case.

The Clerk of Court is directed to terminate the motion at docket number 494.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 28, 2014
      New York, New York