UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

SABRINA HART and  REKA FUREDI,　　　　　:
on behalf of themselves, all others similarly　:
situated, and the New York Rule 23 Class,　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Plaintiffs,　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　-against-　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
RICK'S CABARET INTERNATIONAL INC.,　:
RCI ENTERTAINMENT (NEW YORK) INC.　:
and PEREGRINE ENTERPRISES, INC.,　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants.　　　:
-----------------------------------------------------------X

**Case No: 09-CV-3043 (PAE/RLE)**

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON NYLL § 196-d AND OFFSET

---

Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................ 1

FACTS ................................................................................................................ 2

ARGUMENT ...................................................................................................... 5

   I.    SUMMARY JUDGMENT STANDARD ...................................................... 6

  II.    PERFORMANCE FEES ARE NOT TIPS; DEFENDANTS ARE ENTITLED
       TO JUDGMENT ON PLAINTIFFS' FOURTH CLAIM FOR RELIEF .......... 6

     A.  Performance Fees Are Not Service Charges Over and Above a Base Charge and
        Therefore Cannot be "Purported to be Gratuities" ............................................ 7

     B.  The Reasonable Customer Standard ..................................................................... 7

     C.  A Reasonable Customer at Rick's NY, Under the Totality of the Circumstances,
        Would Understand that Non-Discretionary Mandatory Performance Fees are Not Tips ... 9

 III.    PORTIONS OF PERFORMANCE FEES USED TO
       COMPENSATE ENTERTAINERS AT RICK'S NY
       OFFSET ANY WAGE OBLIGATIONS OF PEREGRINE ........................... 13

     A.  Performance Fees Belong to Peregrine as the Employer ................................... 14

     B.  Performance Fees Offset Any Obligation to Pay Minimum Wage ................... 16

     C.  Plaintiffs Should Not Receive a Windfall and Offset
        Should Be Allowed Under the Principle of Unjust Enrichment ....................... 18

     D.  Plaintiffs' Argument Ignores The Purpose
        of the New York State Minimum Wage Act ...................................................... 20

CONCLUSION .................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amusement Indus., Inc. v. Stern*,
   786 F. Supp. 2d 758 (S.D.N.Y. 2011)..................................................................... 18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................... 6

*Alaska Dep't of Labor v. Investors Unltd., Inc.*,
   3AN 91-37 Civ. (Sup. Ct. Alaska Apr. 27, 1993) .................................................. 6

*Calhoun v. Mastec, No.*,
   No. 03-CV-386S, 2006 WL 2806452 (W.D.N.Y. Sept. 28, 2006)..................... 19, 20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................... 6

*Doe v. Cin-Lan, Inc.*,
   No. 08-cv-12719, 2010 WL 726710 (E.D. Mich. Feb. 24, 2010)............... 15, 18, 19

*In the Matter of HDV Manhattan, LLC d/b/a Hustler Club*,
   DTA No. 824229, 2014 WL 504271 (N.Y. Div. Tax. App. Jan. 30, 2014) .......... 8 n.19, 15, 16

*In re Blackwood Associates, L.P.*,
   153 F.3d 61 (2d Cir. 1998)..................................................................................... 6

*In re Settlement Home Care Inc., v. Indus. Bd. of Appeals of Dep't of Labor*,
   151 A.D.2d 580, 542 N.Y.S.2d 346 (2d Dep't 1989)......................................... 20, 21

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)................................................................................... 18

*Koljenovic v. Marx*,
   No. 09-CV-4480 (NG), 2014 WL 805185 (E.D.N.Y. Feb. 6, 2014) ...................... 21

*Luiken v. Domino's Pizza, LLC*,
   705 F.3d 370 (8th Cir. 2013) ............................................................ 2 n.3, 7 n.18, 9

*Maldonado v. BTB Events & Celebrations, Inc.*,
   No. 12 CIV. 5968 (PAE), 2013 WL 6147803 (S.D.N.Y. Nov. 22, 2013)........................ *passim*

*Matter of 677 New Loudon Corp. d/b/a Nite Moves v. State of N.Y. Tax Appeals Trib.*
   85 A.D.3d 1341, 925 N.Y.S.2d 686 (3d Dep't 2011), *aff'd*,
   19 N.Y.3d 1058 (2012), *cert denied*, 134 S. Ct. 422 (2013)........................ 8 n.19, 15

*McLee v. Chrysler Corp.*,
   109 F.3d 130 (2d Cir. 1997)............................................................................... 6

*Moody v. Razooly*,
   No. A099065, 2003 WL 464076 (Cal. App. 1st Dist. Feb. 25, 2003) .............................. *passim*

*Oram v. SoulCycle LLC*,
   979 F. Supp. 2d 498 (S.D.N.Y. 2013).................................................................... 19

*Ruffin v. Entm't of the E. Panhandle*,
   No. 3:11-CV-19, 2012 WL 761658 (N.D.W. Va. Mar. 7, 2012) *on reconsideration
   in part,* 3:11-CV-19, 2012 WL 1435674 (N.D.W. Va. Apr. 25, 2012) .................................. 19

*Samiento v. World Yacht Inc.*,
   10 N.Y.3d 70, 883 N.E.2d 990 (2008)................................................................ *passim*

*Spicer v. Pier Sixty LLC*,
   269 F.R.D. 321 (S.D.N.Y. 2010) ......................................................................... 8

*W. Elec. Co. v. Brenner*,
   41 N.Y.2d 291, 360 N.E.2d 1091 (1977).............................................................. 14

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000)................................................................................ 6

**Statutes**

Minn. Stat. § 177.24, subd. 3 .......................................................................... 9

N.Y. Lab. Law § 190 (McKinney)...................................................................... 19

N.Y. Lab. Law § 191 (McKinney)...................................................................... 16

N.Y. Lab. Law § 196-d (McKinney) ................................................................. *passim*

N.Y. Lab. Law § 650 (McKinney)...................................................................... 20

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................... 1

**Regulations**

N.Y. Comp. Codes R. & Regs. tit. 12, § 137 ........................................................ 19

**Other Authorities**

9 Williston, Contracts (3d ed.), § 1012 ............................................................ 14 n.26

Employer's Right to Earnings or Profits Made by Employee,
   71 A.L.R. 933 (Jan. 1, 1931).................................................................................... 14

Restatement (Second) of Agency § 2.................................................................. 14 n.26

Restatement (Second) of Agency § 388.................................................................. 14

Restatement (Second) of Agency § 403.................................................................. 14

N.Y. Lab. Law January 5, 1966, Bill Jacket, L. 1966, ch. 649.................................... 20

Tax Bulletin Sales and Use Tax TB-ST-320, N.Y. Dep't of Taxation and Fin.
Dep't of Taxation and Fin.,
   http://www.tax.ny.gov/pdf/tg_bulletins/sales/b12_320s.pdf. .......................... 16 n.28

# INTRODUCTION[1]

Defendants Rick's Cabaret International Inc. ("RCII"), RCI Entertainment (New York) Inc. ("RCI NY") and Peregrine Enterprises, Inc. ("Peregrine") (RCII, RCI NY and Peregrine are collectively referred to herein as "Defendants") submit this memorandum of law in support of Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56, (a) dismissing the plaintiffs' ("Plaintiffs") fourth cause of action under New York Labor Law ("NYLL") § 196-d alleging unlawful retention of gratuities, and (b) seeking an order granting judgment in favor of Defendants on Defendants' offset affirmative defenses under New York State law.

# PRELIMINARY STATEMENT

As a matter of New York law, Performance Fees paid by patrons for personal dances at Rick's NY were not tips and can therefore be used to offset any wage obligations of the Club under the New York Labor Law.  Pursuant to the case law on this issue in New York, and in light of the documentary and testimonial evidence, there is no genuine issue of fact as to whether Performance Fees are "tips." They are not.  Under the circumstances here, a reasonable customer at Rick's NY could not have thought that the non-discretionary Performance Fees paid for personal dances, whether paid in the form of cash directly to entertainers or "Dance Dollars" purchased from Rick's NY, were tips.

Moreover, it would be unjust and contrary to the purpose of the Minimum Wage Act if the Plaintiffs were permitted to keep the substantial amounts they were paid while dancing at Rick's NY and now also be paid additional compensation.  Performance Fees paid by customers at Rick's NY belonged to Plaintiffs' employer – Peregrine. September 10, 2013 Opinion and

---

[1]     Plaintiffs' Third Amended Complaint (the "Complaint") can be found at ECF No. 153 and is attached to the July 14, 2014 Declaration of Jeffrey Kimmel ("Kimmel Decl."), submitted herewith, as Exhibit D.  Defendants' Amended Answer, Affirmative Defenses and Counterclaim to Plaintiffs' Third Amended Complaint can be found at ECF  No. 279, and is attached to the Kimmel Decl. as Exhibit E.  A copy of Plaintiffs' Answer to the Counterclaim can be found at ECF No. 284, and is attached to the Kimmel Decl. as Exhibit F.

1

Order of the Court (ECF Dkt. No. 460) ("9/10/13 Opinion and Order").[2]  There is no legal basis for Plaintiffs' attempt to avoid having the significant amounts they earned while dancing at Rick's NY satisfy any wage obligations of the Club.  In light of the Court's holding that Plaintiffs are "employees," the amounts they earned at Rick's NY must be set off against the "wages" they claim they are owed.  Any other result would be unjust and a distortion of the goals of the New York Labor Law.

Consequently, Defendants respectfully submit that the Court grant summary judgment dismissing Plaintiffs' fourth cause of action under NYLL § 196-d and grant summary judgment in favor of Defendants on their eighth, twenty-ninth, thirty-fifth, and thirty-seventh affirmative defenses for offset. *See* Answer ¶¶ 255, 276, 282, 284.[3]

## **FACTS**[4]

The Court is familiar with the facts of the case, which are not restated fully herein. Rather, the specific facts pertinent to the issues addressed in this brief are set forth below.

Entertainers at Rick's NY sell personal dances, sometimes referred to as "table dances," to customers.[5]  The mandatory fee for a personal dance on the main floor of the Club is $20 per song. Defs' 7/14/14 56.1 ¶ 5.  The fee charged to a customer for the entertainer's time in a semi-private room is $100 for 15 minutes, $200 for 30 minutes and $400 for one hour.[6]  Customers

---

[2]    In its Opinion and Order dated September 10, 2013 (ECF Dkt. No. 460) ("9/10/13 Opinion and Order") this Court held that Plaintiffs were employees of Peregrine. *Id.* at p. 35.  The 9/10/13 Opinion and Order is attached to July 14, 2014 Declaration of Jeffrey Kimmel ("Kimmel Decl."), submitted herewith, as Exhibit B.

[3]    The evidence in the record supports that a reasonable customer would believe that Performance Fees are not gratuities. However, should this Court determine that whether Performance Fees are gratuities is a question of fact, this issue is not appropriate for class-wide resolution.  Defendants maintain that by virtue of the fact that customers had different circumstances and interactions with regard to the Performance Fees, the New York Rule 23 New York Labor Law class should be decertified. *See Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 373 (8th Cir. 2013). Defendants' motion for decertification is presently *sub judice*. (ECF Dkt. No. 509).

[4]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 Motion for Summary Judgment on NYLL § 196-d and Offset submitted herewith ("Defs' 7/14/14 56.1").

[5]    Defs' 7/14/14 56.1 ¶ 4.

[6]    Defs' 7/14/14 56.1 ¶ 13.

can pay for services provided by entertainers ("Performance Fees") with either cash or with Rick's Cabaret[7] "Dance Dollars" also known as Dance Tickets. Defs' 7/14/14 56.1 ¶ 18.

The undisputed facts all establish that Performance Fees are not tips and that a reasonable customer could not believe Performance Fees are tips. Among these facts are that:

- Regardless of whether Performance Fees were paid in cash or with Dance Dollars, they were "fixed non-negotiable charges," and that "a customer could not, in his or her discretion, pay less than $20" for a personal dance. 9/10/13 Opinion and Order, pp. 36, 37; *see also* Defs' 7/14/14 56.1 ¶¶ 5 – 7, 11;

- "[T]he minimum performance fee ($20 if by cash, $18 if by Dance Dollars) … was not 'voluntary' from the customer's perspective." 9/10/13 Opinion and Order, p. 46; *see also* Defs' 7/14/14 56.1 ¶¶ 5 – 7, 11, 22.

- Customers were "free to pay the dancer more than the required fee, and the dancer was free to keep the *extra money*." 9/10/13 Opinion and Order, p. 37 (emphasis added); *see also* Defs' 7/14/14 56.1 ¶¶ 9, 17.[8]

- Dance Dollars have, at different times during the relevant time period, stated on their face (and on documents signed by patrons at the time of purchase):

  - "**VALID FOR DANCES ONLY**."[9]

  - "**THIS CERTIFICATE IS REDEEMABLE FOR PERFORMANCES ONLY AT RICK'S CABARET**."[10]

  - "**THIS CERTIFICATE IS REDEEMABLE FOR ONE (1) DANCE AT RICK'S CABARET.**"[11]

  - "**NOT VALID FOR GRATUITIES**."[12]

  - "**PAYMENT FOR PERSONAL DANCES ARE MANDATORY CHARGES AND NOT GRATUITIES.  ENTERTAINERS DO NOT RETAIN THE FULL AMOUNT OF FEES PAID FOR PERSONAL**

---

[7]       The first version of Dance Dollar, used only for the first few months that the Club was open, stated "Club Trax" on its face, that it was "NOT REDEEMABLE FOR CASH" and was "VALID FOR DANCES ONLY." Defs' 7/14/14 56.1 ¶ 27.  All subsequent versions of Dance Dollars or Dance Tickets used at Rick's NY stated "Rick's Cabaret" on their face. Defs' 7/14/14 56.1 ¶ 28 – 31, Kimmel Decl. Exhibits N – P.

[8]       Customers "tipped" entertainers an amount in excess of the Performance Fee. Defs' 7/14/14 56.1 ¶¶ 9, 17.

[9]       Defs' 7/14/14 56.1 ¶ 27.

[10]      Defs' 7/14/14 56.1 ¶ 28.

[11]      Defs' 7/14/14 56.1 ¶ 29.

[12]      Defs' 7/14/14 56.1 ¶ 30.

DANCES."[13]

- o "**NOT LEGAL TENDER. NO CASH VALUE. SOUVENIR VOUCHER.**"[14]

- o "**VALID ONLY AT LOCATION PURCHASED.**"[15]

- Several Plaintiffs testified that they would tell customers at Rick's NY they received less than $20.00 for the redemption of a Dance Dollar and that customers otherwise knew that Rick's NY retained a portion of the $20 Performance Fee when an entertainer redeemed a Dance Dollar:

    - o Plaintiff Ti'lesa Clark testified that she discussed the fact that Rick's NY retained a percentage of Dance Dollars with customers. Defs' 7/14/14 56.1 ¶ 33. Ms. Clark testified that though she would never bring it up, customers would say "I know you receive only a percentage of this, so here's some extra for you." Defs' 7/14/14 56.1 ¶ 33. In addition, Ms. Clark testified that "[t]he Club takes a percentage [of Dance Dollars upon redemption by entertainers,] everybody knows that." Defs' 7/14/14 56.1 ¶ 33.

    - o Plaintiff Emily Finsterwald testified that there were occasions when she discussed with customers that entertainers at Rick's NY received less than $20.00 for redemption of each Dance Dollar. Defs' 7/14/14 56.1 ¶ 34. Ms. Finsterwald also testified that because a customer for whom she performed in a semi-private room "knew that [entertainers received less than $20.00 for redemption of a Dance Dollar] he tipped [her] above what the typical room fees were." Defs' 7/14/14 56.1 ¶ 34.

    - o Plaintiff Ashley Jurman testified that though she never told any customers that she would not receive $20.00 for redemption of Dance Dollars, customers were already aware. She said that sometimes customers would say, "[w]e know you're not getting this much," or "I'd rather go to the ATM for you." Defs' 7/14/14 56.1 ¶ 35.

---

[13]    *See* Dance Dollars and forms of receipts that are given to customers who purchase Dance Dollars put into use at Rick's NY between approximately May 24 and May 26, 2011. Defs' 7/14/14 56.1 ¶ 31. Customers who spent time with entertainers in a semi-private room would be presented with Dance Dollar forms requiring their signature (PER 7315) which also stated "PAYMENT FOR PERSONAL DANCES ARE MANDATORY CHARGES AND NOT GRATUITIES. ENTERTAINERS DO NOT RETAIN THE FULL AMOUNT OF FEES PAID FOR PERSONAL DANCES." Defs' 7/14/14 56.1 ¶ 32. Those customers who wanted to extend time in semi-private rooms beyond the time originally agreed to were asked to sign this same form again for every such extension. Defs' 7/14/14 56.1 ¶ 32. The documents which went into circulation in or around May 2011 were not made a part of the record for the parties' prior summary judgment motions on this issue, brought pursuant to the FLSA, (ECF Dkt Nos. 384, 415) following stipulation by the parties.

[14]    Defs' 7/14/14 56.1 ¶¶ 29, 31.

[15]    Defs' 7/14/14 56.1 ¶¶ 29, 31.

4

- o Erin Mullen testified that customers made comments evidencing their understanding that entertainers at Rick's NY do not keep $20 for the redemption of Dance Dollars, such as "we know you guys don't get to keep all this money…." Defs' 7/14/14 56.1 ¶ 36.

- o Rhea Dilag testified that customers at Rick's NY would ask her how much she was paid for each Dance Dollar and she would tell them. Defs' 7/14/14 56.1 ¶ 37.

- o Plaintiff Amberly Miller testified that on one occasion she told a customer what the "breakdown" was for Dance Dollar redemptions and that she would make less than $20.00 upon redemption. Defs' 7/14/14 56.1 ¶ 38.

## ARGUMENT

Performance Fees are not gratuities under the NYLL.[16]  A reasonable customer at Rick's NY could not believe that Performance Fees are gratuities.  The totality of the circumstances surrounding Performance Fees, including that they are non-discretionary mandatory fees, that Dance Dollars and related receipts contain express language that they are not gratuities, along with Plaintiffs' own testimony that customers had actual knowledge that entertainers are paid less than $20.00 for the redemption of Dance Dollars, all establish that a reasonable customer could not believe that Performance Fees were gratuities.  Thus, Performance Fees are Peregrine's money with which Peregrine can do what it chooses, and Peregrine's decision to retain a portion and to use the rest to pay class members is not "tip taking" pursuant to NYLL §196-d and Plaintiffs' Fourth Cause of Action must fail.  Moreover, any amounts of Performance Fees that Peregrine directly or indirectly paid to class members with money earned from sales of personal dances must offset any wage obligations that Defendants may have had.

---

[16]     While this Court held in its 9/10/13 Opinion and Order that Performance Fees under Federal Law are gratuities, "the standards for determining whether a payment is a gratuity differ under the FLSA and the NYLL…." *Maldonado v. BTB Events & Celebrations, Inc.*, No. 12 Civ. 5968 (PAE), 2013 WL 6147803, at *5 (S.D.N.Y. Nov. 22, 2013).  Thus, the NYLL does not follow the analysis used by this Court in the 9/10/13 Opinion and Order regarding inclusion of fees in the employer's "gross receipts", but rather relies on the expectations and understanding of an objective reasonable customer.

## I.      SUMMARY JUDGMENT STANDARD

It is well settled that "summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *In re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of establishing that no genuine factual issue exists rests with the party seeking summary judgment. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). Although the moving party bears the initial burden, "once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

## II.     PERFORMANCE FEES ARE NOT TIPS; DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' FOURTH CLAIM FOR RELIEF

Plaintiffs' claim under NYLL §196-d, that Defendants retained "gratuities," must fail. Plaintiffs' retention of gratuities claim is premised upon the unsupportable conclusion that the mandatory non-discretionary fees paid as the base price for a service, and which patrons knew did not belong to entertainers, was a "gratuity" or was "purported to be a gratuity."

Other jurisdictions have determined that, under state wage and hour laws, adult entertainer performance fees are not tips. *Moody v. Razooly*, No. A099065, 2003 WL 464076, at *6 (Cal. App. 1st Dist. Feb. 25, 2003) (jury determined that performance fees paid to adult entertainer were not tips under California law); *Alaska Dep't of Labor v. Investors Unltd., Inc.*, 3AN 91-37 Civ., (Sup. Ct. Alaska Apr. 27, 1993) (applying Alaska law).[17]   This is also true applying New York's objective reasonable customer standard when determining whether mandatory fees are "purported to be gratuities," discussed below.

---

[17]      *Investors Unltd., Inc.* is attached to the Kimmel Decl. as Exhibit S.

**A.    Performance Fees Are Not Service Charges Over and Above a Base Charge and Therefore Cannot be "Purported to be Gratuities"**

The established law examining the issue of whether or not a payment is "purported to be a gratuitity" under the NYLL addresses only a circumstance where the charge at issue is a surcharge or additional "service fee" over and above a non-discretionary base charge for a service.  *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 883 N.E.2d 990 (2008) and its progeny, including *Maldonado v. BTB Events & Celebrations, Inc.*, 12 CIV. 5968 PAE, 2013 WL 6147803, at \*6 (S.D.N.Y. Nov. 22, 2013) address circumstances where a mandatory fee is paid for goods and services and an *additional* "service charge," usually in the form of a percentage of the charge for the goods and services (in most cases, an additional surcharge on top of the cost of a banquet) are allegedly "purported to be a gratuity." *Samiento*, 10 N.Y.3d at 74; *Maldonado*, 2013 WL 6147803, at \*4.[18]   There is no precedent for the common sense defying proposition that the actual price for the services being charged is a gratuity.  Plaintiffs cannot put forth any basis to claim that Performance Fees are "purported to be a gratuity" (*i.e.* an extra payment on top of a base price for a good or service) in any way.

**B.    The Reasonable Customer Standard**

While mandatory charges are generally understood not to be tips and are excluded from NYLL § 196-d, the New York Court of Appeals held in a seminal decision that "the statutory language of Labor Law § 196–d can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their

---

[18]    Moreover, not only must a charge be *in addition to* the base price for a service to be "purported to be a gratuity," the *Luiken* court observed that the percentage of the additional charge as compared to the base price must be in a range that an objective reasonable customer would understand to be appropriate for a gratuitiy. *Luiken*, 705 F.3d at 375 (discussing the importance of context when determining the nature of a charge using a "reasonable customer" standard, and that a fee in the "normal" range of 12 to 15% could lead a reasonable customer to believe that a charge was a tip, but "it strains credulity to assert" that customers would believe that a "33% fee was a mandatory unshared tip for a few direct servers.").

7

employees." *Samiento*, 10 N.Y.3d 70, 81; *see also Maldonado*, 2013 WL 6147803, at *6. "[T]he standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer as this standard is consistent with the purpose of Labor Law § 196–d." *Samiento*, 10 N.Y.3d at 79; *Maldonado*, 2013 WL 6147803, at *6 (In the context of a non-discretionary mandatory fee paid by customers, New York courts have found § 196-d "to require a holistic assessment of how a reasonable customer would understand, in context, a particular surcharge, and whether it is 'purported to be a gratuity.'") (*discussing Samiento*, 10 N.Y.3d at 79); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 328-29 (S.D.N.Y. 2010).[19]

In *Samiento*, cruise line employees alleged that a mandatory non-discretionary service charge over and above the basic price for the service, was a charge "purported to be a gratuity." *Samiento*, 10 N.Y.3d at 74. The *Samiento* plaintiffs alleged that "World Yacht told inquiring patrons that the service charge is the gratuity, or that it is paid to the waitstaff as additional compensation in place of a gratuity, thus discouraging patrons from leaving an additional tip." *Samiento*, 10 N.Y.3d at 78. The *Samiento* court held that even if such an additional charge is mandatory, and not subject to negotiation, *when the service charge has been represented to the consumer as compensation to defendants' wait staff "in lieu of a gratuity,"* the charge is covered within the statutory language of Labor Law § 196–d. *Samiento*, 10 N.Y.3d at 79 (emphasis added). Thus, under *Samiento*, a mandatory charge for service over and above the basic charge

---

[19] New York State courts (and New York State taxing authorities) have also determined that the performance of personal dances by adult entertainers are sales subject to taxation, and are not tips or gratuities. *Matter of 677 New Loudon Corp. d/b/a Nite Moves v. State of N.Y. Tax Appeals Trib. ("Nite Moves")*, 85 A.D.3d 1341, 925 N.Y.S.2d 686 (3d Dep't 2011), *aff'd*, 19 N.Y.3d 1058 (2012), *cert denied*, 134 S. Ct. 422 (2013); *see also In the Matter of HDV Manhattan, LLC d/b/a Hustler Club ("Hustler")*, DTA No. 824229, 2014 WL 504271, at *4, 5 (N.Y. Div. Tax. App. Jan. 30, 2014) (payments for time spent in private rooms with, and for personal dances by, adult entertainers are subject to state sales tax). As such, any decision by this Court that payments for dances are tips would create a conflict between the state's position on sales taxability of dances, and a club's obligations with respect to such payments received by entertainers under the Labor Law.

will only be deemed to be a gratuity when the employer has represented it to the customer as a gratuity for the service staff.  There are no such facts in this case.

In *Luiken*, the Eighth Circuit considered an interlocutory appeal of a district court decision granting class certification to a putative class of pizza delivery drivers. *Id.* at 372 (discussing the Minnesota Fair Labor Standards Act which, like the NYLL, defines whether an amount paid by a customer is a fee for service or a tip based upon "an objective, reasonable person standard.").[20]  The pizza delivery drivers alleged that a fixed delivery charge that customers paid to Domino's was a gratuity withheld by Domino's in violation of a tip taking statute, Minn. Stat. § 177.24, subd. 3.  *Luiken*, 705 F.3d at 372.  The *Luiken* court stated that if customers were told that the delivery charge was not retained by the delivery drivers, then a reasonable customer could not have understood those charges to be gratuities, and no tip taking claim would survive under those circumstances. *Id.* at 373, 376 ("[m]ost problematic for Luiken is that even if his interpretation were correct, some drivers explicitly told customers that the charge went to Domino's or that it was not a gratuity.  Luiken himself told some customers, 'There's this delivery charge, but it's not—that's not actually a gratuity.' Those customers could not then reasonably believe it was.")

### C.  A Reasonable Customer at Rick's NY, Under the Totality of the Circumstances, Would Understand that Non-Discretionary Mandatory Performance Fees are Not Tips

In this case, there is absolutely no evidence in the record that could support a finding that a reasonable customer would believe that Performance Fees are tips.  As discussed above, it has been determined by this Court that payments for personal dances were mandatory payments for the service. 9/10/13 Opinion and Order, pp. 36, 37, 46; *see also* Defs' 7/14/14 56.1 ¶¶ 5 − 7, 11,

---

[20]      Plaintiffs' counsel herein also represented the plaintiffs in *Luiken*.

9

22.   Plaintiffs have testified that customers at Rick's NY already knew or were told by the Plaintiffs that dancers were not paid $20.00 for Dance Dollars. Defs' 7/14/14 56.1 ¶¶ 10, 33 - 38. Plaintiffs testified that they were aware that certain customers knew, without Plaintiffs even telling them, that entertainers at Rick's NY were paid less than $20.00 for Dance Dollars (presumably, based on prior discussions with club personnel or the documentation received by the patrons when they purchased Dance Dollars). Defs' 7/14/14 56.1 ¶¶ 10, 27 - 38.  Plaintiffs also testified that customers would sometimes tip entertainers at Rick's NY over and above the amount of the Dance Dollar because they were aware that entertainers did not receive the entire Performance Fee. Defs' 7/14/14 56.1 ¶¶ 9, 17, 34.  Plaintiffs also admitted that they were only aware of customers who knew that Rick's NY kept part of the $20.00 Performance Fee and were not specifically aware of any customers who thought that entertainers received $20.00 in exchange for Dance Dollars. Defs' 7/14/14 56.1 ¶¶ 33 – 38.  Thus, it is clear from the record, including Plaintiffs' own testimony, that customers were aware that entertainers were not entitled to payment of $20.00 for each dance performed and that Performance Fees are not tips.

One of the ways customers were indisputably informed that the mandatory Performance Fees were not tips was the language contained on Dance Dollars and related forms.  Every version of these forms informed customers, at minimum, that payments by Dance Dollars were not gratuities.  The first Dance Dollar version said that it was "VALID FOR DANCES ONLY."[21]  The Second Dance Dollar version stated: "THIS CERTIFICATE IS REDEEMABLE FOR PERFORMANCES ONLY AT RICK'S CABARET."[22]  Beginning in August 2008, Dance Dollars stated: "NOT VALID FOR GRATUITIES," "THIS CERTIFICATE IS REDEEMABLE FOR ONE (1) DANCE AT RICK'S CABARET," "NOT LEGAL TENDER. NO CASH

---

[21]     Defs' 7/14/14 56.1 ¶ 27.
[22]     Defs' 7/14/14 56.1 ¶ 28.

10

VALUE. SOUVENIR VOUCHER," and "VALID ONLY AT LOCATION PURCHASED."[23]
Since May 2011 Dance Dollars, related forms and receipts given to customers upon the purchase
of Dance Dollars stated "DANCE TICKET," "PAYMENT FOR PERSONAL DANCES ARE
MANDATORY CHARGES AND NOT GRATUITIES.  ENTERTAINERS DO NOT RETAIN
THE FULL AMOUNT OF FEES PAID FOR PERSONAL DANCES," "THIS CERTIFICATE
IS REDEEMABLE FOR PERFORMANCES ONLY AT RICK'S CABARET," "NOT LEGAL
TENDER. NO CASH VALUE. SOUVENIR VOUCHER."[24]  It is clear that Defendants in no
way led patrons to believe, or allowed them to believe, that Performance Fees were gratuities. To
the contrary, customers were advised that mandatory Performance Fees were not gratuities.

There is no evidence in the record that Peregrine, or any of the other Defendants,
"represented or allowed [Rick's NY's] customers to believe that the [Performance Fee] charges
were in fact gratuities for their employees." *Samiento*, 10 N.Y.3d at 81.  Unlike World Yacht,
there is nothing in the record that Rick's NY told inquiring patrons that Performance Fees are a
gratuity, or otherwise discouraged patrons from giving a tip over and above the Performance Fee
to entertainers.  In fact, Plaintiffs testified that they received tips over and above the Performance
Fee. Defs' 7/14/14 56.1 ¶¶ 9, 17.  Thus, under *Samiento*, Rick's NY did not purport to its
customers that Performance Fees are gratuities.

Plaintiffs apparently intend to rely on the fact that former general manager at Rick's NY,
Kenneth Sistrunk testified that he told customers that the $24.00 they pay for a Dance Dollar
includes a 20% "service charge."  Defs' 7/14/14 56.1 ¶ 23.  There is no dispute that customers
paid $24 to purchase Dance Dollars. Defs' 7/14/14 56.1 ¶ 21 (*citing* Stip. Facts ¶ 185).  At no
time did Mr. Sistrunk testify that he told any customers that Performance Fees are "service

---

[23]     Defs' 7/14/14 56.1 ¶ 29, 30.
[24]     Defs' 7/14/14 56.1 ¶ 31.

charges," or led any customers to believe that entertainers kept $20 out of the $24 that customers paid to the Club. Any argument along these lines is purely misguided conjecture unsupported by any actual evidence. In fact, as discussed above at Section II(A), Plaintiffs appear to argue the converse – that the "service charge" of 20% is the "fee" and that the base mandatory Performance Fee paid for the service itself is actually the "gratuity."

When purchasing Dance Dollars, the customer pays $24.00 to Rick's NY and receives a non-legal tender Rick's Cabaret Dance Dollar or Dance Ticket in exchange. Defs' 7/14/14 56.1 ¶¶ 21, 27 – 32. A reasonable customer under the circumstances would recognize that while they pay a 20% surcharge for purchasing the Dance Dollars, the mandatory Performance Fee remains the same at $20.00. As such, the entire amount ($24.00) that they pay *to Rick's NY* for a Dance Dollar is not a gratuity, and is Rick's NY's money. At the time they pay Rick's NY for the Dance Dollar, the customer has yet to purchase a dance with that coupon. A reasonable customer would understand (especially in light of the language contained on the Dance Dollar and associated documentation) that if Rick's NY is going to take any portion of the $24.00 out of its own coffers and hand it over to anyone, including an entertainer, in exchange for a Dance Dollar, it would be because Rick's NY has chosen to pay that amount from what is Rick's NY's own money. *See infra* Section III(A). Simply, there is no evidence to support that a reasonable customer would believe that whenever Rick's NY pays an entertainer cash out of Rick's NY's own money in exchange for a Dance Dollar that Rick's NY is at that point tipping the entertainer

on the customer's behalf.[25]

Moreover, Plaintiffs' anticipated argument that once a reasonable customer pays the mandatory non-discretionary fee for the Dance Dollar that a reasonable customer would believe that the entire remaining amount is paid by Rick's NY to the entertainer is not only not supported by any evidence whatsoever, but is *directly contradicted* by Plaintiffs' own testimony and the documentary evidence.  A reasonable customer would also understand that the Rick's Cabaret Dance Dollar coupon has no actual monetary value outside of the Rick's NY environment (which is explicitly stated on the face of the Dance Dollars) and that entertainers at Rick's NY must have an arrangement with Rick's NY that would require entertainers to turn them over to Rick's NY.  Such a transaction where a customer pays an entertainer a mandatory fee for a service with something that the customer recognizes has no intrinsic monetary value cannot be reasonably understood to be a "tip."

Under New York Law, because Performance Fees are not tips, Plaintiffs' fourth claim for relief under NYLL §196-d, unlawfully demanding, accepting and retaining gratuities, must fail and summary judgment awarded to Defendants.

### III. PORTIONS OF PERFORMANCE FEES USED TO COMPENSATE ENTERTAINERS AT RICK'S NY OFFSET ANY WAGE OBLIGATIONS OF PEREGRINE

The Performance Fees at issue here are not tips and therefore *belong to Peregrine* (*i.e.*, are the employer's funds).  Performance Fees used to compensate Plaintiffs may properly satisfy any wage obligations of Defendants.

---

[25]     Plaintiffs have also focused on statements made by Phillip Marshall to support their position.  Previously, Plaintiffs have grossly mischaracterized Mr. Marshall's testimony.  Mr. Marshall actually testified that prior to redemption, the entire $24 is Rick's NY's money, and if an entertainer redeems a Dance Dollar, Rick's NY takes $18 of its cash and pays it to the entertainer at which point (post-redemption) it is the entertainer's money. February 23, 2012 Phillip Marshall Deposition Tr. ("2/23/12 Marshall Tr.") at 46:25 – 47:25 ("It's not our money *when it's redeemed*, no…. [If an entertainer] redeems the $18 it's not ours, correct, it's her's [sic].  And if the customer goes home with his dance dollar and never redeems it then we get to keep the money."); *see also* Stip. Facts ¶ 211.  This is not controversial and only supports a finding that Dance Dollars are not tips.

## A.     <u>Performance Fees Belong to Peregrine as the Employer</u>

In view of the Court's holding that entertainers at Rick's NY are employees, the money paid for personal dances, rendered at their place of employment, belongs to their employer. It is axiomatic that money paid to an employer, directly or indirectly through its employees, in exchange for services its employees provide belongs to the employer.[26] "[E]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." *Moody v. Razooly*, 2003 WL 464076, at *7.

"Stating the matter generally, it seems clear, both on principle and authority, that the employee is bound to the exercise of a high degree of good faith towards his employer, and cannot, without the latter's consent, retain profits or earnings received in the course of performance of the employer's business…." 71 A.L.R. 933; *see also* Restatement (Second) of Agency § 388. It is a basic principle of law "that absent an agreement otherwise, *an employee who makes a profit or receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer*, whether or not it was received by the employee in violation of his duty of loyalty." *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295, 360 N.E.2d 1091 (1977) (*citing* Restatement (Second) of Agency, §§ 388, 403) (emphasis added). These basic principles make it clear that all money (other than tips) received by an employee in furtherance of his/her employment belongs to the employer and is the employer's money. In a case where an employer allows an employee to keep some or even

---

[26]     "The employer-employee relationship is one of contract, express or implied [citations omitted] and, in considering the obligations of one to the other, the relevant law is that of master-servant and principal-agent." *W. Elec. Co.*, 41 N.Y.2d 291 (citing 9 Williston, Contracts (3d ed.), § 1012, p. 13; Restatement (Second) of Agency § 2, Comment A, subd. d).

14

all of the money earned by an employee in furtherance of the employer's business, that money retained by the employee can only be one thing – compensation for services rendered.

This Court's decision in *Maldonado* lends further support to the well-settled principle that non-tip money paid to the employee for the employees' services belongs to the employer and to the inevitable conclusion that Performance Fees here are the property of Peregrine:

> If the 11% surcharge was a gratuity that rightfully belonged to the delivery workers, then plaintiffs are entitled to summary judgment on this point, and defendants are liable to plaintiffs on their claims both of improper retention of such gratuities and of improper denial of minimum wages. If, on the other hand, the 11% surcharge was *an administrative charge that belonged to the employer*, then defendants' motion for partial summary judgment must be granted and plaintiffs' cross-motion denied.

*Maldonado*, 2013 WL 6147803, at *5 (emphasis added).[27]  Moreover, in *Moody*, the court held that since "special dance fees" were not tips, they "necessarily belonged to [the employer], not the Plaintiffs."  *Moody*, 2003 WL 464076, at *7; *see also Doe v. Cin-Lan, Inc.*, No. 08–cv–12719, 2010 WL 726710, at *7 (E.D. Mich. Feb. 24, 2010) (describing dance fees paid to entertainers as "rightfully the property of [the employer]").

The decisions of New York state courts and taxing authorities, which have held that sums paid for the performance of personal dances by adult entertainers (*i.e.*, Performance Fees) are sales of the employer and are therefore subject to sales tax, also support the fact that Performance Fees here are the property of the employer.  In *Nite Moves*, 85 A.D.3d 1341, the court discussed that fees charged by dancers for performing for a customer constituted revenue for the club and held that they were subject to sales tax.  In *Hustler*, the court held that payments for time spent in private rooms with, and for personal dances by, adult entertainers are subject to

---

[27]        In *Maldonado*, the employer imposed a charge in connection with certain delivery orders, and for the time frame prior to 2011, the Court held that the charge was mandatory and was not a gratuity.  The employer retained a portion of that mandatory charge and "distributed the remainder to delivery personnel, and credited that amount against the statutory minimum-wage obligations."  *Id.* at *1.

state sales tax. *Hustler*, 2014 WL 504271, at *4, *5.  As such, any decision by this Court that payments for dances are tips and not the employer's funds would conflict with the state's position on sales taxability of dances.[28]

Here, the Performance Fees belong to Peregrine, as the employer, and those sums do not become the property of the employee based on the simple fact that the employee, for the convenience of customers, collected such sums from a patron when paid in cash. Thus, based on the foregoing, Performance Fees were the lawful property of Peregrine.

### B.   Performance Fees Offset Any Obligation to Pay Minimum Wage

Plaintiffs seemingly take the position that an employer's use of its own funds to compensate employees for services rendered on behalf of the employer cannot be used to satisfy wage obligations.  This, of course is nonsensical.  In furtherance of this bizarre position, Plaintiffs further argue that there is no statute or regulation that specifically allows an employer to use the employer's money to compensate its employees.  Of course, there is no need for such a statute or regulation for this most basic of principles.  The basic premise that an employer who pays money to an employee (or allows an employee to retain the employer's money paid to the employee by the employer's customers) contemporaneously with the services rendered is "compensation" for such services need not be legislated as it is basic common sense.  Under New York law, wages for "workers," such as Plaintiffs here, "shall be paid…in accordance with the agreed terms of employment, but not less frequently than semi-monthly." NYLL § 191. Here, Plaintiffs were paid compensation, generally, the same day or night they performed. Defs' 7/14/14 56.1 ¶ 22.

---

[28]     To the contrary, tips, which are voluntary in nature, are not subject to sales tax under Tax Bulletin Sales and Use Tax TB-ST-320, N.Y. Dep't of Taxation and Fin. *available at*, http://www.tax.ny.gov/pdf/tg_bulletins/sales/b12_320s.pdf

16

Similarly, in *Moody*, 2003 WL 464076, the court upheld a determination by the jury that the special dance fees that exotic dancers received from patrons were not tips, and that their employer was therefore entitled to set off the amount of such fees that the dancers had received and retained against its minimum wage obligation. Finding that the payments the dancers received belonged to the employer, the court correctly held that if the payments were not tips, they necessarily belonged to the employer, not to the dancers.  The court further held that the employer was entitled to a credit for the amounts retained by the dancers against the wages that the employer owed them. Further, the court concluded that the plaintiffs' position that the special dance fees were paid directly to the dancers by the patrons and therefore belonged to them could not be reconciled with the jury's finding that the fees were not tips. The court therefore held that the trial court's judgment had to be modified to reduce the amount of unpaid wages to which each of the plaintiffs was entitled by the amount of special dance fees that each had been paid.

Here, like in *Maldonado* and *Moody*, because the Performance Fees are not tips, they belong to Peregrine as the employer, Peregrine is entitled to set off or credit such fees against any wages owed.  As a result of Plaintiffs' agreement and actions, they received substantial non-tip revenue in the form of Performance Fees and under the law, Peregrine should receive a credit for such fees against any wage obligations.

Plaintiffs' anticipated argument concerning the "tip credit" misses the point and ignores the purpose of the law allowing a tip credit.  What Plaintiffs fail to recognize is that the tip credit is an exception that allows an employer to offset wage obligations with what otherwise would be the *employees'* funds. Under the "tip credit," an employer is permitted to subtract a portion of the employees' tips from the amount they employees are owed under the minimum wage laws.

17

Where an employer is using its *own* cash to compensate its employees, no exception is necessary.

### C.     Plaintiffs Should Not Receive a Windfall and Offset Should Be Allowed Under the Principle of Unjust Enrichment

Defendants seek to avoid a result that confers an unjust windfall on the Plaintiffs by allowing them to keep Performance Fees and now be paid additional wages. Case law has confirmed that persons in the position of Plaintiffs, who have already been compensated by portions of Performance Fees earned when performing at Rick's NY and now seek to recover a minimum wage, should not be unjustly enriched or receive a windfall at Defendants' expense. *See Doe*, 2010 WL 726710, at *7 (upholding a claim for unjust enrichment and stating that "if the dance fees are determined to be service charges, rightfully the property of Cin-Lan, and not tips, an action in unjust enrichment will be the vehicle for recovering the dance fees"); *Moody*, 2003 WL 464076, at *7 (in finding that the employer/club was entitled to an offset for the amount of the dance fees paid by customers against wages owed, the court specifically held that the plaintiffs "are not entitled to a windfall.")

The law in this district holds that "[t]he essence of an unjust enrichment claim is that 'one party has received money or a benefit at the expense of another." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758 (S.D.N.Y. 2011) (*citing Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). In *Amusement Industry, Inc.*, the court held that the plaintiff stated a claim for unjust enrichment because it alleged that certain defendants received a benefit at the expense of plaintiffs when these defendants received possession of certain funds. *Id.*, at *758.

Here, Plaintiffs seek to be paid a minimum wage while also keeping the non-tip Performance Fees they collected when they performed personal dances and dances in semi-private rooms at Rick's NY.  In light of the Court's finding that Plaintiffs are employees under

the New York Labor Law, and the indisputable fact that Performance Fees are not tips, Plaintiffs should not be entitled to be paid portions of Performance Fees and also receive an additional wage. Such a scenario would allow them to be unjustly enriched and receive a windfall. *See Doe*, 2010 WL 726710, at *7; *Ruffin v. Entm't of the E. Panhandle*, No. 3:11–CV–19, 2012 WL 761658, at *2 (N.D. W. Va. Mar. 7, 2012) *on reconsideration in part*, 3:11-CV-19, 2012 WL 1435674 (N.D.W. Va. Apr. 25, 2012) (finding "[b]ased on the logic of Cin-Lan…that were th[e c]ourt to hold that the plaintiff is an employee and entitled to the minimum wage, the defendant would likely be entitled to a set off or credit for that portion of the mandatory minimum dance fees which she retained"). This windfall would clearly be at the expense of Rick's NY since Performance Fees are Rick's NY's money, which it gave to Plaintiffs as compensation.

Consequently, as a result of the Performance Fees paid to Plaintiffs, Plaintiffs have already been compensated under the law. The applicable regulations do not require employees to be paid by the hour, "only that the total wages paid to the employee are equal or greater to the total sum of the applicable minimum wage rate times the number of hours worked by the employee." *Oram v. SoulCycle*, 979 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) (where "an employee is paid on a piece-work basis…or any other basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings."); *see also* NYLL §190 (defining wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis"); *see also* 12 NYCRR 137. Here, Performance Fees constitute non-tip earnings of Plaintiffs. *See e.g., Calhoun v. Mastec*, No. 03-CV-386S, 2006 WL 2806452, at *1 (W.D.N.Y. Sept. 28, 2006) (where the plaintiffs were compensated on a "'piece-rate' basis,

19

meaning that their earnings were dependent on the number of jobs they satisfactorily completed in a day").

      **D.**      **Plaintiffs' Argument Ignores The**
                          **<u>Purpose of the New York State Minimum Wage Act</u>**

The purpose of the New York State Minimum Wage Act was announced by the Legislature through Labor Law §650. This section provides in part that the Minimum Wage Act was enacted because "[t]here are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families." Labor Law § 650.  The Minimum Wage Act thus "constitutes remedial legislation designed to relieve the financial hardship experienced by [such] persons…." *In re Settlement Home Care Inc., v. Indus. Bd. of Appeals of Dep't of Labor*, 151 A.D.2d 580, 581, 542 N.Y.S.2d 346 (2d Dep't 1989); s*ee also Koljenovic v. Marx*, No. 09–CV–4480 (NG), 2014 WL 805185 (E.D.N.Y. Feb. 6, 2014)   Legislative history to NYLL § 652 confirms that the bill to increase minimum wage "will be a great help to the low-wage earner in this State."  N.Y. Lab. Law, January 5, 1966, Bill Jacket, L. 1966, ch. 649.[29]

Plainly, adult entertainers are not the "low-wage earner[s]" that the Minimum Wage law was intended to protect.  Between the cash and Dance Dollar redemptions Plaintiffs received, they already earned far in excess of minimum wage from the Club in the form of Performance Fees.  If Plaintiffs are permitted to keep the substantial sums of money they received while dancing at the Club, their recovery will far exceed the purpose and scope of the New York Minimum Wage Act.  Entertainers testified that they had average per night earnings of anywhere from $200 on the low end to $1,000. (Defs' 7/14/14 56.1 at ¶ 45.)  Plaintiff Royer testified that she earned "about a thousand a night, give or take."  *Id.*   Plaintiffs earned much more money

---

[29]      A copy of this legislative history is attached to the Kimmel Decl. as Exhibit T.  For the Court's convenience, the quoted language appears on the last page of this exhibit.

dancing at the Club than they earned at regular jobs they had at which they admittedly were paid *more than* the minimum wage. (Defs' 7/14/14 56.1 at ¶¶ 39 - 45.) In a single night performing at Rick's NY, Royer made what she would make in two weeks working at Lenscrafters. When Plaintiff Dilag worked as a server at a restaurant, she made "no where [sic] near" the amount of money she earned while performing as an entertainer at Rick's NY. Defs' 7/14/14 56.1 at ¶ 43; *see also* Stip. Facts ¶ 154.   Consequently, the entertainers' own testimony demonstrates that allowing Plaintiffs to receive portions of Performance Fees and be paid a minimum wage does not further the purpose of relieving "financial hardship" under the Minimum Wage Act and in fact far exceeds the scope and purpose of the Minimum Wage Act.  *See In re Settlement Home Care, Inc*., 151 A.D.2d at 581.

## CONCLUSION

For all the reasons set forth above, the Court should grant Defendants' motion for summary judgment as to Plaintiffs' Fourth cause of action and Defendants' eighth, twenty-ninth, thirty-fifth, and thirty-seventh affirmative defenses for offset (Answer ¶¶ 255, 276, 282, 284) and hold that Peregrine, and any other employers determined by the Court, (1) did not retain Class Members' gratuities, (2) are entitled to an offset of any wage obligations against the substantial amounts that entertainers earned from Performance Fees, and (3) are entitled to such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 14, 2014

                                        MEISTER SEELIG & FEIN LLP


                                        _____/s/ Jeffrey A. Kimmel_____
                                        By: Jeffrey A. Kimmel
                                             Racquel Crespi Weintraub
                                             Howard Davis
                                        Two Grand Central Tower
                                        140 East 45th Street, 19th Floor
                                        New York, New York 10017
                                        212-655-3500

                                        *Attorneys for Defendants*

2680-006 Doc# 3653