UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA HART and REKA FUREDI on behalf of themselves and all others similarly situated, and the New York Rule 23 Class,<br><br>Plaintiffs,<br><br>v.<br><br>RICK'S CABARET INTERNATIONAL, INC., RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,<br><br>Defendants. | Case No. 09-CV-3043 PAE/RLE<br><br>**DECLARATION OF DAVID L. CRAWFORD, PH.D.** |

1. My name is David Crawford.

2. I am an economist and the President of Econsult Corporation.

3. Exhibit 1 contains my revised *Curriculum Vita*, which includes a list of my publications in the last 10 years, and a list of testimony experience in the last 4 years.

4. I have been retained by Nichols Kaster, counsel for the Class and Collective of entertainers who worked at Rick's Cabaret in New York (hereafter "Rick's") during the period September 21, 2005 through October 31, 2012.

5. I submit this Declaration in support of Plaintiffs' Motion for Partial Summary Judgment on Damages.

6. I have prepared the following reports, which I understand have been submitted to the Court and to Defendants in this litigation: January 27, 2014 Expert Report of David L. Crawford, Ph.D., February 17, 2014 Corrections to Expert Report of David L. Crawford, Ph.D. and March 11, 2014 Second Corrections to Expert Report of David L. Crawford, Ph.D. I have prepared this Declaration at the request of counsel for the Class and Collective.

1

7. My reports explain the damages model I used to calculate damages for the Class and Collective in this case.

8. Method 1 of that model contains 57,823 records for which damages were calculated, and that are associated with Class Members,[1] that contain:

   a. A log-in time on or after 11 a.m. and before 4 a.m.; *and*

   b. A log-out time after 11 a.m. and on or before 4 a.m.; *and*

   c. No matching log-out times (i.e., records where the log-out time of any entertainer on a particular day is the same hour and minute of the log-out time of any other entertainer on that day same).

Hereinafter, these 57,823 records will be called the "Method 1 NYLL Summary Judgment Records."

9. 657 of the Method 1 NYLL Summary Judgment Records are associated with members of the FLSA Collective and fall within the 2-year statutory period based on the date each Collective Member filed her consent form to join this litigation. Hereinafter, these 657 records will be called the "Method 1 FLSA Summary Judgment Records."

## MINIMUM WAGE DAMAGES

10. For the purpose of calculating minimum wage damages, I treated Sunday as the first day of each payroll week. (1-27-14 Report, ¶ 53 (citing Deposition of Emily Finsterwald, p. 116).) Total hours will be unaffected by the choice of the first day of each payroll week, as will total compensatory damage calculations unless the Court grants Defendants' pending request for an offset against the state minimum wage. This Declaration only includes those calculations underlying my previous reports that assume no offset will be granted. If an offset were granted and it were determined that payroll weeks should begin on some other day of the week, it would

---

[1] "Class Members" means those entertainers with records within the Class Period and who did not opt out, were not dismissed, and did not withdraw from the litigation.

be easy to change the calculations to use some other specified payroll week, but total damages would be unlikely to change very much.[2]

11. I understand that Plaintiffs are seeking minimum wage damages under the NYLL and FLSA equal to the minimum wage for every hour worked *and also* the fines, fees, and "tip outs" that entertainers paid to the club which brought their wages below zero.

12. I further understand that the portion of the minimum wage damages that consist of fines, fees, and tip outs is precisely coextensive with the damages Plaintiffs seek through their NYLL Deductions claim.

13. As to *only* the hourly wage portion of the minimum wage damages for the Method 1 FLSA Summary Judgment Records and the Method 1 NYLL Summary Judgment Records:

    a. The number of records, hours, and amount damages I have calculated for the **Method 1 FLSA Summary Judgment Records** is as follows:

        i. Number of records:     657

        ii. Number of hours:     5,336 hours

        iii. Amount of Damages:     $35,002 damages[3]

    b. The number of records, hours, and amount of hourly minimum wage damages I have calculated for the **Method 1 NYLL Summary Judgment Records** is as follows:

        i. Number of records:     57,823

        ii. Number of hours:     465,145 hours

---

[2] If the wage rate under the FLSA or NYLL changed during the middle of the payroll week, I did not apply the new rate until the beginning of the next payroll week.

[3] Note that the FLSA contains a Youth Rate, which is not implicated by any of the Method 1 FLSA Summary Judgment Records.

       iii. Amount of damages:       $3,324,151 damages

14. As to the full minimum wage damages (i.e., the hourly wage component *and also* the fines, fees, and "tip outs" that entertainers paid to the club, which brought their wages further below zero), for the Method 1 FLSA Summary Judgment Records and the Method 1 NYLL Summary Judgment Records:

    a. The number of records, hours, and amount of damages I have calculated for the **Method 1 FLSA Summary Judgment Records** is as follows:

       i. Number of records:       657

       ii. Number of hours:       5,336 hours

       iii. Amount of damages:       $105,376 damages

    b. The number of records, hours, and amount of damages I have calculated **Method 1 NYLL Summary Judgment Records** is as follows:

       i. Number of records:       57,823

       ii. Number of hours:       465,145 hours

       iii. Amount of damages:       $9,110,346 damages

15. To compute the numbers set forth in ¶ 14a above, I have combined

    a. Minimum wages for hours worked by each entertainer based on only the Method 1 FLSA Summary Judgment Records during each week for which there were any Method 1 FLSA Summary Judgment Records for that entertainer;

    b. Charge summary payments during each week for each entertainer based on only the Method 1 FLSA Summary Judgment Records for which there were any Method 1 FLSA Summary Judgment Records for that entertainer; and

    c. A $60 "tip out" for each record within the Method 1 FLSA Summary

Judgment Records.

16. To compute the numbers set forth in ¶ 14b above, I have combined

   a. Minimum wages for hours worked by each entertainer based on only the Method 1 NYLL Summary Judgment Records during each week for which there were any Method 1 NYLL Summary Judgment Records for that entertainer;

   b. Charge summary payments during each week for each entertainer based on only the Method 1 NYLL Summary Judgment Records for which there were any Method 1 NYLL Summary Judgment Records for that entertainer; and

   c. A $60 "tip out" for each record within the Method 1 NYLL Summary Judgment Records.

17. I summed weekly totals for each entertainer for each week, and then over entertainers and weeks, to obtain the damage totals in ¶¶ 13 and 14.

18. The breakdown of the records, hours, and damages set forth in ¶¶ 13 and 14 above by time periods associated with changing minimum wage rates, liquidated damages standards,[4] and liquidated damages rates,[5] and by entertainer on a weekly basis is included in the following attached Exhibits:

   a. Ex 2: Method 1 FLSA Summary Judgment Records – Minimum Wage Damages by Time Periods;

   b. Ex 3: Method 1 FLSA Summary Judgment Records – Minimum Wage Damages

---

[4] It is my understanding that total liquidated damages in this case and damages associated with Plaintiffs' third year of damages under the FLSA should be decided after the jury has decided the issues of willfulness and good faith. I understand that the standard for liquidated damages under the NYLL changed from willful to good faith on November 24, 2009. For payroll weeks that begin before and conclude after November 24, 2009, I have included those weeks in the time period prior to November 24, 2009.

[5] It is my understanding that the rate of liquidated damages under the NYLL changed from 25% to 100% on April 9, 2011. For payroll weeks that begin before and conclude on April 9, 2011, I have included those weeks in the time period before April 9, 2011.

        by Time Periods for each Entertainer;[6]

    c. Ex 4: Method 1 NYLL Summary Judgment Records – Minimum Wage Damages by Time Periods;[7] and

    d. Ex 5: Method 1 NYLL Summary Judgment Records – Minimum Wage Damages by Time Periods for each Entertainer.

**DEDUCTIONS DAMAGES**

19. The total amount of "payments" listed in Defendants' Clubtrax charge summaries over the course of the Class Period for Class Members is $3,964,852. It should be noted that this total reflects more than the payments that were included in Exs. 2-5 above because Exs. 2-5 are limited to those payments occurring within weeks for which the entertainer in question also has one or more Method 1 FLSA Summary Judgment Record or one or more Method 1 NYLL Summary Judgment Record.

20. There are 132,886 total log-in records[8] for which damages were calculated that are associated with Class Members. I applied $60 to each of these 132,886 records. These $60 amounts account for the mandatory tip outs that each entertainer paid. The total value is $7,973,160.

21. The sum of the amounts set forth in ¶¶ 19 and 20 is $11,938,012.[9] Again, this

---

[6] I have provided Exs. 2-10 (referenced herein) in electronic form as Excel® spreadsheets. I understand that counsel for the Class and Collective will seek to file those exhibits conventionally.

[7] The break points of time periods for damages under the FLSA and NYLL are different because the federal and New York minimum wage rates change at different times.

[8] (*See* 1-27-14 Report, ¶¶ 14, 55 (explaining Consolidated Dataset and opt-outs, dismissals, and withdrawals); 2-17-14 Corrected Report, ¶ 6 (identifying 84 records with identical log-in and out times that were not assigned damages).)

[9] This amount, and those stated in paragraphs 19 and 20 above, are reflected in the calculations underlying my previous reports, which were produced to Defendants earlier in this litigation – specifically, "comp j" and "comp k." However, the $3,964,852 figure stated in paragraph 19 is slightly higher than the total shown in comp j. The increase of $1,749 is due to a correction of a minor error in the computer coding underlying comp j that failed to capture all "payments" by Class Members during the Class Period, as reflected in Defendants' Charge Summaries and due to removing damages associated with 2 entertainers that had opted out, been dismissed, or withdrawn and that were inadvertently included. However, the $7,973,160 figure stated in paragraph 20 is $6,960 lower than the difference between comp k and j. The reduction is due to removing damages associated with 2 entertainers that

total reflects tip outs and payments (i.e., fines and fees in Clubtrax charge summaries) paid by all Class Members during the Class Period and, thus, includes more than just the Method 1 NYLL Summary Judgment Records.

22. The breakdown of the records and damages set forth in ¶¶ 19-21 above by time periods associated with changing liquidated damages standards and rates and by entertainer is included in the following attached Exhibits:

   a. Ex 6: Class Deductions Damages by Time Periods; and

   b. Ex 7: Class Deductions Damages by Time Periods for each Entertainer.

23. A portion of the damages reported in Exs. 6 and 7 were also reported in Exs. 2-5. If Plaintiffs prevail on both damage claims, it will be necessary to eliminate any double counting of claims as I discuss below.

## RETENTION OF GRATUITIES RECORDS AND DAMAGES

24. The number (i.e., total count) of $18 dance dollar redemptions as reflected on Defendants' Dance Dollar Reports during the Class Period for Class Members is 1,788,516.

25. The product of $2 and the number in ¶ 24 above is $3,577,032.

26. The breakdown of the records and damages set forth in ¶¶ 24 and 25 above by time periods associated with changing liquidated damages standards and rates and by entertainer is included in the following attached Exhibits:

   i. Ex 8: Class Dance Dollar Records – Gratuities Damages by Time Periods; and

   ii. Ex 9: Class Dance Dollar Records – Gratuities Damages by Time Periods

---

were inadvertently included and due to a minor correction in the calculation of tip-outs for weeks that split on time periods associated with changing liquidated damages standards or rates. The correction deletes double counting of tip-outs for weeks that split on time periods and removes damages for non-Class Members. (*See* 1-27-14 Report, ¶ 57(j and k).) Thus, the net deductions damages stated herein are lower than that stated in comp k. Specifically, the $11,938,012 figure in paragraph 21 is $5,211 lower than the figure as shown in comp k. (*See* 1-27-14 Report, ¶ 57(k).)

and for each Entertainer.

27.     It should be noted that the Gratuities Damages described in this section are not duplicative of any damages described elsewhere.

### TOTAL DAMAGES ELIMINATING DOUBLE RECOVERIES

28.     I have calculated total damages associated with NYLL Deductions damages for the entire Rule 23 Class (Ex. 6), NYLL Retention of Gratuities damages for the entire Rule 23 Class (Ex. 8), NYLL Minimum Wage damages associated with the Method 1 NYLL Summary Judgment Records (Ex. 4), and FLSA Minimum Wage damages associated with the Method 1 FLSA Summary Judgment Records (Ex. 2).

29.     To demonstrate the effect of eliminating double recovery (i.e., recovering the measure of damages that are precisely coextensive between claims, I have calculated damages electing the NYLL minimum wage over the FLSA minimum wage rate for all FLSA Collective Members for all weeks in which they have both FLSA minimum wage and NYLL minimum wage claims. I have done this because I understand Class Members may elect the higher wage rate and because the NYLL minimum wage rates were higher than or equal to the FLSA minimum wage rate at all points during the Class Period. I have also counted the value of the fines, fees, and tip outs only once – as NYLL deductions damages – so that the money attributable to those fines, fees, and tip outs is not recovered as both a minimum wage damage and also a deductions damages but, rather, is recovered only once, as a deductions damage.

30.     When double recovery is eliminated as discussed in ¶ 29 above, the total combined damages associated with NYLL Deductions damages for the entire Rule 23 Class, NYLL Retention of Gratuities damages for the entire Rule 23 Class, NYLL Minimum Wage damages associated with the Method 1 NYLL Summary Judgment Records, and FLSA Minimum Wage damages associated with the Method 1 FLSA Summary Judgment Records is

$18,839,195.

31. The breakdown of the damages stated under ¶ 30 above per entertainer is set forth in Exhibit 10– Entertainer Total Damages.

32. It is important to note that the damages discussed in this Declaration and totaled in Exhibit 10 do not include all damages suffered by the Collective and the Class. The damages for the FLSA Collective are limited to the 2-year statute of limitations and do not include my full Method 1 FLSA calculations or calculations under Methods 2 and 3. The minimum wage damages for the Rule 23 Class also do not include my full Method 1 FLSA calculations or calculations under Methods 2 and 3. Further, all of the damages discussed above are limited to compensatory damages and, thus, do not include liquidated damages, pre-judgment interest, and attorneys' fees and litigation expenses. I maintain that my calculations in their entirety – full Method 1 damages and damages under Methods 2 and 3 – are based on sound and reliable methods and principles. However, at the request of Counsel I have isolated certain of those damages here, so that Counsel may isolate those amounts for purposes of asserting certain legal arguments. Additionally, calculating the FLSA third year of compensatory damages, as well as liquidated damages and interest post-trial, will be a simple matter of running calculations based on the formulas present in the underlying spreadsheets produced to Defendants earlier in this litigation.

33. Once the Court issues a ruling on Plaintiffs' Motion for Partial Summary Judgment on Damages, I anticipate producing a supplemental report that isolates my analysis on the damages remaining for trial.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 21, 2014

*David L. Crawford*

_____
David L. Crawford, Ph.D.

# EXHIBIT 1

*CURRICULUM VITAE* **OF DAVID L. CRAWFORD, PH.D.**

July 2014

Econsult Corporation
1435 Walnut Street, Suite 300
Philadelphia, PA 19102
Voice: (215) 382-1894
E-mail: crawford@econsult.com

## EDUCATION

**University of Wisconsin**, Madison, 1972-1976
  Ph.D. Economics, 1979
  M.S. Economics, 1974

**University of North Carolina**, Chapel Hill, 1968-1972
  B.A. with Honors, Economics, 1971
  Phi Beta Kappa

## CURRENT POSITIONS

**President and Founder, Econsult Corporation**, Philadelphia, PA, since 1979. Provides economic and statistical consulting for private firms and government agencies including expert testimony (PA, NJ, NY and federal courts) and other economic and statistical analyses. Litigation experience includes employment discrimination, wage and hour claims, employment termination, personal injury and wrongful death, damage analysis, antitrust, and intellectual property. Non-litigation experience includes extensive consulting on human resource management issues for private employers and public employers, including the Administrative Office of the Pennsylvania Courts, the First Judicial District of the Commonwealth of Pennsylvania, the Pennsylvania Convention Center Authority, Delaware County (Pennsylvania), Philadelphia Community College, the Colonial School District (Pennsylvania), the Philadelphia School District, and the Bermuda Ministry of Finance.

**Senior Fellow, Management Department, The Wharton School, University of Pennsylvania**, Philadelphia, PA, since July 2014. Affiliated with the Center for Human Resources.

**Instructor, The Fels Institute of Government, University of Pennsylvania**, Philadelphia, PA, since June 2013. Teaching microeconomics and statistics in the Fels Institute's Master of Public Administration and Executive Master of Public Administration programs.

**Senior Advisor, Philadelphia Mayor's Advisory Council on Construction Industry Diversity**, since 2008.

**Burlington County (NJ) Democratic Committeeman, Medford District 7**, Elected June 2010; re-elected June 2012 and June 2014.

## PAST ACADEMIC POSITIONS

**Adjunct Professor of Management, The Wharton School, University of Pennsylvania**, Philadelphia, PA, 1991-2014. Taught microeconomics and human resource management to students in the Wharton MBA, Executive MBA, and undergraduate programs. Received Wharton Dean's Award for Excellent Teaching in the MBA Core Curriculum (1992) and Wharton Executive MBA Core Teaching Award (1997, 2005, 2006, and 2009).

**Various Adjunct Faculty Positions in the Departments of Management and Economics, University of Pennsylvania**, Philadelphia, PA, 1984-1996. Taught microeconomics and human resource management to students in the Wharton MBA and Executive MBA programs. Also taught microeconomics and labor economics to undergraduates. Taught microeconomics in the Engineering School's Executive MSE program and statistics in the graduate program of the Annenberg School for Communication. Received Excellence in Teaching Award from Wharton MBA students (1987) and Irving B. Kravis Prize for Distinction in Undergraduate Teaching in Economics (1991).

**Member, Board of Senior Scholars, The National Center on the Educational Quality of the Workforce, University of Pennsylvania**, Philadelphia, PA, 1991-1996.

**Assistant Professor of Economics, Rutgers University**, New Brunswick, NJ, 1981-1985, on leave 1984-1985. Taught introductory and intermediate microeconomics to undergraduates.

**Assistant Professor of Economics, University of Pennsylvania**, Philadelphia, PA, 1979-1982, on leave 1981-1982. Taught introductory economics, undergraduate statistics, undergraduate labor economics, and graduate econometrics.

**Lecturer of Economics, University of Pennsylvania**, Philadelphia, PA, 1976-1979. Taught introductory economics, undergraduate statistics, undergraduate labor economics, and graduate econometrics.

## PAST GOVERNMENT POSITIONS

**Member, Program Evaluation Committee, Philadelphia 21st Century Review Forum**, Appointed by Mayor John Street, 2004.

**Chairperson, New Jersey State Council on Vocational Education**. Appointed to Council by Governor Florio; Elected chairperson by Council members; 1991-1994.

**Commissioner, New Jersey State Employment and Training Commission**. Appointed by Governor Florio; Chairperson of Occupational Education Task Force; Member of Executive Committee, 1990-1994.

**Member, Philadelphia Naval Shipyard Labor and Retraining Committee**. Appointed by the Director of Commerce of the City of Philadelphia.

**Executive Director, Secretary's Commission on Workforce Quality and Labor Market Efficiency, U.S. Department of Labor**, Washington, DC, 1988-1989. Appointed by Secretary Ann McLaughlin.

13

## OTHER PAST POSITIONS

**Treasurer, Medford NJ Democratic Club,** July 2012 through December 2013.

**Co-Manager of Campaign of Brett Maria Blyshak, Becca Gutwirth, and George Youngkin for Medford (NJ) Township Council,** 2013.

**Member of Board of Directors, Fairmount Capital Advisors, Inc.,** 2010-2012.

**Senior Advisor to George and Nancy Youngkin's Campaign for Medford (NJ) Township Council,** 2012.

**Policy Advisor, Philadelphia Mayoral Campaign of Michael Nutter,** 2006-7.

**Policy Advisor, Pennsylvania Gubernatorial Campaign of Lynn Yeakel,** 1994.

**Director, Employment Management Association Foundation.** Elected by Board of Directors, 1993-1995.

## PUBLICATIONS AND WORKING PAPERS

"The Pinelands Branch Library and Its Place in the Burlington County Library System," June 13, 2013.

"The Budget Deficit: Why It Doesn't Matter," *Philadelphia Inquirer* Op-Ed, July 19, 2011.

"Should Governments Cut Fuel Taxes? No!" *Business Spotlight*, November-December 2008, p. 26.

"'Oil Futures' Are a Phony Target" *Philadelphia Daily News* Op-Ed, August 4, 2008.

"We Need a Gas-Tax Hike, Not a Tax Holiday" *Philadelphia Daily News* Op-Ed, May 12, 2008 (with Richard Voith).

"'It's Going to Cost Whatever It Costs'" *Philadelphia Daily News* Op-Ed, September 20, 2005.

"George W. Bush, CEO: How's He Doing?" *Philadelphia Daily News* Op-Ed, October 12, 2004.

"Smart Growth and Affordable Housing," Chapter 3 of *Growth Management and Affordable Housing – Do They Conflict?*, Brookings Institution Press, 2004 (with Richard Voith).

"Performance-Based Pay for Teachers Will Work," *Philadelphia Daily News* Op-Ed, October 20, 2003 (with Anita Summers).

"Convention Center Deal: Truly a Grand Slam," *Philadelphia Daily News* Op-Ed, July 24, 2003.

## PUBLICATIONS AND WORKING PAPERS (continued)

"Unify the Workforce," *Philadelphia Inquirer Op*-Ed, June 13, 2003.

"Simple Inference in Multinomial and Ordered Logit," *Econometric Reviews*, 17(3), 289-299 (1998) (with Robert Pollak and Francis Vella).

"Schools and Labor Market Outcomes," *Economics of Education Review*, June 1997, 255-269 (with Amy W. Johnson and Anita A. Summers).

"Managing Diversity," *Next Step*, Winter 1997.

"Introduction" (Chapter 1) and "Conclusion" (Chapter 8) of *The Social Benefits of Education*, edited by Jere R.Behrman and Nevzer G. Stacey, The University of Michigan Press, (with Jere R. Behrman and Nevzer G. Stacey), Winter 1997.

"Workforce Diversity: Sources and Implications," *Next Step*, Fall 1996.

"Investing in People," *Chief Executive*, October 1990. Reprinted in J.P. Donlon, editor, *The Best of Chief Executive*, Homewood, Illinois: Business One Irwin, 1993.

"Labor Economics and Public Policy," in *Labor Economics and Public Policy*, volume in *Research in Labor Economics* series, edited by Laurie J. Bassi and David L. Crawford, JAI Press, (with Laurie J. Bassi), 1990.

"Labor Union Objectives and Collective Bargaining," *Quarterly Journal of Economics*, August 1984, 547-66 (with Douglas H. Blair). Reprinted in P. Garonna, P.A. Mori, and P. Tedeschi, editors, *Economic Models of Trade Unions*, London, UK: Chapman and Hall, 1991. To be reprinted in A. L. Booth, editor, *The Economics of Labor Unions*, Cheltenham, UK: Edward Elgar, 2002, as part of *The International Library of Critical Writings in Economics.*

"New Evidence on the Labor Supply Elasticity of Prime-Aged White Males," *Bureau of Economic Research Working Paper 82-9*, Rutgers University, December 1982.

"A Note on Misspecification and Univariate Truncation," June 1982.

"Order and Inference in Qualitative Response Models," *Bureau of Economic Research Working Paper 82-4*, Rutgers University, June 1982. (with Robert A. Pollak).

"Production Function Estimates of Capacity Utilization," (with G. Fromm, L.Klein, M. Prywes, and F. Ripley), 1980.

"School Performance," Part IV, Chapter 12, *Rural Income Maintenance Experiment Final Report,* (with Rebecca Maynard), 1977.

"The Wage Work Response of Elderly Heads," Part IV, Chapter 7, *Rural Income Maintenance Experiment Final Report*, 1977.

## PUBLICATIONS AND WORKING PAPERS (continued)

"The Wage Work Response of Female Heads," Part IV, Chapter 5, ***Rural Income Maintenance Experiment Final Report***, (with Steven G. Garber), 1977.

"Estimating Earnings Functions from Truncated Samples," ***Institute for Research on Poverty Discussion Paper 287-75***. University of Wisconsin, July 1975.

## BOOK EDITED

***Labor Economics and Public Policy***, volume in ***Research in Labor Economics*** series, JAI Press, (with Laurie J. Bassi), 1990.

# EXPERT TRIAL AND DEPOSITION TESTIMONY OF
# DR. DAVID L. CRAWFORD, Ph.D.
## Since June 2010

1. *Thomas E. Perez, Secretary of Labor, United States Department of Labor v. American Future Systems, Inc. d/b/a Progressive Business Publications, a corporation; and Edward Satell, individually and as President of the above referenced corporation,* U.S. District Court for the Eastern District of Pennsylvania, No. 12-6171. Testified for plaintiffs in wage and hour case. (Deposition – April 2014)

2. *Sabrina Hart and Reka Furedi, Individually and on behalf of those similarly situated and the New York Rule 23 Class v. Rick's Cabaret International, Inc., RCI Entertainment (New York), Inc., and Peregrine Enterprises, Inc.,* Case No. 09-CV-3043 (S.D.N.Y.) Testified for plaintiffs in wage and hour case. (Deposition – March 2014)

3. *Office of Federal Contract Compliance Programs v. Bank of America*, Case No. 1997-OFC-16, SOL Case No. 96-10335. Testified for OFCCP in employment discrimination case. (Trial – March 2013)

4. *Noreen Lewis v. Toyota Motor Company, et al.,* Philadelphia County Court of Common Pleas, No. 1088. Testified for defendants in personal injury case. (Trial – March 2013)

5. *Jesus Hernandez. et al. v. Ashley Furniture Industries, Inc., et al.,* U.S. District Court for the Eastern District of Pennsylvania, No. 10-05459(BMS). Testified for plaintiff in wage and hour case. (Deposition – January, February 2013)

6. *Mark S. Groff v. City of Reading, Pennsylvania and William M. Heim, individually,* U.S. District Court for the Eastern District of Pennsylvania, No. 11-CV-03641. Testified for plaintiff in employment termination case. (Trial – December 2012)

7. *Office of Federal Contract Compliance Programs v. VF Jeanswear Limited Partnership*, Case No. 2011-OFC-00006. Testified for OFCCP in employment discrimination case. (Deposition – September 2012)

8. *Office of Federal Contract Compliance Programs v. Bank of America*, Case No. 1997-OFC-16, SOL Case No. 96-10335. Testified for OFCCP in employment discrimination case. (Deposition – June 2012)

9. *Tanya Youngblood, et al. v. Family Dollar Stores, INC., et al.,* U.S. District Court for the Southern District of New York, 09 Civ. 3176 (RMB) and 10 Civ. 7580 (RMB). Testified for plaintiffs in Fair Labor Standards Act case. (Deposition – April 2012)

10. *William Douglas Fulghum, et al. v. Embarq Corporation, et al.,* U.S. District Court for the District of Kansas, No. 07-CV-2602 (EFM/JPO). Testified for plaintiffs in age discrimination case. (Deposition – December 2011)

11. *Alia Sabur v. Yury Gogotsi and Drexel University,* Philadelphia County Court of Common Pleas, No.001411. Testified for plaintiff in defamation case. (Trial – June 2011)

12. *Cristina G. Tarca and Dumitru Tarca, h/w v. Norristown Ford and Norristown Automobile Co., Inc., individually and d/b/a Norristown Ford and Irvin Johnson,* Montgomery County Court of Common Pleas, No. 07-25935. Testified for plaintiffs in personal injury case. (Trial – May 2011)

13. *Roberto Ramos et al., , individually and on behalf of all other persons similarly situated who are or were employed by SimplexGrinnell LP with respect to Public Works Projects v. SimplexGrinnell LP,* U.S. District Court for the Eastern District of New York, 07 Civ. 0981 (NG)(SMG). Testified for plaintiffs in prevailing wage case. (Deposition – August 2010)