UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SABRINA HART and  REKA FUREDI,          :     **Case No: 09-CV-3043 (PAE/RLE)**
on behalf of themselves, all others similarly    :
situated, and the New York Rule 23 Class,       :
                                                               :
                            Plaintiffs,              :
                                                               :
            -against-                                   :
                                                               :
RICK'S CABARET INTERNATIONAL INC.,   :
RCI ENTERTAINMENT (NEW YORK) INC.   :
and PEREGRINE ENTERPRISES, INC.,         :
                                                               :
                            Defendants.            :
----------------------------------------------------------X

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF QUESTIONS FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)

---

Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.  STANDARD OF REVIEW ........................................................................................ 3

II.  INTERLOCUTORY APPEAL IS APPROPRIATE TO REVIEW THIS COURT'S
     DETERMINATION OF THE METHOD OF DAMAGE CALCULATION .................... 4

     A.  The Method of Damage Calculation is a Controlling Question of Law ..................... 4

     B.  There Is Substantial Ground for Difference of Opinion Regarding the
         Court's Holding Regarding Damage Calculation ......................................................... 5

     C.  Determining the Method of Damages Calculation Will Materially
         Advance the Ultimate Termination of the Litigation ................................................... 9

III.  INTERLOCUTORY APPEAL OF THE DETERMINATION OF THE
      "REASONABLE PATRON" STANDARD IS APPROPRIATE ................................... 10

     A.  The Application of the Reasonable Customer Standard Represents
         a Controlling Question of Law ................................................................................. 11

     B.  There is a Substantial Ground for a Difference of Opinion with
         Respect to the Proper Application of the Reasonable Patron Standard ..................... 12

     C.  Determination of the Proper Application of the Reasonable Patron
         Standard Will Materially Advance the Termination of this Litigation ..................... 16

IV.  DEFENDANTS' ENTITLEMENT TO AN OFFSET AGAINST
     WAGE OBLIGATIONS IS AN APPROPRIATE SUBJECT
     FOR INTERLOCUTORY APPEAL .......................................................................... 17

     A.  The Issue of Offset Represents a Controlling Question of Law ............................... 17

     B.  There is a substantial ground for a difference of opinion regarding
         whether defendants are entitled to an offset ............................................................ 17

i

C.  Determination of Defendants' entitlement to an offset would materially advance the ultimate termination of this litigation ................................... 19

CONCLUSION ......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Allstate Ins. Col. v. Elzanaty*,
   No. 11-CV-3862 (ADS)(ARL), 2013 WL 2154759 (E.D.N.Y. May 16, 2013) .................. 5, 12

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013) ...................................................................................... 11

*Benner v. Becton Dickinson & Co.*,
   214 F.R.D. 157 (S.D.N.Y. 2003) ............................................................................... 9 n.4

*Bilello v. JPMorgan Chase Ret. Plan*,
   603 F. Supp. 2d 590 (S.D.N.Y. 2009) ........................................................................ 11

*Charron v. Pinnacle Grp. N.Y. LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010) ................................................................................ 6

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .......................................................................................... *passim*

*Consol. Edison, Inc. v. Northeast Util.*,
   318 F. Supp. 2d 181 (S.D.N.Y. 2004) ........................................................................ 4

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
   476 F. Supp. 2d 305 (S.D.N.Y. 2007) ........................................................................ 3

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   788 F. Supp. 2d 253 (S.D.N.Y. 2011) ........................................................................ 16

*Fleischman v. Albany Medical Ctr.*,
   No. 06-CV-0765, 2010 WL 681992 (N.D.N.Y. Feb. 16, 2010) ................................... 6

*Forrand v. Fed. Exp. Corp.*,
   No. CV 08-1360 DSF (PJWx), 2013 WL 1793951 (C.D. Cal. Apr. 25, 2013) ........................ 9

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................. 6-7, 8

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004) ..................................................................................... 15

*In re Air Crash off Long Island*,
   27 F. Supp. 2d 431 (S.D.N.Y. 1998) ........................................................................ 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 11 MC 0012 KMW, 2011 WL 3897970 (S.D.N.Y. Aug. 31, 2011) ...................... 5

*In re Contemporary Indus. Corp.*,
   312 B.R. 898 (D. Neb. 2004) ............................................................. 11

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 Civ. 1897(HB), 2006 WL 1517580 (S.D.N.Y. June 2, 2006) ........................... 4, 17, 19

*In re Enron Creditors Recovery Corp.*,
   No. 01-16034 (AJG), 2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009) ........................................ 9

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ......................... *passim*

*In re Motor Fuel Temperature Sales Practices Litig.*,
   292 F.R.D. 652 (D. Kan. 2013) ............................................................. 6

*In re POM Wonderful LLC*,
   No. ML 10-02199 DDP (RZx), 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ........................ 8

*In re Shakir*,
   No. 12-41817 NHL, 2013 WL 1334459 (Bankr. E.D.N.Y. Mar. 29, 2013) ........................... 15

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013) ........................................................ 6, 8 n.3

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990) ............................................................. 3, 11

*Laurent v. PricewaterhouseCoopers LLP*,
   No. 06 Civ. 2280 (JPO), 2014 WL 251986 (S.D.N.Y. Jan. 22, 2014) ........................... 3

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ............................................................. 6

*Maldonado v. BTB Events & Celebrations, Inc.*,
   990 F. Supp. 2d 382 (S.D.N.Y. 2013) ................................................. *passim*

*Marisol A. by Forbes v. Giuliani*,
   104 F.3d 524 (2d Cir. 1996) ............................................................. 3

*Matter of the Petitions of HDV Manhattan, LLC*,
   DTA No. 824229, 2014 WL 504271 (N.Y. Div. Tax. App. Jan. 30, 2014) ........................ 18

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ................................................................... 11

*Para v. Bashas', Inc.*,
   No. CIV-02-0591-PHX-RCB, 2013 WL 2407204 (D. Ariz. May 31, 2013) ......................... 7

iv

*Pearson Educ., Inc. v. Liu,*
No. 08 Civ. 6152 (RJH), 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010) ........................ 4, 17, 19

*Roach v. T.L. Cannon Corp.,*
No. 3:10 CV 0591 (TJM/DEP), 2013 WL 1316452 (S.D.N.Y. Mar. 29, 2013)............... *passim*

*Samiento v. World Yacht Inc.,*
10 N.Y.3d 70 (2008) ........................................................................................... *passim*

*Spicer v. Pier Sixty LLC,*
269 F.R.D. 321 (S.D.N.Y. 2010) ............................................................... 12, 13, 16

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.,*
690 F. Supp. 170 (S.D.N.Y. 1987) ............................................................................. 9

*W. Elec. Co. v. Brenner,*
41 N.Y.2d 291 (1977) ................................................................................................ 18

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ............................................................................................. 7, 8

*Xuedan Wang v. Hearst Corp.,*
No. 12 Civ. 793 (HB), 2013 WL 3326650 (S.D.N.Y. June 27, 2013) ................................. 4, 5

## Statutes

28 U.S.C. § 1292(b) .................................................................................................. *passim*

29 U.S.C. § 201 et seq................................................................................... 2, 12, 13, 14

N.Y. Lab. Law (McKinney)................................................................................*passim*

## Rules

Fed. R. App. P. 5(a)(3)................................................................................................. 3

## Other Authorities

16 Fed. Prac. & Proc. Juris. § 3930 ............................................................................. 9

Restatement (Second) of Agency §§ 388, 403.......................................................... 18

## INTRODUCTION

Defendants Rick's Cabaret International Inc. ("RCII"), RCI Entertainment (New York) Inc. ("RCI NY"), and Peregrine Enterprises, Inc. ("Peregrine" and, together with RCII and RCI, "Defendants") respectfully submit this memorandum of law in support of the accompanying motion for an order, pursuant to 28 U.S.C. § 1292(b), amending the Court's November 14, 2014 Opinion and Order (the "Opinion"), to state that it involved a controlling question of law as to which there is substantial ground for difference of opinion as follows:

(1) Whether common damages to a class of plaintiffs could be presumed despite that different methods of calculating damages were required to address all available (and unavailable) records for each member of the class;

(2) Whether the Court properly applied the New York "reasonable customer" standard when holding that certain mandatory fees paid by customers were tips;

(3) Whether the New York Labor Law prohibits an employer from offsetting wage obligations to employees with payments made to those employees for services rendered for the benefit of the employer;

and that an immediate appeal from the Opinion may materially advance the ultimate termination of the litigation, pursuant to 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

The Court should certify its Opinion for interlocutory appeal because it resolved three threshold issues of law in a manner which the Second Circuit is likely to disagree with, and which, if left undisturbed, will prolong this litigation unreasonably and unnecessarily.

First, the Court concluded that Plaintiffs' alleged damages can be calculated on a class-wide basis, despite the fact that Plaintiffs have failed to present a damages model capable of calculating damages on a class-wide basis. Rather than present a single damages model, as required under *Comcast*, Plaintiffs submitted three separate damages models, none of which is capable independently to calculate class-wide damages.  This ruling was contrary to Supreme

Court precedent requiring that, in order to be certified as a class, Plaintiffs must have suffered the same injury.  Plaintiffs must, correspondingly, present a single model of damages calculation capable of measuring, on a class-wide basis, damages caused to the class by the alleged acts of Defendants.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013).  Reversal on this issue would result in decertification of the class—at a minimum, with respect to certain claims—rendering any further adjudicative efforts a waste of scarce judicial resources.

Second, the Court improperly applied the "Reasonable Patron" standard in holding that Performance Fees[1] received by Defendants' employees were tips.  Specifically, the Opinion disregards the guidance of the New York Court of Appeals in interpreting New York law, and misapplies the controlling "Reasonable Patron" test.  Instead, this Court relied upon different (and inappropriate) standards contained in federal law—the Fair Labor Standards Act ("FLSA")—and guidance divined from rules regarding banquet functions.  Had the Court employed the appropriate standard, millions of dollars in claims would be rendered moot, and further adjudication would be unnecessary.  Thus, interlocutory appeal of this issue is appropriate.

Third, the Opinion incorrectly states that New York Labor Law ("NYLL") prohibits Defendants from offsetting their wage obligations to Plaintiffs with payments made to an employee for services rendered for the benefit of the employer.  The law, however, contains no such prohibition, and case law suggests that such an offset is permissible.  Because reversal of this Court on that issue would effectively negate a large swath of Plaintiffs' claims, interlocutory appeal is appropriate.

---

[1]  Unless otherwise noted, all capitalized terms and abbreviations used herein shall have the same meaning as that used in the Opinion.

Each of these three issues are well suited for interlocutory review. Resolution of these controlling issues will permit the efficient resolution of numerous claims before the Court, without requiring the duplication of effort resulting from the appellate reversal of a flawed trial. For the reasons discussed more fully herein, the Court should grant Defendants' motion to certify the challenged portions of its Opinion for interlocutory appeal.

## ARGUMENT

## I.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1292(b), a district court has discretion to certify for interlocutory appeal any order: (i) which involves a controlling question of law; (ii) as to which there is substantial ground for a difference of opinion; and (iii) as to which an immediate appeal may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Laurent v. PricewaterhouseCoopers LLP*, No. 06 Civ. 2280 (JPO), 2014 WL 251986, at *1 (S.D.N.Y. Jan. 22, 2014). The order of a district court which does not contain such a certification may be amended either *sua sponte* or at the request of a party. Fed. R. App. P. 5(a)(3); *Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 526-27 (2d Cir. 1997).

The Second Circuit has explained that the first prong—that the appeal concern a controlling issue of law—requires that the issue be one that "could significantly affect the conduct of the action." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).

The second prong, that there be a "substantial ground for difference of opinion" is satisfied where it is shown either: (i) that there is conflicting authority on the issue; or (ii) that the issue is particularly difficult and is one of first impression in Circuit. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 23 (2d Cir. 1990); *Consub Delaware LLC v. Schahin Engenharia*

*Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007) (citing *In re Lloyd's*, 1997 WL 458739 at

*5).

The third prong requires that the issue to be appealed will "materially advance the

ultimate termination of the litigation." A district court must determine whether or not immediate

review will "help streamline the litigation for trial and on appeal." *Consol. Edison, Inc. v.

Northeast Util.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004) (*rev'd on other grounds*); *Pearson

Educ., Inc. v. Liu*, No. 08 Civ. 6152 (RJH), 2010 WL 623470, at *2 (S.D.N.Y. Feb. 22, 2010) (an

interlocutory appeal will "materially advance the ultimate termination of the litigation," if

"further motion practice, discovery, or trial. . . would likely be rendered moot" by a successful

appeal); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2006 WL 1517580, at *3

(S.D.N.Y. June 2, 2006) (holding that absent interlocutory appeal, "substantial resources may be

expended in vain both by the parties and this Court if [the Court's] initial conclusion proves

incorrect").

## II.   INTERLOCUTORY APPEAL IS APPROPRIATE TO REVIEW THIS COURT'S DETERMINATION OF THE METHOD OF DAMAGE CALCULATION

In the Opinion, this Court held that damages to a class of plaintiffs could be presumed

despite that different methods of calculating damages were required by different members of the

putative class. Interlocutory review of this determination is appropriate. *See, e.g.*, *Xuedan Wang

v. Hearst Corp.*, No. 12 Civ. 793 (HB), 2013 WL 3326650, at *2 (S.D.N.Y. June 27, 2013)

(granting interlocutory appeal because class certification raised questions that were "difficult and

one of first impression.").

### A.    The Method of Damage Calculation is a Controlling Question of Law.

Whether these class plaintiffs have suffered the same injury, susceptible to class-wide

determination, is a controlling question of law because it could "significantly affect the conduct

of the action." *In re Lloyd's*, 1997 WL 458739, at *4.  Simply put, as the Supreme Court has made plain, if these plaintiffs' alleged injuries cannot be measured by a single model directly tied to a set of uniform injuries, the class action complaint cannot proceed.  *Comcast*, 133 S. Ct. at 1433.

As the Supreme Court explained in *Comcast*, a class is not properly certified where plaintiffs' damage model "falls far short of establishing that damages are capable of measurement on a classwide basis."  *Id.  See also Roach v. T.L. Cannon Corp.*, No. 3:10 CV 0591 (TJM/DEP), 2013 WL 1316452, at *3 (S.D.N.Y. Mar. 29, 2013) (rejecting class certification where "[e]ach individual's claim (or claims) would rise or fall on the facts of his or her own case.").  Because this determination will "significantly affect the conduct of the action," this prong is satisfied.  *In re Lloyd's*, 1997 WL 458739, at *4; *Xuedan Wang*, 2013 WL 3326650, at *2 ("controlling questions of law include whether the facts here support a finding that neither dominance nor commonality were satisfied so that a class may be certified.").

**B.    There Is Substantial Ground for Difference of Opinion Regarding the Court's Holding Regarding Damage Calculation.**

The second inquiry for interlocutory review is whether there is "substantial ground for difference of opinion."  28 U.S.C. §1292(b).  Substantial grounds can arise out of uncertainty as to whether a court applied the correct legal standard in its order.  *Allstate Ins. Col. v. Elzanaty*, No. 11-CV-3862 (ADS)(ARL), 2013 WL 2154759, at *5 (E.D.N.Y. May 16, 2013); *In re Bernard L. Madoff Inv. Sec. LLC)*, No. 11 MC 0012, 2011 WL 3897970, at *10 (S.D.N.Y. Aug. 31, 2011).  Whether or not the claims of individuals with varying injuries and disparate means of determining damages may be consolidated in a single class is one which reflects precisely such a difference of opinion.  Indeed, a great deal of authority suggests that this Court's Opinion is at odds with the Supreme Court's opinion in *Comcast*.

The question at the certification stage or decertification stage is whether the "measure of . . . damages requires individualized proof" because in such cases "classwide issues cannot be said to predominate." *Fleischman v. Albany Medical Ctr.*, No. 06-CV-0765, 2010 WL 681992, at *4 (N.D.N.Y. Feb. 16, 2010); *see also Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 240 (S.D.N.Y. 2010) (holding that even where there are common questions of liability that can be handled on a class-wide basis, that individualized damages questions militated against certification). Plaintiffs cannot meet that burden.

As the Opinion notes, federal courts have grappled with *Comcast's* impact on class certification, specifically as it relates to damages purportedly suffered by a plaintiff class. Opinion at 38 ("Since the Supreme Court decided *Comcast*, district and circuit courts alike have grappled with the scope, effect, and application of *Comcast's* holding, and in particular, its interaction with non anti-trust class actions."). As summarized in the District Court's opinion in *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 581-82 (S.D.N.Y. 2013), this has resulted in a variety of conflicting approaches to apply the holdings of *Comcast*:

> the class-certification decisions applying *Comcast* can be divided into three, distinct groups: (1) courts distinguishing *Comcast,* and finding a common formula at the class certification stage, and thus, predominance, satisfied, *see, e.g., Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 511 (9th Cir. 2013); (2) courts applying *Comcast* and rejecting class certification on the ground that no common formula exists for the determination of damages, *see, e.g., Roach*, 2013 WL 1316452; and (3) courts embracing a middle approach whereby they employ Rule 23(c)(4) and maintain class certification as to liability only, leaving damages for a separate, individualized determination, *see, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig*., 292 F.R.D. 652 (D. Kan. 2013).

*Id.* at 581-82; *see also Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141 (S.D.N.Y. 2014) ('The Second Circuit has not yet made a definitive assessment

of Comcast's effects."). This well-documented disagreement among district courts—coupled with the Second Circuit's silence on the issue—establishes the substantial grounds for a difference of opinion on this aspect of the Court's Opinion.

Defendants respectfully submit that this aspect of the Opinion is at odds with the holding of *Comcast*. In this case, the record establishes that the very individual nature of each putative class members' damages calculation, and the inability of Plaintiffs to measure these individual damages on a class-wide basis, making certification as a class impossible. *See, e.g. Comcast*, 133 S. Ct. at 1433. Class-wide determination of wage issues is appropriate only where objective individual data is available to calculate losses for "each eligible class member." *Para v. Bashas', Inc.*, No. CIV–02–0591–PHX–RCB, 2013 WL 2407204, at *32 (D. Ariz. May 31, 2013) (approving the plaintiff's back pay calculation post-*Comcast* only where damage calculation was applicable to *each* eligible class member). Plaintiffs' attempt to blur individual class member damages into groups or "tranches" of data and adjudicate separately portions of their wage damages claims across three distinct models is the antithesis of class disposition. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2560-61 (2011) (holding that Wal-Mart was entitled to individualized inquiries of each employee's eligibility for backpay).

As the Supreme Court explained, "any model supporting plaintiffs' damages case must be consistent with its liability case," and must "establish [] that damages are capable of measurement on a classwide basis." *Comcast*, 133 S. Ct. at 1433. This, however, Plaintiffs cannot do. Instead, Plaintiffs have presented a "tranche-by-tranche" methodology: an amalgamation of three different models, none of which, on their own, is capable of determining damages on a classwide basis.[2]

---

[2] Model One ("Tranche One") purports to calculate damages using a limited number of time entries from individual entertainer records for which there is an alleged "valid log-in and log-out time." Model Two ("Tranche Two")

The Court's determination that partial summary judgment could be based on the "undisputed" method of damages calculation (Opinion at 43) runs afoul of Supreme Court authority. *See, e.g.*, *Wal-Mart Stores*, 131 S. Ct. at 2550. Plaintiffs' failure to present a single model capable of measuring damages class-wide is contrary to *Comcast* and is fatal to certification. *Fort Worth Employees' Ret. Fund*, 301 F.R.D. at 142; *Roach*, 2013 WL 1316452, at *3.[3]

In fact, this is precisely the approach rejected by the Supreme Court in *Comcast*, which explained that the failure to present a single damage model that specifically addressed a uniform set of injuries "would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Comcast*, 133 S. Ct. at 1433.

This Court held that the damages in this case "do not turn on individualized, dancer-specific proof." But this statement is at odds with the Court's simultaneous observation that the "damages inquiry turns [on] the hours worked by dancers each day. " Opinion at 40.

The individual nature of each putative class member's damages calculation mandates the type of individualized proof making certification of the class improper. Thus, merely because some of the putative class members may not be able to "recall their daily hours from years ago," does not justify filling gaps in the data in order to preserve the class's ability to proceed in this action. *See*, *e.g.*, *In re POM Wonderful LLC*, No. ML 10–02199 DDP (RZx), 2014 WL 1225184, at *6 (C.D. Cal. Mar. 25, 2014) (granting motion to decertify class based, in part, on the putative class members' failure to substantiate uniform damages). If, in fact, individual plaintiffs are unable to sustain their burden and substantiate individual proof, then the claims of

---

purports to calculate damages using another set of records which lack a valid log-out time. Model Three ("Tranche Three") purports to calculate damages through the use of "average log-out times" based on payroll records for all employees. Opinion at 25-26 and 32, n.8.

[3] Currently, two consolidated cases are before the Second Circuit on these issues: *Roach v. T.L. Cannon Corp*, No. 13-3070 (2d Cir. 2014) and *Jacob v. Duane Reade Inc*, No 13-3873 (2d Cir. 2014).

the class must, as a matter of law, fail.  *Roach*, 2013 WL 1316452, at *3; *Forrand v. Fed. Exp. Corp.*, No. CV 08–1360 DSF (PJWx), 2013 WL 1793951, at *6 (C.D. Cal. Apr. 25, 2013) (denying class certification as "too broad to be certified under Rule 23(b)(3).").

### C. Determining the Method of Damages Calculation Will Materially Advance the Ultimate Termination of the Litigation.

Immediate appellate review of this issue will materially advance this litigation because of the strictly legal nature of the issues presented.  "The requirement that an appeal [under 28 U.S.C. § 1292(b)] may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law."  *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 176 (S.D.N.Y. 1987) (citing 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure: Jursidiction § 3930 (1977 & Supp. 1986)).  Likewise, "[a]n immediate appeal may materially advance the ultimate termination of the litigation when reversal could result in dismissal of the action."  *In re Lloyd's*, 1997 WL 458739, at * 7.  Where, as here, "an appeal would facilitate the expeditious resolution of the case," applications for leave to appeal "should be liberally granted."  *In re Enron Creditors Recovery Corp.*, No. 01-16034 (AJG), 2009 WL 3349471, at * 7 (S.D.N.Y. Oct. 16, 2009).

If Defendants' interlocutory appeal is successful, it would obviate completely the need for a trial on those claims which seek damages which are not common to all members of the class.  Interlocutory appeal would, therefore, materially advance the ultimate termination of the litigation.[4]

---

[4]  That this Court has found common liability among the class members is no proxy for the requirement, under *Comcast*, of a single theory of damages calculation.  *See, e.g.*, *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003) (holding that "despite the presence of a common [liability] issue, certification would not make the case more manageable").

Certification would avoid the need to continue litigating the claims of a putative class whose claims are only determinable on an individualized basis.  Because of the risk of wasting this Court's scarce resources, interlocutory appeal of this issue is appropriate.

## III.   INTERLOCUTORY APPEAL OF THE DETERMINATION OF THE "REASONABLE PATRON" STANDARD IS APPROPRIATE

In the Opinion, this Court held that Performance Fees at Rick's NY were "tips" and failed to properly apply the controlling "reasonable patron" standard as set forth by the New York Court of Appeals in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).  Interlocutory review of the Court's application of the "reasonable patron" standard is appropriate.

In *World Yacht*, the Court of Appeals addressed the issue of whether a reasonable patron would believe that a mandatory fee was a gratuity retained entirely by the service staff.  As the Court explained, if a reasonable patron would believe that the fee was a gratuity, the fee is to be treated as a gratuity, and no portion of it may be withheld from the employer's service employees.  Correspondingly, of course, if the reasonable patron would believe that such a fee is not a tip, there is no limit on an employer's right to distribute that fee to its employees—or not distribute it to its employees—as the employer sees fit.  10 N.Y.3d at 81; *see also Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 393 (S.D.N.Y. 2013).

In this case, it is undisputed that the "reasonable patron" was informed and aware of the fact that the $20 Performance Fee was not a gratuity; it was a fee.  The record also established that the fee did not, in its entirety, belong to these Plaintiffs.  Ergo, the Performance Fees were not "tips."  The Opinion, however, does not employ the "reasonable patron" standard, but instead improperly relies on federal law and analogous administrative holdings regarding banquet facilities, to reach an opposite result.  This departure from controlling authority presents precisely the type of "difference of opinion" appropriate for interlocutory review.  Finally,

reversal on this issue would render the bulk of Plaintiffs' asserted claims moot.

Because this issue satisfies all three prerequisite factors pursuant to 28 U.S.C. §1292(b) it is proper for interlocutory appeal.

### A.   The Application of the Reasonable Customer Standard Represents a Controlling Question of Law.

Whether the reasonable customer standard was properly applied in this case involves a controlling issue of law which would significantly affect the conduct of the litigation. Under the properly-applied "reasonable patron" standard, Plaintiffs would no longer have claims for $3,577,302 in claimed damages pursuant to NYLL § 196-d, representing amounts kept by the Club upon the redemption of so-called "Dance Dollars."[5]   Such a legal issue affecting the conduct of this litigation is appropriately the subject of interlocutory appeal. *See, e.g.*, *Klinghoffer*, 921 F.2d at 24 (a question of law is "controlling" if reversal on that ground would materially affect the litigation's outcome); *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) ("When a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'") (quoting *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 111 (2009)); *Bilello v. JPMorgan Chase Ret. Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009) (finding controlling question of law when interpretation of statute was required); *In re Contemporary Indus. Corp.*, 312 B.R. 898, 901 (D. Neb. 2004) (issues regarding "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" are controlling for purposes of § 1292(b)).

---

[5] "Dance Dollars" are vouchers that customers purchase from the Club by credit card.  Dance Dollars are then used by the customer to purchase entertainers' services.

**B.    There is a Substantial Ground for a Difference of Opinion with Respect to the Proper Application of the Reasonable Patron Standard.**

Defendants respectfully submit that the Court's application of the "Reasonable Patron" standard was in error, and that there is "substantial ground for difference of opinion" as to whether the Court applied the correct legal standard.  28 U.S.C. § 1292(b); s*ee Elzanaty*, 2013 WL 2154759, at *2.

In *World Yacht*, the New York Court of Appeals held that "the statutory language of [New York] Labor Law § 196-d can include mandatory charges *when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees*."  *World Yacht*, 10 N.Y.3d at 81.  (emphasis supplied).  To determine the "reasonable belief" of customers, *World Yacht* (and its progeny) directs courts to focus on: (i) the wording of documentation provided to customers; (ii) evidence that customers were led or allowed to believe that the charges were either charges or gratuities; and (iii) the frequency of tips by customers over and above the subject mandatory charge.  *World Yacht*, 10 N.Y.3d 70; *Maldonado*, 990 F. Supp. 2d at 382; *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 332 (S.D.N.Y. 2010).

Here, the Court failed to consider the relevant *World Yacht* factors and reached a conclusion in conflict with controlling authority.[6]  Instead, the Court relied on provisions of federal law, (*i.e.* the FLSA), and New York State Department of Labor Banquet Regulations and Opinion Letters, which (by their terms) do not apply to non-banquet settings, such as those at

---

[6]  For example, the Court based its rationale on the fact that Performance Fees were paid "directly by customers to dancers, and were largely paid in the form of cash, following a personalized service (*e.g.*, a dance or lap dance)," and that the Performance Fees "were of varying size and were completely unrecorded by Rick's NY in any form." Opinion at 15.  But *World Yacht* does not hold that these factors are relevant to the beliefs of the "reasonable patron."  There is no support for deeming direct payment—like cash used to pay a dinner check handed directly to a waiter—a "tip."  Additionally, the record reflected that Peregrine did, in fact, record the amounts of Performance Fees collected by class members and treated them as earnings in tax forms. Stipulated Facts for the Parties' Motions for Summary Judgment dated February 1, 2013 [ECF Dkt. No 454] ¶¶ 5, 218.

issue in this case. This creates substantial grounds for a difference of opinion with respect to this issue, as other courts have made clear that these sources are irrelevant to the instant inquiry.

First, the Opinion improper relies upon the March 11, 2010 Department of Labor Opinion Letter (the "DOL Opinion Letter"). In *Spicer*, however, the district court explained that the DOL Opinion Letter addressed only concerns arising in the banquet industry; rendering it inapposite in this case:

> [The DOL Opinion Letter] derived from an understanding of the 'underlying operational practices of the New York banquet industry.' (citations omitted). The letter bases its reasoning on an evaluation of inferences to be drawn from the contract drafting and customer relations practices in that industry.

*Spicer*, 269 F.R.D. at 331.

The DOL Opinion Letter itself was a response to a request for an "opinion on how banquet contracts must be formatted and worded with respect to service charges in light of [*World Yacht*]." DOL Opinion Letter at 1.[7]

Similarly, the Court relied upon certain regulations promulgated in connection with the NYLL (N.Y. Comp. Codes T. Regs. Tit. 12 § 146-2.18(b) and § 2.19(b) (the "2011 Regulations")). The 2011 Regulations, however, were also limited to the context of the banquet industry. The Report and Recommendations issued by the Minimum Wage Board were a part of its review of prior minimum wage orders in the restaurant and hotel industries and addressed banquets, specifically.[8] Thus, erroneously relying on both the DOL Opinion Letter and the 2011 Regulations, the Court concluded that Performance Fees paid by Dance Dollars "would have been understood by a reasonable customer as a gratuity under the NYLL." Opinion at 18.

The Court's reliance on the FLSA to determine whether payments were gratuities was similarly in error, and is contrary to the holding of *World Yacht* and the cases that follow it. The

---

[7] July 28, 2014 Declaration of Jeffrey Kimmel, Ex H [ECF Dkt. No. 572-10].
[8] July 28, 2014 Declaration of Jeffrey Kimmel, Ex. J [ECF Dkt. No. 572-12].

"standards for determining whether a payment is a gratuity differ under the FLSA and the NYLL. . .  [the] NYLL takes a different approach—one far from the bright-line test applied under the FLSA."  *Maldonado*, 990 F. Supp. 2d at 388-89.  Thus, when it conditioned treatment of the payments at issue on concerns raised only in the FLSA, such as whether the payments were properly included as gross receipts (Opinion at 17), the Court failed to conduct the appropriate inquiry into the understanding of a "Reasonable Patron."[9]

The Court also misapplied the reasonable patron standard in holding that "*World Yacht* itself, ha[s] squarely held that an employer's mandatory charge may constitute or purport to be a gratuity within the meaning of the NYLL."  Opinion at 16- 17.  In fact, *World Yacht* describes as gratuities only those payments made in addition to a base price for a good or service.  *World Yacht*, 10 N.Y.3d at 81; *Maldonado*, 990 F. Supp. 2d at 393.

Here, the $20 Performance Fee was regarded—accurately—as the base charge for a good or service.  The Court's analysis disregards *World Yacht* and incorrectly treats these fees as gratuities under the NYLL.  *Maldonado*, 990 F. Supp. 2d at 393.

Had the Court properly applied the "Reasonable Patron" standard described in *World Yacht*, it would have reached a far different result.  *World Yacht* requires consideration of: (i) documents signed by customers acknowledging that Performance Fees were not gratuities; (ii) facts showing that customers were not led or intentionally allowed to believe otherwise; and (iii) the frequency with which customers tipped entertainers over and above the Performance Fees.  The Court's approach creates precisely the type of substantial grounds for a difference of opinion that justifies interlocutory appeal with respect to this issue.

Proper application of the "Reasonable Patron" standard should have been based, among

---

[9] Similarly, the Court's reliance on the definition of "gratuity" under the FLSA was improper, and should not have been a part of the determination of the understanding of a "Reasonable Patron."  (Opinion at 17).

other things, on documents signed by customers when purchasing Dance Dollars beginning in May 2011, which stated, "PAYMENT FOR PERSONAL DANCES ARE MANDATORY CHARGES AND NOT GRATUITIES. ENTERTAINERS DO NOT RETAIN THE FULL AMOUNT OF FEES PAID FOR PERSONAL DANCES."[10]  The  Dance Dollars themselves also contained text stating that "Entertainers do not retain the full amount of fees paid for personal dances," and "Payments for personal dances are mandatory charges & not gratuities." *Id.* at 31.

The Court's conclusion that customers did not, could not, or would not read the text of Dance Dollars was not based on any evidence in the record, ignores relevant law and presents substantial grounds for a difference of opinion.  *See* Opinion at 18-20.  Under New York law, a party who "signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them. . . .  When the terms in question are printed in plain English directly above the party's signature, that party is obligated to read those terms and is conclusively bound by his signature." *In re Shakir*, No. 12-01130 (NHL), 2013 WL 1334459, at *5 (Bankr. E.D.N.Y. Mar. 29, 2013) (internal citations omitted) (*citing Gold v. Deutche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004).

Thus, for example, the District Court in *Maldonado* explained that customer notifications, "although ambiguous, were not affirmatively misleading," and held that the described charges were not gratuities.  *Maldonado*, 990 F. Supp. 2d at 393.  The plain language printed on certain Dance Dollars should have been determinative that the Performance Fees were not gratuities under the "Reasonable Patron" standard.

Instead, the Court wrongfully held that "[t]here is no record evidence that customers

---

[10]  *See* Defendants' July 14, 2014 Rule 56.1 Statement at ¶¶ 31, 32 [ECF Dkt No. 551].  Those customers who wanted to extend time in semi-private rooms beyond the time originally agreed to were asked to sign this same form again for every such extension.  *Id.*

perceived the money they paid the dancers [as anything other than a tip]."  Opinion at 15-16. This ignores plaintiffs' own testimony that, in fact, they told customers otherwise and that customers were aware that they were not tips.[11].  This is a critical component of determining what a "Reasonable Patron" could have been expected to understand under the totality of the circumstances.  *See*, *e.g.*, *Spicer*, 269 F.R.D. at 332. Numerous class members testified that they informed customers, or customers were already aware that entertainers did not keep the full $20.00 when Performance Fees were paid.[12]  This testimony, when considered alongside the documents informing the patrons of the nature of the Performance Fees precludes a finding that patrons were lead to or allowed to believe that Performance Fees were gratuities.  *Spicer*, 269 F.R.D. at 332; *World Yacht*, 10 N.Y.3d at 75; *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 272, 285 (S.D.N.Y. 2011); *Maldonado*, 990 F. Supp. 2d at 393.

In addition, Plaintiffs testified that they received tips over and above the Performance Fees for personal dances.[13]  In fact, they testified that they customarily received tips over and above the semi-private room Performance Fee,[14] including one plaintiff, who testified that "98%" of the time she received a "tip" over and above the Performance Fee charged for her time in a semi-private room.[15]

### C. Determination of the Proper Application of the Reasonable Patron Standard Will Materially Advance the Termination of this Litigation.

There can be little doubt that proper application of the Reasonable Patron Standard would materially advance the ultimate resolution of this litigation and prevent unnecessary expenditure

---

[11]  *See* Defendants July 14, 2014 Rule 56.1 Statement, ¶¶ 33 – 38 [ECF Dkt. 551; Defendants' July 28, 2014 Rule 56.1 Statement, ¶¶ 625-632 [ECF Dkt. 570].
[12]  *See* Defendants July 14, 2014 Rule 56.1 Statement, ¶¶ 33 – 38 [ECF Dkt. 551; Defendants' July 28, 2014 Rule 56.1 Statement, ¶¶ 625-632 [ECF Dkt. 570].
[13]  *See* Defendants July 14, 2014 Rule 56.1 Statement, ¶¶ 10, 17 [ECF Dkt. 551]; Defendants' July 28, 2014 Rule 56.1 Statement, ¶¶ 605, 609-610 [ECF Dkt. 570].
[14]  *See* Defendants' July 14, 2014 Rule 56.1 Statement, ¶ 17 [ECF Dkt. 551]; Defendants' July 28, 2014 Rule 56.1 Statement, ¶¶ 609-10 [ECF Dkt. 570].
[15]  *See* Defendants' July 28, 2014 Rule 56.1 Statement, ¶¶ 609-10 [ECF Dkt. 570].

of time and expense of the parties and this Court.  A determination by the Second Circuit that Performance Fees are not gratuities would render many claims moot.  This satisfies the third prong of the test for interlocutory review.  *Pearson Educ.*, 2010 WL 623470, at *2; *In re Dynex*, 2006 WL 1517580, at *3.  Because of the possibility that further adjudication would waste scarce judicial resources, Defendants respectfully request that the Court certify this issue for interlocutory appeal.

## IV.   DEFENDANTS' ENTITLEMENT TO AN OFFSET AGAINST WAGE OBLIGATIONS IS AN APPROPRIATE SUBJECT FOR INTERLOCUTORY APPEAL

In the Opinion, this Court held that Defendants were not permitted to offset their wage obligations to Plaintiffs by the large amounts of Performance Fees received by Plaintiffs.  This holding runs counter to authority on this subject, and interlocutory appeal is appropriate.

### A.   The Issue of Offset Represents a Controlling Question of Law.

Whether Defendants may offset wage obligations against Performance Fees would significantly affect the conduct of the litigation.  If the Second Circuit correctly holds that non-gratuities earned by an employee within the scope of—and integral to—an employer's business may offset wage obligations, the putative class members' claimed damages would be greatly diminished, if not rendered moot.  Whether an offset is permitted under the NYLL is the type of purely legal inquiry appropriate for interlocutory review.  *In re Air Crash off Long Island*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998).

### B.   There is a substantial ground for a difference of opinion regarding whether defendants are entitled to an offset.

Whether Defendants are able to offset their wage obligations to Plaintiffs under the NYLL is a matter of first impression for the Second Circuit.  Further, analogous authority is in conflict with the Opinion.  Interlocutory review is, therefore, appropriate.  *In re Lloyd's*, 1997

WL 458739, at *5.

In determining that Defendants were not entitled to an offset of wage obligations in the amount of a portion of the Performance Fees paid directly to individual Plaintiffs, the Court improperly relied on the FLSA and on a perceived lack of explicit permission under the NYLL to do so. Opinion at 10-12. However, there is no prohibition of such an arrangement under New York Law, nor is there any need for a statute or regulation as to this fundamental concept. Simply, if Performance Fees are not tips and if Plaintiffs are employees, the vast weight of authority holds that the Performance Fees are Defendants' property. *See* Restatement (Second) of Agency, §§ 388, 403; *Maldonado*, 990 F. Supp. 2d at 388; *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977) ("absent an agreement otherwise, an employee who makes a profit or receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer, whether or not it was received by the employee in violation of his duty of loyalty."); *Matter of the Petitions of HDV Manhattan, LLC*, DTA No. 824229, 2014 WL 504271, *4-*5 (N.Y. Div. Tax. App. Jan. 30, 2014) (holding that sums paid for the performance of personal dances by adult entertainers (*i.e.*, Performance Fees) are sales of the employer and are therefore subject to sales tax).

The Opinion notes potential wage violations—distinct from Plaintiffs' claims. But these violations, even if true, should have no effect on Peregrine's right to offset its wage obligations. Opinion at 8-10, 12. For example, there is no authority for the proposition that a failure to comply with notice provisions or a failure to properly withhold taxes changes the nature of money paid to an employee. If that money is, as here, the property of the employer, offset of wage obligations is appropriate. *Brenner*, 41 N.Y.2d at 295. This constitutes substantial ground for a difference of opinion as to the Court's holding on this issue.

**C.** **Determination of Defendants' entitlement to an offset would materially advance the ultimate termination of this litigation.**

Finally, an immediate appeal would materially advance the resolution of this litigation. Should an appellate court determine that Defendants are entitled to offset their wage obligations to Plaintiffs with a portion of the Performance Fees received by Plaintiffs, it will render many of Plaintiffs' claims moot, as there would no longer be any damages to recover. *Pearson Educ.*, 2010 WL 623470, at *2; *In re Dynex*, 2006 WL 1517580, at *3.

<u>CONCLUSION</u>

For all the reasons set forth above, the Court should grant Defendants' motion for certification of the issues raised above for interlocutory appeal.

Dated: New York, New York
        December 5, 2014

                          MEISTER SEELIG & FEIN LLP


                          _____/s/ Jeffrey A. Kimmel_____
                          By: Jeffrey A. Kimmel
                              Racquel Crespi Weintraub
                              Howard Davis
                          125 Park Avenue
                          New York, New York 10017
                          212-655-3500

                          *Attorneys for Defendants*

19