USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SABRINA HART and REKA FUREDI, *on behalf of themselves and all others similarly situated, and the New York Rule 23 Class*,

                      Plaintiffs,

-v-

RCI HOSPITALITY HOLDINGS, INC.,
f/k/a Rick's Cabaret International Inc.,
RCI ENTERTAINMENT (NEW YORK), INC., and
PEREGRINE ENTERPRISES, INC.,

                      Defendants.

------------------------------------------------------------X

09 Civ. 3043 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

      Trial in this case is scheduled to begin on April 27, 2015. The parties have recently filed numerous motions *in limine*. *See generally* Dkt. 643–99. This Opinion and Order resolves plaintiffs' motion *in limine* Number 10. Dkt. 662–63. Plaintiffs there move to preclude defendants from arguing or introducing evidence at trial that the official business hours of Rick's NY ("the Club") were other than 11 a.m. to 4 a.m. The Court grants plaintiffs' motion.[1]

      By way of relevant background, the Court has entered summary judgment for plaintiffs, who work as dancers at the Club, on their minimum-wage claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq.* & §§ 650 *et seq.* The Court has also entered partial summary judgment as to plaintiffs' damages on these claims. Specifically, the Court has granted summary judgment with

---

[1] In so ruling, the Court does not preclude the parties from seeking to establish, if relevant at trial, that the Club sometimes stayed open past its stated closing time.

respect to 57,823 dancer work-days. As to these dancer work-days, the Court held, the Club's records of the hours of the dancer in question are complete and conclusive, such that there is no disputed issue of fact as to the hours the dancer worked, and the calculation of minimum-wage damages is therefore purely an exercise in multiplication. *See* Dkt. 600 ("November 2014 Decision"), *reported at Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2014 WL 6238175 (S.D.N.Y. Nov. 14, 2014).

Among the discrete issues left open for trial will be plaintiffs' damages as to the other 80,057 dancer work-days at issue. As to those work-days, the Club's records of dancer-hours are not complete. The Club's "Clubtrax" system generally contains a log-in time for the dancer.[2] But these records often lack a conclusive log-out time.

As to work-days for which there is not a reliable log-out time for the dancer, the parties dispute the appropriate basis to reasonably determine the time at which the dancer's work-day ended, so as to permit a finding of the hours the dancer worked and therefore the minimum wages to which she was entitled. The parties debate the persuasiveness of potential proxies that might be used to arrive at, or reasonably estimate, the time at which the dancer ceased work. For example, where the Club's records reflect that a dancer redeemed a "Dance Dollar" at a particular time, under what circumstances may that be taken to reflect that the dancer was still working at the Club at that time? Relatedly, the parties debate whether certain log-in or log-out times recorded in the Clubtrax system for various dancer work-days ought to be discounted as "default" times inputted by Clubtrax to fill a void, as opposed to reflecting actual acts of logging in or logging out by a dancer. These disputes over methodology for inferring hours, and

---

[2] *See, e.g.*, Dkt. 514, at 3 n.4 (defendants' memorandum in support of motion to strike expert reports and testimony of plaintiffs' expert, Dr. Crawford) ("When an entertainer arrives to perform at Rick's NY, she generally logs in to the club's electronic system known as Clubtrax.").

therefore minimum-wage damages, as to dancer work-days for which the Club's records are imperfect are a significant focus of the competing submissions by the parties' experts: for plaintiffs, Dr. David Crawford, and for defendants, Dr. Paul F. White.[3]

Relevant here, the Club's hours of operation are a background fact that has informed the experts' conclusions as to these points. The Club's hours inform, for example, the experts' assessments as to which log-in and log-out times should be treated as having been inputted by the dancer as opposed to being a Clubtrax-generated "default" time. Notably, *both* experts used the same assumption as to the Club's hours of operation. As detailed below, Dr. Crawford explicitly assumed and repeatedly stated in his expert analysis that the Club's hours every day were 11 a.m. to 4 a.m. *See, e.g.*, Dkt. 513 Ex. 2 ("Dr. Crawford Report"), ¶ 21; *id.* ¶ 23; *id.* at n.7; *id.* Ex. 4 ("Dr. Crawford Rebuttal"), ¶ 15; *id.* Ex. 3 ("Crawford Dep."), 44. And Dr. White utilizes the same assumption. *See, e.g.*, Dkt. 516 Ex. Q ("Dr. White Report"), 5; Dkt. 513 Ex. 1 ("Dr. White Rebuttal"), 2. Neither expert anywhere states or implies that the Club's official hours of operation were ever anything other than 11 a.m. to 4 a.m.

In preparation for trial, and in order to streamline trial, plaintiffs sought a stipulation from the defense that the Club's official hours of operation were 11 a.m. to 4 a.m. each day. *See* Dkt. 663 ("Pl. Br."), 2. The defendants declined to so stipulate. In their brief, defendants concede the Club's hours on Monday through Friday were 11 a.m. to 4 a.m. throughout the class period. *See* Dkt. 699 ("Def. Br."), 2. Defendants also concede that the Club's closing time on weekends was

---

[3] As reflected in an Order the Court is issuing today, there appears to be an alternative, and far simpler, means of calculating hours on these days, which is to extrapolate from the average hours worked on the 57,823 work-days as to which the Court has granted summary judgment. It remains to be seen whether the parties will pursue this approach in lieu of those articulated by their experts.

consistently 4 a.m.  *Id.*[4]  However, defendants now claim, the Club's opening time on Saturdays and Sundays in fact was later than 11 a.m., and varied over time.  *Id.*  Defendants claim that (1) before March 2007, the Club opened at 6 p.m. on weekends; (2) between March 2007 and June 1, 2012, the Club opened at 4 p.m. on weekends; and (3) between June 2, 2012 and the end of the class period (October 31, 2012), the Club opened at 12 p.m. (*i.e.*, noon) on weekends.  *Id.*  Defendants indicated that they might use these assumptions as a basis for challenging Dr. Crawford's methodology for calculating damages.  *Id.*

Plaintiffs now move *in limine* to preclude defendants from introducing evidence that the Club's hours were other than 11 a.m. to 4 a.m., or making arguments to this effect.  Plaintiffs claim that defendants have repeatedly represented during this litigation that the Club's business hours were 11 a.m. to 4 a.m., that defendants never stated otherwise, that both plaintiffs and Dr. Crawford had relied on this factual premise in formulating their damages analyses, and that it would be unfairly prejudicial to permit defendants to abandon this position on the eve of trial.  *See generally* Pl. Br.  Defendants, for their part, deny ever having made an "actual statement . . . or agreement . . . that the Club opened at 11 a.m. Monday through Sunday."  Def. Br. 2.  Defendants argue that plaintiffs, in imputing such a representation to defendants, have distorted the factual record.  *Id.*

The Court rules—emphatically—for plaintiffs on this point.  The record reflects a series of consistent and explicit affirmative representations by defendants that the Club's business hours were 11 a.m. to 4 a.m., with no exception for weekends.  It also reveals a complete failure by defendants—despite criticizing Dr. Crawford's methodology on other grounds and even moving to strike it as unreliable—ever to contest this foundational premise of his and of

---

[4] *See also* Dkt. 454 ("Joint Stipulated Facts for MSJ"), ¶ 27 ("Rick's NY closes at 4:00 A.M.").

plaintiffs. Indeed, the record reflects, at no point before the recent dispute over plaintiffs' motion *in limine* did defendants ever claim that the Club's opening time on weekends was other than 11 a.m.

The following representations are indicative:

- In his October 2009 deposition, Ken Sistrunk, the Club's general manager, stated that the Club's morning shift ran from 11 a.m. until 7 p.m. and that the Club's night shift ended at 4 a.m. Dkt. 668, Ex. 44. He did not state that the Club ever opened at an hour other than 11 a.m.

- In his January 24, 2014 report, defendants' expert, Dr. White, introduced his analysis by stating: "Given that the club closes at 4:00am and opens again at 11:00am . . . ." Dr. White Report, at 5. He did not qualify this statement by limiting it to weekdays. In his February 21, 2014 report rebutting Dr. Crawford's report, Dr. White states, "In Paragraph 22, the plaintiffs' expert discusses how he treats logout times that occur between 4:00AM and 11:00AM, the club closing and opening times, respectively." Dr. White Rebuttal, 2. Although criticizing Dr. Crawford's report on several other grounds, Dr. White did not challenge Dr. Crawford's premise, which Dr. White repeated, as to the Club's hours.

- In his January 27, 2014 report, plaintiffs' expert, Dr. Crawford, repeatedly referred to the period between 4 a.m. and 11 a.m. as the hours when the Club was closed and to the remaining 17 hours in each 24-hour period as the hours when the Club was open. *See, e.g.*, Dr. Crawford Report, ¶¶ 21–23 & n.7. Dr. Crawford made the same statement in his February 21, 2014, rebuttal report: "As I noted in my [January] Report, there are log-in times during the hours when the club is closed (4:00AM to 11:00AM)." Dr. Crawford Rebuttal, ¶ 15. Although attacking Dr. Crawford's logic and methodology in a detailed motion to exclude his testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), defendants at no point disputed his premise as to the Club's hours.

- In their March 17, 2014, memorandum in support of their *Daubert* challenge to Dr. Crawford's testimony, defendants repeatedly treated the Club's hours as 11 a.m. to 4 a.m., *see, e.g.*, Dkt. 514, at 16, and described the remaining seven hours as the hours "when the Club is *closed*," *id.* at 17. Although attacking other assumptions of Dr. Crawford's as "arbitrary" or as "voodoo logic," *see, e.g.*, *id.* at 13–19, defendants did not challenge his statement that the Club was open daily from 11 a.m. to 4 a.m.

5

- In their March 17, 2014 memorandum of law in support of their motion to decertify the class, defendants stated, unconditionally: "The Club is open from 11:00 a.m. to 4:00 a.m." Dkt. 511, at 3.

- In their August 11, 2014 opposition to a proposition in plaintiffs' Rule 56.1 statement, defendants stated: "**RESPONSE**: Defendants dispute that entertainers at Rick's NY have 'shifts' but do not dispute that the Club opens at 11:00 a.m. and that entertainers would not perform at the Club prior to the Club opening. Report of Defendant's Expert Paul F. White at p. 5 ('[t]he Club closes at 4:00am and opens again at 11:00am.')." Dkt. 585, ¶ 709 Response.

- In its November 14, 2014 opinion awarding plaintiffs partial summary judgment on damages, the Court treated the Club's official business hours as 11 a.m. to 4 a.m. and described Dr. Crawford's methodology as reliant on this fact. Dkt. 600, *reported at* 2014 WL 6238175, at *14. Defendants did not move for reconsideration or ask that this factual representation be modified as incorrect.

The Court has carefully reviewed defendants' many submissions in this case, including memoranda of law, affidavits, Rule 56.1 statements and oppositions, and expert submissions. The Court has been unable to find any point—before plaintiffs filed this motion *in limine*—when defendants ever took issue with the premise that the Club's opening time was 11 a.m. On the contrary, as reflected above, defendants repeatedly made this statement themselves, including, most tellingly, in their August 11, 2014 response to plaintiffs' Rule 56.1 statement.

It is, in sum, correct to state that this litigation has proceeded for several years on the premises that the Club's opening time was 11 a.m. and that its closing time was 4 a.m. It is, further, correct to state that defendants were the source of, and repeatedly confirmed, these factual premises. Plaintiffs have relied on these premises, which formed an underlying assumption for their expert's damages analysis.

Under these circumstances, defendants may not, on the brink of trial, change course.[5] They have waived their right to pursue a different theory as to the Club's hours.[6] Further, to permit defendants to change course as to this factual point would be grossly unfair to plaintiffs and reward gamesmanship and delay.[7] Federal Rule of Evidence 403 permits the Court to

---

[5] *See, e.g.*, *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 386 (2d Cir. 1989) ("Once a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims. If, as allowed by Rule 54(b), the judge subsequently changes the initial ruling and broadens the scope of the trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue. Failure to do so might in some circumstances cause substantial prejudice."); *see also Singh v. George Wash. Univ. Sch. of Med. & Health Sciences*, 508 F.3d 1097, 1106 (D.C. Cir. 2007) ("GW neither moved in the district court to vacate the partial summary judgment, *cf. Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1321 (Fed. Cir. 2002), nor otherwise gave effective notice that it sought to disestablish the prior finding. A trial court's reopening of such an issue without notice to the parties is error, and reversible error if it causes substantial prejudice.").

[6] *See, e.g.*, *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 10 Civ. 1827 (JBA), 2014 WL 2940882, at *13 (D. Conn. June 27, 2014) (finding waiver where defendants "did not raise the issue until the eve of trial") (citing *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994)); *cf. Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61–62 (2d Cir. 1999) (finding waiver of personal jurisdiction defense due to a three-year delay in raising issue, combined with the "considerable pretrial activity occurred in this case . . . . Most significantly, Atlas had four distinct opportunities to move to dismiss during the four-year interval. . . . By withholding its motion, Atlas gambled that it could raise the personal jurisdiction issue on the eve of trial, in case a trial occurred."); *Benveniste v. Eiseman*, 119 F.R.D. 628, 629–30 (S.D.N.Y. 1988) (waiver found where defendant participated in numerous pre-trial conferences over a three-year period and raised issue of insufficiency of service of process only after discovery had been completed and the trial was set to begin in a month).

[7] *See, e.g.*, *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.P.A.*, No. 08 Civ. 2540 (DLI) (JMA), 2014 WL 1276513, at *2 (E.D.N.Y. Mar. 27, 2014) ("Defendants cannot be expected to alter course on the eve of trial because plaintiff now realizes that a different law is more favorable to its position. That is gamesmanship at its worst."); *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. 05 Civ. 5155 (AKT), 2010 WL 985201, at *3 (E.D.N.Y. Mar. 15, 2010) ("In light of the fact that Payton Lane had more than four years to raise this issue, it would be extremely unfair to the Sureties to require them to address such issue, including gathering the relevant documents and witnesses, while in the midst of trial."); *Asbestos Workers Syracuse Pension Fund by Collins v. M.G. Indus. Insulation Co.*, 875 F. Supp. 132, 137–38 (N.D.N.Y. 1995) ("An objection raised in the early stages of litigation and prior to the onset of trial is far less likely to cause prejudice than one raised on the eve of trial. For example, a decision tipped in favor of waiver where the defendant raised the capacity defense in a final pre-

exclude evidence where its probative value is substantially outweighed by the risk of unfair prejudice. Evidence is considered prejudicial if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995)). The Club has not shown that the substitution of its new theory as to Club hours would make a material difference in the damages calculation. And any limited probative value yielded by permitting defendants to renounce their prior representations is far outweighed by the unfair prejudice that plaintiffs would suffer due to defendants' 11th-hour change of course. Next month's trial is largely about damages. *See* Dkt. 600, *reported at* 2014 WL 6238175, at *27. The jury will be asked to return a verdict expressed in terms of hours worked by plaintiffs and the plaintiff class on the days as to which the Court has not granted summary judgment. Plaintiffs have prepared for this inquiry by constructing a large, comprehensive, and complex damages model based on premises as to Club hours that defendants repeatedly confirmed. It would be unfair and prejudicial to allow defendants to deviate from those factual premises on the eve of trial.

The Court therefore grants plaintiffs' motion *in limine* Number 10. The Court will exclude any evidence, and preclude any argument, that the Club's official business hours were other than 11 a.m. to 4 a.m.

---

trial conference two weeks before the scheduled trial date.") (citing, *inter alia*, *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345–46 (7th Cir. 1991)); *cf. In re AMR Corp.*, 506 B.R. 368, 382 (Bankr. S.D.N.Y. 2014) (noting, in the context of amending pleadings, that "[u]ndue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)).

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 662.

SO ORDERED.

                                                          PAUL A. ENGELMAYER  
                                                          United States District Judge

Dated: March 6, 2015  
        New York, New York