**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| SABRINA HART and REKA FUREDI on behalf of themselves and all others similarly situated, and the New York Rule 23 Class,<br><br>Plaintiffs,<br><br>v.<br><br>RCI HOSPITALITY HOLDINGS, INC. F/K/A RICKS'S CABARET INTERNATIONAL, INC. RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,<br><br>Defendants. | ) | Case No. 09-CV-3043 PAE/RLE |

---

**PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

---

# TABLE OF CONTENTS


INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 1

I. PROCEDURAL AND FACTUAL HISTORY ..... 1

A. THE PLEADINGS STAGE ..... 1

B. FACT DISCOVERY AND DISCOVERY DISPUTES ..... 2

C. COLLECTIVE AND CLASS CERTIFICATION ..... 4

D. FIRST SUMMARY JUDGMENT MOTIONS ..... 4

E. CAFA JURISDICTION ..... 5

F. EXPERT DISCOVERY AND MOTIONS TO STRIKE AND DECERTIFY ..... 5

G. SECOND SUMMARY JUDGMENT MOTIONS ..... 6

H. PRE-TRIAL PLANNING, MOTION PRACTICE, AND DECISIONS ..... 6

II. SETTLEMENT NEGOTIATIONS ..... 7

III. THE PARTIES' SETTLEMENT AGREEMENT ..... 8

A. SETTLEMENT CLASS ..... 8

B. SETTLEMENT FUND AND ALLOCATION ..... 8

C. FRAUD-PREVENTION PROCEDURES ..... 10

D. NOTICE AND PAYMENT PROGRAM ..... 10

E. RELEASES ..... 13

F. OBJECTIONS AND REQUESTS FOR EXCLUSION ..... 13

G. PAYMENT PROTECTION ..... 14

H. ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE PAYMENTS ..... 15

**ARGUMENT** ....17

I. **LEGAL STANDARDS.** ....17

II. **THE SETTLEMENT IS PROCEDURALLY FAIR.** ....19

III. **THE SETTLEMENT IS SUBSTANTIVELY FAIR.** ....20

A. **THE COMPLEXITY, EXPENSE AND LIKELY DURATION OF LITIGATION SUPPORT SETTLEMENT APPROVAL.** ....21

B. **THE ADVANCED STAGE OF PROCEEDINGS AND COMPLETION OF THOROUGH DISCOVERY SUPPORT SETTLEMENT APPROVAL.** ....22

C. **THE RISKS OF ESTABLISHING REMAINING LIABILITY AND DAMAGES SUPPORT SETTLEMENT APPROVAL.** ....23

D. **THE QUESTION OF DEFENDANTS' ABILITY TO WITHSTAND A GREATER JUDGMENT SUPPORTS SETTLEMENT APPROVAL.** ....24

E. **THE RANGE OF REASONABLENESS OF SETTLEMENT FUND IN LIGHT OF BEST POSSIBLE RECOVERY AND THE ATTENDANT RISKS OF LITIGATION SUPPORT SETTLEMENT APPROVAL.** ....25

IV. **THE PARTIES' PROPOSED NOTICES SHOULD BE APPROVED.** ....27

**CONCLUSION** ....28

# TABLE OF AUTHORITIES

Cases

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987) ..... 26

*Chambery v. Tuxedo Junction Inc.*, No. 12-CV-06539 EAW, 2014 WL 3725157 (W.D.N.Y. July 25, 2014) ..... 26

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..... 21, 22

*Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC) 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ..... 18

*Danieli v. Int'l Bus. Machines Corp.*, 08-CV-3688 (SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ..... 18

*deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..... 25

*Deylii v. Novartis Pharm. Corp.*, No. 13-CV-06669 NSR, 2014 WL 2757470 (S.D.N.Y. June 16, 2014) ..... 13

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..... 19

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013) ..... 23, 24, 27

*Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV. 3043 PAE, 2014 WL 6238175 (S.D.N.Y. Nov. 14, 2014) ..... 23

*Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV. 3043 PAE, 2014 WL 7183956 (S.D.N.Y. Dec. 17, 2014) ..... 23

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ..... 19

*Joel V. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) ..... 17

*Lizondro-Garcia v. Kefi LCC*, 300 F.R.D. 169 (S.D.N.Y. 2014) ........ 17, 27

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........ 20

*In re Michael Milken & Associates Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ........ 28

*Meredith Corp. v. SESAC, LLC*, No. 09 CIV. 9177 PAE, 2015 WL 728026 (S.D.N.Y. Feb. 19, 2015) ........ 17

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........ 26

*Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011) ........ 26

*In re Prudential Sec. Inc., Ltd. P'ship. Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ........ 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ........ 19, 21

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........ 2

*In Re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........ 19

*Tiro v. Pub. House Invest.*, LLC, No. CIV 7679 CM, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ........ 18, 19

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 CIV. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ........ 26, 27

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ........ 13, 17, 19, 26

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ........ 17, 27

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ........ 18

<u>Rules & Statutes</u>

Fair Labor Standards Act ........ *passim*

Fed. R. Civ. P. 23 ........ *passim*

New York Labor Law ........ *passim*

<u>Other Authority</u>

Manual for Complex Litig., Third § 30.41 (1995) .......... 18

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, Newberg on Class Actions (4th ed. 2002) .......... 17, 18

## INTRODUCTION

After almost six years of hard-fought litigation, discovery, motion practice, and intensive trial preparation, and after months of arms-length negotiations, Plaintiffs and Defendants have reached a settlement on behalf of the New York Labor Law ("NYLL") certified Rule 23 Class and the Fair Labor Standards Act ("FLSA") Collective. The settlement, if approved, provides substantial and immediate relief for all members of the Class and Collective while avoiding the risks, costs, and public scrutiny associated with trial and the delays of an appeal from and collection on any judgment. The settlement is unquestionably a procedurally and substantively fair, reasonable, and adequate resolution of a bona fide dispute. For these reasons, as discussed below, the Court should grant preliminary settlement approval so that class members can be informed of this settlement and have the opportunity to respond and so that the parties can move forward to a final fairness hearing and successful resolution of this long-running case.

## RELEVANT BACKGROUND

## I. PROCEDURAL AND FACTUAL HISTORY

### A. THE PLEADINGS STAGE

This case has been litigated vigorously for almost six years. On March 30, 2009, Named Plaintiff and Class Representative Sabrina Hart filed this lawsuit in the Southern District of New York, alleging that Defendants Rick's Cabaret International, Inc. ("RCII"),[1] RCI Entertainment (New York), Inc. ("RCI New York") and Peregrine Enterprises, Inc. ("Peregrine") misclassified her and the other entertainers at Rick's Cabaret in New York as independent contractors, failed to pay the entertainers minimum wages required under the FLSA and NYLL, charged fines, fees,

[1] Although Defendant Rick's Cabaret International, Inc. has changed its name to RCI Hospitality Holdings, Inc., that entity is referred to herein as "RCII" for the sake of consistency with prior orders and filings.

and tip outs in violation of the NYLL and FLSA, and retained entertainers' gratuities in violation of the NYLL. (ECF No. 1.)

The Complaint was subsequently amended to add Reka Furedi as an additional Named Plaintiff and Class Representative. (ECF No. 41.)

Plaintiffs filed a Second Amended Complaint on November 30, 2009, amending the prayer for relief.[2] (ECF No. 71.)

Within the first several months of this case, Defendants moved to dismiss Plaintiffs' Complaint. Defendants' motion was granted in part and denied in part, with Defendant RCII being dismissed from the case without prejudice on December 17, 2009. (ECF No. 79.)

Plaintiffs filed a Third Amended Complaint on May 28, 2010, adding RCII back as a Defendant, amplifying their allegations, and amending their prayer for relief.[3] (ECF No. 153.) Defendants moved to dismiss the Third Amended Complaint, and their motion was denied in December 2010. (ECF No. 253.) Defendants then answered the Third Amended Complaint and asserted counterclaims against the FLSA Collective and Rule 23 Class. (ECF No. 254.) Plaintiffs then moved to dismiss Defendants' counterclaims, Defendants amended their counterclaims to apply only to the Named Plaintiffs and FLSA Collective, and, on June 8, 2011, Plaintiffs' motion to dismiss was denied. (ECF Nos. 257, 272, 279.)

**B. FACT DISCOVERY AND DISCOVERY DISPUTES**

From mid-2009 through October 2012, the parties conducted significant discovery. During discovery, the parties conducted over 30 depositions, exchanged over 21 separate requests for discovery, and large volumes of data and documents were produced. (*See*

[2] At that time, the Supreme Court had not yet issued its opinion in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).
[3] The Third Amended Complaint is the Operative Complaint in this action.

Declaration of Anna P. Prakash ("Prakash Aff."), ¶ 4.) Among other things, Plaintiffs were compelled to produce tax returns, Defendants were compelled to produce accounting data, Defendants exported electronic data from their point-of-sale system for each and every Class Member, and Defendants' agents were deposed on at least eight occasions, including depositions of managers outside of New York for the purpose of determining whether Plaintiffs should continue to pursue a nationwide collective. (*Id.*) The Named Plaintiffs were deposed and submitted supplemental discovery responses on several occasions, and 25 Collective Members responded to discovery—after letter briefs over the content and scope of discovery from absent class members and the Collective were filed and decided (*see e.g.,* ECF No. 252)—and were required to sit for depositions, as were the Named Plaintiffs' significant others, mother, and friend. (Prakash Aff., ¶ 5.)

Several subpoenas were served in this case, giving rise to at least three requests or motions to quash, with one such motion resulting in briefing in the Florida court from where the subpoena issued. (*Id.*, ¶ 6.)

Indeed, discovery was contentious, with the parties exchanging numerous letters and holding multiple meet and confers over the form and content of discovery produced or sought. (*Id.*, ¶ 7.) The parties contacted the Magistrate Judge for assistance on no fewer than 20 occasions and at least six discovery dispute conferences were held. (*Id.*, ¶ 8.) Defendants sought review of the Magistrate's discovery orders on two separate occasions and, on one such occasion, were joined by a proposed group of interveners, resulting in further motion practice over the request to intervene and to quash the Magistrate's order. (*See* ECF Nos. 111, 169, 173, 273.) Throughout this period, the parties also spent considerable time negotiating detailed stipulations with respect to certain discovery. (*See e.g.*, ECF Nos. 285, 356.)

### C. COLLECTIVE AND CLASS CERTIFICATION

On June 15, 2009, Plaintiffs moved for conditional collective certification of entertainers who had worked at Rick's Cabaret in New York. (ECF No. 15.) The contested motion was granted on December 17, 2009. (ECF No. 79.) During discovery, certain Collective Members withdrew or were dismissed following motion practice regarding their participation in the case. (Prakash Aff., ¶ 9.) There are currently 43 Collective Members, including the Named Plaintiffs. (*Id.*, ¶ 10.)

On November 25, 2009, Plaintiffs moved for class certification under Rule 23 of all entertainers who had worked at Rick's Cabaret in New York. (ECF No. 67.) The contested motion was fully briefed, and followed by Defendants filing a contested motion to supplement the record. (ECF Nos. 68, 88, 92, 98.) The certification motion was then withdrawn at the Court's request. (ECF No. 106.) Plaintiffs filed a new motion for Rule 23 certification on June 1, 2010. (ECF No. 154.) The contested motion was granted on December 20, 2010. (ECF No. 253.) On September 10, 2013, the Court ordered briefing on when the class end date should occur. (ECF No. 460.) The parties filed competing briefs, and the Court ultimately set the class end date at October 31, 2012. (ECF No. 487.) The Class is currently comprised of 2,212 people. (Prakash Aff., ¶ 11.)

### D. FIRST SUMMARY JUDGMENT MOTIONS

In February 2013, the parties filed cross motions for summary judgment on the issues of misclassification under the FLSA and NYLL, minimum wage liability under the FLSA and NYLL, offset under the FLSA, Defendants' counterclaims, and joint employer status of the three Defendants. (ECF Nos. 384, 415.) Plaintiffs additionally moved for summary judgment on liability under the NYLL's deductions law and on the issues of willfulness and good faith. (ECF

Nos. 384.) The Court held oral argument that summer. (ECF No. 456.) On September 10, 2013, the Court granted summary judgment for Plaintiffs on the issues of misclassification under the FLSA and NYLL, minimum wage liability under the FLSA and NYLL, offset under the FLSA, and on Defendants' counterclaims. (ECF No. 460.) The Court ordered immediate briefing on the class end date, as referenced above, as well as liability under the NYLL's deductions provisions. (*Id.*) The parties filed competing briefs, and Defendants moved for reconsideration on the issue of misclassification. (ECF Nos. 465, 470, 472, 475, 478.) On November 18, 2013, the Court decided these issues in favor of Plaintiffs. (ECF No. 487.)

### E. CAFA JURISDICTION

Following the parties' submissions in late 2013 regarding remaining issues to be decided in this case, the Court ordered briefing on its jurisdiction under the Class Action Fairness Act. (ECF No. 490.) Following the submission of briefs, the Court affirmed its jurisdiction. (ECF No. 504.)

### F. EXPERT DISCOVERY AND MOTIONS TO STRIKE AND DECERTIFY

The parties then hired experts, who prepared reports and calculations related to damages in January of 2014. (Prakash Aff., ¶ 12.) Following the exchange of reports, the parties' experts prepared rebuttal reports, which were exchanged in February of 2014. (*Id.*, ¶ 13.) The parties deposed each other's experts in early March 2014. (*Id.*, ¶ 14.)

Defendants then moved to strike Plaintiffs' expert and decertify the Class and Collective. (ECF Nos. 509, 512.) Briefing concluded in April of 2014, and oral argument was held that summer. (ECF No. 534.) The Court denied Defendants' motion on November 14, 2014. (ECF No. 600.) Defendants' requested leave to file an interlocutory appeal, and their motion was denied on December 17, 2014. (ECF Nos. 616, 628.)

**G. SECOND SUMMARY JUDGMENT MOTIONS**

While Defendants' motions to strike and decertify was pending, the parties filed cross motions for summary judgment on liability under the NYLL's retention of gratuities provisions and on the question of offset under the NYLL, and Plaintiffs moved for partial summary judgment on damages under the NYLL and FLSA. (ECF Nos. 544, 550, 554.) In November 2014, the Court found that Defendants were not entitled to an offset under the NYLL and granted Plaintiffs' motion on liability for the retention of gratuities claim. (ECF No. 600.) The Court also granted Plaintiffs' motion for damages, in part, awarding:

Claim One (FLSA minimum wage) - $65,956

Claim Two (NYLL Minimum Wage) - $5,640,966

Claim Four (retained gratuities under NYLL § 196-d) - $3,577,032

Claim Five (fines and fees under NYLL § 193) - $3,964,862.

After adjusting for overlap of damages among the claims, the net award totaled $10,866,035. Defendants' above-mention request for leave to file an interlocutory appeal sought to appeal these orders, too. (ECF No. 616.) The motion was denied. (ECF No. 628.)

**H. PRE-TRIAL PLANNING, MOTION PRACTICE, AND DECISIONS**

Trial is currently set to begin on April 27, 2015, on the following remaining issues:

1. The amount of hours worked by Class Members for work days not covered by the summary judgment order;

2. The amount of tip-outs paid by the Class Members to the house mom, disc jockey, and club management;

3. Whether RCI New York and RCII are joint employers of the entertainers;

4. Whether the Defendants' violations of the FLSA and NYLL were willful; and

5. Whether Defendants had a good faith basis for their actions.

(*See* ECF No. 621.) To date, the parties have drafted and submitted competing verdict forms and jury instructions, have exchanged witness and exhibit lists, and have filed and responded to 17 motions in limine. In March 2015, the Court issued two orders resolving all of the motions in limine. (ECF Nos. 720, 724.) The Court has requested additional information from the parties to be filed on April 7, 2015, and has scheduled two additional pre-trial conferences for the week prior to trial.

## II. SETTLEMENT NEGOTIATIONS

In March of 2011, the parties attended mediation with a third-party neutral Margaret Shaw. (Prakash Aff., ¶ 15.) The parties did not reach a settlement. (*Id.*) The parties intermittently discussed settlement thereafter through phone calls and written exchanges. (*Id.*, ¶ 16.)

Following the Court's award of damages in November 2014, Plaintiffs served Defendants with a settlement demand. (*Id.*, ¶ 17.) Over the next few months, the parties continued to discuss settlement through arms-length negotiations. (*Id.*) Class Counsel engaged in these arms-length negotiations with Defendants' Counsel with a view toward achieving substantial benefits for the Members of the Rule 23 Class and Collective while avoiding the cost and delay of trial, appellate review, and potential collection efforts. (*Id.*, ¶ 18.) Numerous term sheets and proposals were exchanged, with nearly every material term subject to hard-fought negotiation. (*Id.*, ¶ 19.) Throughout the negotiations, Defendants maintained their position that they intended to appeal any judgment after trial. (*Id.*, ¶ 20.) Finally, late on March 12, 2015, Defendants' Counsel and Class Counsel executed a term sheet. (*Id.*, ¶ 21.) A formal settlement agreement was signed on March 27, 2015. (*Id.*, ¶ 22.) The parties' settlement agreement is attached to the accompanying Affidavit of Anna P. Prakash as Exhibit 1 and exhibits thereto retain their original

exhibit letter. [4]

## III. THE PARTIES' SETTLEMENT AGREEMENT

### A. SETTLEMENT CLASS

The scope of the people for on whose behalf this settlement was entered includes, on the one hand:

> All persons who worked at Rick's New York or were employed by Defendant Rick's Cabaret International Inc., RCI Entertainment (New York) Inc. and/or Peregrine Enterprises, Inc. in the state of New York as 'entertainers' at any time from September 10, 2005 through October 31, 2012, other than Nicole (Coleman) Imbeault and any entertainer who opted out of or was dismissed from the Rule 23 Class (the "Settlement Class" or "Class")

and, on the other hand:

> Defendants, including their directors, officers, employees and affiliates ("Released Parties")

(Ex. 1, ¶¶ 81, 83.) Notably, given the overlap in the statutory period and claims asserted in this case, all 43 Collective Members are encompassed within the Settlement Class definition above.

### B. SETTLEMENT FUND AND ALLOCATION

The settlement creates a common fund of $15,000,000 (the "Gross Settlement Amount"), inclusive of any awarded Attorneys' Fees, Litigation Expenses, Administrative Costs, Class Representative Service Payments, and Discovery Participant Service Payments. (*Id.,* ¶ 55.)

The allocations to members of the Settlement Class are based on the calculations of Dr. Crawford, Plaintiffs' expert. (*See id.,* ¶¶ 27, 50-51, 57-80; Third Declaration of David L. Crawford, Ph.D. ("3d Crawford Decl.").) Specifically, Dr. Crawford has calculated the entire Settlement Class' maximum aggregate damages, inclusive off all claims, but exclusive of

---

[4] All other exhibits and deposition transcripts cited herein are also attached to the Affidavit of Anna Prakash submitted in connection with this Memorandum.

liquidated damages or interest, to be $22,852,841 ("Aggregate Base Damages"). (*See* Ex. 1, ¶ 27; 3d Crawford Decl.; *see also* Ex. I.) This number is based off of a calculation which assumes a damage amount of $60 per entertainer per log-in for "tip-outs" paid to the house mom, DJ, and club management. (*See* Ex. 1, ¶ 27; 3d Crawford Decl.) Dr. Crawford has determined each Class Member's portion of the Aggregate Base Damages ("Individual Base Damages").[5] (*See* Ex. 1, ¶ 57; 3d Crawford Decl.; *see also* Ex. I.) Using each Class Member's Individual Base Damages as a numerator and the Aggregate Bases Damages as the denominator, Dr. Crawford calculated a percentage value and assigned that value to each Class Member. (Ex. 1, ¶¶ 58-59; 3d Crawford Decl.) Each Class Member's percentage value will be applied to the portion of the Gross Settlement Fund remaining after reduction of any awarded Attorneys' Fees, Litigation Expenses, Administrative Costs, Class Representative Service Payments, and Discovery Participant Service Payments, which will result in a pro rata individual settlement allocation for each Class Member. (*See* Ex. 1, ¶¶ 27, 50-51, 57-80; 3d Crawford Decl.; *see also* Ex. I.) If the Court awards the full amount of requested Attorneys' Fees, Litigation Expenses, Administrative Costs, Class Representative Service Payments, and Discovery Participant Service Payments, the amount remaining for distribution to the class (the "Net Settlement Fund") will be $9,395,000. (*See* Ex. 1, ¶¶ 51, 70; Ex. I.) Assuming the Net Settlement Fund is the amount that will ultimately be distributed, individual settlement allocations will range from $11 to $83,087, with 289 individuals receiving over $10,000. (*See* Ex. I.) The average allocation will be $4,247. (*See id.*) These amounts shall be paid as 1099 income given the parties continuing dispute over the classification of Class. (*See* Ex. 1, ¶ 149.)

[5] For the approximately 110 login records that are associated with Class Members and that are dated prior to September 21, 2005, an average amount of damages per login has been assigned due to uncertainty about the precise date on which Rick's Cabaret in New York opened.

### C. FRAUD-PREVENTION PROCEDURES

Given the itineracy and general makeup of the Class, Counsel believes there is a risk that mail sent to Class Members may not always be received by Class Members. In light of this, there is a risk of fraud (i.e., money being claimed or diverted by people who are not part of the Class). For this reason, the parties' settlement agreement provides that the 289 individuals receiving over $10,000 will be required to submit a "Verification Form" within 111 days of preliminary settlement approval (or 90 days after the "Pre-Notice Mailing" discussed below is sent). (Ex. 1, ¶¶ 88, 102.) The Verification Form is not onerous in any respect and simply requires the individual to provide the last four digits of her social security number (or reasonably equivalent proof of identify as listed on the Verification Form) and sign under penalty of perjury that she is, in fact, the Class Member for whom the settlement allocation is intended. (*See* Exs. F and R.) A pre-paid postage envelope will be provided to reduce the burden on Class Members and eliminate barriers to Verification Forms being returned. (*See* Ex. 1, ¶ 102.)

Additionally, given the age, itinerancy, and general makeup of the Class, numerous Class Members will likely have changed their names (through marriage or otherwise) or moved since their contact information was last updated. The parties' settlement agreement simply requires that Class Members contact the Settlement Administrator and provide their full social security number in order to have checks or subsequent notices sent to a new address or name. (*See id.,* Art. V.) If the Settlement Administrator is unable to independently verify the change by reference to third party databases, only then will additional documentation (as listed on Exhibits B and N) be required. (*See id.*)

### D. NOTICE AND PAYMENT PROGRAM

Under the parties' settlement, within seven days of the settlement becoming effective,

Defendant Peregrine will wire the Net Settlement Fund to a third party administrator selected by the parties after a competitive bidding process ("Class Administrator"). (*Id.,* ¶ 144.) Within 14 days of the settlement becoming effective, the Class Administrator will mail checks in the amount of the individual allocations plus any awarded Class Representative Service Payments and Discovery Participant Service Payments to Class Members; however, checks shall not be mailed to any Class Member who was required to but did not timely return completed a Verification Form. (*Id.,* ¶ 145.) The amount allocated to Class Members who were required to but did not timely return completed Verification Forms and to Class Members who do not cash their checks within sixty (60) days of being mailed, will revert back to Defendant Peregrine. (*Id.*, ¶ 89, 144-145, 147, Art. IV; *see also* Exs. F and R.)

The parties have structured their settlement such that there is a comprehensive, robust notice program that is designed to reach as many Class Members as possible, to make Class Members aware of applicable deadlines and requirements under the settlement, and to ensure that there are no unnecessary hindrances to Class Members receiving and negotiating their checks. The notice program includes various reminder notices, as well as a reminder to cash checks for people whose checks remain un-negotiated. (*See* Ex. 1, Art. III.)

*First*, the parties will provide the Class Administrator with the contact information they have on file for all Class Members. (*See id.*, ¶ 96.) The Class Administrator will use appropriate legal databases to update contact information but will defer to contact information given by Class Counsel which Class Counsel indicates is current valid contact information. (*See id.*, ¶ 106.)

*Second*, 21 days after preliminary approval, the 289 Class Members who are required to send back a Verification Form will be sent a postcard ("Pre-Notice Mailing") informing them that they will be receiving additional information and subject to the Verification deadline. (See

id., ¶ 77, 102.) The purpose of this Pre-Notice Mailing is two-fold. First, it gives the Class Administrator information about forwarding addresses and undeliverable mail so that the Class Administrator can begin running skip-traces on those individuals to ensure that the legal notice is sent to a more up to date address. Second, it notifies these Class Members that the full settlement notice is forthcoming, and that they will need to return a Verification Form. (*See* Ex. Q.)

*Third*, 35 days after preliminary approval, all Class Members will be sent a legal notice explaining this settlement and their options ("Long Form Notice(s)"),[6] including options for opting out, objecting, and requesting a name or address change. (*See* Ex. 1, ¶¶ 61, 99-101.) The legal notice will be personalized, and will specify the amount each Class Member is supposed to receive. (*See* Exs. K and L.)

*Fourth*, 81 days after preliminary approval, all Class Members who are required to submit a Verification Form will be sent reminder postcard reminding them of deadline to return the form. (*See* Ex. 1, ¶ 102(c); Ex. O.)

*Fifth*, 97 days after preliminary approval all Class Members who are required to submit a Verification Form will be sent a reminder text message reminding them of deadline to return the form. (*See* Ex. 1, ¶ 102(d); Ex. P.)

*Finally*, 30 days after checks are mailed, all Class Members will be sent a reminder postcard reminding them of the deadline to cash checks. (*See* Ex. 1, ¶ 146; Ex. C.)

During this time, the Class Administrator will provide a website and a combination of live and recorded phone support to answer Class Members' questions. (*See* Ex. 1, ¶¶ 97, 103.)

[6] There are two versions of the Long Form Notice—one for Class Members who will be required to submit Verification Forms and one for Class Members who will not be required to submit Verification Forms. (*See* Exs. K and L.)

Counsel will also be available to answer questions of Class Members to the extent Class Members call directly or to the extent the Class Administrator is unable to readily provide an answer. (*See id.*, ¶ 104.)

### E. RELEASES

Subject to the bankruptcy provisions set forth below, Class Members who do not exclude themselves from this settlement, shall be deemed to have, and have actually, knowingly and voluntarily, released, acquitted and forever discharged all Released Parties from all Released Claims, defined as any and all claims, actions, or causes of action of whatever nature, character or description, whether known, unknown, suspected or unsuspected, which arise out of, or are in any way based on, connected with or related to the matters alleged in the Third Amended Complaint in this action arising and accruing prior to November 1, 2012. (Ex. 1, ¶ 79.) This scope of the release is consistent with Second Circuit law. *See Deylii v. Novartis Pharm. Corp.*, No. 13-CV-06669 NSR, 2014 WL 2757470, at *6 (S.D.N.Y. June 16, 2014) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.") (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 107 (2d Cir. 2005)).

### F. OBJECTIONS AND REQUESTS FOR EXCLUSION

Settlement Class Members shall have the opportunity to object or "opt out" of the settlement. (*See* Ex. 1, ¶ 52, Art. VII; Exs. K and L.) The deadline for opting out or objecting will be 95 days after preliminary approval of the settlement (or 60 days after the Long Form Notices are mailed). (*See* Ex. 1, ¶ 52.) The deadline and procedures for opting out or objecting are clearly stated in the Long Form Notices. (*See* Exs. K and L.) Specifically, Class Members

who object shall be required to state the factual and legal basis for the objection. (*See id.,* Questions 18-19.) Such objection must contain the name, address, telephone number, and email address (if available) of the Class Member making the objection, as well as any names by which the Class Member was known when she performed at Rick's Cabaret in New York. (*See id.*) The objection must be personally signed by the Class Member. (*See id.*) If the Class Member making the objection is represented by counsel, the objection shall so state, and shall contain the name, address, telephone number, and email address for counsel for the objecting Class Member. (*See id.*) Objections must be filed with the Court and provided to counsel for both parties via mail. (*See id.*) Critically, the parties represent that they have not solicited and will not solicit objectors. (*See* Ex. 1, ¶ 139.)

Requests to opt out follow similar procedures and are explained in the Long Form Notices, but do not require the Class Member to provide any basis for the request to opt out. (*See* Exs. K and L.)

**G. PAYMENT PROTECTION**

Given the size of the settlement, the potential (however remote) of an appeal from an objection or a Defendant defaulting on a payment or filing for bankruptcy, the parties' agreement builds in certain protections. (*See* Ex. 1, ¶¶ 157-176.)

*First*, while the agreement provides for payments to be made by Defendant Peregrine, the agreement also provides that both Defendant Peregrine and Defendant RCI New York will consent to judgment in the amount of $15,000,000 to be filed and become immediately payable upon a default in the payment and failure to cure within specified time period. (*See* Ex. 1, Art. XIII; Ex. E.)

*Second*, Defendant RCII has executed a Guaraty, guarantying the payments to be made

by Defendant Peregrine. (Ex. 1, ¶ 168; Ex. H.) The Guaranty requires RCII to pay fees and costs associated with collecting on or enforcing the judgment, as well as any interest accrued if Plaintiffs file a lawsuit to enforce the Guaranty.

*Third*, in the event of a bankruptcy occuring at a time such as payments to Class Members have not yet been made or are subject to a bankruptcy preference (i.e., clawback) or disgorement, the releases described above shall not be effective.[7] (Ex. 1, ¶¶ 157-176.) If Class Members have received payment and it is not subject to the preference or disgorement, but a bankruptcy occurs at a time such that any awarded Attorneys' Fees and Litigation Expenses are subject to the preference or disgorgment, then Class Counsel's claim to those Fees and Expenses shall not be deemed released. (*See id.*)

*Fourth*, in the event of a bankruptcy, Defendants shall stipulate to lift the automatic stay and allow Plaintiffs to proceed in this Court through the point of judgment but not liquidation. (*See id.*, ¶ 176.)

*Finally*, in the event an objection is filed, denied, and appealed, Defendants will be required to make an intial payment of $2,000,000 into an Appellate Escrow Account and to thereafter make monthly deposits of $200,000 into the Account, which amounts shall be released following an unsuccesful appeal to Class Members or Class Counsel in the amounts due at that time or, following a sucessful appeal by an objector, returned to Defendants. (*See id.*, Art. XII.)

### H. ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE PAYMENTS

The agreement further provides that Class Counsel may petition the Court for up to $5,500,000 in Attorneys' Fees and Litigation Expenses from the Gross Settlement Amount. (*See*

[7] Defendant RCII shall be released as of the date checks are mailed; however, shall remain subject to the Guaranty. (*See* Ex. 1, ¶ 156.)

Ex. 1, ¶¶ 22, 31.) The parties' settlement provides that Class Counsel will receive any awarded Attorneys' Fees and Litigation Expenses in three equal installments, the first being paid shortly after the settlement becoming effective, the second one year later, and the third one year after that. (*See id.*) The $5,500,000 represents approximately 33% of the Gross Settlement Amount plus costs. Notably, to date, Class Counsel's lodestar is approximately $4,150,932 and their litigation expenses are approximately $502,110. (Prakash Aff., ¶ 23.) Class Counsel is in the process of verifying their time and expense entries and will provide the Court with a detailed fee petition within 45 days of preliminary approval and before the deadline for objections. (*Id.*, ¶ 24.)

With their fee petition, Class Counsel may also request up to $15,000 for each of the two Named Plaintiffs as a Class Representative Service Payment and up to $2,000 for each of the 25 Collective Members who were deposed in this litigation as Discovery Participant Service Payments. (*See* Ex. 1, ¶ 38, 48, 152-153.) These amounts are in recognition of the time and effort that the Plaintiffs have put into this case, the settlement that they have brought about through their efforts, and the risk and responsibility each voluntarily assumed in coming forward in a case of this nature. (*See id.*)

Critically, the amounts of the anticipated requests for Attorneys' Fees, Litigation Expenses, and Service Payments are clearly stated in the Long Form Notices that will be distributed to the Class and Class Counsel's petition will be filed before the objection deadline. (*See* Exs. K and L.) Thus, the Class will be informed of and have the opportunity to respond to the anticipated requests.

Based on the foregoing and the analysis below, the Court should grant preliminary approval of the parties' settlement and approve the issuance of the notices attached to the

agreement and described above.

## ARGUMENT

### I. LEGAL STANDARDS.

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, Newberg on Class Actions (*Newberg*) § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Neither class nor collective action settlements, however, are effective unless they are judicially approved. *See Lizondro-Garcia v. Kefi LCC*, 300 F.R.D. 169, 178-179 (S.D.N.Y. 2014). "A court may approve a proposed class action settlement, provided it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Meredith Corp. v. SESAC, LLC*, No. 09 CIV. 9177 PAE, 2015 WL 728026, at *8 (S.D.N.Y. Feb. 19, 2015) (quoting *Joel V. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000)); *see* Fed. R. Civ. P. 23(e). "An FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation." *Lizondro-Garcia*, 300 F.R.D. at 179 (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

In a class action settlement, the court first considers the settlement to determine whether to inform the class members of settlement and conduct a final fairness hearing. *See Lizondro-Garcia*, 300 F.R.D. at 179 (S.D.N.Y. 2014) ("Preliminary approval is the first step in the settlement of a class action whereby the court 'must preliminarily determine whether notice of

the proposed settlement ... should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement.'") (quoting *Newberg*, § 11.25). The Court applies a low standard in which it determines whether the proposed settlement has obvious defects, was negotiated at arm's-length and is not collusive, and falls within the range of possible settlement approval such that notice to the class is appropriate. *See Danieli v. Int'l Bus. Machines Corp.*, 08-CV-3688 (SHS), 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009); *see also In re Prudential Sec. Inc., Ltd. P'ship. Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.") (quoting Manual for Complex Litig., Third § 30.41 at 237 (1995)). Indeed, "[p]reliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Tiro v. Pub. House Invest.*, LLC, No. CIV 7679 CM, 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) (quoting *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC) 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) (internal citations and quotations

omitted).[8]

After preliminary approval and after class members have been informed of and had an opportunity to respond to the settlement, the court holds a final fairness hearing to determine whether the finally approve the settlement. *See e.g., SESAC, LLC*, 2015 WL 728026. At that time, the court more closely scrutinizes the settlement to evaluate both procedural and substantive fairness. *See id.* at *8 (citing *WalMart Stores, Inc.*, 396 F.3d at 116).

Here, although not required at this stage[9] and in the interest of presenting the Court with a complete a picture of the settlement, Plaintiffs provide below an in-depth discussion of the settlement's procedural and substantive fairness. For all the reasons discussed below, the parties' settlement falls well within the range of possible settlement approval, is procedurally fair, reasonable, and adequate, and should be preliminarily approved.

## II. THE SETTLEMENT IS PROCEDURALLY FAIR.

"A presumption of fairness, adequacy, and reasonableness' may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting *Wal-Mart Stores*, 396 F.3d at 116); *see SESAC, LLC*, 2015 WL 728026, at *8 (finding procedurally fairness where the above-described presumption of fairness was warranted). "'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In Re Telik, Inc. Sec. Litig.*, 576 F. Supp.

[8] Courts often grant preliminary approval without requiring a hearing. *Tiro*, 2013 WL 2254551, at *1 (citing *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012)).

[9] "[A] full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

2d 570 (S.D.N.Y. 2008) (quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

Here, the presumption of procedural fairness is more than warranted. The Settlement Agreement was reached on the eve of trial after almost six years of hard-fought litigation, full-blown discovery with over 30 depositions, including expert discovery, abundant motion practice including summary judgment on liability and damages, class certification, and pre-trial preparation including seventeen motions in limine. Further, Class Counsel, Nichols Kaster, PLLP, has significant experience in litigating complex class actions, including wage-and-hour suits like the instant case. (*See* Firm Resume, Ex. 2.) Moreover, Defendants' Counsel similarly has significant experience in similar litigation. (*See* http://meisterseelig.com/law/employment.) These experienced counsel have been intermittently discussing settlement at arms-length since their formal mediation in 2011. (*See supra* Relevant Background, Pt. II.) The most recent negotiations began in November 2011, with the parties exchanging written demands and counters and continuing their discussion over phone and email for several months before reaching agreement on material terms on March 12, 2015 and a final agreement on March 27, 2015. (*See id.*) In negotiating and arriving at this settlement, counsel for both parties evaluated the risks attendant with continued litigation, as well as the time associated with litigating through final judgment and the risks associated with collecting on any judgment in reaching this settlement. (Prakash Aff., ¶ 25.) Counsel for both parties now endorse the settlement as fair, adequate, and reasonable. Given the foregoing, the settlement is procedurally fair.

## III. THE SETTLEMENT IS SUBSTANTIVELY FAIR.

Courts analyze the substantive fairness of a class action settlement by evaluating nine factors previously set forth by the Second Circuit Court of Appeals, frequently called the

*Grinnell* factors. *See SESAC, LLC*, 2015 WL 728026, at *9 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). The factors include: (A) the complexity, expense and likely duration of the litigation; (B) the reaction of the class to the settlement; (C) the stage of the proceedings and the amount of discovery completed; (D) the risks of establishing liability; (E) the risks of establishing damages; (F) the risks of maintaining the class action through the trial; (G) the ability of the defendants to withstand greater judgment; (H) the range of reasonableness of the settlement fund in light of the best possible recovery; and (I) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* These factors heavily favor preliminary settlement approval in this case.[10]

### A. THE COMPLEXITY, EXPENSE AND LIKELY DURATION OF LITIGATION SUPPORT SETTLEMENT APPROVAL.

"The greater the 'complexity, expense and likely duration of the litigation,' *Grinnell,* 495 F.2d at 463, the stronger the basis for approving a settlement." *SESAC, LLC*, 2015 WL 728026, at *9.

The complexity of this case is highlighted by its lengthy history detailed above. (*See supra* pp. 1-7.) The costs associated with the litigation summarized above have been significant, with Class Counsel incurring over approximately $4.6 million in fees and costs. (Prakash Aff., ¶ 23.) Moreover, if litigation were to continue, final judgment would likely not occur for years. Trial is set to begin on April 27, 2015, and last three to four weeks. There would be significant post-trial motion practice given that minimum wage damages would still need to be determined, as well as any liquidated damages due as a result of the jury's verdict and interest. What is more,

[10] The factor relating the class's reaction is "impossible to weigh prior to notice and a hearing" and is, accordingly, not discussed below. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Plaintiffs note, however, that both Class Representatives are aware of and support the settlement. (Prakash Aff., ¶ 26.)

Defendants have repeatedly indicated that they would appeal any final judgment to the Second Circuit, which could delay any payment to class members further. Nor is the prospect of an appeal farfetched. Defendants have already hired appellate counsel (*id.*, ¶ 27), and have a well-established track record of appealing adverse judgments. For these reasons, this factor clearly weighs in favor of settlement approval. *See SESAC, LLC*, 2015 WL 728026, at *9 ("Here, these factors strongly favor approving the settlement. Prosecuting this case against [defendant] for the past five years has already imposed significant monetary costs on plaintiffs; these costs would have continued to mount had the case proceeded to trial . . . and, potentially, appeal. It is reasonable to project that the path to a final resolution on appeal would have taken two years or more from the point at which the parties entered into the settlement agreement.).

### B. THE ADVANCED STAGE OF PROCEEDINGS AND COMPLETION OF THOROUGH DISCOVERY SUPPORT SETTLEMENT APPROVAL.

"This *Grinnell* factor inquires whether the parties had adequate information about their claims, such that counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Id.* at *10 (internal quotations and citations omitted).

As described above, the parties in this action have extensively litigated this matter. (*See supra* pp. 1-7.) There is very little in this case that has not been fully explored and litigated. *Id.* Thus, this factor weighs strongly in favor or approving the settlement. *SESAC, LLC*, 2015 WL 728026, at *10 (approving settlement where "[t]he case progressed past protracted discovery and hard-fought motions practice on summary judgment. The parties also each retained multiple experts and conducted expert discovery. And, as noted, the parties had the benefit of the Court's assessment of the case, at least to the extent that evidence was brought to bear in connection with

[defendant]'s motion for summary judgment.").

### C. THE RISKS OF ESTABLISHING REMAINING LIABILITY AND DAMAGES SUPPORT SETTLEMENT APPROVAL.

These three interrelated factors of risks associated with liability, damages, and continued certification are discussed herein, with the risks of remaining liability and damages questions weighing in favor of settlement. To be sure, numerous liability and damages issues have already been decided in Plaintiffs' favor. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV. 3043 PAE, 2014 WL 6238175 (S.D.N.Y. Nov. 14, 2014); *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 CIV. 3043 PAE, 2014 WL 7183956 (S.D.N.Y. Dec. 17, 2014). Further, damages or portions of damages as to certain claims have already been granted. *Hart*, 2014 WL 6238175. Further still, there is little to no risk for Plaintiffs on the question of certification through trial as the Court has conclusively ruled on the class action status of this case and the issues to be tried. *Hart*, 2014 WL 6238175; *Hart*, 2014 WL 7183956.

That said, there are still significant issues to be tried. As to damages, the jury will be tasked with determining how much in "tip-outs" was paid and how many additional hours were worked than have already been determined. While Plaintiffs' burden to prove these damages and hours is not high (*see* ECF No. 724 at VII), the fact remains that there is little documentary evidence to support the amount which Plaintiffs seek. Defendants' witnesses would testify that tip-outs were not always paid. Given the absence of documentary evidence regarding the amount of tip-outs paid, and the prospect of conflicting testimony at trial, there is a substantial risk that the jury will discount Plaintiffs' good-faith estimates or fail to credit them in any meaningful way. This claim alone accounts for over $7 million of the amount included in Dr. Crawford's Base Aggregate Damages, all of which is at risk at trial. Settlement eliminates that

risk.

Moreover, which Defendants are liable, and whether that liability was a result of a willful violation of law or action that lacked a good faith basis are questions that will be left for the jury at trial. While Plaintiffs are confident in their case, there is simply no guarantee that a jury would decide these issues in their favor at trial. Although the Court has expressed doubt that Defendants could make a showing of good faith at trial, the Court has also acknowledged that "the standard for proving willfulness is high." *Hart*, 967 F. Supp. 2d at 937-938. More importantly, as to their claim that all Defendants were joint employers and, thus liable, there is no guarantee that Plaintiffs would prevail. As this Court commented at the summary judgment stage, "The weight of the evidence, fairly considered, tends to favor the defense claim that Peregrine alone, and not RCII and RCI NY, was plaintiffs' employer." *Id. at* 943, *reconsideration denied* (Nov. 18, 2013). The prospect of a loss on joint employer liability is a significant risk for Plaintiffs given that RCII is the Defendant holding the purse strings in this litigation. (*See* Ex. 3 (regarding transferring money from Peregrine to RCII).) Without securing RCII as a Defendant, there is a risk that Plaintiffs may not be able to recover anything at all.

For these reasons, the factors pertaining to risk of liability and damage weigh in support of settlement approval.

### D. THE QUESTION OF DEFENDANTS' ABILITY TO WITHSTAND A GREATER JUDGMENT SUPPORTS SETTLEMENT APPROVAL.

The Gross Settlement Amount is $15,000,000, with Defendants paying all Class Members this year. The estimated allocations to the Class (assuming that Class Counsel's requested fees and expenses and Plaintiffs' service payments are granted as proffered) total $9,395,000. (*See supra* Relevant Background, Pt. III.B and III.D.) Once determined, the payments to the class members shall be paid in one lump sum seven days after this settlement

becomes effective. (*See supra id.*) While Defendants could possibly withstand a greater judgment, it is extremely unlikely that they would be able to pay that judgment in a lump sum or even over the course of a few years, let alone one. As of December 30, 2014, Defendant RCII—together with all of its subsidiaries for whom consolidated SEC filings are made—had approximately $13.2 million in "cash and cash equivalents" on hand. (*See* Ex. 4.) Much of this cash, of course, is necessary for Defendants to operate their businesses and is not available for payment of a judgment in this matter. Notably, in fiscal year 2014, Defendants' consolidated net income was $11.2 million. In 2013 and 2012, it was $9.2 million and $7.6 million, respectively. (*See id.*) Defendants have $15.5 million in accrued liabilities to the State of Texas, a liability which RCII has been litigating since 2008, and which has been adjudicated in Texas's favor by both the state district court and the Texas Supreme Court, and which is the subject of a pending/forthcoming petition for certiorari to the United States Supreme Court.

Notably, while the settlement is financially significant to Defendants, it still guards against risks posed by Defendants' financial situation, as well as risks posed by a loss on joint employer liability, by providing for a consent to judgment upon default, providing a Guaranty from RCII, providing substantial protection for Plaintiffs in the event of an unexpected bankruptcy, and requiring payments into escrow should there be an appeal from an objection. This, too, favors approval. *See e.g., deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *6 (S.D.N.Y. Aug. 23, 2010) (where escrow provisions eliminated risk of collection and weighed in favor of settlement).

### E. THE RANGE OF REASONABLENESS OF SETTLEMENT FUND IN LIGHT OF BEST POSSIBLE RECOVERY AND THE ATTENDANT RISKS OF LITIGATION SUPPORT SETTLEMENT APPROVAL.

"The adequacy of the amount achieved in settlement is not to be judged 'in comparison

with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *SESAC, LLC*, 2015 WL 728026, at *12 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987)). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 CIV. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (citation omitted). Indeed, determining reasonableness "does not involve the use of a mathematical equation yielding a particularized sum." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (internal quotations omitted). Rather, the question is whether the settlement falls within a "range of reasonableness" in light of "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in litigation. *SESAC, LLC*, 2015 WL 728026, at *12 (quoting *Wal–Mart Stores*, 396 F.3d at 119). The answer in this case is, "yes."

Here, class members' recoveries range from $11 to over $83,000, with class members who worked more hours and paid more in fines, fees, and tip outs as estimated by Plaintiffs' expert receiving more than class members who worked less. (*See supra* Relevant Background Pt. III.B.) The Gross Settlement Amount exceeds the amounts awarded by the Court to date by over $4 million and represents approximately 66% of total economic damages of $22,852,841 calculated by Plaintiffs' expert. These results fall well within the range of reasonableness. *See Chambery v. Tuxedo Junction Inc.*, No. 12-CV-06539 EAW, 2014 WL 3725157, at *7 (W.D.N.Y. July 25, 2014) (finding wage-and-hour class and collective settlement to fall within the range of reasonableness where settlement amount represented 7-11% of best day recovery); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 412 (W.D.N.Y. 2011) (finding wage-and-hour

class and collective settlement to fall within the range of reasonableness where settlement amount represented one-third of best day recovery).

The settlement is particularly reasonable because the class is being paid these significant amounts of money almost immediately after this settlement becomes effective and not facing the delay associated the post-trial, appeal, and collection process or the risk of simply not being paid later if appeals or collection efforts do not go Plaintiffs' way. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 CIV. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (finding this factor to weigh in support settlement approval, in part, because, "[a]lthough the plaintiffs might be able to obtain a greater award, based on their actual damages and liquidated damages, if they were to succeed at a trial, it is possible that several more years could elapse before the plaintiffs received any benefit from their litigation efforts."). The benefit of being paid sooner rather than later is particularly valuable to this Class, which is notable for its itinerancy. *See Hart*, 967 F. Supp. 2d at 92, *reconsideration denied* (Nov. 18, 2013) (referencing cases discussing the generally itinerant nature of entertainers).

For all of these reasons, the proposed settlement is substantively fair, reasonable, and adequate and should be preliminarily approved.[11]

## IV. THE PARTIES' PROPOSED NOTICES SHOULD BE APPROVED.

Finally, the Court should approve the parties' proposed notices for distribution. The Long Form Notices closely adhere to the Federal Judicial Center's model notices. *Compare* http://www.fjc.gov/ with Exhibits K and L. They accurately inform the Class of this settlement,

[11] Based on the foregoing, this settlement is also "a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation," thus warranting approval under the FLSA, as under Rule 23. *See Lizondro-Garcia*, 300 F.R.D. at 179 (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

how allocations will be determined, what Class Members are giving up to participate in this settlement, how to opt out of the settlement, how to object to the settlement, what to do in order to get paid, and where to get more information. The reminder and pre-notice mailings are equally informative for the purpose they are intended—to remind and alert Class Members of this settlement and applicable deadlines for participation. For these reasons, the notices should be approved for distribution. *See* Fed. R. Civ. P. 23(c)(2)(B); *In re Michael Milken & Associates Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) ("Normally, settlement notices need only describe the terms of the settlement generally.").

## CONCLUSION

The Settlement Agreement is a product of an arm's-length negotiation among the parties and is a fair, adequate and reasonable resolution of a long-running and vigorously contested dispute. Accordingly, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Settlement Approval.

Dated: April 1, 2015

NICHOLS KASTER, PLLP

s/ Anna P. Prakash

Michele R. Fisher (MF 4600)
Steven Andrew Smith, MN Bar No. 260836
(*admitted pro hac vice*)
E. Michelle Drake, MN Bar No. 0387366
(*admitted pro hac vice*)
Anna P. Prakash, MN Bar No. 0351362
(*admitted pro hac vice*)
John G. Albanese, MN Bar No. 395882
(*admitted pro hac vice*)
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
ATTORNEYS FOR PLAINTIFFS