**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SABRINA HART and REKA FUREDI | ) | |
| on behalf of themselves and all | ) | Case No. 09-CV-3043 PAE/RLE |
| others similarly situated, and the | ) | |
| New York Rule 23 Class, | ) | |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' MEMORANDUM** |
| | ) | **OF LAW IN SUPPORT OF THEIR** |
| v. | ) | **MOTION FOR ATTORNEYS'** |
| | ) | **FEES AND COSTS AND FOR** |
| RCI HOSPITALITY HOLDINGS, INC. F/K/A | ) | **SERVICE PAYMENTS** |
| RICK'S CABARET INTERNATIONAL, INC., | ) | |
| RCI ENTERTAINMENT (NEW YORK) INC., | ) | |
| PEREGRINE ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

**INTRODUCTION** ......................................................................................................1

**BACKGROUND** ........................................................................................................2

**ARGUMENT** ..............................................................................................................8

I.      **THE COURT SHOULD APPROVE THE REQUESTED FEES AND COSTS.** ........8

    A.  **Legal Standard.** ...............................................................................................8

    B.  **Class Counsel is Requesting a Reasonable Percentage of the Fund.**......................9

        1.  ***Class Counsel Expended Extensive Time and Labor on Behalf of Plaintiffs and the Class.*** ...............................................................10

        2.  ***This Litigation Was Complex.*** ....................................................10

        3.  ***Class Counsel Took This Risky Case on a Contingency Basis.*** ....................12

        4.  ***Class Counsel Provided Excellent Representation.*** .........................15

        5.  ***The Requested Fees Are Reasonable in Relation to the Settlement.*** ...........16

        6.  ***Public Policy Supports Approving the Requested Fees and Costs.***.............19

        7.  ***Class Counsel's Costs are Reasonable.*** ......................................21

    C.  **The Lodestar Method Supports Approving the Requested Fees and Costs.**........22

        1.  ***Class Counsel's Hourly Rates Are Reasonable for this District.*** .................23

        2.  ***Class Counsel's Requested Hours Are Reasonable.***.................................24

        3.  ***The Risk Multiplier Is Reasonable.*** ..............................................25

II.     **THE SERVICE PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED.** ..............................................................................................26

    A.  **The Court should approve the requested $15,000 Service Payments to Class Representatives.** ..........................................................................27

    B.  **The Court Should Approve the Requested $2,000 Discovery Participant Payments to Opt-In Discovery Participants.**.........................................30

**CONCLUSION** ........................................................................................................31

i

## TABLE OF AUTHORITIES

**CASES**

*A.H. Phillips, Inc. v. Walling*,
324 U.S. 490 (1945)....................................................................................................19

*Alleyne v. Time Moving & Storage Inc.*,
264 F.R.D. 41 (E.D.N.Y. 2010)..................................................................................19

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
493 F.3d 110 (2d Cir. 2007).......................................................................................22

*Banyai v. Mazur*,
No. 00 CIV. 9806 (SHS), 2008 WL 5110912 (S.D.N.Y. Dec. 2, 2008) .....................12

*Bouaphakeo v. Tyson Foods, Inc.*,
765 F.3d 791 (8th Cir. 2014) ................................................................................14, 15

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)............................................................................................5, 12

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................................12

*Diaz v. E. Locating Serv. Inc.*,
No. 1:10-CV-04082-JCF, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)....................19

*Duchene v. Michael Cetta, Inc.*,
No. 06CIV4576PACGWG, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ................29

*Febus v. Guardian First Funding Grp., LLC*,
870 F. Supp. 2d 337 (S.D.N.Y. 2012)........................................................................10

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................26

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)..........................................................................9, 10, 19, 22

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992)..........................................................................................24

*Guippone v. BH S & B Holdings, LLC*,
No. 09 CIV. 01029 CM, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011).......................27

*Henry v. Little Mint, Inc.*,
No. 12 CIV. 3996 CM, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) .......................................13

*Henry v. Quicken Loans, Inc.*,
698 F.3d 897 (6th Cir. 2012) ...........................................................................................14

*Herman v. Davis Acoustical Corp.*,
196 F.3d 354 (2d Cir. 1999)...............................................................................................8

*Hernandez v. Merrill Lynch & Co.*,
No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013).............................30

*Hilborn v. Prime Time Club, Inc.*,
No. 4:11CV00197 BSM, 2012 WL 9187581 (E.D. Ark. July 12, 2012) .....................................13

*Hnot v. Willis Grp. Holdings Ltd.*,
No. 01 CIV. 6558 GEL, 2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008)........................................24

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................21

*In re Generics Corp. of Am. Sec. Litig.*,
No. 75 CIV. 6295, 1980 WL 1468 (S.D.N.Y. Dec. 4, 1980)......................................................23

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96-cv-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)...............................................25

*In re Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997)................................................................................................23

*In re Microstrategy, Inc.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) .................................................................................21

*In re Novartis Wage and Hour Litigation*,
No. 06-md-1794, Final Order and Judgment ¶ 10 (May 31, 2012) .............................................17

*In re Penthouse Executive Club Comp. Litig.*,
No. 10 CIV. 1145 KMW, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) .....................................19

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).......................................21

*Johnson v. Brennan*,
No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)............................10, 17, 20

*Jones v. Diamond*,
636 F.2d 1364 (5th Cir. 1981) ................................................................................................12

*Kovach v. City Univ. of New York*,
No. 13 CIV. 7198 LGS, 2015 WL 3540798 (S.D.N.Y. June 4, 2015) .........................................23

*Maley v. Del Global Technologies Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................................25, 26

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)....................................................................................................18

*Matson v. 7455, Inc.*,
No. CV 98–788–HA, 2000 WL 1132110 (D. Or. Jan. 14, 2000)................................................13

*Mentor v. Imperial Parking Sys., Inc.*,
No. 05 CIV 7993 WHP, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010).....................................29

*Meredith Corp. v. SESAC, LLC*,
No. 09 Civ 9177, 2015 WL 728026 (S.D.N.Y. Feb. 19, 2015) .................................10, 16, 21, 25

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06-4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..........................................26

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983)..................................................................................................24

*Paguay v. Cantini*,
No. 11-cv-6266 (VEC), Order at 5 (ECF No. 129) (S.D.N.Y. Aug. 1, 2014) ..............................23

*Quaratino v. Tiffany & Co.*,
166 F.3d 422 (2d Cir. 1999).......................................................................................................9

*Reiter v. MTA New York City Transit Auth.*,
457 F.3d 224 (2d Cir. 2006)....................................................................................................23

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) ...........................................................................................26

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008)......................................................................................24

*Ruffin v. Entm't of the E. Panhandle*,
No. 3:11-CV-19, 2012 WL 1435674 (N.D.W. Va. Apr. 25, 2012) .............................................13

*Sand v. Greenberg,*
No. 08 CV 7840 PAC, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ..........................................19, 20

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
559 U.S. 393 (2010) ...................................................................................................................12

*Silberblatt v. Morgan Stanley,*
524 F. Supp. 2d 425 (S.D.N.Y. 2007) ........................................................................................26

*Spicer v. Pier Sixty LLC,*
No. 08 CIV. 10240 PAE, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) .............16, 17, 25, 29, 30

*Telik, Inc. Sec. Litig.,*
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................................................23

*Tiro v. Pub. House Investments, LLC,*
No. 11 CIV 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) .........................................10

*Torres v. City of New York,*
No. 07 Civ. 3473, 2008 WL 419306 (S.D.N.Y. Feb. 14, 2008) ..................................................22

*Torres v. Gristede's Operating Corp.,*
519 F. App'x 1 (2d Cir. 2013) ...................................................................................................16

*Toure v. Amerigroup Corp.,*
No. 10 CIV. 5391 RLM, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .......................................31

*Tyson Foods, Inc. v. Bouphakeo,*
No. 14-1146, Pet. for Writ of Cert. at (i) (Mar. 19, 2015) ..........................................................14

*Tyson Foods, Inc. v. Bouphakeo,*
No. 14-1146, 83 U.S.L.W. 3765 (June 8, 2015) ....................................................................1, 14

*Velez v. Novartis Pharm. Corp.,*
No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .........................22, 24, 25

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ...........................................................................................................5, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005) ..........................................................................................................9

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................................13

Fed. R. Civ. P. 23(b)(3)..................................................................................................14

Fed. R. Civ. P. 23(h) ......................................................................................................8

**STATUTES**

29 U.S.C. § 216(b) .......................................................................................................10

Fair Labor Standards Act ........................................................................... *passim*

New York Labor Law ................................................................................. *passim*

New York Labor Law § 193 ...........................................................................................4

New York Labor Law § 650 .........................................................................................19

**OTHER**

"Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,"
Fed. Jud. Ctr. (2010) ...................................................................................................6

## INTRODUCTION

This case represents six years of passionate, hard-fought, and ultimately successful work by dedicated counsel and their clients.  The time has come for them to be fairly compensated for their work.  Class Counsel took on this risky litigation entirely on a contingency basis, investing over half a million dollars of Class Counsel's own funds in the case, and devoting over four and a half million worth of Class Counsel's time.  Class Representatives Sabrina Hart and Reka Furedi, and the 25 additional collective members who provided discovery (including tax returns) and who were deposed ("Opt-In Discovery Participants") in this matter made personal sacrifices, risked their reputations, and demonstrated their commitment to the interests of the Class by repeatedly placing the Class's interests before their own individual interests.

The efforts of Class Counsel, the Class Representatives, and the Opt-In Discovery Participants resulted in the creation of a common fund of $15 million dollars being made available to the Class.  Obtaining this amount for the Class on the eve of trial was a substantial achievement as it avoided the very real risks of trial, the most significant of which was that Class Counsel may not have obtained a judgment against RCI Hospitality, by far the most solvent Defendant.  In addition to avoiding trial risk, settlement also avoided a significant delay in payment during the pendency of appeals, the risk of one or more Defendants declaring bankruptcy or otherwise seeking to avoid the obligation to pay a judgment, and the prospect of a reversal on appeal.  In an environment where the contours of wage and hour collective/class trials are subject to a potential sea-change, *see Tyson Foods, Inc. v. Bouphakeo*, No. 14-1146, 83 U.S.L.W. 3765 (June 8, 2015) (granting certiorari on questions related to formulaic damage determinations in hybrid wage-and-hour case), this is a significant achievement.

1

Class Counsel, the Class Representatives, and the Opt-In Discovery Participants should be fairly compensated for their time and investment in this matter.  The requested fee[1] represents approximately one-third of the common fund, and is approximately equal to Class Counsel's lodestar and expenses.  The requested fees and expenses are appropriate when analyzed based on either a percentage of the common fund or based on lodestar and the applicable fee-shifting statutes.  This request is made all the more reasonable by the three year payment schedule that Class Counsel has agreed to accept (a delay which will not be imposed on members of the Class).  The requested Class Representative and Opt-In Discovery Participant Service Payments are likewise in line with those granted in similar cases, more than warranted in this case, and should similarly be allowed in full.

## **BACKGROUND**

A detailed recitation of this case's six year litigation history is presented in the Memorandum for Preliminary Settlement Approval, which is incorporated by reference.  (*See* Prelim. Approval Mem. at 1-16, ECF No. 731.)  This Memorandum focuses primarily on the facts with particular relevance to this request.

---

[1] The settlement provides that Class Counsel may seek up to $5,500,000 for "fees and expenses" in this matter. (Settlement Agreement ¶ 151, ECF No. 732-1.)  As detailed herein, Class Counsel's out of pocket expenditures are $571,050.26.  Assuming all expenses are compensable, then, the "fee" component of the request would be $4,928,949.74, or 32.9% of the common fund.  However, as detailed herein, even if the Court were to find that not all expenses are compensable, the requested gross amount is still reasonable, both as a percentage of the fund and based on Class Counsel's lodestar.  Indeed, even if the requested expenses were cut in half, for example, the requested fee would represent 34.8% of the fund, and a multiplier of 1.14 based on Counsel's lodestar of $4,557,927.50. As detailed herein, both would be reasonable in the context of applicable case law.  Because the settlement provides for a single amount to cover both fees and expenses, this is not a case where there should be a dollar for dollar reduction in the amount of fees and expenses approved in the event that the Court finds that a given expense should not be reimbursed; the agreement provides for a gross amount to cover both fees and expenses, and the amount requested should be analyzed in the aggregate.

2

Plaintiffs alleged Defendants Rick's Cabaret International, Inc. ("RCII"),[2] RCI Entertainment (New York), Inc. ("RCI New York"), and Peregrine Enterprises, Inc. ("Peregrine") misclassified entertainers at Rick's Cabaret in New York as independent contractors, failed to pay the entertainers minimum wages required under the FLSA and NYLL, charged fines, fees, and tip outs in violation of the NYLL and FLSA, and retained entertainers' gratuities in violation of the NYLL. Class Counsel undertook this case in March of 2009 on a contingent fee basis with Class Counsel paying all litigation costs and expenses with no guarantee of payment unless the litigation was successful. This case has been litigated vigorously by Plaintiffs and Defendants for more than six years. Class Counsel's efforts have included the following:

- Drafting and filing a complaint and three amended complaints (ECF Nos. 1, 41, 71, 153);

- Fully briefing three and winning two motions to dismiss (ECF Nos. 45, 50; 79, 148, 200, 253, 257-58, 272);

- Taking and defending over 30 depositions (Affidavit of E. Michelle Drake ("Drake Aff.") ¶ 4);

- Serving and responding to over 21 sets of discovery, consisting of approximately 1,238 separate requests for discovery (*Id.* ¶ 5);

- Reviewing Defendants' discovery production, including analyzing Defendants' accounting data and data from Defendants' point-of-sale system (*Id.* ¶ 6);

---

[2] Although Defendant Rick's Cabaret International, Inc. has changed its name to RCI Hospitality Holdings, Inc., that entity is referred to herein as "RCII" for the sake of consistency with prior orders and filings.

- Engaging in extensive litigation over discovery including contacting the Magistrate Judge on at least 20 occasions, participating in at least six discovery conferences, drafting numerous discovery letters and engaging in numerous meet and confers (*Id.* ¶ 7);

- Retaining a private investigator to locate and interview non-opt in class members and to obtain declarations Plaintiffs used in motion practice (*Id.* ¶ 8);

- Briefing and winning both conditional collective and class certification, and defeating Defendants' decertification motion (ECF Nos. 154-57, 229, 253, 509, 521-22, 600);

- Retaining a tax and accounting expert to assist with analysis of Defendants' financial statements and depositions of Defendant's CFO (Drake Aff. ¶ 9);

- Retaining damages expert witness Dr. David Crawford, working with him extensively on his damage calculations and expert reports, defending his deposition, defeating a motion to strike his testimony under *Daubert*, and preparing him to testify at trial (ECF Nos. 512, 520, 600; Drake Aff. ¶ 10);

- Analyzing the reports of Defendants' expert Paul White and taking his deposition (Drake Aff. ¶ 11);

- Briefing and winning summary judgment on FLSA and NYLL independent contractor misclassification, FLSA offset issues, liability related to fines, fees, and tip-outs under NYLL § 193, and Defendants' counterclaims (ECF Nos. 384-414, 437-38, 460, 473, 487);

- Briefing and winning summary judgment on $10.8 million in damages (ECF Nos. 544-49, 554-63, 578, 588-92);

- Briefing and winning Defendants' motion for reconsideration on liability issues (ECF Nos. 465, 477, 487, 600);

4

- Briefing and winning Defendants' motion for interlocutory appeal (ECF Nos. 616, 622 628);

- Retaining a jury consultant and conducting a multi-day focus group and mock trial (Drake Aff. ¶ 12);

- Briefing seventeen motions in limine (ECF Nos. 643-63, 685-91);

- Drafting and submitting a joint pre-trial order, jury instructions, and verdict forms (ECF No. 640);

- Negotiating the settlement in this case, retaining bankruptcy and corporate counsel to assist with relevant provisions regarding bankruptcy and the terms of a confession of judgment, and drafting the settlement agreement (Drake Aff. ¶ 13); and

- Drafting the preliminary approval papers (ECF Nos. 730-33).

Class Counsel's efforts in this case have not only been time consuming, but also successful. Plaintiffs won a contested class certification motion and successfully defeated efforts to decertify the class even after the Supreme Court's rulings in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Plaintiffs won motions for summary judgment on contested liability issues, including that the entertainers were misclassified as independent contractors under the NYLL and FLSA, that the club had illegally retained the entertainers' gratuities, and that the club had illegally imposed fines, fees, and tip outs. (ECF Nos. 460, 487, 600.) Plaintiffs were successful in winning motions for summary judgment on the availability of offset under the FLSA and the NYLL, and were successful in winning summary judgment on Defendants' counterclaims for unjust enrichment. (ECF Nos. 460, 487, 600.) Plaintiffs further won partial summary judgment on damages, resulting in an unprecedented $10.8 million award to the class at the summary judgment stage. (ECF No. 600.)

Plaintiffs' run of success continued throughout the pre-trial process with Plaintiffs' winning many important motions in limine.  (ECF Nos. 720, 724.)  Throughout the course of the litigation, Defendants maintained that they would appeal any final judgment to the Second Circuit, and to the Supreme Court, and represented that they had already hired appellate counsel to do so.  (Drake Aff. ¶ 14.)

As a result of Class Counsel's extensive efforts and repeated successes, Class Counsel was able to ultimately achieve an excellent settlement for the Class.  The settlement in this case establishes a $15 million common fund.  (Settlement Agreement ¶ 55.)  The settlement also provides a uniquely robust notice process that far exceeds the standard notice process in class action settlements.  First, in light of how long ago many class members worked at Rick's Cabaret, and in light of the fact that many class members have since moved, the Settlement provided for all addresses to be updated using available databases prior to mailing.  (*Id.* ¶ 42.) The Settlement also provides numerous forms of notice in addition to the standard long form notice modeled on that published by the Federal Judicial Center.  (*Id.* Part III; Exs. K and L[3]; *see* "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide," Fed. Jud. Ctr. (2010).)[4]  Specifically, in addition to a standard long form notice modeled on that published by the Federal Judicial Center, the notice process also includes (1) "Pre-Notice Mailing" for Verification Class Members; (2) a pre-Claim Deadline reminder notice to Verification Class members; (3) a pre-Claim Deadline text message notice reminding Verification Class members to submit a verification form; and (4) once checks are mailed, a reminder postcard to class members reminding them to cash their checks before the deadline.

---

[3] All alphanumeric exhibits referenced herein are attached to the Settlement Agreement in this matter.

[4] http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (site last visited June 16, 2015).

(Settlement Agreement ¶¶ 99-102.)   In contrast to the uncertainties and substantial delays associated with a public jury trial, appeal and potential issues relating to the collectability of a judgment, the settlement provides the Class with substantial and immediate monetary relief, and includes multiple protections in the event that one or more of the Defendants declares bankruptcy or fails to meet its obligations under the Agreement. (*Id.* Part XIII.)

The Settlement Agreement provides that Class Counsel may petition for $5.5 million total from the fund for combined attorneys' fees and costs.  (*Id.* ¶ 151.)  Class Counsel's lodestar is currently $4,557,927.50[5] and out-of-pocket costs are $571,050.26.   (Exs. 1,[6] 2.[7])   The Settlement Agreement also provides that Class Counsel may petition for $15,000 service payments for Named Plaintiffs Sabrina Hart and Reka Furedi and for $2,000 as a service payment for each of the 25 Opt-In Discovery Participants.  (Settlement Agreement ¶¶ 152-53.)  Throughout the litigation Named Plaintiffs Hart and Furedi have provided invaluable assistance to the Class.  They provided information throughout the litigation to Class Counsel, responded to discovery, sat for their depositions, assisted with pre-trial preparations, met with counsel in person to prepare for the mock and to testify at the actual trial, consulted with counsel during settlement negotiations, and reviewed and signed the settlement agreement.  (Declaration of Sabrina Hart ("Hart Decl.") ¶ 3; Declaration of Reka Furedi ("Furedi Decl.") ¶ 3); *see also* Pt. II.A., *infra*, discussing Plaintiffs Hart and Furedi in detail.)   They also rejected substantial previous individual settlement offers.  (*See* ECF No. 48, Kimmel Decl., Ex. B.)  At all times,

---

[5] For time from March 24, 2009 through May 31, 2015.  This number also reflects the exclusion of time billed by any timekeeper who worked fewer than forty hours on the file and is not also a partner at Class Counsel's firm.

[6] The fee entries have been redacted to protect attorney-client and work product privilege.  If necessary, unredacted version can be provided to the Court for *in camera* review.

[7] All numeric exhibits and unpublished pleadings referenced herein are attached to the Affidavit of E. Michelle Drake submitted in connection with this Memorandum.

Plaintiffs Hart and Furedi have had the best interest of the Class as their primary consideration, and the Classes have benefitted from their conduct in this case.  Likewise, the settlement in this case could not have been achieved where it not for the 25 Opt-In Discovery Participants who provided deposition testimony, responded to discovery, and were prepared to testify at trial.  (*See* Pt. II.A., *infra*.)

The notices that have been sent to the Class members disclose the amounts that are available for attorneys' fees, expenses, and service payments.  (Settlement Agreement at Exs. K and L.)  While the opt-out and objection period has not yet run, so far only 5 class members have opted out and none have objected.  The absence of a significant number of opt-outs and objectors is notable given the notoriety and publicity that this litigation has received, and is indicative of the fact that class members value the relief provided in the Settlement Agreement.

## ARGUMENT

The requested attorneys' fees and expenses are reasonable whether they are analyzed using a percentage of the fund method or a lodestar method and should be approved.  The requested service payments are in line with those approved in this District in similar circumstances and should likewise be approved.

## I.   THE COURT SHOULD APPROVE THE REQUESTED FEES AND COSTS.

### A.   Legal Standard.

In a class action settlement, the Court "may award reasonable attorney's fees and nontaxable costs . . . authorized by law." Fed. R. Civ. P. 23(h).  What constitutes a reasonable fee is within the sound discretion of the district court. *See Herman v. Davis Acoustical Corp.*, 196 F.3d 354, 356 (2d Cir. 1999).  Where, as is here, a common fund is created for the benefit of a class, courts may employ either the percentage-of-fund method or the lodestar method in

determining a reasonable fee.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (internal citation and quotation omitted).  However, in cases brought under fee-shifting statutes such as the FLSA and the NYLL, the lodestar method also has advantages, as it may be necessary to incentivize qualified counsel to bring cases where the value of the case is disproportionate to the amount of work that was required to achieve the result. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation.").  The entire purpose behind fee shifting statutes is to ensure the availability of counsel for cases which, due to risk or their resource-intensive nature, might be financially undesirable if the only mechanism for obtaining attorneys' fees was the traditional contingent-fee as a percentage of the recovery.

**B.      Class Counsel is Requesting a Reasonable Percentage of the Fund.**

The Second Circuit has set forth six factors to consider in determining the reasonableness of the fees requested in a common fund settlement: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Goldberger*, 209 F.3d at 50.  Each of these factors supports the reasonableness of the requested fees and costs.

1.    ***Class Counsel Expended Extensive Time and Labor on Behalf of Plaintiffs and the Class.***

As evidenced by the over 700 docket entries in this case, Class Counsel has expended an enormous amount of time and effort litigating this case over the last six years, and this factor fully supports Class Counsel's requested fees and costs.  In connection with this motion, Class Counsel has submitted detailed records accounting for time expended in this matter in tenths of an hour increments.  (Ex. 1.)  Class Counsel's resulting lodestar is $4,557,927.50.  Where Class Counsel's expenditure of time and resources approximates the requested fee, as it does here, this factor weighs in favor of approval.  *See Goldberger*, 209 F.3d at 50 (noting that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen"); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *15 (S.D.N.Y. Sept. 10, 2013).

2.    ***This Litigation Was Complex.***

As stated by this Court, "[c]lass actions have a well-deserved reputation as being most complex."  *Meredith Corp. v. SESAC, LLC*, No. 09 Civ. 9177, 2015 WL 728026, at *16 (S.D.N.Y. Feb. 19, 2015).  "[C]ourts have recognized that FLSA cases are complex and that '[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b).'"  *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (quoting *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011)).  The factual and legal issues here were complex and favor approving the requested fees.

First, this case had significant factual complexities.  Litigating a misclassification wage-and-hour case for over 2,000 entertainers spanning a seven year period is a complicated

10

undertaking and involves gathering, processing, organizing, and presenting a tremendous amount of information regarding the job duties of the entertainers, and the depth and breadth of discovery conducted in this case demonstrates that reality.   Further contributing to the complexity was Defendants' failure to keep adequate records, which required that Plaintiffs retain an expert who developed a thorough and time-intensive methodology to compensate for the incomplete records.

Second, the case presented complex and novel legal issues.  As demonstrated by the thousands of pages of briefing and hundreds of pages of written opinions in this case, the parties hotly litigated a number of complicated issues, few of which were governed by binding precedent, including: (1) whether the entertainers were misclassified under the FLSA; (2) whether the entertainers were misclassified and the proper test for determining same under the NYLL; (3) whether RCII and RCI New York could be considered joint employers and the proper test for same; (4) whether Defendants willfully violated the FLSA and NYLL; (5) whether Defendants had a good faith basis under the NYLL and FLSA for classifying the entertainers as independent contractors; (6) whether Defendants could offset their minimum wage obligations against the amounts received from customers by entertainers under the FLSA and NYLL; (7) whether the fines and fees imposed on the entertainers constituted unlawful deductions under the NYLL; and (8) whether the Defendants wrongfully withheld gratuities under the NYLL.  There were also numerous procedural and evidentiary disputes including briefing on class certification, admissibility of expert testimony, and the propriety of representative evidence.

Adding to the legal complexity, the NYLL was amended twice during the class period that affected damages issues during this case, and the New York State Department of Labor issued regulations during the class period that clarified the standard for retention of gratuities.

(*See* Nov. 14, 2014 Order at 19-21, ECF No. 600 (discussing changes in law).)  Moreover, the Supreme Court issued multiple rulings about class actions during the course of the litigation that had an impact on the course of the litigation.  *See e.g., Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Dukes*, 131 S. Ct. 2541; *Comcast Corp.*, 133 S. Ct. 1426.  This case was undoubtedly complex, and this factor weighs heavily in favor of the requested fees and costs.

### 3. *Class Counsel Took This Risky Case on a Contingency Basis.*

The risk of the litigation is "perhaps the foremost factor" in establishing the proper fee." *Banyai v. Mazur*, No. 00 CIV. 9806 (SHS), 2008 WL 5110912, at *4 (S.D.N.Y. Dec. 2, 2008). "A lawyer whose compensation is contingent on services can be expected to receive more than she would receive if she were charging an hourly rate." *Id.* (citing *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981)). Courts have noted that, "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).

This case was taken entirely on a contingency fee basis, meaning that if the case did not succeed, Class Counsel would receive no payments for their efforts.  While, in hindsight—after the Class has defeated numerous decertification efforts, won summary judgment on the merits and won $10.8 million in damages— it may appear that this case was not risky, the reality is that risk was present from the outset, and that it persisted through the eve of trial.  In addition to the generic risks involved with any contingent fee case, this case involved several specific risks worth mentioning here.

First, this was a hybrid class and collective action. Cases involving class and collective allegations are inherently risky. After the Supreme Court's decisions in *Dukes* and *Comcast*,

12

courts increasingly have denied certification to misclassification cases.  *See Henry v. Little Mint, Inc.*, No. 12 CIV. 3996 CM, 2014 WL 2199427, at *14 (S.D.N.Y. May 23, 2014) (noting that "[s]ince *Wal–Mart,* some of my colleagues appear to have denied Rule 23 motions in misclassification cases" and collecting cases).  Defendants were well aware of these risks, and capitalized on them at every turn, repeatedly requested decertification and building a record on certification issues designed for appellate review.

Second, case law on the issues presented was unsettled. While case law on the question of how to classify adult entertainers has been generally favorable to plaintiffs it has not been uniformly so.  Some courts have found that entertainers that work at adult nightclubs are properly classified as independent contractors under the FLSA.  *See Matson v. 7455, Inc.*, No. CV 98–788–HA, 2000 WL 1132110 (D. Or. Jan. 14, 2000); *Hilborn v. Prime Time Club, Inc.*, No. 4:11CV00197 BSM, 2012 WL 9187581 (E.D. Ark. July 12, 2012).  The same result could have happened here.  At the time this case was filed, there was no binding federal or state case law about the classification status of entertainers under the NYLL.  More than on classification, however, Plaintiffs faced risk on damages.  Success on the misclassification issue alone does not establish liability for failure to pay the minimum wage.  Defendants' position throughout the litigation was that the Class had no minimum wage damages to speak of.  There was a risk that the Court could have ruled that clubs may be entitled to offset the tips received by the entertainers against their wage obligations, or that the club may be entitled to counterclaim against the entertainers for unjust enrichment.  *See Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 1435674, at *6 (N.D.W. Va. Apr. 25, 2012) (reinstating claim for unjust enrichment against adult entertainers).

13

Third, Plaintiffs faced risks at trial. Trials are inherently unpredictable, and the Plaintiffs' line of work in this case added an additional layer of potential jury prejudice and negative predisposition for Plaintiffs to overcome.  Moreover, the Court itself had previously categorized the Class's claims against RCI Hospitality as a joint employer as tenuous, stating, "[t]he weight of the evidence, fairly considered, tends to favor the defense claim that Peregrine alone, and not RCII and RCI NY, was plaintiffs' employer."  (Sept. 10, 2013 Order at 63, ECF No. 460.)  The risk posed by a trial in this matter was not hypothetical.  Class Counsel is intimately familiar with the risks of trial in a misclassification case, having lost a five week FLSA collective jury trial after eight long years of litigation.  *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 898 (6th Cir. 2012).  Moreover, the risk of a loss against RCII on the joint employer issue would have had substantial consequences for the collectability of a judgment in this matter.

Fourth, Plaintiffs faced risk on appeal.  Even a flat out win on all issues at trial would have carried significant appellate risk.  The Supreme Court recently granted certiorari in *Tyson Foods, Inc. v. Bouphakeo*, No.  14-1146, 83 U.S.L.W. 3765 (June 8, 2015), a hybrid FLSA and state law wage-and-hour collective and class action wherein a jury awarded damages to the class based on inferences made from average donning, doffing, and walking times derived from a representative sample.  *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 799 (8th Cir. 2014). The Supreme Court granted certiorari to review whether the use of averages to infer damages is permissible.  *See Tyson*, No. 14-1146, Pet. for Writ of Cert. at (i) (Mar. 19, 2015) (formulating question presented as: "Whether differences among individual class members may be ignored and a class action certified under Fed. R. Civ. 23(b)(3), or a collective action certified under the [FLSA], where liability and damages will be determined with statistical techniques that presume all class members are identical to the average observed in a sample.").  This Court previously

14

relied on the Eighth Circuit's decision in *Bouaphakeo* in upholding the use of representative evidence and maintaining a certified class, and a result adverse to employees at the Supreme Court could have had an adverse impact on Plaintiffs' case with respect to Dr. Crawford's class-wide damage calculations.  (*See* Dec. 17, 2014 Order at 11, ECF No. 628 (citing *Bouaphakeo*).)

Finally, even if Plaintiffs had achieved a final judgment at trial that could withstand all attacks on appeal, there is always a risk that any Defendant against whom liability was found would become insolvent and unable to pay a judgment, a result that Class Counsel has experienced before in other misclassification cases against adult nightclubs.  (Drake Aff. ¶ 15.) A full win at trial in this case on all issues, including liquidated damages and civil penalties would have certainly exhausted all of Defendant Peregrine's financial resources.  Had Plaintiffs prevailed in full against Peregrine but lost against Defendant RCII, bankruptcy was an all but assured result.

In summary, at all phases of this litigation, there was a significant risk that there would be little or no recovery, and that Class Counsel would receive no compensation for time and $571,050.26 in out-of-pocket costs associated with six years of hard-fought class action litigation.  Therefore, this factor points strongly toward approving the requested fees and costs.

### 4.    *Class Counsel Provided Excellent Representation.*

This Court has previously commented on the excellent work provided by both Class Counsel and Defendants' counsel in this litigation.  (*See* June 24, 2014 Tr. at 98 ("I have benefited by very high-quality briefing from both of you in this round of the case.  I want to thank you for it.  I am a consumer of briefs at this point in my career, and so I know good briefs when I see them.  These have been really helpful.").)  As set forth in the materials accompanying this petition, Class Counsel are accomplished attorneys with a national reputation.  (*See* Ex. 3.)

They have a wealth of experience in litigating complex wage-and-hour class actions across the country. (*Id*.) This skill and experience benefitted the Class immeasurably, both as a result of Class Counsel's tenacity in the litigation and also as a result of Class Counsel's creativity and diligence in pursuing multiple theories of liability. The Class also benefitted from the resources Class Counsel was able to bring to this litigation, including $571,050.26 in out of pocket expenditures. Class Counsel achieved significant results, even while being opposed by skilled counsel experienced in similar wage-and-hour litigation. (*See* http://meisterseelig.com/law/employment.) This is simply not a case that a smaller, less sophisticated, or more risk adverse firm could have litigated as successfully. Thus, this factor fully supports approving the requested fees and costs.

### 5.    *The Requested Fees Are Reasonable in Relation to the Settlement.*

Class Counsel's requested fees and costs are a reasonable percentage of the $15 million settlement. The Settlement Agreement provides for a combined fee and expense amount of $5.5 million. Class Counsel's current costs are $571,050.26. Thus, the minimum portion of the $5.5 million that is attributable to fees is approximately $4,928,949.74, which is 32.9% of the $15 million dollar settlement fund. Even if the Court were to find that the expenses are not all compensable, and were to reduce the expenses, the total amount requested is still reasonable in the overall context of this case. Class Counsel's fee request is comfortably within the range that is typically approved in this Circuit, and therefore, this factor favors approval of the requested fees. *See Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (finding that awarding 52.2% of $7.39 million total recovery would not constitute abuse of discretion); *SESAC*, 2015 WL 728026, at *14 (noting "in numerous common fund cases, fees have been awarded that represent one-third of the settlement fund" and collecting cases); *Spicer v. Pier*

16

*Sixty LLC*, No. 08 CIV. 10240 PAE, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit."); *Johnson*, 2011 WL 4357376, at *19 (internal quotation omitted) ("A fee of 33% of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit."); *In re Novartis Wage and Hour Litigation*, No. 06-md-1794, Final Order and Judgment ¶ 10 (May 31, 2012) (ECF No. 214) (approving fee of 28% of $99,000,000 wage-and-hour common fund settlement).

The Court will undoubtedly note that not all of the $15 million fund made available through the settlement will be paid out to the Class, and the portion not paid to the Class will revert to Defendants.  This does not warrant a reduction of Class Counsel's fee and expense award.  The reality of this litigation, and of this Class's composition, is that it is composed of largely itinerant individuals, many of whom have maintained no connection to Defendants over time.  (*See* Jan. 28, 2014 Order at 12, ECF No. 504 (noting "transient" and "itinerant" nature of Class members); Pls.' CAFA Mem. at 19-20, ECF No. 495 (providing examples of Class members itinerancy).)  Many class members may also be reluctant to participate in the settlement, fearing the potential tax consequences of the settlement income being reported to the IRS.  Still others may choose not to participate because their current spouse or partner is unaware of their connection to Defendants and they do not want to have to explain a new source of funds.  None of these factors are, or were, within the control of Class Counsel.  Nor would any of them change if the case proceeded to trial.  If anything, the risk that Class members could not be found, or would have become increasingly reluctant to accept funds in connection with this matter, would have only continued to increase over time, particularly in the event of lengthy appeals.

17

Class Counsel negotiated a settlement that is designed to maximize both individual recoveries and the likelihood of class member participation.  The settlement has numerous features designed to encourage participation, including a robust notice process with numerous reminders, as well as an uncomplicated and easy to use claim form designed to protect against fraud while not discouraging valid claims. (Settlement Agreement ¶¶ 99-102 and Exs. F, R.) This a not a case where class members have to fill out an onerous claim form to receive a check for a piddling amount of money or where Class Counsel is demanding an exorbitant fee that far outstrips their lodestar based on the size of the fund created.  Here, there have been six years of litigation, Class members are notoriously difficult to reach and find, many Class members will receive checks automatically, and verification forms are only required for Class members who are receiving checks over $10,000.  (Settlement Agreement ¶ 88.)  The verification forms were designed to prevent fraud, not to depress claims.  Reducing Class Counsel's requested fee and expense award because of a lack of full Class participation would be particularly unjust here, where the most likely factors contributing to non-participation are itinerancy and personal reluctance—factors which would exist and serve as barriers to individual recoveries just as substantially had Class Counsel achieved a final judgment on behalf of the Class and been faced with the prospect of distributing the proceeds of the judgment.

The Second Circuit has made it clear that Class Counsel is not to be penalized with a reduced fee when class members do not fully participate in a settlement.  In examining the propriety of a requested fee in relation to the settlement, the Court should take into consideration the full value of the fund that is made available to the class, rather than the amount that is ultimately paid to the Class.  *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of

counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."). This is true even where unclaimed funds revert to the defendant. *See Diaz v. E. Locating Serv. Inc.*, No. 1:10-CV-04082-JCF, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) ("The Court is further satisfied that, although the percentage-of-recovery here is based on the entire settlement fund, including the amount that will revert to defendants, rather than on the portion of the fund equal to the claims actually made, the fee requested is nevertheless reasonable in light of the *Goldberger* factors."); *In re Penthouse Executive Club Comp. Litig.*, No. 10 CIV. 1145 KMW, 2014 WL 185628, at *11 (S.D.N.Y. Jan. 14, 2014) (taking into account full value of fund and citing *Diaz*); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010)("[T]he value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus."). For all of these reasons, too, the requested fee and cost award is reasonable.

### 6.  *Public Policy Supports Approving the Requested Fees and Costs*.

Public policy weighs in favor of approving the requested fee. The FLSA and NYLL serve important remedial purposes. The FLSA "was designed 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). Similarly under the NYLL, the wage and hour laws were passed in part to eliminate "unfair competition against other employers" and avoid injury to the "overall economy." NYLL § 650. These goals can only be fulfilled if the lawyers who seek to prosecute violations under these laws are adequately compensated. Otherwise, violations of the FLSA and NYLL would go unremedied, an undesirable result for both the affected workers and society at large. *See Sand v. Greenberg*, No.

19

08 CV 7840 PAC, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("[Fees] are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."); *Johnson*, 2011 WL 4357376, at *19 ("[A]ttorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." (internal citations and quotation marks omitted)).

In this case, Class Counsel devoted six years to the litigation of this matter, along with considerable financial resources.  Class Counsel are eminently qualified attorneys who could, and do, pursue other kinds of cases and other opportunities in the legal market. The requested fee, which is minimally above Class Counsel's lodestar, and which is being paid over a three year period, is necessary to incentivize qualified attorneys to assume the risks attendant in this kind of litigation.  Where risk is involved, lodestar alone is inadequate because it fails to account for the prospect of a loss.  There is no reason for counsel to take cases on a contingent basis if, at the end of the day, all they can hope to recover is their hourly rate, and only on cases that they win. In such a system, paying hourly clients would always be preferred.  Accordingly, to appropriately incentivize qualified attorneys to take these kinds of cases on a contingent basis, the fees must reflect the risk undertaken.

### 7.     *Class Counsel's Costs are Reasonable.*

"It is well established that counsel who obtain a common settlement fund for a class are entitled to the reimbursement of expenses that they advance to a class." *SESAC,* 2015 WL 728026, at *17; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *18 (S.D.N.Y. July 27, 2007) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course" (internal citation omitted)).

To date, Class Counsel has incurred $571,050.26 in out-of-pocket costs.  These costs consist chiefly of expert and jury consultant expenses ($358,641.64), travel expenses[8] ($98,361.66), transcript costs ($47,247.52), and translation costs ($14,170.60).  Dr. Crawford's extensive work calculating damages for the Class provided an extraordinary value to the Class as without his efforts, there was a risk that the case would have been decertified.  Further, because the case was settled on the eve of trial, Class Counsel had retained a jury consultant and conducted a focus group and mock trial at the time the case settled.  As such, these costs were all reasonably incurred to benefit the Class, and should be reimbursed to Class Counsel.  *See SESAC*, 2015 WL 728026, at *17 (approving costs of $4,225,012 including fees for testifying and consulting experts); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (approving pre-trial expenses when case was settled on eve of trial); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 791 (E.D. Va. 2001) (approving expert and consulting costs when case settled on eve of trial).

Further, the settlement agreement does not differentiate between attorneys' fees and expenses, in recognition of the reality that both represent the outlay of resources by Class

---

[8] Class Counsel does not seek reimbursement for any meal expenses which exceed the federal government's approved per diem rate of $71 per day for New York.  *See* http://www.gsa.gov/portal/category/100120 (site last visited June 19, 2015). (Drake Decl. ¶ 16.)

Counsel and that both will be compensated from the common fund.  Therefore, any analysis of fees and expenses must be undertaken holistically.  Approving the requested fees and costs here will further the public policy goals of the statutes and ensure that capable attorneys are incentivized to spend significant time and effort and undertake considerable financial risk to enforce the important policies behind the wage and hour laws.  Therefore, this factor weighs in favor of granting the requested fees and costs.

### C.     The Lodestar Method Supports Approving the Requested Fees and Costs.

Given the six-year litigation history of this case, the requested fees and costs are also supported under the lodestar method.  "The lodestar method multiplies the number of hours each attorney has expended by the hourly rate attorneys of similar skill charge in the area; then it applies to that figure a multiplier which factors in the litigation risks and other considerations." *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *20 (S.D.N.Y. Nov. 30, 2010); *see also Goldberger*, 209 F.3d at 47 (stating that under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate" (internal quotations and citations omitted)).

When determining what constitutes a reasonable attorney's fee, "a court must determine 'what a reasonable, paying client would be willing to pay' for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." *Torres v. City of New York*, No. 07 Civ. 3473, 2008 WL 419306 (S.D.N.Y. Feb. 14, 2008) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112 (2d Cir. 2007)).  "In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate

charged in the community where the services were performed for the type of service performed by counsel." *Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008); *In re Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("It is well-established that the 'prevailing community' the district court should consider to determine the 'lodestar' figure is 'the district in which the court sits.'").   Current hourly rates, rather than historic hourly rates, are used in calculating the lodestar figure.   *See Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) ("The rates used by the court should be current rather than historic hourly rates." (internal quotation omitted)); *In re Generics Corp. of Am. Sec. Litig.*, No. 75 CIV. 6295, 1980 WL 1468, at *2 (S.D.N.Y. Dec. 4, 1980) ("Although the hourly rates charged by these attorneys have increased since the outset of this litigation, the use of current rates is appropriate to compensate for the delay in receiving compensation, inflationary losses, and the loss of interest.").

### 1.   *Class Counsel's Hourly Rates Are Reasonable for this District.*

For over nearly 15 years, Nichols Kaster has had a nationwide class action wage-and-hour practice and currently has over 30 attorneys with offices in Minneapolis and San Francisco. (Ex. 3.)  Class Counsel's hourly rates, educational and professional qualifications, and years of experience have been submitted in detail to the Court. Class Counsel's hourly rates, which range from $650 per hour for partner James H. Kaster to $175 for highly skilled paralegals, are in line with rates that have been approved for other employment law class action litigators in New York. *See, e.g., Kovach v. City Univ. of New York*, No. 13 CIV. 7198 LGS, 2015 WL 3540798, at *3 *5 (S.D.N.Y. June 4, 2015) (approving hourly rate of $700 for partner and $250 to $400 for associates); *Paguay v. Cantini*, No. 11-cv-6266 (VEC), Order at 5 (ECF No. 129) (S.D.N.Y. Aug. 1, 2014) (awarding rates of $525 per hour for partners and $365 for associates in FLSA and

NYLL case); *Velez*, 2010 WL 4877852, at *22 (approving hourly rates of $750 for partners and $400 for associates); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (approving fees of $600 for partners, $350 for senior associates, and $250 for junior associates); *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 CIV. 6558 GEL, 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) ("[T]here is ample support for $150 per hour as a reasonable rate for paralegals in this District."). As shown in the accompanying declaration, these hourly rates are also in line with those charged by comparable employment law attorneys in New York City. (*See* Declaration of Justin Swartz ("Swartz Decl.") ¶¶ 7-8, 15; Declaration of LaDonna Lusher ("Lusher Decl.") ¶¶ 5, 7-8; Declaration of Michael Sweeney ("Sweeney Decl.") ¶ 8.) Accordingly, Class Counsel's hourly rates are reasonable and should be used in calculating the lodestar.

## 2. *Class Counsel's Requested Hours Are Reasonable.*

As for time, Class Counsel spent 11,768.5 hours litigating this case. When determining reasonable hours expended, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Class Counsel has submitted contemporaneous timesheets that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). (*See* Ex. 1.) Considering that this case has taken over six years, has been hotly contested, and involves over 2,000 class members who worked over a seven year period, the total amount of hours expended is justified. While Defendants have not shared their lodestar in defending this case, Defendants' public statements indicate that Class Counsel's lodestar is in line with, or more likely, lower than the amount Defendants have paid in defense of this matter. (Ex. 4 at 37, 39 (showing that

Defendants spent about $3.416 million in legal and professional expenses in 2014 alone and attributing increase in costs "principally due to increased activity in the New York labor lawsuit"). Experienced counsel who litigate in this District agree that the expenditure of time in this case was reasonable as well. (*See* Swartz Decl. ¶¶ 7-12; Lusher Decl. ¶¶ 9-10; Sweeney Decl. ¶ 9.)

### 3.  *The Risk Multiplier Is Reasonable.*

Given the excellent result obtained for the Class and the risk undertaken by Class Counsel, Class Counsel is entitled to the modest risk multiplier sought by this settlement. *See SESAC, LLC*, 2015 WL 728026, at *15 ("[A multiplier] is commonly justified on the ground that counsel risked money and time, and may have foregone other engagements and clients, to pursue an uncertain representation of the class."). Class Counsel's lodestar currently is $4,557,927.50. This number does not include future time that will be spent associated with final approval, fielding questions from Class members, and continued monitoring of the administration of the settlement. Nor does it include time spent defending the settlement should there be an appeal. Assuming that all expenses are properly reimbursed from the fund, the multiplier sought would be 1.08. Even if no expenses are allowed, the multiplier would be 1.21. Either of these multipliers falls on the far low end of multipliers approved in similar cases. *See e.g., Spicer*, 2012 WL 4364503, at *4 ("The attorneys' fees awarded are a 3.36 multiplier of the lodestar, which is well within the range of reasonableness."); *Velez*, 2010 WL 4877852, at *23 ("[M]ultiplier [of 2.4] falls well within (indeed, at the lower end) of the range of multipliers accepted within the Second Circuit."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (finding a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within [the Second] Circuit"); *Maley v.*

25

*Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding a "modest multiplier of 4.65 is fair and reasonable."). The requested multiplier is particularly reasonable when the fact that Class Counsel is being paid in installment payments over a series of three years is taken into account.

In sum, either under the percentage-of-the-fund method or the lodestar method, and regardless of the precise amount of expenses that the Court views as properly compensable, Class Counsel's requested fees and costs are reasonable and should be approved.

## II.   THE SERVICE PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED.

The requested $15,000 service payments for Class Representatives Sabrina Hart and Reka Furedi and $2,000 service payments for each of the 25 Opt-In Discovery Participants are reasonable and should be allowed.  Service payments "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997)).   Recognition payments are "particularly appropriate in the employment context."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).   When, as here, the Plaintiffs are "former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Id.*; *see also Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest

26

others be dissuaded.").  Further, "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011).

A.    **The Court Should Approve the Requested $15,000 Service Payments to Class Representatives.**

Throughout the course of this lengthy litigation, Named Plaintiffs and Class Representatives Sabrina Hart and Reka Furedi have diligently pursued the best interests of the Class. Ms. Hart, as the initial Named Plaintiff, started this lawsuit in March of 2009. (*See* Compl., ECF No. 1.)  Ms. Furedi joined this case shortly after its filing (*see* First Amend. Compl., ECF No. 41) and has been equally committed to the Class.  In the early days of this litigation, the Named Plaintiffs assisted counsel in shaping the Complaint and Amended Complaints and assisted counsel's understanding of key factual allegations. (*See* Drake Aff. ¶ 17.)  They each also put forward declarations that were used in early motion practice and cited throughout the course of this litigation. (*See* ECF Nos. 18, 25-1.)

Following their joining this case in 2009, both Named Plaintiffs also declined substantial individual settlement offers, ensuring that this litigation could proceed on a class basis. (*See* Drake Aff. ¶ 18.)  Their commitment to the class held firm throughout this litigation, with both declining subsequent settlement offers that offered incentive payments but not the same value to the class as does the instant settlement. (*Id.* ¶ 19.)

Both Named Plaintiffs actively participated in discovery. (*Id.* ¶ 20.)  They each submitted answers to written discovery, for which they provided at least four supplemental response sets. (*Id.* ¶ 21.)  They both also produced income tax returns as part of discovery in this case and were

27

subject to questions about the same and their finances during their depositions, which were each full-day sessions.  (*Id.* ¶ 22.)

In addition, other parts of the Named Plaintiffs' lives were pulled into discovery.  Ms. Hart's mother, husband, and a friend were deposed in this case, as was Ms. Furedi's boyfriend. Defendants went so far as to subpoena Ms. Hart's bank records (which subpoena was eventually quashed) and Ms. Furedi's previous employer.  (*Id.* ¶ 23.)

Ms. Furedi and Ms. Hart remained active throughout the litigation, communicating with counsel frequently.  (*Id.* ¶ 24.)   Over the course of this litigation, the Named Plaintiffs communicated with counsel on no fewer than 140 occasions. (*Id.* ¶ 25.)    Ms. Furedi also attended mediation in person in New York in 2011, and Ms. Hart was available by phone.  (*Id.* ¶ 26.)  Further, settlement was discussed periodically from 2011 forward, and Ms. Hart and Ms. Furedi stayed informed and gave input on the fairness of any contemplated amounts. (*Id.* ¶ 27.)

As trial approached, the Named Plaintiffs' involvement did, too.  (*Id.* ¶ 28.)  Both met with counsel in person in 2015 and participated in trial preparation, including by assisting in mocks of direct and cross examination and, for Ms. Furedi, attending a focus group in New York.  (*Id.* ¶ 29.)  Both Class Representatives were prepared to testify at trial and would have done so had settlement not been reached. (*Id.* ¶ 30.)

As for the instant settlement, both Named Plaintiffs were in touch with counsel during negotiations, gave their consent to agree to the instant settlement, and reviewed and signed formal settlement documents once drafted. (*Id.* ¶ 31.)

The Class Representatives' unflagging commitment to achieving a favorable result for the class is especially notable considering the nature of the industry in which they worked.  The adult nightclub industry is considered taboo and unsavory to many in society, and many

entertainers seek to shield their work in the industry from family and friends.  In serving as Class Representatives, Hart and Furedi risked forever publicly associating their names with the adult entertainment industry and did so despite the fact that neither of them still works in the industry. In fact, neither has worked in the industry for years, both are now mothers committed to their families, and neither considers or wishes the adult entertainment industry to be a part of their lives in the future.  (Hart Decl. ¶ 4; Furedi Decl. ¶ 4.)  Each Named Plaintiff revisited a closed chapter of her life in assisting with this case—particularly in recent years—and did so despite resultant emotional strain and the risk of lasting stigma.  (Hart Decl. ¶ 4; Furedi Decl. ¶ 4.) Importantly, they did all of this with the firm belief that they and the other entertainers were treated illegally and that a wrong should be set right. (Hart Decl. ¶ 4; Furedi Decl. ¶ 4.)  Their efforts are extraordinary and courageous.

In light of the foregoing, the requested service payment of $15,000 to each Named Plaintiff is more than justified.  The service payments represent only 0.1% of the overall settlement, less than what this Court has approved for other class representatives in wage and hour settlements. This amount is also less than that what many individual Class members will receive from the settlement, and is reasonable given remarkable efforts of Class Representatives. Accordingly, the service payments requested for Class Representatives Hart and Furedi should be granted. *See  Spicer*, 2012 WL 4364503, at *4 (approving service payments of $20,000 and $10,000 in an NYLL case where total settlement was $8.5 million); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 CIV. 7993 WHP, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving service payments of $40,000 and $15,000 in FLSA and NYLL settlement); *Duchene v. Michael Cetta, Inc.*, No. 06CIV4576PACGWG, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000).

29

**B.      The Court Should Approve the Requested $2,000 Discovery Participant Payments to Opt-In Discovery Participants.**

Similarly, the 25 additional opt-in Plaintiffs who responded to discovery and who were deposed have made substantial contributions to the class.  (Drake Aff. ¶ 32.)  As with the Named Plaintiffs, the opt-in Plaintiffs produced written discovery responses and were subject to tax return discovery. (*Id.* ¶ 33.)  They were each also deposed, with each deposition lasting several hours.  (*Id.* ¶ 34.)  What is more, their deposition testimony was critical for this case as the testimony provided a significant portion of the factual record for the summary judgment motions that were granted in the Class's favor. (*See generally* Pls.' Rule 56.1 Stmts., ECF Nos. 386, 545, 555.)  The 25 opt-in Plaintiffs who were deposed remained in contact with counsel even after their depositions and had all committed to be available to testify if necessary during trial.  (*See* Drake Aff. ¶ 35.)

Further, as discussed above for the Named Plaintiffs, each of these opt-in Plaintiffs also risked exposure associated with publicly participating in this case.  Notably, many of the opt-ins no longer work in or associate with the adult entertainment industry, but all remained a part of the case—even those who expressed considerable anxiety over continued participation in an case associated with the adult entertainment industry.  (*See id.* ¶ 36.)

Based on the foregoing, the Court should grant the requested $2,000 discovery participant payments to each of the 25 Opt-In Discovery Participants.   Combined, all of the requested service payments to the opt-in Plaintiffs and the Class Representative total $80,000, which is a miniscule portion of the settlement (.5%) and is reasonable given their contributions to the Class. *See Spicer,* 2012 WL 4364503, at *4 (approving service payments totaling $110,000 in 8.5 million dollar payment); *Hernandez v. Merrill Lynch & Co.*, No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service payment of $4,000 to opt-in

30

plaintiff and $15,000 and $12,500 payments to named plaintiffs); *Toure v. Amerigroup Corp.*, No. 10 CIV. 5391 RLM, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving service payments of $5,000 to opt-in plaintiffs).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Court approve $5.5 million dollars for Class Counsel's attorneys' fees and costs, $15,000 as service payments for Class Representatives Sabrina Hart and Reka Furedi, and $2,000 service payments for each of the Opt-In Discovery Participants.  In light of the six years of hard fought litigation and extraordinary outcome achieved as a result of the efforts of Class Counsel, the Class Representatives, and Opt-In Discovery Participants, these requests are reasonable and should be approved in full.

Dated: June 22, 2015           NICHOLS KASTER, PLLP

                                        s/ E. Michelle Drake
                                        Michele R. Fisher (MF 4600)
                                        Steven Andrew Smith, MN Bar No. 260836
                                           (*admitted pro hac vice*)
                                         E. Michelle Drake, MN Bar No. 0387366
                                           (*admitted pro hac vice*)
                                         Anna P. Prakash, MN Bar No. 0351362
                                           (*admitted pro hac vice*)
                                         John G. Albanese, MN Bar No. 395882
                                           (*admitted pro hac vice*)
                                         4600 IDS Center, 80 South 8th Street
                                         Minneapolis, MN 55402
                                         Telephone: (612) 256-3200

                                         ATTORNEYS FOR PLAINTIFFS