UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA HART and REKA FUREDI on behalf of themselves and all others similarly situated, and the New York Rule 23 Class,<br><br>Plaintiffs,<br><br>v.<br><br>RCI HOSPITALITY HOLDINGS, INC. F/K/A RICK'S CABARET INTERNATIONAL, INC., RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,<br><br>Defendants. | Case No. 09-CV-3043 PAE/RLE<br><br><br>**AFFIDAVIT OF<br>E. MICHELLE DRAKE** |

STATE OF MINNESOTA   )
                                          ) ss
COUNTY OF HENNEPIN   )

E. Michelle Drake, being duly sworn, states as follows:

1. I am one of the attorneys for the Plaintiffs in the above matter. I have personal knowledge of the facts set forth in this Affidavit and if called as a witness for this purpose, I could and would testify competently under oath to them.

2. I submit this Affidavit in support of Plaintiffs' Motion for Attorneys' Fees and Costs and for Service Payments.

3. A true and correct copy of the following documents are attached hereto as exhibits:

   **EXHIBIT 1:** Plaintiffs' Fees Records, redacted, preceded by a chart indicating timekeeper initials;

   **EXHIBIT 2:** Plaintiffs' Costs Records;

   **EXHIBIT 3:** Nichols Kaster, PLLP Firm Resume;

1

**EXHIBIT 4:**  RCI Hospitality Holdings 10-K Statement excerpts;

**EXHIBIT 5:**  *Tyson Foods, Inc. v. Bouphakeo*, No. 14-1146, Pet. for Writ of Cert. (Mar. 19, 2015);

**EXHIBIT 6:**  *In re Novartis Wage and Hour Litigation*, No. 06-md-1794, Final Order and Judgment (May 31, 2012); and

**EXHIBIT 7:**  *Paguay v. Cantini*, No. 11-cv-6266 (VEC), Order (S.D.N.Y. Aug. 1, 2014).

4. Throughout the course of this litigation, Plaintiffs' counsel has taken and defended over 30 depositions.

5. Plaintiffs' counsel has served and responded to over 21 sets of discovery, consisting of approximately 1,238 separate requests for discovery.

6. Plaintiffs' counsel has reviewed Defendants' discovery production, including analyzing Defendants' accounting data and data from Defendants' point-of-sale system.

7. Plaintiffs' counsel has engaged in extensive litigation over discovery including contacting the Magistrate Judge on at least 20 occasions, participating in at least six discovery conferences, drafting numerous discovery letters and engaging in numerous meet and confers.

8. Plaintiffs' counsel has retained a private investigator to locate and interview non-opt in class members and to obtain declarations Plaintiffs used in motion practice.

9. Plaintiffs' counsel has retained a tax and accounting expert to assist with analysis of Defendants' financial statements and depositions of Defendant's CFO.

10. Plaintiffs' counsel has retained damages expert witness Dr. David Crawford, working with him extensively on his damage calculations and expert reports, defending his deposition, defeating a motion to strike his testimony under *Daubert*, and preparing him to testify at trial.

11. Plaintiffs' counsel has analyzed the reports of Defendants' expert Paul White and taken his deposition.

12. Plaintiffs' counsel retained a jury consultant and conducted a multi-day focus group and mock trial.

13. Plaintiffs' counsel has negotiated the settlement in this case, retaining bankruptcy and corporate counsel to assist with relevant provisions regarding bankruptcy and the terms of a confession of judgment, and drafting the settlement agreement.

14. Defendants maintained that they would appeal any final judgment to the Second Circuit, and to the Supreme Court, and represented that they had already hired appellate counsel to do so.

15. Throughout this case there was always a risk that any Defendant against whom liability was found would become insolvent and unable to pay a judgment, a result that I have experienced before in other misclassification cases against adult nightclubs.

16. Meal expenses incurred by Plaintiffs' counsel in the course of litigating this case have all been excluded from the attached costs records if they exceeded the federal per diem of $71 per day for New York.

17. The Named Plaintiffs, Sabrina Hart and Reka Furedi, assisted in shaping the Complaint and Amended Complaints and assisted with our understanding of key factual allegations.

18. Following their joining this case in 2009, both Named Plaintiffs declined substantial individual settlement offers, ensuring that this litigation could proceed on a class basis.

19. The Named Plaintiffs' commitment to the class held firm throughout this litigation, with both declining settlement offers that offered incentive payments but not the same value to the class as does the instant settlement.

20. Both Named Plaintiffs actively participated in discovery.

21. Both Named Plaintiffs submitted answers to written discovery, for which they provided at least four supplemental response sets.

22. Both Named Plaintiffs produced income tax returns as part of discovery in this case and were subject to questions about the same and their finances during their depositions, which were each full-day sessions.

23. In addition, other parts of the Named Plaintiffs' lives were pulled into discovery. Ms. Hart's mother, husband, and a friend were deposed in this case, as was Ms. Furedi's boyfriend. Defendants went so far as to subpoena Ms. Hart's bank records (which subpoena was eventually quashed) and Ms. Furedi's previous employer.

24. Following their 2010 depositions, Ms. Furedi and Ms. Hart remained active in the litigation, communicating with counsel frequently.

25. Over the course of this litigation, the Named Plaintiffs communicated with counsel on no fewer than 140 occasions.

26. Ms. Furedi also attended mediation in person in New York in 2011, and Ms. Hart was available by phone.

27. Settlement was discussed periodically from 2011 forward, and Ms. Hart and Ms. Furedi stayed informed and gave input on the fairness of any contemplated amounts.

28. As trial approached, the Named Plaintiffs' involvement increased.

29. Both Named Plaintiffs met with counsel in person in 2015 and participated in trial preparation, including by assisting in mocks of direct and cross examination and, for Ms. Furedi, attending a focus group in New York.

30. Both Class Representatives were prepared to testify at trial and would have done so had settlement not been reached.

31. As for the instant settlement, both Named Plaintiffs were in touch with counsel during negotiations, gave their consent to agree to the instant settlement, and reviewed and signed formal settlement documents once drafted.

32. The 25 additional opt-in Plaintiffs who responded to discovery and who were deposed have made substantial contributions to the class.

33. The 25 opt-in Plaintiffs produced written discovery responses and were subject to tax return discovery.

34. The 25 opt-in Plaintiffs were each also deposed, with each deposition lasting several hours.

35. The 25 opt-in Plaintiffs who were deposed remained in contact with counsel even after their depositions and had all committed to be available to testify if necessary during trial.

36. Each of these 25 opt-in Plaintiffs also risked exposure associated with publicly participating in this case. Notably, many of the opt-ins no longer work in or associate with the adult entertainment industry, but all remained a part of the case—even those who expressed considerable anxiety over continued participation in an case associated with the adult entertainment industry.

37. The biographical information of current Nichols Kaster attorneys who worked on this file is included with the firm resume, attached hereto as Exhibit 3. Below is biographical

information of Nichols Kaster staff and attorneys whose information is not included within the firm resume.

Current Staff:

Jean Hibray, Paralegal:  Jean began as a class action clerk at Nichols Kaster in the spring of 2010, and in the fall of 2010 transitioned to a paralegal role. While Jean works with the firm's Consumer Class Action Group, she has worked on a variety of cases during her time at Nichols Kaster, including individual cases and wage and hour class actions. Jean graduated from the University of Wisconsin-Eau Claire with a bachelor's degree in Political Science-Legal Studies in 2009. She then went on to the Minnesota Paralegal Institute and received her paralegal certificate in 2010.

Heather O'Neil, Senior Paralegal: Heather began working at Nichols Kaster as a paralegal in 2002.  While Heather works with the firm's Individual Practice Group on individual employment cases, she has worked on over twenty class and multi-plaintiff cases. Heather has also worked on approximately eighteen trials and arbitrations during her time at Nichols Kaster.  Heather graduated from Winona State University in 2002 with a bachelor's degree in paralegal studies.

Alex Wise, Damage Clerk:  Alex Wise has worked at Nichols Kaster since December 2007 and is the firm's damage clerk.  In his position, Alex has analyzed data in connection with approximately one hundred and fifty wage and hour cases; calculated damages in approximately one hundred wage and hour cases; and testified in court and in arbitration hearings.  Alex graduated from Macalester College with a degree in Economics in 2007.

Former Staff:

Carl F. Engstrom, Former Law Clerk: Carl worked as a Law Clerk for Nichols Kaster in 2010 and in 2012.  Carl attended the University of Minnesota Law School, where he later graduated *magna cum laude*, in 2012.  Carl went on to clerk for Judge Natalie E. Hudson of the Minnesota Court of Appeals and for Judge Philip C. Carruthers and Judge Tamara G. Garcia of the Fourth Judicial District of the State of Minnesota, and is currently an Associate Attorney at Nichols Kaster.

Eleanor E. Frisch, Former Law Clerk: Ellie worked as a Law Clerk for Nichols Kaster from 2013-2014, while attending the University of Minnesota Law School, where she graduated from in 2014.

Ryan J. Kopischke, Former Class Action Clerk: Ryan worked as a Class Action Clerk for Nichols Kaster from 2008-2012, after graduating from the University of Minnesota in 2007.

Dana C. Landis, Former Class Action Clerk: Dana worked as a Class Action Clerk for Nichols Kaster from 2007-2012, after graduating from the University of Wisconsin-Madison in 2007.

<u>John J. Morrissey, Former Law Clerk</u>: John worked as a Law Clerk for Nichols Kaster from 2013-2014, while attending University of Minnesota Law School where he graduated from in 2014.

<u>Cady C. Nicol, Former Class Action Clerk</u>: Cady worked as a Class Action Clerk for Nichols Kaster from 2012-2013, after graduating from Johns Hopkins University in 2011. Cady currently attends Columbia University Law School, where she expects her J.D. in 2016.

<u>Nik B. Soukonikov, Former Law Clerk</u>: Nik worked as a Law Clerk for Nichols Kaster from 2011-2012, while attending University of Minnesota Law School where he later graduated from in 2013.

<u>Ross D. Stadheim, Former Law Clerk</u>: Ross worked as a Law Clerk for Nichols Kaster in 2011, after attending St. Thomas School of Law, where he graduated from in 2011.

<u>Will K. Sutor, Former Class Action Clerk</u>: Will worked as a Class Action Clerk for Nichols Kaster from 2009-2010, after graduating from Hamline University School of Law in 2009.

<u>Katherine VanderPol, Former Law Clerk/Associate Attorney</u>: Katherine worked as a Law Clerk for Nichols Kaster from 2009 – 2010 and as an Associate Attorney from 2010-2013. Katherine graduated from Hamline University School of Law in 2009. Prior to working at Nichols Kaster, she worked as a judicial extern for U.S. District Court Judges Michael J. Davis and Donovan W. Frank in the District of Minnesota.

FURTHER YOUR AFFIANT SAYETH NOT.

Dated: <u>June 22, 2015</u>                                  s/E. Michelle Drake
                                                            E. Michelle Drake

Subscribed and sworn to before me
this 22nd day of June, 2015.


s/Heather J. O'Neil
Notary Public
My Commission Expires Jan. 31, 2017