

**Anna Prakash**
Direct: (612) 256-3291
Fax: (612) 338-4878
aprakash@nka.com

4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492

September 16, 2015

**VIA ECF**
Judge Paul A. Engelmayer
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Hart, et al. v. Rick's Hospitality Holdings, Inc., et al.*
              **Court File No. 09-CV-3043 (PAE/RLE)**

Your Honor:

Plaintiffs write in response to the Court's Order of September 10, 2015 (ECF No. 762), posing four questions to be discussed at the upcoming hearing on Plaintiffs' Motion for Final Settlement Approval and Plaintiffs' Fee Petition. Plaintiffs are providing responses below so that the Court may consider the information in advance of the hearing. Defense counsel has reviewed and is in agreement with the answers provided below.

**(1)**     **Have any Verification Class Members who have not submitted Verification Forms as of August 1, 2015, subsequently done so, or otherwise conveyed to counsel an interest in participating in the settlement?**

From August 1, 2015 to the present, four Verification Class Members who had not yet submitted Verification Forms contacted the Class Administrator. Of the four, only two sent in a Verification Form after August 1, 2015. (Declaration of William W. Wickersham ("Wickersham Decl.") ¶ 4.) Per the parties' settlement agreement, these two Forms are late and have not been accepted.

An additional Verification Class Member contacted Class Counsel after August 1, 2015. That Class Member had previously contacted the Class Administrator in early July to request a Verification Form. The Class Administrator mailed the Class Member a Verification Form; however, it was returned to the Class Administrator as undeliverable. The Class Member submitted a sworn declaration to Counsel, stating that the Class Administrator did not mail to the address that she provided when she called in early July. After speaking with Class Counsel, the Class Member obtained a Verification Form from the settlement website and provided it to Class Counsel. The parties have agreed to honor this Class Member's Verification Form pursuant to paragraph 86 of the Settlement Agreement which provides that the Verification Deadline may be extended due to a material mistake or error of the Class Administrator. The amount allocated to this Class Member is $11,137. (*Id.* ¶ 5.)

**(2)**     **Are there any updates to be made to the calculations as to class members' response rates and/or the sums to be disbursed to the class following settlement approval?**

Yes. The Class Administrator recently informed the parties that an additional Non-Verification Class Member submitted a timely exclusion request; thus, the total number of exclusion requests is 19. (Wickersham Decl. ¶ 6.)[1] Taking this into account, as well as the above-referenced Verification Form that the parties have agreed to honor, the sum to be disbursed to the class following settlement approval increases by $3,588 ($11,137 for the Verification Class Member noted above less the $7,549 allocated to the additional Non-Verification Class Member who submitted a timely exclusion request).

The current calculations and statistics are as follows:

- Number of Verification Class Members whose Verification Forms have been accepted: 165 or 57.29%
- Amount allocated to all Class Members: $9,395,000
- Amount allocated to Verification Class Members: $6,352,961
- Amount claimed by Verification Class Members: $3,856,062.95 or 60.69%
- Amount allocated to Non-Verification Class Members: $3,042,039
- Amount allocated to the Non-Verification Class Members who opted out: $23,416.88
- Amount to be mailed to Class Members via check following final settlement approval: $6,874,685.07

(Wickersham Decl. ¶ 7.)  ***Notably, in this case, if non-Verification Class Members who did not submit an exclusion request are included within the count of participating Class Members, the participation percentage increases from 57.29% to 93.7%.*** (*Id.*) For purposes of comparing this settlement to other settlements involving exotic dancers, Class Counsel believes this is the appropriate number to use, as in the majority of claims made settlements noted below, the entire class has been required to file a claim form, whereas here, the verification requirement only applied to a subset of Class Members.

**(3)     What reason or reasons are there for the non-participation in the settlement of more than 40% of the Verification Class, each of whose members stands to receive $10,000 or more from the settlement if they participate?**

There is no way to know the actual reason for Verification Class Members' non-participation. There are a variety of potential reasons for non-participation. However, Class Counsel strongly believes that the nature of the job involved, the transient nature of the Class, and the length of the class period greatly contributed to any non-participation.

---

[1] The exclusion request was inadvertently omitted in earlier counts because the Class Member submitted her exclusion request under a new name. (Wickersham Decl. ¶ 6.)

To explain, this class period in this case reaches back to 2005.  Many Class Members no longer work in the industry and may not have shared their past with the families they formed after leaving the industry.  They may be hesitant to self-identify as a former exotic dancer or have to explain a sudden $10,000-plus increase to the household income.

Class Members may also be deterred form making claims by the fact that settlement funds will be reported to the Internal Revenue Service as required by law.  Many Class Members may not have fully reported the income they received while working at Rick's and may believe that a report now would trigger an additional inquiry.  It is also possible that some Class Members chose not to accept the settlement funds out of principle.

The opt-in rate in this case is consistent with that idea: There are 43 opt-ins in this case but approximately 1,100 potential collective members.[2]  Notably, however, every opt-in (i.e., those who were willing to self-identify earlier in this litigation) who is a Verification Class Member has submitted a Verification Form.

Further, as the Court has noted, this is a transient population.  Many Class Members are or were immigrants and may no longer be living in this country.  Further still, many did not have permanent addresses associated with their name, making finding accurate addresses by skip-tracing years after the fact difficult.  In fact, of the 124 notices that had been returned as undeliverable as of August 5, 2015, 26 were addressed to Verification Class Members. (Wickersham Decl. ¶ 8.) Since that time, an additional 29 notices have been returned as undeliverable—five of which were addressed to Verification Class Members.[3] (*Id.*)

In short, the class is comprised of at least some Class Members who cannot or do not want to be found.  Importantly, as the opt-in rate discussed above illustrates, this issue would exist irrespective of settlement.  In fact, if there had been no settlement and the parties were to proceed through trial and judgment in Plaintiffs' favor, the situation would likely not improve, in fact it would likely worsen because more time would have passed. Moreover, post-trial, the notice provisions as thorough as those negotiated through settlement would likely not exist and, even if Class Members were found, they would still be left having to explain a sudden increase in funds and/or to self-identify as exotic dancers.

For all of these reasons, and particularly in light of the percentages discussed below, the participation rate for Verification Class Members is much higher than in comparable settlements and strongly supports approval.

**(4)     What has been the participation rate of class members in prior settlements of cases brought by exotic dancers under the Fair Labor Standards Act (FLSA) or similar state statutes?**

---

[2] In the three most recent FLSA-only cases filed by Class Counsel's law firm on behalf of exotic dancers, opt-in rates were between 7% and 14%.
[3] One of the five people had changed her name and had previously submitted a Verification Form under a different name. (Wickersham Decl. ¶ 8.)

The chart below summarizes participation rates in settlements of six recent exotic dancer cases brought under wage-and-hour statutes. Each settlement below involves a Rule 23 Class and, in each settlement, *all class members* were required to submit a claim form. Plaintiffs have also provided below the type(s) of notice used in each case as a point of comparison and in support of the strength of the notice program in this case.[4]

| Case Name | Participation Rate | Methods of Notice | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Pre-notice postcard | Mailed notice | Text messages | Settlement website | Industry website posting | Reminder postcard | Posting in club |
| Hart v. Rick's Cabaret Intern., Inc. | 56.94% (verified members) 93.7% (all participating members)[5] | X | X | X | X | | X | |
| Flynn v. N.Y. Dolls Gentlemen's Club, No. 13 CV 6530 (PKC)(RLE) (S.D.N.Y.)[6] | 31.97% | | X | X | X | | X | |
| In re Penthouse Executive Club Compensation Litig., No. 10 CV 1145 (KMW) (S.D.N.Y.)[7] | 19.90% | | X | X | X | X | X | X |
| Jane Doe Nos. 1-4 v. Cin-Lan, Inc., No. 4:08-CV-12719 (E.D. Mich.)[8] | ~4.93% | | X | | X | | | X |
| Trauth v. Spearmint Rhino Cos. Worldwide, | ~8.34% | | X | X | X | | | X |

---

[4] Additional information on claims rates in similar class actions involving exotic dancers are summarized on the accompanying Declaration of Shannon Liss-Riordan.
[5] As noted above, if non-Verification Class Members who did not submit an exclusion request are included within the count of participating Class Members, the participation percentage increases from 57.29% to 93.7%.
[6] See Mem. in Supp. of Pls'. Mot. for Final Approval, ECF No. 67, at 6; Joint Stipulation of Settlement & Release, Ex. A, ECF No. 50-1, at 6-8.
[7] See Mem. In Support of Pls'. Mot. for Final Approval, ECF No. 142, at 4-6.
[8] See Pls'. Mem. in Supp. of Mot. for Final Approval, Cin-Lan, ECF No. 375, at 15; Current Settlement Report, Ex. 1, ECF No. 401-1; Pls'. Mem. in Opp. to Objectors' Mot. to Stay, ECF No. 410, at 3 n.5.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Inc., No. 09-1316 VAP(DTBx) (C.D. Cal.)[9] | | | | | | | |
| White v. Skway Lounge, Inc., No. 09-CV-01650 (PJS/FLN) (D. Minn.)[10] | 23.98% | | X | | | | |
| Ruffin v. Entm't of the E. Panhandle, Inc., No. 3:11-cv-0019-GMG (N.D.W.V.)[11] | 29.12% | | X | | | | |

Thank you for your kind consideration of this matter.

                      Sincerely,

                      **NICHOLS KASTER, PLLP**

                      *APPrakash*

                      Anna P. Prakash

---

[9] See Mem. in Supp. of Mot. for Final Approval, ECF No. 317, at 15, 30.
[10] See Mem. in Supp. of Joint Mot. for Final Approval, ECF No. 49, at 3 .
[11] See Joint Mot. for Final Approval and Mem. in Supp., ECF No. 160, at 3-5.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA HART and REKA FUREDI on behalf of themselves and all others similarly situated, and the New York Rule 23 Class,<br><br>Plaintiffs,<br><br>v.<br><br>RCI HOSPITALITY HOLDINGS, INC. f/k/a Rick's Cabaret International, Inc. RCI ENTERTAINMENT (NEW YORK) INC., PEREGRINE ENTERPRISES, INC.,<br><br>Defendants. | Case No. 09-CV-3043 PAE/RLE<br><br><br><br>DECLARATION OF<br>WILLIAM W. WICKERSHAM |

I, William W. Wickersham, declare the following:

1. My name is William W. Wickersham. I am over eighteen (18) years of age, and I have personal knowledge of the facts stated in this Declaration.

2. I am the Vice President of Business Development and Client Relations at RG2 Claims Administration, LLC, the Class Administrator chosen by the parties in the above-captioned matter.

3. I submit this Declaration to provide additional information on Class Members' contact with my office.

4. From August 1, 2015 to the present, four Verification Class Members who had not yet submitted Verification Form contacted my office by phone or email. Of the four, only two sent in a Verification Form after August 1, 2015. I understand that the settlement agreement in this case does not permit for the acceptance of these forms.

1

5. I understand that an additional Verification Class Member that had not yet submitted a Verification Form contacted Class Counsel after August 1, 2015. That Class Member had contacted my office in early July to request a Verification Form. My office mailed her a Verification Form; however, it was returned as undeliverable. I understand that the Class Member avers that my office did not mail to the address that she provided when she called in early July. I further understand that the Class Member obtained a Verification Form from the settlement website and provided it to Class Counsel. I understand that the parties have agreed to honor this Class Member's Verification Form. The amount allocated to this Class Member is $11,137.

6. Additionally, my office recently noted and informed the parties that an additional Non-Verification Class Member submitted a timely exclusion request. The exclusion request was inadvertently omitted in earlier counts because the Class Member submitted her exclusion request under a new name. Including this Class Member, the total number of exclusion requests is 19.

7. Taking the additional exclusion request into account, as well as the Verification Form referenced in Paragraph 5 above, the sum to be disbursed to the class following settlement approval increases by $3,588 ($11,137 for the Verification Class Member noted above less the $7,549 allocated to the additional Non-Verification Member who submitted a timely exclusion request). The current calculations and statistics are as follows:

- Number of Verification Class Members whose Verification Forms have been accepted: 165 or 57.29%
- Amount allocated to all Class Members: $9,395,000
- Amount allocated to Verification Class Members: $6,352,961
- Amount claimed by Verification Class Members: $3,856,062.95 or 60.69%

2

- Amount allocated to Non-Verification Class Members: $3,042,039

- Amount allocated to the Non-Verification Class Members who opted out: $23,416.88

- Amount to be mailed to Class Members via check following final settlement approval: $6,874,685.07

Notably, in this case, if non-Verification Class Members who did not submit an exclusion request are included within the count of participating class members, the participation percentage increases from 57.29% to 93.7%.

8. Additionally, of the 124 notices that had been returned as undeliverable as of my August 5, 2015 Declaration, 26 were addressed to Verification Class Members. Since that time, an additional 29 notices have been returned as undeliverable—five of which were addressed to Verification Class Members. One of the five people had changed her name and had previously submitted a Verification Form under a different name.

I declare, pursuant to 28 U.S.C. § 1746, and under penalty of perjury, that the foregoing is true and correct.

Dated: <u>September 16, 2015</u>

_____
William W. Wickersham

## AFFIDAVIT OF SHANNON LISS-RIORDAN, ESQ.

1.     I am a partner in the law firm of Lichten & Liss-Riordan, P.C., a labor and employment firm based in Boston, Massachusetts. I practice exclusively in the field of employment law on the side of employees, with a specialty in wage and hour class actions.

2.     I have litigated numerous cases on behalf of exotic dancers, challenging strip clubs' misclassification of the dancers as independent contractors. Our firm has obtained a number of favorable decisions in support of the dancers, finding them to have been misclassified as independent contractors. See, e.g., Chaves v. King Arthur's Lounge, Inc., Suffolk Super. Ct. No. 07-2505 (Mass. Super. Jul. 30, 2009) (granting plaintiffs' motion for summary judgment, finding exotic dancers to have been misclassified as independent contractors); Cruz v. Manlo Enterprises, Inc. d/b/a/ Mario's Showplace, Worcester Civ. A. 10-1931 (Mass. Super. June 9, 2011) (same); Monteiro v. PJD Entertainment of Worcester, Inc., d/b/a/ Centerfolds ("Centerfolds"), 29 Mass.L.Rptr. 203 (Worcester Super. Ct. Nov. 23, 2011) (same); Cruz v. Dartmouth Clubs, Inc. d/b/a King's Inn ("King's Inn"), Bristol Civ. A. No. 10-1042 (Mass. Super. Aug. 16, 2012) (same); Cusick v. The 15 Lagrange Street Corp. d/b/a The Glass Slipper, Suffolk Civ. A. No. 10-4127 (Mass. Super. Aug. 8, 2013) (same); D'Antuono v. C&G of Groton, Inc., AAA No. 11-160-02069-11 (June 17, 2013) (arbitration award finding exotic dancers to have been misclassified and awarding damages under the FLSA).

3.  Our firm has settled a number of these cases on a classwide basis. In our experience, the claim rate for these settlements has been generally lower than the claim rate for other types of wage and hour settlements. This appears to be largely because of the transient nature of the workforce, the lack of complete employment information in the possession of the employers, and the use of aliases by the dancers. Thus it is frequently difficult to obtain current contact information for these class members.

4.  Based on our firm's experience with administering class action settlements for exotic dancers, a 60% participation rate is quite a good claim rate.

5.  The following are examples of participation rates for class action cases that we have settled on behalf of exotic dancers:

Raposo v. Mardi Gras Entertainment, Hampden Super. Ct. No. 10-00034. At the time of final approval, 109 dancers had submitted claim forms to participate in the settlement. When the claims period formally closed several months later, the number of participating dancers was 207 out of an estimated 400 total class members.

Cusick et al. v. The 15 Lagrange Street Corp. d/b/a The Glass Slipper, Suffolk Super. Ct. No. 10-4127. At the time of final approval, 37 out of 186 class members had submitted claim forms to participate in the settlement.

<u>Vasquez et al. v. Ye Olde Lamplighter II, Inc.</u>, Worcester Super. Ct. No. 11-1610. The defendant was a small club that did not maintain any employment records or roster of dancers. At the time of final approval, 7 out of an estimated 40-50 dancers had submitted claim forms to participate in the settlement.

<u>Cruz v. Manlo Enterprises, Inc.</u>, Worcester Super. Ct. No. 10-1931. At the time of final approval, 33 out of 68 class members had filed claim forms.

<u>Cruz v. Dartmouth Clubs, Inc. d/b/a Kings Inn</u>, Bristol Super. Ct. No. 10-1042. The defendant was a small club that did not maintain any employment records or roster of dancers, but at the time of final approval, 11 out of an estimated 40 dancers had submitted claim forms to participate in the settlement.

<u>Monteiro v. PJD Entertainment of Worcester, Inc., d/b/a/ Centerfolds</u>, Worcester Super. Ct. No. 10-1930. At the time of final approval, 41 out of 146 class members had submitted claim forms to participate in the settlement.

Signed under the pains and penalties of perjury this 15th day of September 2015.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

3